CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

07/24/2020

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

LORI FITZGERALD, AARON FITZGERALD,
and KEVIN WILLIAMS, *individually and on
behalf of others similarly situated*,

        Plaintiffs,

    v.

JOSEPH WILDCAT SR., TRIBAL PRESIDENT OF
THE LAC DU FLAMBEAU BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS, *in his official
and individual capacities*; NICOLE CHAPMAN-
REYNOLDS; JESSI PHILLIPS LORENZO;
ZENRESOLVE, LLC; and JOHN DOES NOS. 1-20,

        Defendants.

Civil Action No.   3:20CV00044

---

### CLASS ACTION COMPLAINT

COMES NOW Plaintiffs, Lori Fitzgerald, Aaron Fitzgerald, and Kevin Williams, *on behalf of themselves and all individuals similarly situated* ("Plaintiffs"), by counsel, and for their Class Action Complaint against Defendants, allege as follows:

### GENERAL ALLEGATIONS

1.     This is a case about the making and collection on unlawful loans by an unconventional lender: LDF Holdings, a predatory lender formed by the Lac du Flambeau Band of Lake Superior Chippewa Indians, (the "Band"), a federally recognized Native American tribe. These loans carry triple-digit interest rates, often in excess of 700%, and are illegal in many states such as Virginia and Georgia where Plaintiffs reside.

2.     Predatory lenders target vulnerable borrowers and, left unregulated, can economically devastate borrowers and their communities. Consumers often renew the loans or

1

take out new loans when they are unable to pay their original loans, creating a cycle of mounting debt. In recent history, many states (like Virginia and Georgia) have enacted laws to protect their most vulnerable consumers from modern-day predatory lending practices. Commonly, these state laws will cap the amount of interest a lender is allowed to pay and/or require lenders to be licensed in the state where the consumer is located.[1]

3.      LDF Holdings, which holds itself out as a wholly-owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Band, has made and collected on illegal loans across the country under no less than twenty different names. Upon information and belief, LDF Holdings and its multiple subsidiaries are organized under the laws of the Band to ostensibly avoid state and federal laws and shield non-tribal participants in the enterprise from liability.

4.      Although the Band may be motivated by its intention of advancing its own community, its effort to advance the Band and its members exploits desperately poor people in other communities who, in their moment of despair, agree to take a small dollar loan with triple-digit interest rates. The excessive interest rates imposed are far in excess of the interest rates permitted in the states where they make and collect on the loans. By entering into states such as Virginia and Georgia to make loans to consumers and collect from their bank accounts, the Band has knowingly violated applicable state and federal law because it is well settled that "[a]bsent a federal law to the contrary, Indians going beyond reservation boundaries have generally been held

---

[1] Indeed, even the Band itself is apparently familiar with the devastating impact that predatory lending practices can have on a community. A nonprofit financial institution has been established to provide financial services to the Band's members so that they can avoid the pitfalls that come with predatory lenders who take advantage of underbanked consumers. As noted on the Wisconsin Native Loan Fund website, the nonprofit lending institution is an "affordable solution and antidote to the predatory lenders that pervade our Reservations."Wis. Native Loan Fund, http://winlf.org/lending.php (last visited June 15, 2020).

subject to non-discriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49 (1973).

5.    This lawsuit challenges Defendants' and others' ongoing collection of unlawful debts through its usurious lending enterprise. Based on Defendants' conduct, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Defendants and others have conducted and participated in the affairs of the enterprise engaged in the unlawful collection of debts, and Defendants have conspired with each other and others to repeatedly violate state lending laws resulting in the collection of unlawful debts from Plaintiff and the class members. Defendants' acts described herein are unlawful as set forth in 18 U.S.C. § 1962(c)-(d).

6.    Plaintiff also seeks declaratory relief against Defendant Joseph Wildcat, Sr., in his official capacity as Tribal President of the Band.

## JURISDICTION AND VENUE

7.    The Court has original jurisdiction over Plaintiffs' Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1965; 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims, 28 U.S.C. § 1367.

8.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District. Venue is also proper in this Court pursuant to 18 U.S.C. § 1965(a) because a civil action may be brought in a district court for "any district" where a person "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Defendants have transacted their affairs in this District.

## PARTIES

9.    Plaintiff Lori Fitzgerald is a natural person residing in this District.

10. Plaintiff Aaron Fitzgerald is a natural person residing in this District.

11. Plaintiff Kevin Williams is a natural person residing in Georgia. He is also a "consumer" as defined by the FDCPA. 15 U.S.C. § 1692a.

12. Defendant Joseph Wildcat, Sr. is a resident of Wisconsin and is the President of the Lac du Flambeau Band of Lake Superior Chippewa Indians. As President of the Band, he serves as a member of the Tribal Council and head of the Executive Council. He also is or has been an Ex-Officio Board Member of the LDF Business Development, Corp. In these capacities, Defendant Joseph Wildcat exercises high-level supervision of the LDF Business Development, Corp., including LDF Holdings and its many subsidiaries.

13. Defendant Nicole Chapman-Reynolds is a resident of Wisconsin. She is or has previously served as the Board President for the LDF Business Development Corp.

14. Defendant Jessi Phillips Lorenzo is a resident of Florida and holds herself out as both the President of LDF Holdings and the Vice President of Lending at LDF Holdings. Prior to her employment with LDF Holdings, Defendant Jessi Phillips Lorenzo worked at Triax Management and Dater Portfolio Management.

15. Defendant ZenResolve, LLC ("ZenResolve") is a Wyoming limited liability company located in Phoenix, Arizona. ZenResolve is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a.

