**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| LORI FITZGERALD, et al., | ) | Case No. 3:20-cv-00044-GEC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH WILDCAT SR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS JOSEPH WILDCAT, SR., JESSI LORENZO, AND NICOLE
REYNOLDS' BRIEF IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL
ARBITRATION OF PLAINTIFF KEVIN WILLIAMS' CLAIMS AND STAY KEVIN
WILLIAMS' CLAIMS PENDING ARBITRATION AND IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST THEM OR,
ALTERNATIVELY, TO STRIKE CLASS ACTION ALLEGATIONS**

**Table of Contents**

I.      INTRODUCTION .................................................................................................10

II.     ARGUMENT SUMMARY .................................................................................10

    A.      Count I ....................................................................................................11

    B.      Count II ...................................................................................................12

    C.      Count III ..................................................................................................12

    D.      Why Each Count Fails ............................................................................12

III.    BACKGROUND .................................................................................................13

IV.     PLAINTIFFS' COMPLAINT .............................................................................15

    A.      The Tribe, the BDC, and LDF Holdings ................................................15

    B.      The Tribal Defendants ............................................................................16

        1.      Mr. Wildcat ...............................................................................16

        2.      Ms. Reynolds .............................................................................16

        3.      Ms. Lorenzo ...............................................................................17

    C.      The Plaintiffs..........................................................................................17

        1.      Lori Fitzgerald ...........................................................................17

        2.      Aaron Fitzgerald ........................................................................18

        3.      Kevin Williams ..........................................................................18

        4.      The Purported Classes ...............................................................18

V.      STANDARDS OF REVIEW ...............................................................................19

    A.      Federal Rule of Civil Procedure 12(b)(1) ..............................................19

    B.      Federal Rule of Civil Procedure 12(b)(3) ..............................................20

    C.      Federal Rule of Civil Procedure 12(b)(6) ..............................................22

    D.      Federal Rule of Civil Procedure 12(b)(7) ..............................................23

    E.      Federal Rule of Civil Procedure 12(f) ...................................................23

VI.     ARGUMENT ......................................................................................................24

    A.      Mr. Williams' Claims Are Subject to Individual, Binding Arbitration
        Before the AAA And Must Be Compelled to Arbitration .....................24

        1.      Because Mr. Williams Agreed to Arbitrate Arbitrability, All Issues
            Concerning the Agreement's Scope, Validity or Enforceability
            Have Been Delegated to the Arbitrator......................................24

        2.      Assuming Arguendo That The Court Addresses The Issue, The
            Four-Factor Arbitration Test Is Satisfied ...................................25

|  | a. | A Valid and Enforceable Arbitration Agreement Exists ...............25 |

|  | b. | Mr. Williams' Claims Are Subject To Arbitration, Assuming Arguendo That The Court Addresses That Issue..........27 |

| 3. | The Claims Brought By Mr. Williams Should Be Stayed Pending Arbitration....................................................................................28 |

| B. | The Tribal Defendants Should Be Dismissed For At Least Four Independent Reasons .......................................................................29 |

| 1. | The Tribal Defendants Must Be Dismissed Because the Claims Against Them Fail to Plead Which Defendant Engaged in Which Act.........................................................................................................29 |

| 2. | Alternatively, Plaintiffs Have Not Stated a Claim Against The Tribal Defendants And, Thus, Counts I, II, And III Should Be Dismissed Pursuant to Rule 12(b)(6) .........................................30 |

|  | a. | The Elements of Plaintiffs' Claims................................32 |

|  | b. | The Complaint Contains Numerous Allegations That Are Not Entitled to the Presumption of Truth ......................34 |

|  | c. | The Well-Pled Allegations Do Not Plausibly State A Claim For Relief Against The Tribal Defendants Under RICO..............36 |

|  | d. | The Well-Pled Allegations Do Not Plausibly State A Claim For Relief Against President Wildcat Under the Declaratory Judgment Act ............................................40 |

| 3. | The Tribal Defendants Are Not The Real Parties In Interest And, Thus, Must Be Dismissed ........................................................42 |

| 4. | The Court Should Dismiss The Tribal Defendants Because The Tribe And Its Subsidiaries Are Necessary And Indispensable Parties That Plaintiffs Cannot Join ............................................45 |

|  | a. | The Tribe Is Required ..................................................46 |

|  | b. | It Is Not Feasible To Join The Tribe ..............................46 |

|  | c. | The Action Should Not Proceed Among The Existing Parties.........................................................................47 |

| C. | Alternatively, The Class Action Allegations Should Be Stricken ........................48 |

| VII. | CONCLUSION.....................................................................................50 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

A.B. By & Through F.B. v. Pleasant Valley Sch. Dist.,
No. 3:17-CV-02311, 2018 WL 1960382 (M.D. Pa. Apr. 25, 2018)........................................29

ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia,
298 F. Supp. 3d 834 (W.D. Va. 2018), aff'd, 917 F.3d 206 (4th Cir. 2019) ...........................39

Aggarao v. MOL Ship Mgmt. Co.,
675 F.3d 355 (4th Cir. 2012) ..................................................................................................18

Allen v. Smith,
No. 12cv1668, 2013 WL 950735 (S.D. Cal. Mar. 11, 2013)...................................................42

Andrews v. Wolcott Rivers Gates,
No. 3:14CV76-HEH, 2014 WL 3016483 (E.D. Va. July 3, 2014), aff'd sub
nom. Andrews v. Gates, 587 F. App'x 75 (4th Cir. 2014).......................................................36

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..........................................................................................................20, 29

AT&T Techs., Inc. v. Commc'ns Workers of Am.,
475 U.S. 643 (1986)................................................................................................................26

Barcenas v. Fed. Home Loan Mortg. Corp.,
No. CIV.A. H-12-2466, 2013 WL 286250 (S.D. Tex. Jan. 24, 2013)......................................38

Bates v. Strawbridge Studios, Inc.,
No. 7:11-CV-33, 2011 WL 1882419 (W.D. Va. May 17, 2011)...............................................29

Belizan v. Easy Money of Louisiana, Inc.,
No. CIV.A.00-2949, 2002 WL 31115249 (E.D. La. Sept. 19, 2002).......................................30

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)................................................................................................................11

Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort,
629 F.3d 1173 (10th Cir. 2010) ..............................................................................................41

In re Brian W. Coughlin,
No. 19-14142, 2020 WL 6140388 (Bankr. D. Mass. Oct. 19, 2020).......................................13

In re Bridgestone/Firestone, Inc.,
288 F.3d 1012 (7th Cir. 2002) ................................................................................................47

Buckeye Check Cashing, Inc. v. Cardegna,
    546 U.S. 440 (2006)............................................................................................18

Busby v. Crown Supply, Inc.,
    896 F.2d 833 (4th Cir. 1990) ...........................................................................31

Cedric Kushner Promotions, Ltd. v. King,
    533 U.S. 158 (2001)....................................................................................31, 35

Compound Prop. Mgmt., LLC v. Build Realty, Inc.,
    No. 1:19-CV-133, 2020 WL 2734763 (S.D. Ohio May 26, 2020) ....................31, 32

Confederated Tribes of Chehalis Indian Reservation v. Lujan,
    928 F.2d 1496 (9th Cir. 1991) .........................................................................46

Cook v. AVI Casino Enterprises, Inc.,
    548 F.3d 718 (9th Cir. 2008) ...........................................................................41

Cty. of Dorchester, S.C. v. AT & T Corp.,
    407 F. Supp. 3d 561 (D.S.C. 2019)..............................................................21, 46

Davis v. BSH Home Appliances Corp.,
    No. 4:15-CV-103-FL, 2016 WL 2901741 (E.D.N.C. May 18, 2016) ....................19

Davis ex rel. Davis v. United States,
    343 F.3d 1282 (10th Cir. 2003) ...................................................................45, 46

De La Cruz v. Nordstrom, Inc.,
    No. 19-80109-CIV, 2019 WL 3412172 (S.D. Fla. May 2, 2019)...........................32

DIRECTV, LLC v. Saylor,
    No. 5:13CV111, 2015 WL 1477885 (W.D. Va. Mar. 31, 2015) ..........................19

Duke Energy Progress, LLC v. Roanoke River Basis Ass'n,
    No. 4:17-CV-00032, 2017 WL 3326970 (W.D. Va. Aug. 3, 2017) .......................32

EEOC v. Waffle House, Inc.,
    534 U.S. 279 (2002)........................................................................................19

EQT Prod. Co. v. Adair,
    764 F.3d 347 (4th Cir. 2014) ...........................................................................47

Ferguson v. Moeller,
    No. 2:16-CV-41, 2016 WL 1106609 (W.D. Pa. Mar. 22, 2016) .....................31, 37

Foster v. Wintergreen Real Estate Co.,
    No. 3:08CV00031, 2008 WL 4829674 (W.D. Va. Nov. 6, 2008), aff'd, 363 F.
    App'x 269 (4th Cir. 2010) ...............................................................................30

Green Tree Fin. Corp.-Alabama v. Randolph,
    531 U.S. 79 (2000)............................................................................................19

Green v. Zachry Industrial, Inc.,
    36 F.3d 669 (W.D. Vir. 2014)..........................................................................27

Gregoria v. Total Asset Recovery, Inc.,
    No. CIV.A. 12-4315, 2015 WL 115501 (E.D. Pa. Jan. 7, 2015)............................44

Hafer v. Melo,
    502 U.S. 21 (1991)..........................................................................................41

U.S. ex rel. Hall v. Tribal Dev. Corp.,
    100 F.3d 476 (7th Cir. 1996) ..........................................................................46

Hengle v. Asner,
    433 F. Supp. 3d 825 (E.D. Va. 2020), motion to certify appeal granted, No.
    3:19CV250 (DJN), 2020 WL 855970 (E.D. Va. Feb. 20, 2020)............................20

Hill v. Stryker Sales Corp.,
    No. 4:13-CV-0786-BHH, 2014 WL 4198906 (D.S.C. Aug. 20, 2014)...................27

Hirsch v. Lyndon S. Ins. Co.,
    No. 3:17-CV-1215-J-39JBT, 2019 WL 5110622 (M.D. Fla. June 7, 2019),
    report and recommendation adopted sub nom. Hirsch v. Ensurety Ventures,
    LLC, No. 3:17-CV-1215-J-39JBT, 2019 WL 8370863 (M.D. Fla. Aug. 6,
    2019), aff'd, 805 F. App'x 987 (11th Cir. 2020) ....................................................28

Hunter v. NHcash.com, LLC,
    No. 17-348, 2017 WL 4052386, ** 6-7 (E.D. Va. Sept. 12, 2017)........................25

Jackson v. Warning,
    No. CV PJM 15-1233, 2016 WL 7228866 (D. Md. Dec. 13, 2016)......................28

John v. Nat'l Sec. Fire & Cas. Co.,
    501 F.3d 443 (5th Cir. 2007) ..........................................................................46

Jones v. Crisis Intervention Servs.,
    239 F. Supp. 3d 833 (D. Del.), aff'd, 687 F. App'x 121 (3d Cir. 2017)................29

JW Gaming Dev., LLC v. James,
    No. 3:18-CV-02669-WHO, 2018 WL 4853222 (N.D. Cal. Oct. 5, 2018), aff'd,
    78 F. App'x 545 (9th Cir. 2019) cert. denied, 140 S. Ct. 1297 (2020)..................18