## **BACKGROUND**

A. **State licensing and usury laws protect consumers from Defendants' conduct.**

16. Plaintiffs received usurious loans from LDF Holdings through its subsidiaries.

17.     The usurious loans violated relevant state laws in two fundamental respects: (1) the loans were made without a license required by applicable state law; and (2) the loans included interest rates in excess of state interest rate caps.

18.     For example, Plaintiffs Lori Fitzgerald and Aaron Fitzgerald received loans with triple digit interest rates as high as 750%. These loans violated both Virginia's licensing and usury laws, which prohibit a person from charging an annual percentage rate exceeding 12% without first obtaining a consumer finance license from the Commonwealth. Va. Code §§ 6.2-1501(A), 6.2-303(A).

19.     Similarly, Plaintiff Williams received loans with interest rates exceeding 300% in violation of Georgia's licensing and usury requirements. Ga. Code Ann. §§ 7-4-2, 16-17-2.

20.     The making and collecting on each of Plaintiffs' loans was a misdemeanor. *See* Va. Code Ann. § 6.2-1540; Ga. Code Ann. § 16-17-2.

21.     Because the loans were made in violation of the applicable licensing requirements, Plaintiffs' loans are void, and Plaintiffs were never obligated to pay any amount on the invalid loans. *See* Va. Code § 6.2-1541(any loan made in violation of Virginia's usury and licensing laws "shall be void" and "any principal or interest paid on the loan shall be recoverable by the person by or for whom payment was made"); Ga. Code § 16-17-3 (any loan made in violation of Georgia's payday lending statue and Georgia's usury laws "shall be void ab initio").

22.     Virginia and Georgia's lending and usury protections are a part of their clearly delineated public policy against usurious loans and predatory lending.

23.     Many other states recognize the same public policy against usury and have adopted laws similar to Virginia's and Georgia's.[2] In such states, LDF Holdings is not permitted to lend, and their lending agreements are invalid and uncollectable.

24.     It is unsurprising that so many states have enacted such laws because "[u]sury legislation to cap interest rates on loans predates the founding of our country." *Payday Today, Inc. v. Defreeuw*, 903 N.E.2d 1057, 1060 (Ind. Ct. App. 2009) (citing Christopher Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minn. L. Rev. 1110, 1116 n.13 (2008)).

---

[2] Those states include Alabama, Arizona, Connecticut, Florida, Idaho, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Minnesota, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Rhode Island, South Dakota, and West Virginia. See Ala. Code § 5-18-4 (loans made without a license "shall be void"); Ariz. Rev. Stat. § 6-613(B) (loans that charge illegal finance charges are "voidable"); Conn. Gen. Stat. § 36a-558 (c)(1) (loans made without a license are "void" and uncollectable); Conn. Gen. Stat. § 36a-558 (c)(1) (loans made without a license are "void" and uncollectable); Fla. Stat. § 516.02 (loans made with excessive interest rates are "not enforceable"); Idaho Code § 28-46-402 (payday loans made without a license are "void, uncollectible and unenforceable"); 815 Ill. Comp. Stat. 122/4-10 (payday loans made without a license "shall be null and void"); Ind. Code Ann. § 24-4.5-5-202 (loans made without the proper authority are "void and the debtor is not obligated to pay either the principal or loan finance charge"); Ky. Rev. Stat. Ann. § 286.4-991 (loans made without a license are void); Mass. Gen. Laws Ann. ch. 140, § 110 (small loans made without a license are void); Md. Code, Com. Law § 12-314 (small loans made without a license that charge excessive interest rates are "unenforceable"); Minn. Stat. §§ 47.60, 47.601 (provisions in loan contracts charging excessive interest rates are void and unenforceable); Minn. Stat. Ann. § 56.19 (authorizing debtor to recover all amounts paid on loans made in violation of licensing requirements); Mont. Code § 31-1-712 (Any deferred deposit loan made by an unlicensed lender "is void, and the unlicensed person may not directly or indirectly collect, receive, or retain any loan principal, interest, fees, or other charges related to the loan"); N.H. Rev. Stat. Ann. § 399-A:23 (any contract for small loan by unlicensed lender is "null and void"); N.J. Stat. Ann. § 17:11C-33 (consumer loans are void if made without a license); N.M. Stat. Ann. § 58-15-3 (small loans made without a license are void); N.Y. Gen. Oblig. Law § 5-511 (usurious loans are "void"); N.Y. Banking Law § 355; N.C. Gen. Stat. Ann. § 53-166 (small loans made without a license are void); Ohio Rev. Code Ann. § 1321.02 (small loans made without a license are void); Or. Rev. Stat. § 725.045 (consumer finance loans made without a license are "void"); 6 R.I. Gen. Laws Ann. § 6-26-4 (loans charging excessive interest "shall be usurious and void"); S.D. Codified Laws § 54-4-44 (loans charging excessive interest or made without a license are "void and uncollectible").

25.     Unfortunately, despite the multitude of state and federal protections to prevent usurious lending, predatory financial services "are heavily marketed to financially vulnerable consumers."[3]

26.     The collection of unlawful and usurious debt continues to be a major problem, in part because the profits to be realized by small, high interest loans are so high that illegal lenders are willing to take the significant risk of litigation and liability for their violations of state and federal law.

**B.     The tribal lending model was developed to evade state and federal consumer protections.**

27.     In recent years, predatory lenders developed various schemes in an attempt to evade applicable state and federal protections.

28.     In one scheme—the so-called "rent-a-bank" strategy—payday lenders convinced banks headquartered in states with high (or nonexistent) usury limits to form a lending venture in order to capitalize on the fact that the bank was obligated to comply only with the usury law of its home state, even for loans made elsewhere.

29.     Federal banking regulators shut down these rent-a-bank schemes. Michael A. Stegman, *Payday Lending*, 21 *Journal of Economic Perspectives* 169, 178-79 (2007) (describing rent-a-bank scheme and regulatory reaction).