Keffer v. Reese,
    No. 2:17-CV-00332-LPL, 2018 WL 489007 (W.D. Pa. Jan. 19, 2018)................34

Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC,
    No. CV ELH-17-3420, 2019 WL 1441812 (D. Md. Mar. 31, 2019)......................................38

Kiessling v. State Farm Mut. Auto. Ins. Co.,
    No. CV 18-4281, 2019 WL 634639 (E.D. Pa. Feb. 14, 2019)................................20

Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.,
    523 U.S. 751 (1998).............................................................................................41

Lewis v. Clark,
    137 S. Ct. 1285 (2017).........................................................................................42

Mason v. Midland Funding LLC,
    No. 1:16-CV-02867-CC-RGV, 2017 WL 6994577 (N.D. Ga. July 27, 2017),
    report and recommendation adopted as modified, No. 1:16-CV-2867-CC,
    2017 WL 8186866 (N.D. Ga. Sept. 29, 2017) .........................................................37

Matthews v. Fairfax Trucking, Inc.,
    No. 1:14-CV-01219-GBL, 2015 WL 1906073 (E.D. Va. Apr. 13, 2015)..............................32

McCrea v. Wells Fargo,
    No. CV RDB-18-2490, 2019 WL 2513770 (D. Md. June 17, 2019), motion for
    relief from judgment denied, No. CV RDB-18-2490, 2019 WL 4962022 (D.
    Md. Oct. 8, 2019)................................................................................................27

Michigan v. Bay Mills Indian Cmty.,
    572 U.S. 782 (2014).............................................................................................41

Moss v. BMO Harris Bank, N.A.,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ...................................................................29

National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.,
    210 F.3d 246 (4th Cir.2000) .................................................................................21

Noe v. City Nat'l Bank of W. Virginia,
    No. 20-1230, 2020 WL 5814243 (4th Cir. Sept. 30, 2020) ....................................20

Nolen v. Nucentrix Broadband Networks Inc.,
    293 F.3d 926 (5th Cir. 2002) ...............................................................................30

Novic v. Credit One Bank, Nat'l Ass'n,
    757 F. App'x 263 (4th Cir. 2019) .....................................................................22, 23

Parm v. Nat'l Bank of California, N.A.,
    242 F. Supp. 3d 1321 (N.D. Ga. 2017) .................................................................39

Pennachietti v. Mansfield,
    No. 17-02582, 2017 WL 6311646 (E.D. Pa. Dec. 11, 2017)..................................18

Pennhurst State Sch. & Hosp. v. Halderman,
    465 U.S. 89 (1984)......................................................................................................17

Pennsylvania v. Think Finance, LLC,
    No. 14-cv-7139, 2018 WL 4633750 (E.D. Pa. Sept. 26, 2018)................................................40

Pistor v. Garcia,
    791 F.3d 1104 (9th Cir. 2015) ...............................................................................42

Raceway Properties, LLC v. LSOF Carlsbad Land L.P.,
    157 F. App'x 959 (9th Cir. 2005) ...........................................................................31

Ray v. Spirit Airlines, Inc.,
    126 F. Supp. 3d 1332 (S.D. Fla. 2015), aff'd, 836 F.3d 1340 (11th Cir. 2016) ...............35, 36

Rent-A-Ctr., W., Inc. v. Jackson,
    561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010).........................................................22

Roberts v. The Scott Fetzer Co.,
    No. 4:07-CV-80 (CDL), 2010 WL 3937312 (M.D. Ga. Sept. 30, 2010)................................48

Romero v. Clean Harbors Surface Rentals USA, Inc.,
    368 F. Supp. 3d 152 (D. Mass.), opinion clarified, 404 F. Supp. 3d 529 (D.
    Mass. 2019)........................................................................................................21

Salton Sea Venture, Inc. v. Ramsey,
    No. 11CV1968-IEG WMC, 2011 WL 4945072 (S.D. Cal. Oct. 18, 2011)............................46

Santa Clara Pueblo v. Martinez,
    436 U.S. 49 (1978)................................................................................................41

Scarlett v. Air Methods Corp.,
    922 F.3d 1053 (10th Cir. 2019) ............................................................................38

Smith v. Babbitt,
    875 F. Supp. 1353 (D. Minn. 1995), judgment aff'd, appeal dismissed in part,
    100 F.3d 556 (8th Cir. 1996) ...............................................................................41

In re TD Bank, N.A. Debit Card Overdraft Fee Litig.,
    325 F.R.D. 136 (D.S.C. 2018) .............................................................................48

Tietsworth v. Sears,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...............................................................48

United Keetoowah Band of Cherokee Indians in Oklahoma v. Kempthorne,
    630 F. Supp. 2d 1296 (E.D. Okla. 2009) .......................................................43, 44

United States v. Rawlings,
No. CIV.A.DKC 09-2112, 2010 WL 2292508 (D. Md. June 3, 2010) ...................................21

United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,
363 U.S. 574 (1960) ........................................................................................................26

Viridis Corp. v. TCA Glob. Credit Master Fund, LP,
155 F. Supp. 3d 1344 (S.D. Fla. 2015) ...................................................................37

Walters v. McMahen,
795 F. Supp. 2d 350 (D. Md. 2011), aff'd, 684 F.3d 435 (4th Cir. 2012) ........................37, 38

Wikimedia Found. v. Nat'l Sec. Agency,
857 F.3d 193 (4th Cir. 2017) ...............................................................................32

Williams v. Barkley,
No. 3:14CV1600, 2015 WL 478409 (M.D. Pa. Feb. 4, 2015), aff'd, 616 F.
App'x 484 (3d Cir. 2015).....................................................................................34

Williams v. Big Picture Loans, LLC,
929 F.3d 170 (4th Cir. 2019) ...............................................................................40

Williams v. Big Picture Loans, LLC,
No. 18-1827, 2019 WL 2864341 (4th Cir. July 3, 2019)........................................41

Witbeck v. Equip. Transp., LLC,
No. 1:17-CV-0498, 2017 WL 6606906 (M.D. Pa. Dec. 27, 2017).........................32

Yashenko v. Harrah's NC Casino Co., LLC,
446 F.3d 541 (4th Cir. 2006) ...........................................................................44, 45

In re Yasmin & Yaz (Drospirenone) Mktg.,
275 F.R.D. 270 (S.D. Ill. 2011) ...........................................................................48

**Statutes**

18 U.S.C. § 1962.................................................................................................35

18 U.S.C. § 1962(d) ...........................................................................................31

Ga. Code §§ 7-4-2, 16-17-2 ................................................................................30

Va. Code Ann. § 6.2-1541 ..................................................................................39

**Other Authorities**

85 Fed. Reg. 5462, 5464 (Jan. 30, 2020) ............................................................11, 13

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1785 (3d ed. 2005) ......................................................................................47

## I.      INTRODUCTION

In a blatant attempt to evade tribal sovereign immunity and obtain money damages, the Plaintiffs have brought suit against three former or current employees or officials[1] of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally-recognized Indian tribe, based on loans Plaintiffs received from the Tribe's entities, which they assert are void under state law.[2]   The Complaint seeks to establish several classes of persons who entered into loan agreements with any and all of the Tribe's lending entities.   Plaintiffs seek to recover actual damages, which they assert "include any interest, fees, or other sums collected by the enterprise" and ask that the Court declare the Tribe's loans valid and uncollectable[3]   The Plaintiffs' claims are not maintainable for numerous reasons; most notably, Plaintiff Kevin Williams' claims are subject to mandatory arbitration before the American Arbitration Association ("AAA"), and all claims are deficiently pled.

## II.     ARGUMENT SUMMARY

Plaintiffs Aaron Fitzgerald, Lori Fitzgerald, and Kevin Williams allege they applied for and received loans from "LDF Holdings" or its subsidiaries and that the loans did not comply with state law (Virginia and Georgia).   Plaintiffs did not specify which particular subsidiary they obtained the loans from or when, *inter alia*.   Plaintiffs admit that LDF Holdings is an entity that was formed by the Tribe, and that its subsidiaries are also organized under the laws of the Tribe.[4]   In their Complaint, Plaintiffs identify 20 subsidiaries of LDF Holdings and seek to certify a

---

[1] Defendants Joseph Wildcat, Sr. ("Mr. Wildcat"), Jessi Lorenzo ("Ms. Lorenzo"), and Nicole Reynolds ("Ms. Reynolds") are collectively referred to as "Tribal Defendants".

[2] The Tribal Defendants assert that the loans at issue are governed by and issued in accordance with Tribal law and applicable federal law and dispute that the loans are subject to state law, however, the instant Motion does not require resolution of that issue.

[3] E.g., ECF No. 1 ¶¶ 142, 145.

[4] ECF No. 1 ¶¶ 1, 3.

nationwide class of persons who: (1) reside *anywhere* in the United States where "the debt is void"; and (2) obtained loans from *any* of LDF Holdings' 20 subsidiaries.[5]

Instead of suing the Tribal entity(ies) that issued the loans, Plaintiffs have improperly sued Mr. Wildcat, Ms. Lorenzo, and Ms. Reynolds. Mr. Wildcat is a former elected President of the Lac du Flambeau Tribal Council ("LDF Tribal Council"), which is the Tribe's governing body. Plaintiffs have sued Mr. Wildcat in his official and individual capacity. Ms. Lorenzo is the President of LDF Holdings and Plaintiffs have sued her in her individual capacity. Ms. Reynolds is a former President of the Board of Directors of the L.D.F. Business Development Corporation ("BDC"), which is the Tribe's non-gaming economic arm and of which LDF Holdings is a subsidiary. Plaintiffs generically refer to the Tribal Defendants in the Complaint as "Defendants." Plaintiffs have also sued ZenResolve, LLC, a non-Tribal entity.

### A.    Count I

The first cause of action is a class claim against "all Defendants" in their individual capacities for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1692(c). The purported class is defined as follows:

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings.[6]

Plaintiffs loosely allege that the Tribe, the BDC, and LDF Holdings established "one or more association in fact enterprises to evade state usury laws"[7] and that they participated in "the collection of unlawful debt."[8]

---

[5] E.g., ECF No. 1 ¶ 52.

[6] ECF No. 1 ¶ 112.

[7] ECF No. 1 ¶ 118.

[8] ECF No. 1 ¶¶ 126, 128.

### B.      Count II

The second cause of action is also a class claim against "all Defendants" in their individual

capacities for violation of RICO, 18 U.S.C. § 1962(d).  The purported class is the same as the class

identified in the first cause of action.  Plaintiffs allege that "Defendants each knowingly agreed to

participate in the scheme alleged herein" to collect "unlawful debt."[9]

### C.      Count III

The third cause of action is a class claim against Mr. Wildcat in his official capacity and

seeks a declaratory judgment that the loan agreements are invalid and the loans are uncollectable.[10]

For that cause of action, Plaintiffs seek to establish the following class:

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is
> void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings;
> and (3) who have any outstanding balance on their loan.[11]

The Complaint contains two additional causes of action, but they are not against the Tribal

Defendants.

### D.      Why Each Count Fails

As to Mr. Williams, his claims must be compelled to arbitration.  As set forth below, Mr.

Williams entered into loan agreements with entities of the Tribe and all of the loan agreements

contain a delegation clause and binding "Arbitration Provision" before the AAA.[12]

In regard to the claims of all of the Plaintiffs against the Tribal Defendants (Counts I, II,

and III), they should be dismissed, first, because they fail to meet the requirements of Fed. R. Civ.