30.     In response to the shut-down of the rent-a-bank scheme, several predatory lenders turned to a tribal lending model to facilitate their illegal lending businesses. Using this model, the

---

[3] *See CFPB Finalizes Rule To Stop Payday Debt Traps*, CFPB (Oct. 5, 2017), https://www.consumerfinance.gov/about-us/newsroom/cfpb-finalizes-rule-stop-payday-debt-traps/. Predatory financial services, including high-cost installment loans and payday debt traps, often involve "high-cost, small dollar loans to low income, low-credit borrowers" and "a repayment system that involves the lender withdrawing funds directly from the borrower's bank account." *Payday, Vehicle Title, and Certain High-Cost Installment Loans*, 131 Harv. L. Rev. 1852, 1852 (2018).

predatory lender—which does most of its lending over the internet—affiliates with a Native American tribe to insulate itself from federal and state law by purporting to piggy-back on the tribe's sovereign legal status and its general immunity from suit under federal and state laws.

31.     In order to protect the non-tribal participants, the tribe will take certain precautions to protect the identity of the non-tribal participants and to make the business seem as if it is solely managed by and beneficial to the tribe.

32.     A central feature of the tribal business model is found in the consumer loan agreements consumers are required to execute as a condition of receiving the usurious loans. These loan agreements include a waiver of all state and federal rights and dispute resolution provisions. The non-tribal participants in the scheme will claim that they have no liability for their violations of state and federal laws because the loan agreements waive the application of all state and federal laws. They also often claim that they are beyond the reach of state and federal courts because of the forum selection and/or dispute resolution provision in the agreement.

33.     These provisions are obviously meant to protect the non-tribal participants from liability because the tribe itself is protected by its sovereign immunity.

34.     The strict enforcement of such agreements would often lead to absurd results, including the waiver of all state and federal rights and the inability of consumers to pursue any redress for the predatory lender's illegal conduct.

35.     Claims that the lending agreements waive the application of state and federal rights have been denied by courts across the country.[4]

---

[4] *See Gibbs v. Stinson*, No. 3:18CV676, 2019 WL 4752792, at *14-18 (E.D. Va. Sept. 30, 2019); *see also Gingras v. Think Finance*, 922 F.3d. 112 (2d Cir. 2019); *Brice v. 7HBF No. 2, Ltd.*, No. 19-CV-01481-WHO, 2019 WL 5684529 (N.D. Cal. Nov. 1, 2019); *Brice v. Plain Green*, 372 F. Supp. 3d 955 (N.D. Cal. 2019); *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2016 WL 4820635, at *7 (C.D. Cal. Aug. 31, 2016); *W. Sky Fin., LLC v. State ex rel. Olens*, 300 Ga. 340, 348 (2016),

36.     Like the rent-a-bank scheme, this tribal lending model is highly problematic for a number of reasons. Most notably, the loans are aggressively marketed, created, and collected in the state where the consumer resides and thus are subject to the consumer's state licensing and usury laws.

37.     In recent years, these tribal lending schemes have come under increasing scrutiny from courts and regulators. Two prominent perpetrators were recently convicted and sentenced to prison for their roles.[5]

## C.     The enterprise was established to evade usury and licensing laws.

38.     The Band is an Indian tribal government that was federally recognized by treaty with the United States in 1854.

39.     The Band's 86,000-acre reservation is located in Lac du Flambeau, Wisconsin.

40.     In 2012, when the tribal lending model was emerging to replace the "rent-a-bank" model, the Band's Tribal Council established the LDF Business Development Corp. and LDF Holdings.

---

*reconsideration denied* (Dec. 8, 2016); *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV, 2015 WL 11438192, at *3 (S.D. Fla. Dec. 8, 2015); *Cooper v. W. Sky Fin., LLC*, No. 13 CVS 16487, 2015 WL 5091229, at *10 (N.C. Super. Aug. 27, 2015); *MacDonald v. CashCall, Inc.*, No. CV 16-2781, 2017 WL 1536427, at *10 (D.N.J. Apr. 28, 2017), *aff'd*, 883 F.3d 220 (3d Cir. 2018); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017); *Hayes v. Delbert Services Corp.*, 811 F.3d 666, 675 (4th Cir. 2016); *Rideout v. CashCall, Inc.*, No.  2018 WL 1220565, at *8 (D. Nev. Mar. 8, 2018).

[5] *See* The United States Attorney's Office, Southern District of New York, *Scott Tucker Sentenced To More Than 16 Years In Prison For Running $3.5 Billion Unlawful Internet Payday Lending Enterprise* (Jan. 8, 2018), https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday; The United States Attorney's Office, Eastern District of Pennsylvania, *Two Men Found Guilty of Racketeering Conspiracy in Payday Lending Case*, (Nov. 27, 2017), https://www.justice.gov/usao-edpa/pr/two-men-found-guilty-racketeering-conspiracy-payday-lending-case.

41.     Upon information and belief, Defendants and others established LDF Holdings in August 2012 and began making and collecting on usurious loans.

42.     In order to protect non-tribal outsiders that are realizing the vast majority of the profits from the illegal lending enterprise, the Band adopted various ordinances and laws to be used by the illegal lending enterprise to support LDF Holdings and its subsidiaries' claims of sovereign immunity.

43.     Additionally, upon information and belief, Defendants, the Band, LDF Holdings, and others, have used creative contracting to allow for the vast majority of the revenues of the lending business to be realized by third parties not yet known to Plaintiff, while LDF Holdings can technically claim that all of the revenues are benefitting the tribe.

44.     Upon information and belief, a large portion of the profits are paid to these non-tribal outsiders. For example, similar tribal lending enterprises have used a "service fee" to transfer the vast majority of the profits to non-tribal outsiders. By structuring the business in this manner, the tribe would be able to claim that all of the net revenues of the business were benefitting the tribe, even though the tribe was really receiving much less than the full portion of the profits.