P. 8, as the Complaint constitutes an impermissible shotgun pleading.

---

[9] ECF No. 1 ¶¶ 140-141.

[10] ECF No. 1 ¶ 158.

[11] ECF No. 1 ¶ 145.

[12] Declaration of Juanita Huguley in Support of Motion to Compel Arbitration ¶¶ 12-16, which is attached hereto as "**Exhibit 1.**"

Second, relatedly, the causes of action against the Tribal Defendants are threadbare and do not plausibly state a cause of action against them under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and its progeny.  For example, there are no allegations to support that *the Tribal Defendants* themselves entered into loans with Plaintiffs or collected any money from Plaintiffs. For this reason, they should be dismissed.

Third, even if the Court finds that the Complaint states a claim against the Tribal Defendants, they are improperly named in their individual capacities.  A thorough review of the Complaint demonstrates that the Tribal Defendants are sued *because of* their official capacities and the relief sought would operate against the Tribe.  Thus, the Tribe and its entities[13] are the real parties in interest and tribal sovereign immunity bars this suit.  For this independent reason, the Tribal Defendants should be dismissed.

Fourth, the Tribe and LDF Holdings' subsidiaries are necessary and indispensable parties to this action who cannot be joined.  Thus, the Tribal Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7).

Finally, in the alternative, the Plaintiffs' class action allegations must be stricken because, as a matter of law, Plaintiffs cannot establish the class action factors.

## III.    BACKGROUND

The Tribe is an Indian tribal government that executed treaties with the United States in 1837, 1842, and 1854.  The Tribe is recognized by the United States Department of the Interior to have the immunities and privileges available to federally recognized Indian tribes by virtue of their government-to-government relationship with the United States.  85 Fed. Reg. 5462, 5464 (Jan. 30, 2020).  The Tribe has over 3,000 members, with more than 2,000 residing on the Tribe's 86,000-

---

[13] The Tribe and its entities may be collectively referred to herein as "the Tribe."

acre treaty guaranteed reservation, located in northern Wisconsin.  The Tribe (including its entities) is the largest employer in Vilas County, Wisconsin.[14]

In August 2012, the Tribe created the BDC as an economic arm of the Tribe.[15]  The Tribe established the BDC to create jobs and generate revenue to contribute to the Tribe's general fund.  The BDC is governed by a Board of Directors, which consists of the members of the LDF Tribal Council.[16]  The Directors individually have no power to act on behalf of the BDC.[17]

In the exercise of Tribal sovereignty, the Tribe enacted the Lac du Flambeau Tribal Consumer Financial Services Regulatory Ordinance ("Ordinance"), which authorized "lending over the internet provided that such internet lending is consistent with applicable federal and Tribal laws and regulations."[18]  The Ordinance authorized businesses wholly owned by the Tribe to engage in consumer financial services and also established the Tribal Consumer Financial Services Regulatory Authority ("TFSRA"), which regulates the Tribe's online consumer financial services.[19]

Thereafter, the LDF Tribal Council created Holdings for the purpose of engaging in consumer financial services through the creation and operation of subsidiaries.[20]  The Tribe's online consumer financial services business provides jobs to Tribal and community members.[21]

---

[14] See https://dpi.wi.gov/amind/tribalnationswi/ldf (last visited Oct. 15, 2020).

[15] Declaration of John Johnson, Sr. ("Johnson Decl."), attached hereto as **Exhibit 2**," ¶ 6.a, filed in support of Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(7).

[16] Johnson Decl. ¶ 6.a.

[17] Johnson Decl. ¶ 6.a.

[18] Johnson Decl. ¶ 6.b.

[19] Johnson Decl. ¶ 6.c.

[20] Johnson Decl. ¶ 6.d.

[21] Johnson Decl. ¶ 6.f.

The BDC (and its subsidiaries) distributes profits to the Tribe's general fund, which supports the Tribal government, as well as programs and services for Tribal members.[22]

Notably, the court in <u>In re Brian W. Coughlin</u>, No. 19-14142, 2020 WL 6140388 (Bankr. D. Mass. Oct. 19, 2020) recently held that the BDC, Holdings, and a subsidiary of LDF Holdings are entitled to sovereign immunity from suit.

## IV.   PLAINTIFFS' COMPLAINT

### A.      The Tribe, the BDC, and LDF Holdings

As set forth above, Plaintiffs acknowledge that the Tribe is a federally-recognized Indian tribe and, indeed, it is.[23]  85 Fed. Reg. 5462, 5464 (Jan. 30, 2020).  Plaintiffs also correctly allege the Tribe created the BDC and LDF Holdings in 2012 and that LDF Holdings is managed by the BDC with the oversight and management of the LDF Tribal Council.[24]  Furthermore, Plaintiffs assert that LDF Holdings has subsidiaries that issue loans and that the Tribe has adopted ordinances and laws governing their lending businesses, which is accurate.[25]  Plaintiffs have also, correctly, alleged that the LDF Tribal Council's management over the BDC includes "the appointment and removal of Board members, designation of Board salaries, and oversight over the operations."[26]

However, the Complaint contains numerous allegations (set forth fully below) that are <u>*not*</u> entitled to the presumption of truth because they are "based on information and belief," are legal conclusions masquerading as facts or are conclusory.  For example, the Complaint contains immaterial allegations that pertain to persons involved in the tribal lending industry that have

---

[22] Johnson Decl. ¶ 7.

[23] ECF No. 1 ¶ 1.

[24] ECF No. 1 ¶¶ 40, 45-46.

[25] ECF No. 1 ¶¶ 16, 42.

[26] ECF No. 1 ¶ 47.

_absolutely nothing to do with the Tribal Defendants or the Tribe_ and such allegations must only have been included in an attempt to sully the Court's perception of the Tribe and Tribal Defendants.[27]

Also, notably, Plaintiffs _failed_ to allege:

- Which particular entity(ies) issued the loans;
- When the loans were issued;
- The amount of the loan(s); and
- How much, if any, principal was repaid.

### B.     The Tribal Defendants

#### 1.     Mr. Wildcat

Plaintiffs allege he is a resident of Wisconsin and is the head of the Tribe's Executive Council.  (ECF No. 1 ¶ 12.)  Plaintiffs also allege that he is or has been an "Ex-Officio Board Member" of the BDC and that he exercises high-level supervision over the BDC, including LDF Holdings and its subsidiaries.  (Id. ¶ 12.)

The remaining allegations against President Wildcat are _upon information and belief_, including that he was "instrumental" in furthering the Tribe's lending businesses, has signed articles for several lending businesses, and has engaged in the collection of unlawful debt.  (Id. ¶¶ 57-60.)

#### 2.     Ms. Reynolds

Plaintiffs allege that Ms. Reynolds is a resident of Wisconsin, she is or has served as the President of the BDC Board of Directors, and has directed the affairs and controlled "LDF Funding [sic] and its lending subsidiaries."  (ECF No. 1 ¶¶ 13, 66.)

---

[27] See, e.g., ECF No. 1 ¶¶ 36-37.

The remaining allegations against Ms. Reynolds are *upon information and belief*.  (Id. ¶¶ 63-65.)

### 3.      Ms. Lorenzo

Plaintiffs allege that Ms. Lorenzo is a resident of Florida and is the President or Vice President of LDF Holdings.  (ECF No. 1 ¶ 14.)  Plaintiffs also allege that Ms. Lorenzo, "[i]n her capacity as President of LDF Holdings . . . [she] has engaged in the collection of unlawful debt." (Id. ¶ 68.)

The remaining allegations against Ms. Lorenzo are *upon information and belief*.  (Id. ¶¶ 67, 69-70.)

### C.      The Plaintiffs

### 1.      Lori Fitzgerald

Plaintiff Lori Fitzgerald alleges that she is a resident of the State of Virginia.[28]   Ms. Fitzgerald alleges that she "received usurious loans from LDF Holdings *through its subsidiaries*."[29]   She further alleges that she received loans with rates as high as 750% and that "Defendants" received no less than $104.88 from her in connection with "the LDF Holdings loan issued to her."[30]

The Complaint does not allege *how many* loans Ms. Fitzgerald obtained, *the date(s)* of such loans, *the lender's name*, *the principal amount* of the loan(s), and *how much*, if any, principal was repaid.

---

[28] ECF No. 1 ¶ 9.

[29] Id. ¶ 16 (emphasis added).  Previously in the Complaint, she contrarily alleges that she received "*an LDF Holdings loan.*"  Id. ¶ 90 (emphasis added).

[30] Id. ¶¶ 18, 94.

### 2. Aaron Fitzgerald

Plaintiff Aaron Fitzgerald alleges that he is a resident of the State of Virginia.[31]   Mr. Fitzgerald alleges that he applied for and received at least five loans "from LDF Holdings *through its subsidiaries*" with interest ranging from 319% to 711%.[32]  He alleges that Defendants received no less than $4,860.87 from him "in connection with the LDF Holdings loans."[33]

The Complaint does not allege, *the date(s)* of such loans, *the lender's name*, *the principal amount* of the loan(s), and *how much*, if any, principal was repaid.

### 3. Kevin Williams

Plaintiff Kevin Williams alleges that he is a resident of the State of Georgia.[34]   Mr. Williams alleges that he "received usurious loans from LDF Holdings *through its subsidiaries*."[35] Mr. Williams alleges upon information and belief that the loans included interest in excess of 300% and that "Defendants" received no less than $10,892.30 from him in connection with "the LDF Holdings loans issued to him."[36]

The Complaint does not allege *the date(s)* of such loans, *the lender's name*, *the principal amount* of the loan(s), and *how much*, if any, principal was repaid.

### 4. The Purported Classes

Plaintiffs seek to certify a nationwide RICO class that is comprised of the following persons:

---

[31] ECF No. 1 ¶ 10.

[32] ECF No. 1 ¶¶ 85, 88.  Contrarily, Mr. Fitzgerald alleges that he received loans from LDF Holdings.  Id. ¶ 85.

[33] ECF No. 1 ¶ 89.

[34] ECF No. 1 ¶ 11.

[35] Id. ¶ 16 (emphasis added).

[36] Id. ¶¶ 98-99.

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings.

(ECF No. 1 ¶¶ 112, 132.)

Plaintiffs also seek to certify a nationwide "Declaratory Judgment Class" comprised of the following persons.

> All individuals: (1) residing in Virginia, Georgia, or another state where the debt is void; (2) who entered into a loan agreement with any subsidiary of LDF Holdings; and (3) who have any outstanding balance on their loan.

(ECF No. 1 ¶ 145.)

Plaintiffs anticipate that the size of the class is likely thousands and assert that there are no factual or legal issues that are different between the putative class members (id. ¶ 134), despite that state law regarding the collection of debt will undoubtedly be different from state-to-state.

Furthermore, regarding damages, Plaintiffs seek actual damages that include any interest, fees or sums collected "by the enterprise."[37]  Plaintiffs have not specified what, exactly, the enterprise consists of and, moreover, how they could recover damages against the Tribal Defendants individually, when the damages are tied to the amounts collected "by the enterprise," not the Tribal Defendants.

## V.    STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

"When a suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Sovereign immunity will bar a suit against state officials when "'the state is the real, substantial party in interest.'"  Id. (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)).