45.     LDF Holdings is managed by LDF Business Development Corp.

46.     The LDF Business Development Corp. operates under the oversight and management of the Band's Tribal Council.

47.     The Tribal Council's management over LDF Business Development Corp. includes appointment and removal of Board members, designation of Board salaries, and oversight over the operations.

48.     Additionally, upon information and belief, a significant portion of LDF Holdings' and its subsidiaries' operations are operated by third parties that are not located on tribal lands.

Thus, it is non-tribal outsiders that handle and control the underwriting, risk assessment, compliance, customer complaints, accounting, lead generation, collections, and website management for the business.

49.     Upon information and belief, the establishment of LDF Holdings was prompted in part by the government crackdown on illegal lending businesses in 2008-2011 and by the increase of tribal lending businesses in 2012.

50.     Upon information and belief, LDF Holdings, LDF Business Development Corp, and the Band have joined one or more association in fact enterprises with individuals outside of the tribe and non-tribal investors to collect on usurious loans throughout the country.

51.     LDF Holdings, LDF Business Development Corp, the Band, and others agreed to establish the illegal lending businesses in order to make and collect on illegal loans in violation of state usury and licensing requirements.

52.     LDF Holdings makes and collects on usurious loans under various names, including Ningodwaaswi, LLC d/b/a/ Sky Trail Cash; Ishwaaswi, LLC d/b/a RadiantCash; Makwa, LLC d/b/a Makwa Finance; Niizhwaaswi, LLC d/b/a Loan at Last; Niizh, LLC d/b/a Bright Star Cash; Niiwin, LLC, d/b/a Lendgreen; Anong, LLC d/b/a Availblue.com; Niibin, LLC, d/b/a Cash Aisle; Midaaswi, LLC d/b/a/ National Small Loan; Naanan, LLC d/b/a Bear Claw Finance; Mitig, LLC d/b/a MitigCapital and Cashcity; Zagime, LLC d/b/a Blue River Lending; Bridge Lending Solutions; Opichi, LLC d/b/a Evergreen Services; Giizis LLC d/b/a Lakeshore Loans; Waawaatesi LLC, d/b/a Quickhelp Loans; Naanan, LLC d/b/a Stone Lake Lending; Nigig, LLC d/b/a Ubicash; Ziibi, LLC d/b/a zFunds; and Zhaangaswi, LLC d/b/a Nine Torches.

53.     Upon information and belief, LDF Holdings creates so many different electronic storefronts to facilitate the illegal lending enterprises and the distribution of the profits from the illegal loans to the various nontribal outsiders who are involved.

54.     Upon information and belief, a large portion of the profits made under these names did not go to the Band or LDF Holdings but, instead, went to nontribal outsiders who paid for the affiliation with the Band to protect themselves from liability of their violations of state and federal laws.

55.     Upon information and belief, the Band Tribal Council, LDF Holdings, LDF Business Development Corp., Defendants, and others agreed that LDF Holdings would use money provided by nontribal participants in the enterprise to make consumer loans using excessive interest rates far in excess of the amount required by state law.

56.     Upon information and belief, nontribal participants exerted significant control over the lending business.

57.     Upon information and belief, a significant portion of the profits from the loans did not go to LDF Holdings, the LDF Business Development Corp., or the Band.

58.     Upon information and belief, Defendant Joseph Wildcat, Sr. was instrumental in furthering the illegal lending business and agreed to the collection of unlawful debt.

59.     Upon information and belief, as President of the Band Tribal Council, Defendant Joseph Wildcat has been apprised of the various electronic storefronts of LDF Holdings and has signed the articles of incorporation for several of the lending businesses,

60.     Additionally, upon information and belief, as an Ex-officio board member of the LDF Business Development Corp, Defendant Joseph Wildcat has engaged in the collection of unlawful debt.

61.     As President of the tribal council and Ex-officio board member of the LDF Business Development Corp., Defendant Joseph Wildcat, Sr. has the authority to direct the affairs and control LDF Funding even if non-tribal third parties are permitted to exert significant control over the lending business.

62.     Upon information and belief, LDF Holdings continues to make and collect on illegal loans in part because Defendant Joseph Wildcat, Sr. and the Band Tribal Council allows it.

63.     Additionally, upon information and belief, Defendant Nicole Chapman-Reynolds has been instrumental in furthering the illegal lending enterprise and various operating names.

64.     Upon information and belief, Defendant Nicole Chapman-Reynolds agreed to the collection of unlawful debt by LDF Holdings and its subsidiaries.

65.     Upon information and belief, as President of the Board of Directors of the LDF Business Development Corp., Defendant Nicole Chapman-Reynolds has engaged in the collection of unlawful debt, including through approving the creation of subsidiaries to engage in the making and collecting of unlawful debt.

66.     As President of the Board of Directors of the LDF Business Development Corp., Defendant Nicole Chapman-Reynolds has directed the affairs and controlled LDF Funding and its lending subsidiaries.

67.     Upon information and belief, Defendant Jessi Phillips Lorenzo was instrumental in furthering the illegal lending business and agreed to the collection of unlawful debt.

68.     In her capacity as President of LDF Holdings and Vice President of Lending at LDF Holdings, Defendant Jessi Phillips Lorenzo has engaged in the collection of unlawful debt, including through her management of LDF Holdings and its subsidiaries.

69. Additionally, upon information and belief, Defendant Jessi Phillips Lorenzo engaged in the collection of unlawful debt through the enterprise during her employment with Triax Management and Dater Portfolio as Director of Sovereign Sales.

70. Upon information and belief, Triax Management and Dater Portfolio are members of the association in fact enterprise that is the subject of this lawsuit.