---

[37] E.g., ECF No. 1 ¶ 142.

When a suit is brought against an official or employee in their individual capacity, it may proceed unless the "sovereign is the real party in interest." JW Gaming Dev., LLC v. James, No. 3:18-CV-02669-WHO, 2018 WL 4853222, at *3 (N.D. Cal. Oct. 5, 2018), aff'd, 78 F. App'x 545 (9th Cir. 2019) cert. denied, 140 S. Ct. 1297 (2020). "Sovereign immunity bars individual-capacity suits when 'the remedy sought is truly against the sovereign.'" Id.

Issues related to tribal sovereign immunity from suit are addressed pursuant to a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Pennachietti v. Mansfield, No. 17-02582, 2017 WL 6311646, *2 (E.D. Pa. Dec. 11, 2017). The standard depends on "whether the defendant makes a facial or factual challenge." Bell Atl.-Pennsylvania, Inc, 107 F. Supp. 2d at 659. "Under either approach, it is generally the plaintiff's burden to prove that jurisdiction exists." Id. Because Plaintiff has admitted that the Tribe created and owns or controls the BDC and LDF Holdings and its subsidiaries, the challenge is a facial challenge. In a facial challenge, where the allegations of jurisdiction in the complaint are disputed, "the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present." Id.

## B.     Federal Rule of Civil Procedure 12(b)(3)

The Fourth Circuit has held that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir. 2012). Venue is not proper in this Court as to Mr. Williams' claims because his claims are subject to individual, binding arbitration pursuant to the Federal Arbitration Act ("FAA").

The FAA "embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). The Federal Arbitration Act ("FAA") "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to

arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3 & 4). "When faced with a motion to compel arbitration, the court does not review the contract as a whole. Rather, the court reviews the arbitration agreement as if it were a free-standing contract, with an eye toward two gateway issues." Davis v. BSH Home Appliances Corp., No. 4:15-CV-103-FL, 2016 WL 2901741, at *3 (E.D.N.C. May 18, 2016). The Arbitration Provision in the loan agreements at issue here specifically invoke the FAA and provide that the arbitration forum is the AAA.[38]

In the Fourth Circuit a litigant can compel arbitration under the FAA if the litigant can demonstrate the following elements:

(1) the existence of a dispute between the parties,

(2) a written agreement that includes an arbitration provision which purports to cover the dispute,

(3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and

(4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

DIRECTV, LLC v. Saylor, No. 5:13CV111, 2015 WL 1477885, at *4 (W.D. Va. Mar. 31, 2015) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002)). The party resisting arbitration" bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91, (2000). Also, "[w]here a valid arbitration agreement exists and the issues in a case fall within its purview, a court has no choice but to grant a motion to compel arbitration." DIRECTV, 2015 WL 1477885, at *4.

---

[38] See Huguley Decl. at "**Exhibit 1-A**" at 14; "**Exhibit 1-B**" at 14; "**Exhibit 1-C**" at 14; "**Exhibit 1-D**" at 17-18; "**Exhibit 1-E**" at 16.

Arbitration agreements may also agree to arbitrate certain "gateway questions of arbitrability," such as "whether the parties have agreed to arbitration or whether their agreement covers a particular controversy."  Hengle v. Asner, 433 F. Supp. 3d 825, 846 (E.D. Va. 2020), motion to certify appeal granted, No. 3:19CV250 (DJN), 2020 WL 855970 (E.D. Va. Feb. 20, 2020) (internal quotations omitted).  "If a delegation provision both clearly and unmistakably delegates gateway issues to an arbitrator and proves valid under § 2, a court may not decide the merits of any arbitrability issues and must submit such questions to the arbitrator consistent with the parties' agreement, even if the argument for arbitration proves 'wholly groundless.'"  Id.

In ruling on a motion to compel arbitration, the Court may consider evidence beyond the pleadings.  Noe v. City Nat'l Bank of W. Virginia, No. 20-1230, 2020 WL 5814243, at *2 (4th Cir. Sept. 30, 2020).

## C.   Federal Rule of Civil Procedure 12(b)(6)

"The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009)."  Kiessling v. State Farm Mut. Auto. Ins. Co., No. CV 18-4281, 2019 WL 634639, at *2 (E.D. Pa. Feb. 14, 2019).  After Iqbal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to defeat a Rule 12(b)(6) motion to dismiss."  Id. (internal quotations omitted).  To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."  Id. (quoting cases).  "Facial plausibility is 'more than a sheer possibility that a defendant has acted unlawfully.'"  Id.  To have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### D.      Federal Rule of Civil Procedure 12(b)(7)

Pursuant to Federal Rule of Civil Procedure 12(b)(7), a case may be dismissed where plaintiffs fail to join a party under Rule 19.  In order to determine whether an action should be dismissed on this basis, it is necessary to refer to Fed. R. Civ. P. 19.  Rule 19 sets forth a two-step process for determining whether a party should be joined.  "First, the district court must determine whether the party is 'necessary' to the action under Rule 19(a).  If the court determines that the party is 'necessary', it must then determine whether the party is 'indispensable' to the action under Rule 19(b)."  National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 249 (4th Cir.2000).  The burden is on the movant to show that the person who was not joined is necessary for a just adjudication and "the nature of the unprotected interests of the absent parties." United States v. Rawlings, No. CIV.A.DKC 09-2112, 2010 WL 2292508, at *3 (D. Md. June 3, 2010).

On a Rule 12(b)(7) motion, the Court is not limited to the pleadings and may consider "other relevant extra-pleading evidence, such as declarations or affidavits."  Romero v. Clean Harbors Surface Rentals USA, Inc., 368 F. Supp. 3d 152, 158 (D. Mass.), opinion clarified, 404 F. Supp. 3d 529 (D. Mass. 2019).

### E.      Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Cty. of Dorchester, S.C. v. AT & T Corp., 407 F. Supp. 3d 561, 565 (D.S.C. 2019).  "In a motion to dismiss class allegations, the defendants have the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove, analogous to the standard of review for motions brought pursuant to Rule 12(b)(6)."  Id.  "A court may grant a motion to strike class

allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." Id. (quoting Waters v. Electrolux Home Prod., Inc., No. 5:13-cv-0151, 2016 WL 3926431, at *4 (N.D. W. Va. July 18, 2016).).

## VI.   ARGUMENT

### A.   Mr. Williams' Claims Are Subject to Individual, Binding Arbitration Before the AAA And Must Be Compelled to Arbitration

The United States Supreme Court mandates that where parties have agreed to arbitrate "gateway" questions of "arbitrability," including "whether the parties have agreed to arbitrate or whether their agreement covers a particular dispute," such disputes are for the arbitrator to decide. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010); see also, Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 263, 266 (4th Cir. 2019) (holding that the following language constituted a plain delegation of issues of arbitrability to an arbitrator: "[c]laims subject to arbitration include ... *the application, enforceability or interpretation of* [the cardholder agreement], *including this arbitration provision*.").

### 1.   Because Mr. Williams Agreed to Arbitrate Arbitrability, All Issues Concerning the Agreement's Scope, Validity or Enforceability Have Been Delegated to the Arbitrator

The Arbitration Provisions in the loan agreements contain a delegation provision which mandates that claims subject to arbitration include, "[a]ll claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision ("this Provision"), the validity and scope of this Provision and any claim or attempt to set aside this Provision."[39]   The Arbitration Provisions further state that the arbitrator:

[S]hall apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C §§ 1-16 ("FAA") and

---

[39] Huguley Decl. at Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 16; and Ex. 1-E at 15.

applicable statutes of limitation, and shall honor claims of privilege recognized at law.[40]

Furthermore, the Governing Law section of the loan agreements provides that the "laws of the Tribe and applicable federal law will govern this Agreement . . . ."[41]

This language contained in the loan agreements is the very type of language that courts have held constitute a delegation provision.  E.g., Novic, 757 F. App'x at 266-67 (citing cases). Therefore, because the Arbitration Provisions in the loan agreements contain a delegation provision that encompasses any disputes concerning the application of the delegation provision, among other things, the Court should compel Mr. Williams' individual claims to arbitration and stay the case pending such arbitration.

### 2.        Assuming Arguendo That The Court Addresses The Issue, The Four-Factor Arbitration Test Is Satisfied

Notwithstanding that the issue of whether the four-factor test (Section IV.B, supra) is satisfied has been delegated to the arbitrator, should the Court reach the issue, the test is satisfied. First, clearly there is a dispute between the parties, the Arbitration Provision is an example of interstate commerce, and Mr. Williams has failed to arbitrate the dispute.  In addition, there is a written agreement that purports to cover and does cover the dispute, as set forth below.

### a.        A Valid and Enforceable Arbitration Agreement Exists

Mr. Williams entered into the loan agreements with Niswi and Makwa, which he intimates in the Complaint.  (ECF No. 1 ¶¶ 95-97.)   The loan agreements include the Arbitration Provisions.[42]  By signing the Note, Plaintiff expressly agreed that:

**YOU AGREE TO THE TERMS OF THIS ARBITRATION PROVISION AND YOU HEREBY AGREE AND ACKNOWLEDGE THAT YOU ARE**

---

[40] Ex. 1-A at 14; Ex. 1-B at 14; Ex. 1-C at 14; Ex. 1-D at 17; and Ex. 1-E at 16.

[41] Ex. 1-A at 8-9; Ex. 1-B at 8-9; Ex. 1-C at 8-9; Ex. 1-D at 10; Ex. 1-E at 10.

[42] Ex. 1-A at 12-15; Ex. 1-B at 12-15; Ex. 1-C at 12-15; Ex. 1-D at 15-19; Ex. 1-E at 14-17.

**WAIVING YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**[43]

**CLASS-ACTION/REPRESENTATIVE WAIVER: BY AGREEING TO THE TERMS OF THIS ARBITRATION PROVISION, YOU HEREBY AGREE AND ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO PURSUE OR PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED . . . TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES. . . .**[44]

"Disputes" are defined to include all disputes arising from or related to the loan agreements, including, but not limited to claims based on a violation of any state or federal law and claims asserted against Tribal employees or officers, inter alia.[45] Furthermore, the loan agreements stated that by electronically signing the agreements, Mr. Williams acknowledged that he read the loan agreements and agreed to be bound by all of the terms and provisions in the agreements, including the Arbitration Provisions.[46]

As stated above, per the Arbitration Provisions, Mr. Williams also expressly acknowledged and agreed that it was made pursuant to a transaction involving interstate commerce and shall be governed by the FAA.[47] As previously stated, the arbitration is to occur before the AAA or by a different arbitrator if agreed upon by the parties.[48] The dispute is governed by the rules of procedure of the AAA, as applicable to consumer disputes to the extent they do not conflict with

---

[43] Ex. 1-A at 14; Ex. 1-B at 14; Ex. 1-C at 14; Ex. 1-D at 18; Ex. 1-E at 17.

[44] Ex. 1-A at 14-15; Ex. 1-B at 14-15; Ex. 1-C at 14-15; Ex. 1-D at 18; Ex. 1-E at 17.

[45] Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 16; Ex. 1-E at 15-16.

[46] Ex. 1-A at 15; Ex. 1-B at 15; Ex. 1-C at 15; Ex. 1-D at 18-19; Ex. 1-E at 17.

[47] Ex. 1-A at 14; Ex. 1-B at 14; Ex. 1-C at 14; Ex. 1-D at 17; and Ex. 1-E at 16.