71. On her LinkedIn page, Defendant Jessi Lorenzo Phillips holds out Triax Management and Dater Portfolio Management as responsible for connecting tribes and financiers.

72. Upon information and belief, Triax Management solicits tribes to use the tribal lending model, including on reservation call centers, to support a false claim that the loans are made on the reservation and thus beyond the reach of applicable state and federal laws. For example, on May 30, 2015, a partner associated with Triax made a presentation to the Absentee Shawnee Tribe that suggested a call center that would process loan applications similar to the business model used by the Lac du Flambeau Band of Lake Superior Indians.

73. Without Defendants' participation in the enterprise, Plaintiff's loans never would have been made and collected on.

74. For each operating name LDF Holdings does business under, it has a separate website with a disclaimer such as the following:

> NISWI, LLC d/b/a Amplify Funding ("Amplify"), is a wholly owned subsidiary of LDF Holdings, LLC, a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Amplify is organized and in good standing under the laws of the Tribe. Amplify is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Financial Services Regulatory Authority, an independent regulatory body of the Tribe.
>
> All loan application decisions are made at Amplify's office located at 597 Peace Pipe Road, 2nd Floor, Lac du Flambeau, Wisconsin 54538 on the Tribe's reservation. If your loan application is approved by Amplify, your

loan will be governed by Tribal law, applicable federal law, and the terms and conditions of your loan agreement.

75.     However, upon information and belief, the subsidiaries of LDF Holdings are not really wholly controlled by the Band. Upon information and belief, it is nontribal outsiders—not the Band —that handles and controls the underwriting, risk assessment, compliance, accounting, lead generation, collections, and website management for the business.

76.     Thus, these statements were designed to mislead consumers that they are borrowing from a lender that is wholly owned and operated by a sovereign nation and deter consumers from seeking claims for LDF Holdings' and its subsidiaries' abusive practices.

77.     Each of Defendants, LDF Holdings, and the Band understands that the illegal lending business engages in usurious lending in violation of state and federal law and engages in multiple abusive practices.

78.     Each of Defendants is aware that the legality of LDF Holdings' loans has been challenged by class action litigation. *See Jones v. Wildcat*, No. 2:19-cv-02493-JS (E.D. Pa. 2019); *see also Rachelson v. ZenResolve, LLC*, No. 1:20-cv-02178 (E.D. Ill. 2020); *Morman v. ZenResolve, LLC*, No. 1:20-cv-00667 (E.D. Ill. 2020).

79.     Additionally, each of Defendants is aware that numerous consumers have complained regarding abusive lending practices used by LDF Holdings. For example, the Washington State Department of Financial Institutions has issued an alert about unlicensed lending conducted by LDF Holdings and its subsidiaries in Washington. *See* Lac du Flambeau Band of Lake Superior Chippewa Indians Not Licensed in Washington, (Jan. 29, 2019), https://dfi.wa.gov/consumer/alerts/lac-du-flambeau-band-lake-superior-chippewa-indians-not-licensed-washington.

**D.      Defendants and others collected unlawful interest from consumers.**

80.      Defendants, together with others not yet known to Plaintiffs, marketed, initiated, and collected usurious loans throughout the country, including in Virginia, Georgia, and other states with similar laws.

81.      Defendants knew the loans were illegal under state usury and licensing laws, but they pursued the scheme anyway.

82.      They charged astronomical interest rates that far exceeded the rates allowed by applicable state law.

83.      Upon information and belief, all of Defendants' loans to consumers used excessive interest rates far in excess of applicable state laws. Upon information and belief, LDF Holdings typically uses triple digit interest rates, sometimes in excess of 700%.

84.      Accordingly, the loans were null and void under applicable state law, and it is unlawful for Defendants, LDF Holdings, and any of their affiliates to collect or receive any principal, interest or charges whatsoever on said loans, including any amounts paid by Plaintiffs.

85.      For example, Defendant Aaron Fitzgerald applied for and received at least five LDF Holdings loans from a personal electronic device while located in Virginia.

86.      Mr. Aaron Fitzgerald used his Virginia address when applying for the loans, and he used his Virginia bank account with a Virginia ABA routing number to receive the loans and for the subsequent ACH debits to pay down the loans.

87.      Each of Mr. Aaron Fitzgerald's lending agreements states with finality that he was entering into the agreement upon signing and includes the date of his execution of his agreement.

88.      Each of the loans issued to Mr. Aaron Fitzgerald uses an interest rate ranging from 319% to 711%.

89.     Defendants, together with others in the illegal lending enterprise, received no less than $4,860.87 from Mr. Aaron Fitzgerald in connection with the LDF Holdings loans issued to him.

90.     Defendant Lori Fitzgerald applied for and received an LDF Holdings loan from a personal electronic device while located in Virginia.

91.     Ms. Lori Fitzgerald used her Virginia address when applying for the loans, and she used her Virginia bank account with a Virginia ABA routing number to receive the loans and for the subsequent ACH debits to pay down the loans.

92.     Ms. Lori Fitzgerald's lending agreement states with finality that she was entering into the agreement upon signing and includes the date of her execution of the agreement.

93.     Ms. Lori Fitzgerald was charged an annual percentage rate of over 750%.

94.     Defendants, together with others in the illegal lending enterprise, received no less than $104.88 from Ms. Lori Fitzgerald in connection with the LDF Holdings loan issued to her.

95.     Defendant Kevin Williams applied for and received at least three LDF Holdings loans from a personal electronic device while located in Georgia.

96.     Mr. Williams used his Georgia address when applying for the loan, and he used his Georgia bank account with a Georgia ABA routing number to receive the loan and for the subsequent ACH debits to pay down the loan.