[48] Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 17; Ex. 1-E at 16.

the loan agreements.  The substantive law that is applicable to the dispute is the laws of the Tribe and applicable federal law.[49]

Furthermore, the loan agreements provide that if the arbitrator renders a decision in Mr. Williams' favor, it will award him reasonable attorney's fees and in no event shall Mr. Williams be responsible for any of the arbitrator's fees.[50]

In sum, valid and enforceable arbitration agreements exist.

> **b.** **Mr. Williams' Claims Are Subject To Arbitration, Assuming <u>Arguendo</u> That The Court Addresses That Issue**

Notwithstanding that the issue of whether Mr. Williams' claims are subject to arbitration is for the arbitrator to decide, his claims are, in fact, covered by the Arbitration Provisions.  The Arbitration Provisions in the loan agreements broadly cover "all U.S. federal or state law claims," "all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers . . . or affiliated entities," and claims asserted as a representative of a class, <u>inter alia</u>.[51]  Thus, the loan agreements include arbitration of any claims relating to the loans, no matter what legal theory and including claims made against anyone connected with Makwa or Niswi, including the Tribal Defendants.[52]   <u>See</u> <u>Hunter v. NHcash.com, LLC</u>, No. 17-348, 2017 WL 4052386, ** 6-7 (E.D. Va. Sept. 12, 2017) (holding that an arbitration provision that includes any claim or dispute arising from or related to the agreement encompasses claims not just claims against the lender who issued the loan, but against all defendants).

---

[49] Ex. 1-A at 8-9; Ex. 1-B at 8-9; Ex. 1-C at 8-9; Ex. 1-D at 10; Ex. 1-E at 10.

[50] Ex. A-1 at 13-14; Ex. B-1 at 14; Ex. 1-D at 14; Ex. 1-D at 17; Ex. 1-E at 16.

[51] Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 16-17; Ex. 1-E at 15.

[52] <u>Id.</u>

Where an arbitration provision is broad, such as the one here, there is a heightened presumption of arbitrability so that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  Warrior & Gulf Nav. Co., 363 U.S. at 584-85. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960); see also AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986).

The broad, plain language of the loan agreements' Arbitration Provisions encompasses Mr. Williams' claims against the Tribal Defendants, which are premised on the debt Mr. Williams incurred under the loan agreements.  Thus, because Mr. Williams' claims fall squarely within the category of "disputes" under the Arbitration Provisions, they should be arbitrated.

### 3.     The Claims Brought By Mr. Williams Should Be Stayed Pending Arbitration

As discussed above, the Arbitration Provision is to be interpreted according to the FAA, which reflects a liberal federal policy favoring arbitration.  To that end, Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Thus, Section 3 of the FAA is clear that, where any suit or proceeding brought in a district court is referable to arbitration, the district court "shall . . . stay the trial of the action until such

arbitration has been had in accordance with the terms of the agreement." Id.  The only exception, not applicable here, is where the applicant for the stay is in default with proceeding with such arbitration. Id.

This Court has recognized that a stay is appropriate in light of the uncertainty in the Fourth Circuit of whether a district court has discretion to dismiss rather than stay an action subject to arbitration. Green v. Zachry Industrial, Inc., 36 F.3d 669, 678-79 (W.D. Vir. 2014). Accordingly, the Tribal Defendants ask that an order be entered, pursuant to Section 3 of the FAA, staying all proceedings vis-à-vis Mr. Williams until arbitration has been had as provided for in the Arbitration Provision.

**B.      The Tribal Defendants Should Be Dismissed For At Least Four Independent Reasons**

Mr. and Mrs. Fitzgerald's claims against the Tribal Defendants (and Mr. Williams' claims, in the alternative) must be dismissed because: (1) the Complaint is an impermissible shotgun pleading; (2) the Complaint does not state a plausible claim against the Tribal Defendants; (3) the Tribe and its entities are the real parties in interest; and (4) the Tribe and its entities are necessary and indispensable parties that cannot be joined.

**1.      The Tribal Defendants Must Be Dismissed Because the Claims Against Them Fail to Plead Which Defendant Engaged in Which Act**

"A Shotgun pleading is '[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading.'" Hill v. Stryker Sales Corp., No. 4:13-CV-0786-BHH, 2014 WL 4198906, at *2 (D.S.C. Aug. 20, 2014). A complaint constitutes an impermissible shotgun pleading where it is unclear which defendants are allegedly responsible for which alleged misconduct. McCrea v. Wells Fargo, No. CV RDB-18-2490, 2019 WL 2513770, at *7 (D. Md. June 17, 2019), motion for relief from judgment denied, No. CV RDB-18-2490, 2019 WL 4962022 (D. Md. Oct. 8, 2019). Also, vague allegations that the alleged violation was

made by "Defendants" is not sufficient and constitutes a shotgun pleading.  Hirsch v. Lyndon S. Ins. Co., No. 3:17-CV-1215-J-39JBT, 2019 WL 5110622, at *4 (M.D. Fla. June 7, 2019), report and recommendation adopted sub nom.  Hirsch v. Ensurety Ventures, LLC, No. 3:17-CV-1215-J-39JBT, 2019 WL 8370863 (M.D. Fla. Aug. 6, 2019), aff'd, 805 F. App'x 987 (11th Cir. 2020) (citing cases).

The Complaint as to the Tribal Defendants is a quintessential shotgun pleading.  Plaintiffs claim that: "*Defendants* . . . marketed, initiated, and collected usurious loans throughout the country" (ECF No. 1 ¶ 80); "[*t*]*hey* charged astronomical interest rates" (id. ¶ 82); and *Defendants* received monies from Plaintiffs (id. ¶¶ 89, 94, 99 (emphasis added).).  The Complaint states that each Defendant is liable for their own conduct, does not articulate what that conduct is, or how each Tribal Defendant participated in the collection of the Plaintiff's debts.[53]  Instead, the Complaint lumps *all* the Defendants together and does not identify which Tribal Defendant is responsible for which act or omission.

Thus, the Complaint simply does not "plead[] factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Jackson v. Warning, No. CV PJM 15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (quoting Iqbal, 556 U.S. at 663).)  As such, the Complaint should be dismissed for failure to meet the requirements of Fed. R. Civ. P. 8.

### 2. Alternatively, Plaintiffs Have Not Stated a Claim Against The Tribal Defendants And, Thus, Counts I, II, And III Should Be Dismissed Pursuant to Rule 12(b)(6)

Even if the Complaint crosses the shotgun pleading hurdle, it should be dismissed, because Plaintiffs' allegations against the Tribal Defendants are insufficient.  The allegations against them

---

[53] ECF No. 1 ¶¶ 119, 126.

are insufficient because they are conclusory and speculative. Such allegations are exactly the type that the United States Supreme Court has declared are insufficient under modern pleading standards. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

When evaluating the sufficiency of a complaint, the Court must:

[C]hoose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

Bates v. Strawbridge Studios, Inc., No. 7:11-CV-33, 2011 WL 1882419, at *2 (W.D. Va. May 17, 2011). The determination of whether the Complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. The determination is exceedingly important when RICO is alleged because RICO is "an unusually potent weapon—the litigation equivalent of a thermonuclear device" and the mere assertion of RICO "has an almost inevitable stigmatizing effect on those named as defendants." See Moss v. BMO Harris Bank, N.A., 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017).

Many courts follow a three-step process for determining whether complaints state a claim for relief: "(1) consider the elements necessary to state a claim; (2) identify allegations that are merely conclusions and therefore are not well-pleaded factual allegations; and (3) accept any well-pleaded factual allegations as true and determine whether they plausibly state a claim." Jones v. Crisis Intervention Servs., 239 F. Supp. 3d 833, 836 (D. Del.), aff'd, 687 F. App'x 121 (3d Cir. 2017); A.B. By & Through F.B. v. Pleasant Valley Sch. Dist., No. 3:17-CV-02311, 2018 WL 1960382, at *1 (M.D. Pa. Apr. 25, 2018).

A review of the Complaint in conjunction with these elements demonstrates that the Complaint does not plausibly state a claim against the Tribal Defendants.

### a.        The Elements of Plaintiffs' Claims

Here, Plaintiffs allege they received loans in excess of the amount allowed under Virginia and Georgia law and in violation of those states' licensing requirements.  (ECF No. 1 ¶¶ 18-19.) Plaintiffs cite to Va. Code §§ 6.2-1501(A), 6.2.303(A), and Ga. Code §§ 7-4-2, 16-17-2.  (ECF No. 1 ¶¶ 18-21.)  Based on these allegations, Plaintiffs claim that Defendants violated Section 1962(c) (by collecting unlawful debt) and Section 1692(d) of RICO (by conspiring to violate Section (c)).  (ECF No. 1 ¶¶ 111-143, 158.)  Plaintiffs also seek a declaration that the loan agreements are invalid and that the loans are unenforceable.  (ECF No. 1 ¶ 158.)

### i.        Count I—18 U.S.C. § 1964(c)

In order to state a claim under Section 1962(c), the Plaintiffs must establish the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Foster v. Wintergreen Real Estate Co., No. 3:08CV00031, 2008 WL 4829674, at *4 (W.D. Va. Nov. 6, 2008), aff'd, 363 F. App'x 269 (4th Cir. 2010), and aff'd, 363 F. App'x 269 (4th Cir. 2010).  The "conduct" alleged here is the collection of unlawful debt and, thus, Plaintiffs' RICO claims ultimately hinge on whether Defendants collected an unlawful debt.  E.g., Belizan v. Easy Money of Louisiana, Inc., No. CIV.A.00-2949, 2002 WL 31115249, at *2 (E.D. La. Sept. 19, 2002) (holding that "[l]iability under the RICO statute is predicated on acts that consist of 'racketeering activities,' as defined in RICO § 1961(1), or the collection of 'unlawful debts,' as defined in RICO § 1961(6).")  Where plaintiffs fail to state a claim for unlawful debt collection, their RICO claims necessarily fail as well.  Id.; Nolen v. Nucentrix Broadband Networks Inc., 293 F.3d 926, 930 (5th Cir. 2002) (holding that the failure to plead the requisite elements under 18 U.S.C. § 1962(c), implicitly means that the Section 1962(d) conspiracy to violate that section claim fails as well);

see Raceway Properties, LLC v. LSOF Carlsbad Land L.P., 157 F. App'x 959, 964 (9th Cir. 2005) (affirming dismissal of RICO claim because the unlawful debt claim failed).

Also, in order to state a claim under Section 1962(c) for the collection of unlawful debt, Plaintiffs must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). There must be a "person," alleged to have violated Section 1962(c) and to be liable to the claimant for damages, who is separate and distinct from the "enterprise," or tool, through which the RICO violation occurred. See Busby v. Crown Supply, Inc., 896 F.2d 833, 840–41 (4th Cir. 1990); Compound Prop. Mgmt., LLC v. Build Realty, Inc., No. 1:19-CV-133, 2020 WL 2734763, at *9 (S.D. Ohio May 26, 2020) (reiterating that "plaintiff must allege each of the four elements described above as to that defendant.").