97.     Each of Mr. Williams' agreements states with finality that he was entering into the agreement upon signing and includes the date of his execution of his agreement.

98.     Upon information and belief, each of the loans received by Mr. Williams' included an interest rate in excess of 300%.

99.     Defendants, together with others in the illegal lending enterprise, received no less than $10,892.30 from Mr. Williams in connection with the LDF Holdings loans issued to him.

100.     Additionally, LDF Holdings' subsidiary, Makwa Finance referred Mr. Williams' account to ZenResolve for collection.

101.      In an attempt to collect on Mr. Williams' loans, ZenResolve sent Mr. Williams several communications misrepresenting the status of his debt and the amount owed.

102.     For example and without limitation, on or around November 11, 2019, ZenResolve sent Mr. Williams a letter representing that he owed an outstanding balance on his loan of $1,512,57.

103.     ZenResolve again misrepresented the status of the debt and amount owed in a letter dated March 2, 2020, stating that Mr. Williams owed an outstanding balance of $1,512.57.

104.     In response to Mr. Williams dispute that the debt was invalid, ZenResolve sent Mr. Williams a letter dated March 24, 2020, which stated the following:

> Makwa Finance is owned and operated by the Lac du Flambeau Band of Lake Superior Chippewa Indians of the Lac du Flambeau Reservation located in Lac du Flambeau, Wisconsin. Amplify Funding is owned by a federally recognized American Indian Tribe and has governmental sovereign immunity. Because the Tribe is entitled to sovereign immunity, the laws of the Tribe will govern this loan agreement, without regard to the laws of any state or other jurisdiction, including the conflict of law rules of any state.

105.     The representations made by ZenResolve in its communications with Mr. Williams were false and misleading representations.

106.     Mr. Williams loan was void under Georgia law and was thus uncollectable.

107.     Additionally, because his loan was invalid, it was false and misleading for ZenResolve to represent that he owed an outstanding balance on an invalid debt.

108.     Further, because Native American Tribes are subject to laws of general applicability when conducting business outside the reservation, it was false and misleading for ZenResolve to represent that "the laws of the Tribe will govern this loan agreement" "[b]ecause the Tribe is entitled to sovereign immunity."

109.     Upon information and belief, ZenResolve agreed to the collection of unlawful debt when it agreed to pursue collections on Mr. Williams account.

110.     Because Plaintiffs' debts were invalid, Defendants and their co-conspirators had no authority under any agreement or law to collect any amount from Plaintiffs.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of RICO, 18 U.S.C. § 1962(c)
### (CLASS CLAIM: ALL PLAINTIFFS AGAINST ALL DEFENDANTS
### IN THEIR INDIVIDUAL CAPACITIES ONLY)

111.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

112.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of the "RICO Class," initially defined as follows:

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings.[6]

> Plaintiffs are members of the RICO Class.

---

[6] This definition includes but is not limited to the following subsidiaries: Ningodwaaswi, LLC d/b/a/ Sky Trail Cash; Ishwaaswi, LLC d/b/a RadiantCash; Makwa, LLC d/b/a Makwa Finance; Niizhwaaswi, LLC d/b/a Loan at Last; Niizh, LLC d/b/a Bright Star Cash; Niiwin, LLC, d/b/a Lendgreen; Anong, LLC d/b/a Availblue.com; Niibin, LLC, d/b/a Cash Aisle; Midaaswi, LLC d/b/a/ National Small Loan; Naanan, LLC d/b/a Bear Claw Finance; Mitig, LLC d/b/a MitigCapital and Cashcity; Zagime, LLC d/b/a Blue River Lending; Bridge Lending Solutions; Opichi, LLC d/b/a Evergreen Services; Giizis LLC d/b/a Lakeshore Loans; Waawaatesi LLC, d/b/a Quickhelp Loans; Naanan, LLC d/b/a Stone Lake Lending; Nigig, LLC d/b/a Ubicash; Ziibi, LLC d/b/a zFunds; and Zhaangaswi, LLC d/b/a Nine Torches

113. **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiffs do not know the exact number of members of the RICO Class. However, based on the class sizes in similar cases, Plaintiffs anticipate that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable.

114. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether an association-in-fact enterprise existed; (2) whether Defendants conducted the affairs or participated in the enterprise's affairs; (3) whether the loans are "unlawful debt" for purposes of RICO; (4) whether Defendants violated RICO by collecting on the loans; and (5) what is the proper recovery for Plaintiffs and the class members against Defendants.

115. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

116. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are an adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

117.    **Superiority. Fed. R. Civ. P. 23(b).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

118.    As alleged, LDF Holdings, LDF Business Development, Corp., the Band, and others established one or more association in fact enterprises to evade state usury laws.

119.    Defendants Joseph Wildcat, Sr., Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, and ZenResolve, LLC are each being sued in their individual capacities for their own conduct violating RICO, 18 U.S.C. § 1962(c).

120.    Plaintiff also asserts this count against Defendants John Doe Nos. 1-20 who are unidentified parties who participated in the enterprise with Defendants.

121.    Defendants are each a "person" as that term is defined in 18 U.S.C. § 1964(3).

122.    Defendants violated § 1962(c) of RICO by participating, directly or indirectly, in the conduct of the Enterprise's affairs in the collection of unlawful debt.

123. RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

124. All of the loans made to RICO Class members and collected by Defendants and others included interest rates far in excess of twice the enforceable rate in their states.

125. LDF Holdings holds itself out as a subsidiary of LDF Business Development Corp., which is an arm and instrumentality of the Band.

126. As the President of the Band and an ex-officio member of the LDF Business Development Corp. Board, Joseph Wildcat, Sr. is involved in overseeing LDF Holdings and its operations and has participated in the collection of unlawful debt.