### ii.     Count II—18 U.S.C. § 1962(d)

Regarding Section 1962(d), it provides that: "[i]t shall be unlawful for any person to conspire to violate the provisions of subsection (a), (b), or (c) of this section." Id. § 1962(d). "To state a claim for violation of § 1962(d), a 'plaintiff must successfully allege all the elements of a RICO violation,' as well as alleging 'the existence of an illicit agreement [that included the conspiracy defendant] to violate the substantive RICO provision.'" Compound Prop. Mgmt., LLC, 2020 WL 2734763 at *9 (citing cases). "To plead conspiracy in a RICO case, a complaint must set forth factual allegations that indicate 1) the period of the conspiracy, 2) its intended purpose, 3) the specific actions taken by the conspirators in furtherance of the conspiracy, 4) agreement to commit predicate acts, and 5) knowledge that the acts agreed upon formed part of a pattern of racketeering activity." Ferguson v. Moeller, No. 2:16-CV-41, 2016 WL 1106609, at *8 (W.D. Pa. Mar. 22, 2016).

### iii.     Count III—Declaratory Judgment Act

In regard to Plaintiffs' cause of action for a declaratory judgment, the Declaratory Judgment Act "'does not broaden the jurisdiction granted to the federal courts by the Constitution and statutes enacted pursuant thereto,' and accordingly, 'there still must be a case or controversy before a federal court can assume jurisdiction and reach the merits' of a declaratory judgment action."  Compound Prop. Mgmt., LLC v. Build Realty, Inc., No. 1:19-CV-133, 2020 WL 2734763, at *18 (S.D. Ohio May 26, 2020); Duke Energy Progress, LLC v. Roanoke River Basis Ass'n, No. 4:17-CV-00032, 2017 WL 3326970, at *4 (W.D. Va. Aug. 3, 2017) (holding that plaintiff must assert a substantive right for a Declaratory Judgment Act claim).  The Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights."  Duke Energy, 2017 WL 3326970, *4 (quotation omitted).

### b.     The Complaint Contains Numerous Allegations That Are Not Entitled to the Presumption of Truth

In the second step of the pleading analysis, courts identify those allegations that are not entitled to the presumption of truth, because they are conclusory, are based on information and belief, or are legal conclusions.  See, e.g., Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017); De La Cruz v. Nordstrom, Inc., No. 19-80109-CIV, 2019 WL 3412172, at *2 (S.D. Fla. May 2, 2019), report and recommendation adopted, No. 9:19-CV-80109, 2019 WL 3408923 (S.D. Fla. May 24, 2019) (holding that "[f]actually unsupported allegations based 'on information and belief' are not entitled to the assumption of truth.").  Also, if the allegations do not include some "factual enhancement," they are not entitled to the presumption of truth. Matthews v. Fairfax Trucking, Inc., No. 1:14-CV-01219-GBL, 2015 WL 1906073, at *3 (E.D. Va. Apr. 13, 2015); Witbeck v. Equip. Transp., LLC, No. 1:17-CV-0498, 2017 WL 6606906, at *2 (M.D. Pa. Dec. 27, 2017).

First, the Complaint contains numerous conclusory allegations that bear no relationship to the Tribal Defendants or Plaintiffs' alleged loans and are nothing more than "naked assertions." Such allegations are found at the following paragraphs and are not entitled to the presumption of truth:  2; and 24-37; ("tribal lending model was emerging to replace the "rent-a-bank" model).

Next, there are numerous allegations in the Complaint that are not entitled to the presumption of truth because they are merely "upon on information and belief."  Namely, the allegations found at the following paragraphs are based on information and belief:  3, 41, 43, 44, 49-50, 53-60, 62-65, 67, 69-70, 72, 75, 83, 98, and 109.  Thus, these paragraphs must be summarily disregarded for purposes of determining whether the Complaint plausibly states causes of action against the Tribal Defendants.

Third, there are numerous allegations in the Complaint that are not entitled to the presumption of truth because they paraphrase the pertinent statutory language or elements of the causes of action in question or are legal conclusions.  For example, the allegations that the loans are illegal, that the Tribal Defendants "participate, directly or indirectly in the conduct of the Enterprise's affairs in the collection of unlawful debt," and that Plaintiffs received "usurious" loans from LDF Holdings through its subsidiaries are legal conclusions and are not entitled to the presumption of truth.  Other such legal conclusions are found at the following paragraphs:  1 ("predatory lender" and loans "illegal"); 2 (e.g., "collected on illegal loans"); 3 ("illegal loans"); 4 (e.g., "violated applicable state and federal law"); 5-8; 16; 17; 18 ("loans violated Virginia's licensing and usury laws"); 19 (loans "in violation" of law); 20-23; 24; 42 ("illegal lending enterprise"); 51 ("illegal lending business" and "illegal loans in violation of state usury and licensing requirements"); 68 ("collection of unlawful debt"); 77 (e.g., "illegal lending business" and violation of law); 80 ("usurious loans"); 81 ("illegal"); 84; 89 ("illegal lending enterprise");

94 ("illegal lending enterprise"); 99 ("illegal lending enterprise"); 106; 108 ("subject to laws"); 110 ("debts were invalid"); 112-124; 126 ("participated in the collection of unlawful debt"); 127 ("association in fact enterprise"); 128 ("collection of unlawful debt"); 129-130; 132-140; 142-43; 145-151, 153; 154-158.  Thus, the above allegations are also not entitled to the presumption of truth.

Finally, there are also a number of paragraphs based on mere speculation (i.e., contain no factual enhancement), which are also not entitled to the presumption of truth.  See Keffer v. Reese, No. 2:17-CV-00332-LPL, 2018 WL 489007, at *8 (W.D. Pa. Jan. 19, 2018) (speculative allegations do not establish facially plausible claims); Williams v. Barkley, No. 3:14CV1600, 2015 WL 478409, at *5 (M.D. Pa. Feb. 4, 2015), aff'd, 616 F. App'x 484 (3d Cir. 2015).  These claims include allegations about the Tribe's potential motivation in issuing loans and adopting ordinances, speculation about Tribal Defendants' participation in "the enterprise," and the Tribal Defendants' knowledge, as set forth in the following paragraphs:  4; 42; 73; 76-79; 81; 89, 94, 99 (e.g., moneys received by the Tribal Defendants); and 141.[54]

> **c.**     **The Well-Pled Allegations Do Not Plausibly State A Claim For Relief Against The Tribal Defendants Under RICO**

Stripping away the allegations that are not entitled to the presumption of truth, as the Court must, the Complaint does *not* show "more than a sheer possibility" that Defendants acted unlawfully, which is not enough to stave off dismissal.  Again, Plaintiffs vaguely assert that the Tribal Defendants received money from the Plaintiffs and "participated in the collection of unlawful debt."[55]  These allegations do not cross the plausibility hurdle.  The Complaint does not

---

[54] Of course, the mere fact that a lawsuit has been filed challenging the legality of a loan does not mean that the loan is, indeed, invalid, contrary to Plaintiffs' speculative allegations.  (E.g., ECF No. 1 ¶¶ 78-79.)

[55] ECF No. 1 ¶¶ 89, 94, 99, 126, 128.

plead sufficient facts to support usury claims even against the Tribal lender, let alone usury claims against *the Tribal Defendants*.[56]

Plaintiffs' Complaint contains no allegation as to *when* they allegedly entered into loans, *who* they entered into the loans with (aside from "LDF Holdings through its subsidiaries"), *how much* interest was repaid; and *to whom* it was paid. Moreover, there are no allegations to support that *the Tribal Defendants* entered into any contracts with Plaintiffs and no well-pled allegations that *the Tribal Defendants* themselves received any amounts whatsoever and certainly no amounts greater than the interest allowed by state law, even assuming <u>arguendo</u> that state law applies (which the Tribal Entities do not concede). Accordingly, the Complaint does not include sufficient facts to support a claim that the Tribal Defendants engaged in the "collection of unlawful debt" under RICO. 18 U.S.C. § 1962.

Also, Plaintiffs' RICO claims fail because they have not stated the conduct and injury elements. Again, a civil RICO claim requires pleading the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that caused injury to business or property." <u>Ray v. Spirit Airlines, Inc.</u>, 126 F. Supp. 3d 1332, 1339 (S.D. Fla. 2015), <u>aff'd,</u> 836 F.3d 1340 (11th Cir. 2016).

The "enterprise" requirement requires that one plead and prove the existence of two distinct entities: a "person" and an "enterprise". <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001). This requirement "provides the necessary buffer against overly broad RICO claims" brought by "opportunistic plaintiffs" for corporations engaged in standard commercial dealings. <u>Ray v. Spirit Airlines, Inc.</u>, 126 F. Supp. 3d 1332, 1340 (S.D. Fla. 2015), <u>aff'd,</u> 836 F.3d 1340

---

[56] The Tribal Defendants vehemently dispute that *they* personally issued or collected on any loans, including, but not limited to Plaintiffs' loans.

(11th Cir. 2016).  "Accordingly, legally separate entities—such as corporations or persons—do not necessarily constitute a RICO enterprise by virtue of their interrelationships, even if the parties together engage in fraudulent conduct."  Id.  In circumstances where the alleged "enterprise" is comprised of subsidiaries, agents, or employees of the corporation acting in concert, they are not indistinct for the purposes of a civil RICO claim.  Id.; Andrews v. Wolcott Rivers Gates, No. 3:14CV76-HEH, 2014 WL 3016483, at *4 (E.D. Va. July 3, 2014), aff'd sub nom. Andrews v. Gates, 587 F. App'x 75 (4th Cir. 2014).

Here, Plaintiffs allege that the Tribe, BDC and LDF Holdings constitute "one or more association in fact enterprises."  (ECF No. 1 ¶ 118.)  Although, for Counts I and II, the Plaintiffs claim that the Tribal Defendants are sued in their "individual capacity," the allegations against them are not distinct from the alleged "enterprise," which is the Tribe, the BDC and LDF Holdings. Stated another way, the Tribal Defendants' alleged actions were _all_ within the course and scope of their roles as officials or employees of the Tribe, BDC and LDF Holdings.

Indeed, Plaintiffs have alleged (on information and belief) that "as an Ex-officio board member of the LDF Business Development Corporation, Defendant Joseph Wildcat has engaged in the collection of unlawful debt."  (ECF No. 1 ¶ 60).  As to Ms. Reynolds, Plaintiffs have alleged that "as President of the Board of Directors of the LDF Business Development Corporation," she engaged in the collection of unlawful debt.  (Id. ¶ 65.)  And, as to Ms. Lorenzo, Plaintiffs likewise allege that she engaged in the collection of unlawful debt through her "management of LDF Holdings and its subsidiaries."  (Id. ¶ 68.)

For purposes of a distinct entity under RICO, the Tribal Defendants and the Tribe, BDC and LDF Holdings are one and the same because:

> [A] corporation can only function through its employees and agents, any act of the
> corporation can be viewed as an act of such an enterprise, and the enterprise is in

> reality no more than the defendant itself. Thus, whether employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

Viridis Corp. v. TCA Glob. Credit Master Fund, LP, 155 F. Supp. 3d 1344, 1358 (S.D. Fla. 2015). Indeed, Plaintiffs "may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees." Mason v. Midland Funding LLC, No. 1:16-CV-02867-CC-RGV, 2017 WL 6994577, at *16 (N.D. Ga. July 27, 2017), report and recommendation adopted as modified, No. 1:16-CV-2867-CC, 2017 WL 8186866 (N.D. Ga. Sept. 29, 2017).