127. As the President of the Band and an ex-officio member of the LDF Business Development Corp. Board, Joseph Wildcat, Sr. managed the affairs of the association in fact enterprise.

128. As alleged herein, Defendants Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, and ZenResolve, LLC have each engaged in the collection of unlawful debt.

129. Plaintiffs and the RICO Class members were injured as a direct result of Defendants' violations of 18 U.S.C. § 1962(c) by, among other things, the payment of unlawful and usurious rates of interest on loans made by the Enterprise which would not have been made but for Defendants' conduct.

130. Accordingly, Defendants are jointly and severally liable in their individual capacities to Plaintiffs and the RICO Class for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**SECOND CAUSE OF ACTION**
**Violation of RICO, 18 U.S.C. § 1962(d)**
**(CLASS CLAIM OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS**
**IN THEIR INDIVIDUAL CAPACITIES ONLY)**

131.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

132.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of the "RICO Class," initially defined as follows:

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings.

> Plaintiffs are members of the RICO Class.

133.     **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiffs do not know the exact number of members of the RICO Class. However, based on the class sizes in similar cases, Plaintiffs anticipate that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable.

134.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether an association-in-fact enterprise existed; (2) whether Defendants knew of and agreed to the overall objective to collect unlawful debt; (3) whether the loans are "unlawful debt" for purposes of RICO; and (4) what is the proper recovery for Plaintiffs and the class members against Defendants.

135.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

136.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are an adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Plaintiffs and their counsel do not have any interests that would cause them to not vigorously pursue this action.

137.    **Superiority. Fed. R. Civ. P. 23(b).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

138. Defendants Joseph Wildcat, Sr., Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, and ZenResolve, LLC are each being sued in their individual capacities for their conduct violating RICO, 18 U.S.C. § 1962(d).

139. Defendants violated § 1962(d) of RICO by conspiring to violate § 1962(c).

140. Defendants each knowingly agreed to participate in the scheme alleged herein that allowed the Enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under state usury laws.

141. This is evidenced in part by their knowledge of and agreement to the collection of unlawful debt, including in Georgia, Virginia, and other states with similar laws.

142. Plaintiffs and the class members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(d) and are entitled to treble their actual damages, which would include any interest, fees, or other sums collected by the enterprise.

143. Defendants are jointly and severally liable in their individual capacities to Plaintiffs and the RICO Class for actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT
### (CLASS CLAIM BY ALL PLAINTIFFS AGAINST JOSEPH WILDCAT, SR., *IN HIS OFFICIAL CAPACITY* AS TRIBAL PRESIDENT OF THE LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS)

144. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

145. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of the "Declaratory Judgment Class," initially defined as follows:

All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings; and (3) who have any outstanding balance on their loan.

Plaintiffs are members of the Declaratory Judgment Class.

146. **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiffs do not know the exact number of members of the Declaratory Judgment Class. However, based on the class sizes in similar cases, Plaintiffs anticipate that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable.

147. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether the loans are valid and (2) whether the loans are collectable.

148. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

149. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

150. **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants acted on grounds generally applicable to the class,

making appropriate injunctive relief with respect to Plaintiffs and the class members. Plaintiff and the putative class seek an injunction ordering Defendants to divest themselves of any interest in the Enterprise, prohibiting Defendants from continuing to engage in the Enterprise, and ordering the dissolution of any entity associated with the Enterprise.

151. Virginia, Georgia, and many other states require all who engage in the business of making personal loans to be licensed.

152. LDF Holdings and its subsidiaries were not licensed to make loans in Virginia, Georgia, or any other state in the United States.

153. Because the loans were made without the required license and charged excessive interest rates, the loans are null and void.

154. Additionally, as alleged herein, the loan agreements were violative of fundamental state public policy in Virginia, Georgia, and other states with similar usury, licensing, and criminal laws.

155. Plaintiffs and members of the class are subject to ongoing harm absent a declaration that the loans were void, including the accumulation of additional debt, adverse credit reporting of the invalid loans, and abusive collection practices.

156. The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this court will determine the rights and interests of the parties to the Loan Agreements as well as the validity, if any, of the choice of law and forum-selection provisions.

157. Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the validity and enforceability of the loan agreements.

158. Accordingly, Plaintiffs seek a declaratory judgment that the loan agreements are

invalid and the loans are uncollectable.

## FOURTH CAUSE OF ACTION
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e
### (CLASS CLAIM BY KEVIN WILLIAMS AGAINST ZENRESOLVE, LLC)

159. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

160. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Kevin Williams brings this action for himself and on behalf of a class—the "FDCPA § 1692e Class"—initially defined as follows:

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings; and (3) who ZenResolve sent a communication within one year prior to the Complaint or prior to the entry of an order certifying a class in this case.[7]

> Plaintiff Kevin Williams is a member of the FDCPA § 1692e Class.

161. **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the FDCPA § 1692e Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the internal business records maintained by ZenResolve, and the class members may be notified of the pendency of this action by published

---

[7] This definition includes but is not limited to the following subsidiaries: Ningodwaaswi, LLC d/b/a/ Sky Trail Cash; Ishwaaswi, LLC d/b/a RadiantCash; Makwa, LLC d/b/a Makwa Finance; Niizhwaaswi, LLC d/b/a Loan at Last; Niizh, LLC d/b/a Bright Star Cash; Niiwin, LLC, d/b/a Lendgreen; Anong, LLC d/b/a Availblue.com; Niibin, LLC, d/b/a Cash Aisle; Midaaswi, LLC d/b/a/ National Small Loan; Naanan, LLC d/b/a Bear Claw Finance; Mitig, LLC d/b/a MitigCapital and Cashcity; Zagime, LLC d/b/a Blue River Lending; Bridge Lending Solutions; Opichi, LLC d/b/a Evergreen Services; Giizis LLC d/b/a Lakeshore Loans; Waawaatesi LLC, d/b/a Quickhelp Loans; Naanan, LLC d/b/a Stone Lake Lending; Nigig, LLC d/b/a Ubicash; Ziibi, LLC d/b/a zFunds; and Zhaangaswi, LLC d/b/a Nine Torches

and/or mailed notice.