In regard to injury, Plaintiffs have not alleged that they have any.  Although Mr. Fitzgerald asserts that Defendants received $4,860.87 from him in connection with the loans, he does not allege how much of that amount was principal on the loans.  (ECF No. 1 ¶ 89.)  Without that information, it is unknown whether he has any loss.  Likewise as to Mr. Williams and Ms. Fitzgerald—they have alleged that Defendants received monies from them in connection with the loans, but that standing alone does not mean they suffered any injury because they did not allege the principal amount of the loans.  (See ECF No. 1 ¶¶ 94, 99.)

Plaintiffs' Section 1962(d) claim fails for the same reason as their 1692(c) claim, and also because Plaintiffs have not pled the factual allegations necessary for a conspiracy claim.  See Ferguson, 2016 WL 1106609, at *8.  As set forth above, Plaintiffs' allegations about the Tribal Defendants' agreement (see ECF No. 1 ¶ 55) is based on "information and belief."  Such allegations are not enough to advance allegations beyond a "speculative level," which is required to state a claim.  Walters v. McMahen, 795 F. Supp. 2d 350, 356 (D. Md. 2011), aff'd, 684 F.3d 435 (4th Cir. 2012).

Moreover, Plaintiffs' conspiracy claim fails as a matter of law because the Tribal Defendants' alleged acts are *all* within the scope of their employment or official duties.[57] Thus, the intracorporate conspiracy doctrine prohibits Plaintiffs' claims.   Id. (holding that "[t]he intracorporate conspiracy doctrine holds that because the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy."); Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC, No. CV ELH-17-3420, 2019 WL 1441812, at *30 (D. Md. Mar. 31, 2019) (holding that "the employees of a corporation cannot legally conspire among themselves or with their corporate principal.").

In sum, a careful review of Plaintiffs' RICO claims demonstrates that these "stigmatizing" allegations must be dismissed as a matter of law because Plaintiffs have failed to plead a substantive RICO claim based on the collection of unlawful debt and the Complaint does not adequately allege a RICO enterprise and that the Tribal Defendants conducted or participated in the enterprises' affairs.

> **d.      The Well-Pled Allegations Do Not Plausibly State A Claim For Relief Against President Wildcat Under the Declaratory Judgment Act**

Plaintiffs' Declaratory Judgment Act claim must be dismissed because Plaintiffs have not pled a viable cause of action. Barcenas v. Fed. Home Loan Mortg. Corp., No. CIV.A. H-12-2466, 2013 WL 286250, at *9 (S.D. Tex. Jan. 24, 2013) (holding that "[t]he Declaratory Judgment Act "does not create an independent source of federal jurisdiction, but merely provides a remedy if there is, in fact a judicially remediable right."). Id.; see Scarlett v. Air Methods Corp., 922 F.3d

---

[57] Again, Plaintiffs have alleged that the enterprise is an association in fact comprised of the Tribe, Holdings, and the BDC.  (ECF No. 1 ¶ 118.)

1053, 1067 (10th Cir. 2019); <u>ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia</u>, 298 F. Supp. 3d 834, 843 (W.D. Va. 2018), <u>aff'd</u>, 917 F.3d 206 (4th Cir. 2019).

Plaintiffs intimate that their substantive claim is pursuant to Virginia or Georgia law (ECF No. 1 ¶¶ 151-154), but as previously stated, Plaintiffs have *not* actually brought a claim against the Tribal Defendants under Virginia's Consumer Finance Act ("VCFA") or under Georgia law. To support this "cause of action," Plaintiffs allege that "LDF Holdings and its subsidiaries were not licensed to make loans in Virginia, Georgia, or any other state in the United States" and that the loans are null and void because they were made without the required license and the interest rates were excessive.  (ECF No. 1 ¶¶ 152-153.)  However, Plaintiffs have not pled specific facts regarding the loans, such as when they were taken out, how much principal, if any was repaid, and the status of the loans, and Plaintiffs have not brought a claim under the VCFA or any other state statute.

Undoubtedly, the Plaintiffs have not brought a claim under the VCFA because the Tribal Defendants are not "lenders" and the VCFA permits relief only against a "lender."  Va. Code Ann. § 6.2-1541.  Moreover, Plaintiffs have not pled a cause of action under Georgia's licensing or usury statues,[58] let alone alleged any facts to plausibly state a violation of those statutes.

Thus, because Plaintiffs have failed to plead their substantive legal claims, their claims for declaratory relief fail as a matter of law.  Accordingly, Count III of Plaintiffs' Complaint must be dismissed for failure to state a claim.

---

[58] Also, "[I]t is well settled that violating statutes and regulations does not automatically give rise to a civil cause of action by an individual claiming to have been injured from a violation thereof." <u>Parm v. Nat'l Bank of California, N.A.</u>, 242 F. Supp. 3d 1321, 1339 (N.D. Ga. 2017).

### 3.     The Tribal Defendants Are Not The Real Parties In Interest And, Thus, Must Be Dismissed

Again, Plaintiffs' claims against the Tribal Defendants arise out of loans allegedly issued by LDF Holdings' subsidiaries.  (ECF No. 1 ¶ 16.)  Plaintiffs seek "actual damages, which would include any interest, fees or other sums collected *by the enterprise*."  (ECF No. 1 ¶ 142 (emphasis added).)  As set forth above, Plaintiffs admit: the Tribe is a federally-recognized Indian tribe; the Tribe owns and/or controls LDF Holdings and its subsidiaries; LDF Holdings is managed by the BDC; and BDC operates under the oversight and management of the LDF Tribal Council.  (Id. ¶¶ 1, 3, 45-46.)  Thus, BDC, LDF Holdings, and LDF Holdings' subsidiaries should be treated the same as the Tribe for purposes of determining whether the Tribe is the real party in interest in this case.[59]

---

[59] "The Supreme Court has recognized that tribal immunity may remain intact when a tribe elects to engage in commerce using tribally created entities, *i.e.*, arms of the tribe . . . ."  Williams v. Big Picture Loans, LLC, 929 F.3d 170, 176 (4th Cir. 2019).  Whether an entity is an arm of the tribe need not be assessed where a party does not contest it.  Pennsylvania v. Think Finance, LLC, No. 14-cv-7139, 2018 WL 4633750, * 3 (E.D. Pa. Sept. 26, 2018) (holding that the court need not assess whether the tribal entity was an arm of the tribe because the parties did not contest it). The issue of whether the Tribe's entities are arms of the tribe is not before the Court.

The Tribe is entitled to sovereign immunity from this suit.[60]  Accordingly, had Plaintiffs named the Tribal Defendants in their official capacity[61] (for the RICO claims), there can be no dispute that sovereign immunity would bar this suit.[62]  See Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 727 (9th Cir. 2008); see, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991) (holding that where officials or employees are named in a case in their official capacity, the suit is treated as a suit against the sovereign).  Nonetheless, looking behind Plaintiffs' characterization of the Tribal Defendants in the Complaint, as the Court must, it is evident that the Tribe is the real party in interest.

The Tribal Defendants are literally persons, such that lawsuits may be filed against them in their personal (individual) capacity or their official capacity.  See Hafer v. Melo, 502 U.S. 21, 27 (1991).  When officials and employees are named in their personal/individual capacity, an

---

[60] "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government."  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978).  Among the core aspects of sovereignty that tribes possess is the "common-law immunity from suit traditionally enjoyed by sovereign powers."  Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 788 (2014).  Thus, as a matter of federal law, Indian tribes are immune from suit absent congressional abrogation or clear waiver by the tribe.  Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998).  That immunity, the United State Supreme Court has explained, is "a necessary corollary to Indian sovereignty and self-governance."  Bay Mills Indian Cmty., 572 U.S. at 788.

The existence of tribal sovereign immunity does not depend on where the tribal activities occurred—on or off the reservation—and it does not depend on whether the activities are governmental or commercial.  Id.  Also, tribal sovereign immunity is not eviscerated when the Indian tribe chooses to conduct economic activities in commerce using tribally created entities.  See Williams v. Big Picture Loans, LLC, No. 18-1827, 2019 WL 2864341, at *3 (4th Cir. July 3, 2019); Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1183 (10th Cir. 2010).  Indeed, tribal business operations "are critical to the goals of tribal self-sufficiency because such enterprises in some cases 'may be the only means by which a tribe can raise revenues,' which is 'due in large part to the insuperable (and often state-imposed) barriers Tribes face in raising revenue through more traditional means.'"  Bay Mills Indian Cmty., 572 U.S. at 810 (Sotomayor, J., concurring).

[61] Official capacity claims against Mr. Wildcat and Ms. Reynolds are not feasible because neither of them currently holds official office.

[62] Plaintiffs have not alleged that the Tribe waived immunity from suit.  Moreover, although the Tribal Defendants dispute that Virginia or Georgia law applies to the loan agreements, it is settled law that tribal sovereign immunity applies regardless of whether state substantive laws apply.  Kiowa Tribe, 523 U.S. at 755.  Sovereign immunity also applies to Plaintiffs' RICO claims, as RICO contains "no language which suggests Congress 'unequivocally' waived Indian tribes' sovereign immunity . . . ."  Smith v. Babbitt, 875 F. Supp. 1353, 1365 (D. Minn. 1995), judgment aff'd, appeal dismissed in part, 100 F.3d 556 (8th Cir. 1996).

assessment of who is "the real party in interest" must be conducted to determine whether sovereign immunity bars the suit. Lewis v. Clark, 137 S. Ct. 1285, 1290 (2017). In determining whether the sovereign is the real party in interest, the Supreme Court has instructed that "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." Id. If the action is in essence against a sovereign even though the sovereign is not named as the party, the sovereign is the real party in interest. Cf. id. at 1290.

The sovereign may be the real party in interest where the judgment will operate against it or will require action by the sovereign or disturb the sovereign's property. See id. at 1291. Stated another way, the sovereign may be the real party in interest where "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or the effect of the judgment would be to restrain the [sovereign] from acting or compel it to act." Pistor v. Garcia, 791 F.3d 1104, 1113 (9th Cir. 2015) (quoting Maxwell v. County of San Diego, 708 F.3d 1075, 1088 (9th Cir. 2013) (quotations omitted)).

Here, a judgment would undisputedly operate against the Tribe, as the damages sought are based on sums "*collected* by the enterprise." ECF No. 1 ¶ 142 (emphasis added); e.g., Allen v. Smith, No. 12cv1668, 2013 WL 950735, *10 (S.D. Cal. Mar. 11, 2013) (reiterating that the general rule is that "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."). Thus, class relief would in fact be against the Tribe, which renders the Tribe the real party in interest.

Also, the Tribe is the real party in interest because the relief sought—class certification— would interfere with its public administration and compel the Tribe to act. Of course, Plaintiffs would have to ascertain the size of the proposed class through discovery. Information about LDF

Holdings' and its subsidiaries' businesses is "official" information, and not the Tribal Defendants' personal information. Thus, Plaintiffs will without a doubt seek to compel the Tribe—not the Tribal Defendants—to provide information about the class. This also reveals that the Tribe is the real party in interest.

Moreover, the judgment that Plaintiffs seek in this case would interfere with public administration because Plaintiffs seek a determination that the loans issued by LDF Holdings' subsidiaries are invalid and uncollectable. However, undoubtedly, the Tribe believes its Ordinance applies to the loans and that the loans are collectable. Thus, the declaratory judgment that Plaintiffs seek would cloud the Tribe's ability to enforce its Ordinance, obscure the TFSRA's oversight of the Tribe's online consumer financial services, and cloud the Tribe's ability to collect on its loans. For this additional reason, the Tribe is the real party in interest.

In sum, because the judgment would operate against the Tribe, would interfere with the Tribe's public administration, and would compel the Tribe to act, the Tribe is the real party in interest. Thus, this case should be dismissed because the Tribe is the real party in interest and it is entitled to tribal sovereign immunity.

### 4. The Court Should Dismiss The Tribal Defendants Because The Tribe And Its Subsidiaries Are Necessary And Indispensable Parties That Plaintiffs Cannot Join

Federal Rule of Civil Procedure 12(b)(7) allows dismissal of a claim for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). "Under Rule 19, a court must dismiss an action if: (1) an absent party is required, (2) it is not feasible to join the absent party and (3) it is determined 'in equity and good conscience' that the action should not proceed among the existing parties." United Keetoowah Band of Cherokee Indians in Oklahoma v. Kempthorne, 630 F. Supp. 2d 1296, 1301 (E.D. Okla. 2009).

### a.   The Tribe Is Required

As to the first question, whether the absent party is required, courts have held that a "party to a contract is the quintessential 'indispensable party' and no procedural principal is more deeply embedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable." Id. (quoting Jicarilla Apache Tribe. v. Hodel, 821 F.2d 537, 540 (10th Cir. 1987)); Gregoria v. Total Asset Recovery, Inc., No. CIV.A. 12-4315, 2015 WL 115501, at *6 (E.D. Pa. Jan. 7, 2015).  Here, the heart of the controversy is whether the loan agreements—loan agreements entered into between Plaintiffs and LDF Holdings' subsidiaries—are valid.  The Tribe has a direct interest relating to the subject of this action because, if Plaintiffs are successful, the requested relief will immediately affect the validity of the loan agreements.  The relief that Plaintiffs request would enjoin the Tribe, through LDF Holdings and its subsidiaries, from collecting on the loan agreements, inter alia.

Moreover, such a ruling would potentially disrupt services that the Tribe provides to its members, because LDF Holdings' subsidiaries generate revenue for the BDC and the Tribe.[63]  That revenue funds the Tribe's essential governmental services and economic development.[64]  Without that revenue, many of the Tribe's essential governmental services would experience funding cuts.[65]  This goes well beyond a mere pecuniary interest.  It goes to the Tribe's ability to function as a government and serve its members and the surrounding community.

### b.   It Is Not Feasible To Join The Tribe

With respect to the second question, joinder in this case is not feasible because of the Tribe's status as a sovereign nation.  Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541,

---

[63] Johnson Decl. ¶¶ 7, 10.

[64] Johnson Decl. ¶ 10.

[65] Johnson Decl. ¶ 12.

553 (4th Cir. 2006).  Undisputedly, the Tribe is entitled to sovereign immunity.  E.g., id.  The Tribe

has not waived is immunity for this action and Congress has not abrogated it.

**c.      The Action Should Not Proceed Among The Existing Parties**

Finally, equity and good conscience dictate that the Tribal Defendants must be dismissed

from this case.   When making the determination whether the Tribal Defendants should be

dismissed, the Court may look to the following factors:

> [F]irst, to what extent a judgment rendered in the person's absence might be
> prejudicial to the person or those already parties; second, the extent to which, by
> protective provisions in the judgment, by the shaping of relief, or other measures,
> the prejudice can be lessened or avoided; third, whether a judgment rendered in the
> person's absence will be adequate; fourth, whether the plaintiff will have an
> adequate remedy if the action is dismissed for nonjoinder.

Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 552 (4th Cir. 2006).

First, a judgment in this lawsuit *would* prejudice the Tribe and LDF Holdings' subsidiaries

(and LDF Holdings and the BDC) for the same reason that they are required parties.  Their absence

would also prejudice the Tribal Defendants because at bottom, Plaintiffs claim that the loans are

invalid under state law, but, as Plaintiffs eluded, the Tribe undoubtedly would assert that the loans

are governed by Tribal law and applicable federal law.  The Tribe and its entities are better suited

than the individuals to make and support that position.

Second, it is inconceivable that there are any alternative measures that could lessen or avoid

prejudice to the Tribe.

Third, a judgment rendered in the Tribe's absence would *not* be adequate—namely, a

judgment in Plaintiffs' favor would create uncertainty as to whether the Tribe, through LDF

Holdings' subsidiaries, could collect on the loans.  Davis ex rel. Davis v. United States, 343 F.3d

1282, 1292-93 (10th Cir. 2003) (holding that "[t]he Supreme Court has explained that Rule 19(b)'s

third factor is not intended to address the adequacy of the judgment from the plaintiff's point of

view" and a judgment in the Tribe's absence "could well lead to further litigation and possible inconsistent judgments."). That judgment, therefore, would be "inadequate."

Finally, the "lack of an alternative forum does not automatically prevent dismissal of a suit." Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1500 (9th Cir. 1991). Courts recognize that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity. Id.; U.S. ex rel. Hall v. Tribal Dev. Corp., 100 F.3d 476, 480 (7th Cir. 1996); Salton Sea Venture, Inc. v. Ramsey, No. 11CV1968-IEG WMC, 2011 WL 4945072, at *6 (S.D. Cal. Oct. 18, 2011). In fact, there is a "strong policy . . . favor[ing] dismissal when a court cannot join a tribe because of sovereign immunity" and when a necessary party is immune from suit, "there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." Davis, 343 F.3d at 1293.

Thus, given the Rule 19(b) factors, the Tribe and its entities are indispensable parties and the Tribal Defendants should be dismissed.

## C. Alternatively, The Class Action Allegations Should Be Stricken

Class allegations may be stricken before the plaintiff files for class certification where it is unnecessary for the court to "probe behind the pleadings before coming to rest on the certification question." Cty. of Dorchester, S.C. v. AT & T Corp., 407 F. Supp. 3d 561, 568 (D.S.C. 2019) (citing cases). Moreover, a motion to certify a class is not required for the Court to decide the certification issue when doing so is practical and appropriate. See John v. Nat'l Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007) (holding that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite" and "[w]here it is facially apparent from the pleading that there is no ascertainable class, a district court

may dismiss the class action allegation on the pleadings."); see 7AA Charles Alan Wright, Arthur

R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785 (3d ed. 2005).

The Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold

requirement that the members of a proposed class be 'readily identifiable.'" EQT Prod. Co. v.

Adair, 764 F.3d 347, 358 (4th Cir. 2014). Meaning that, "[a] class cannot be certified unless a

court can readily identify the class members in reference to objective criteria." Id. (citing cases).

"The plaintiffs need not be able to identify every class member at the time of certification. But

'[i]f class members are impossible to identify without extensive and individualized fact-finding or

"mini-trials," then a class action is inappropriate.'" Id. (quoting Marcus, 687 F.3d at 593; and

citing 7A Charles Alan Wright et al., Federal Practice & Procedure § 1760 (3d ed. 2005) ("[T]he

requirement that there be a class will not be deemed satisfied unless ... it is administratively feasible

for the court to determine whether a particular individual is a member.")). Moreover, "[n]o class

action is proper unless all litigants are governed by the same legal rules." In re

Bridgestone/Firestone, Inc., 288 F.3d 1012, 1015 (7th Cir. 2002).

Here, the class allegations must be stricken because the classes do not, as a matter of law,

satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a) and (b), and, also,

the proposed classes raise serious ascertainability issues. EQT Prod. Co. v. Adair, 764 F.3d 347,

358 (4th Cir. 2014) (holding "[i]f class members are impossible to identify without extensive and

individualized fact-finding or 'mini-trials,' then a class action is inappropriate."); In re

Bridgestone/Firestone, Inc., 288 F.3d 1012, 1015 (7th Cir. 2002) (holding that where state laws

differ regarding the legal theory presented, a suit may not proceed as a nationwide class). Plaintiffs

recognize that for each potential class member, the Court would have to look to state law to

determine if the debt is void. (E.g., ECF No. 1 ¶¶ 112, 132, 145.) Thus, there is no unitary

application of the law of one state.  "[W]here the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will compound the [ ] disparities among class members from different states."  Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010); see, e.g., In re Yasmin & Yaz (Drospirenone) Mktg., 275 F.R.D. 270, 275 (S.D. Ill. 2011).  Thus, for this reason alone, the class allegations should be stricken.

Plaintiffs also cannot satisfy the typicality and adequacy requirements because each purported class member must show they suffered an "injury" to fall within the scope of the class identified in Counts I and II (18 U.S.C. ¶ 1964(c)), and demonstrate that they have an "outstanding balance" to fall within the scope of the class set forth in Count III.  Of course, as to Counts I and II, the putative class members' "actual, concrete, tangible damages cannot be shown by common evidence because the determination of those damages requires an inherently individual inquiry." Roberts v. The Scott Fetzer Co., No. 4:07-CV-80 (CDL), 2010 WL 3937312, at *8 (M.D. Ga. Sept. 30, 2010).  Proof sufficient to substantiate actual damages would necessitate adjudication of highly individualized issues, which would vastly outweigh the common questions applicable to actual damage claims.  See In re TD Bank, N.A. Debit Card Overdraft Fee Litig., 325 F.R.D. 136, 164-65 (D.S.C. 2018).  Similarly, to establish that proof sufficient to substantiate an "outstanding balance on their loan" would also necessitate adjudication of highly individualized issues and would outweigh common questions applicable to the Declaratory Judgment Act count.

Thus, for these reasons, among others, as a matter of law, Plaintiffs cannot establish all of the factors set forth in Fed. R. Civ. P. 23(a) and cannot establish any of the factors set forth in Fed. R. Civ. P. 23(b).  As such, the class action allegations should be stricken.

## VII.  CONCLUSION

For the reasons set forth above, the Tribal Defendants ask that Mr. Williams' claims be compelled to arbitration or, alternatively, dismissed.  In regard to Plaintiffs Lori Fitzgerald and

Aaron Fitzgerald, the Tribal Defendants ask that their claims also be dismissed.  Alternatively, the

Tribal Defendants ask that the class action allegations against them contained in Counts I, II, and

III be stricken.

By:  /s/ Alan D. Wingfield
  Alan D. Wingfield (VSB No. 27489)
  John E. Komisin (VSB No. 84061)
  Troutman Pepper Hamilton Sanders LLP
  1001 Haxall Point
  Richmond, VA  23219
  Telephone: (804) 697-1200
  Facsimile: (804) 697-1339
  Email: alan.wingfield@troutman.com
  Email:  jed.komisin@troutman.com
  *Counsel for Jessi Lorenzo, Nicole Reynolds and
  Joseph Wildcat, Sr.*

  and

  Shilee T. Mullin (*pro hac admission pending*)
  Spencer Fane LLP
  13520 California Street, Suite 290
  Omaha, NE 68154
  Telephone: (402) 965-8600
  Fax: (402) 965-8601
  E-mail: smullin@spencerfane.com
  *Counsel for Jessi Lorenzo and Nicole Reynolds*

  and

  Andrew Adams III (*pro hac admission pending*)
  Hogen Adams PLLC
  1935 County Road B2 W., Suite 460
  Saint Paul, MN 55113
  Telephone: (651) 842-9100
  Fax: (651) 842-9101
  E-mail: aadams@hogenadams.com
  *Counsel for Joseph Wildcat, Sr*