162. **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether ZenResolve is a debt collector governed by the FDCPA; (2) whether ZenResolve violated § 1692e of the FDCPA by attempting to collect debts that were void; (3) whether ZenResolve violated § 1692e of the FDCPA by misrepresenting the character and amount of the debt that was owed; and (4) what is the proper recovery for Plaintiff and the class members against ZenResolve.

163. **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

164. **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the putative class because his interests coincide with, and are not antagonistic to, the interests of the members of the class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he has and intends to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

165. **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome

and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by ZenResolve's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

166.    ZenResolve violated § 1692e by falsely representing in its collection communications that Plaintiff owed an outstanding balance on his void LDF Holdings loan.

167.    ZenResolve violated § 1692e by making a communication to Plaintiff that misrepresented the legal status of his debt, misrepresented the amount Plaintiff owed on the loan, and used false and deceptive means to attempt to collect on an invalid loan.

168.    Upon information and belief, Plaintiff alleges that, as a standard practice, ZenResolve contacted consumers and would use false and deceptive means in order to collect on the invalid loan and obtain information concerning the putative class members.

169.    Upon information and belief, ZenResolve's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

170.    Plaintiff suffered actual damages as a result of ZenResolve's violations of § 1692e.

171.    Based on ZenResolve's noncompliance with § 1692e, Plaintiff Kevin Williams seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

## FIFTH CAUSE OF ACTION
## VIOLATION OF FDCPA, 15 U.S.C. § 1692f
## (CLASS CLAIM BY KEVIN WILLIAMS AGAINST ZENRESOLVE, LLC)

172.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs

173.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Kevin Williams brings this action for himself and on behalf of a class—the "FDCPA § 1692f Class"—initially defined as follows:

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings; and (3) who ZenResolve sent a communication within one year prior to the Complaint or prior to the entry of an order certifying a class in this case.[8]

> Plaintiff Kevin Williams is a member of the FDCPA § 1692f Class.

174.    **Numerosity.** **Fed. R. Civ. P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the FDCPA § 1692f Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the internal business records maintained by ZenResolve.

175.    **Predominance of Common Questions of Law and Fact.** **Fed. R. Civ. P. 23(a)(2).**

---

[8] This definition includes but is not limited to the following subsidiaries: Ningodwaaswi, LLC d/b/a/ Sky Trail Cash; Ishwaaswi, LLC d/b/a RadiantCash; Makwa, LLC d/b/a Makwa Finance; Niizhwaaswi, LLC d/b/a Loan at Last; Niizh, LLC d/b/a Bright Star Cash; Niiwin, LLC, d/b/a Lendgreen; Anong, LLC d/b/a Availblue.com; Niibin, LLC, d/b/a Cash Aisle; Midaaswi, LLC d/b/a/ National Small Loan; Naanan, LLC d/b/a Bear Claw Finance; Mitig, LLC d/b/a MitigCapital and Cashcity; Zagime, LLC d/b/a Blue River Lending; Bridge Lending Solutions; Opichi, LLC d/b/a Evergreen Services; Giizis LLC d/b/a Lakeshore Loans; Waawaatesi LLC, d/b/a Quickhelp Loans; Naanan, LLC d/b/a Stone Lake Lending; Nigig, LLC d/b/a Ubicash; Ziibi, LLC d/b/a zFunds; and Zhaangaswi, LLC d/b/a Nine Torches

Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether ZenResolve is a debt collector governed by the FDCPA; (2) whether ZenResolve violated § 1692f by collecting debts that were void; and (3) what is the proper recovery for Plaintiff and the class members against ZenResolve.

176. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

177. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the putative class because his interests coincide with, and are not antagonistic to, the interests of the members of the class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he has and intends to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor his counsel has any interests which might cause them to not vigorously pursue this action.

178. **Superiority. Fed. R. Civ. P. 23(b).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized

litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by ZenResolve's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

179.   ZenResolve violated § 1692f by using unfair practices to collect on the invalid loans.

180.   ZenResolve violated § 1692f by attempting to collect on Mr. William's debt originating from LDF Holdings because there was no valid agreement creating the debt and the debt was void under Georgia law.

181.   Upon information and belief, Plaintiff alleges that, as a standard practice, ZenResolve collects on LDF Holdings loans that are invalid under state law.

182.   Upon information and belief, ZenResolve's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

183.   Plaintiff suffered actual damages as a result of ZenResolve's violations of § 1692f.

184.   Based on ZenResolve's noncompliance with § 1692f, Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

A.   An Order certifying the proposed Classes under Fed. R. Civ. P. 23(b)(2), and (b)(3) and appointing Plaintiffs as class representatives and their counsel as class counsel, as soon as

practicable;

B.    An Order declaring that the loan agreements are void and that Plaintiffs and members of the putative class are not obligated to pay any outstanding balances on the loans;

C.    An Order awarding monetary damages against Defendants in their individual capacities, including but not limited to any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury;

D.    An Order awarding statutory damages against Defendants in their individual capacities in accordance with proof and in an amount consistent with applicable precedent;

E.    An Order awarding interest at the maximum allowable legal rate against Defendants, in their individual capacities on the foregoing sums;

F.    An Order awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees against Defendants, in their individual capacities; and

G.    Such further relief as this Court may deem just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**PLAINTIFFS**

By:___ */s/ Kristi C. Kelly*_____
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, VSB #84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiffs*