# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | | |
|---|---|---|
| LORI FITZGERALD, et al., | ) | Case No. 3:20-cv-00044-GEC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH WILDCAT SR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### Declaration of John Johnson, Sr.

John Johnson, Sr., does hereby declare under penalty of perjury:

1.    I am the President of the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe") and I am authorized to make this Declaration for the Tribe.

2.    I reside on the Lac du Flambeau Indian Reservation in the State of Wisconsin.

3.    I am a tribal member of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

4.    Under the Constitution and Bylaws of the Lac du Flambeau Band of Lake Superior Chippewa Indians of Wisconsin, the Tribal Council is the governing body of the Lac du Flambeau Band of Lake Superior Chippewa Indians. In my capacity as President, I serve as a member of the Tribal Council and the head of the Executive Council. In 2014, I was elected to my first two-year term as Tribal Council Member. In 2016, I was elected to my first two-year term as Tribal Council Vice-President and served until 2018. In 2019, I was elected to my second two-year term as Tribal Council Member. On October 6, 2020, I was elected to my first two-year term as Tribal Council President where I replaced Joseph Wildcat, Sr., a named Defendant in this case.

5.      The Tribal Council President's Office is located in the Lac du Flambeau Tribal Office, which is on the Lac du Flambeau Indian Reservation in the State of Wisconsin. I conduct my work as Tribal Council President from the Lac du Flambeau Tribal Office. I do not conduct my work as Tribal Council President on state lands, except as it pertains to intergovernmental relations. I do not conduct work pertaining to tribal economic development on state lands.

6.      In my capacity of President of the LDF Tribal Council and in my prior capacity as a Tribal Council Member, I have knowledge of the Tribe and its entities, including the following:

a.   In August 2012, the LDF Tribal Council, on behalf of the Tribe, created the L.D.F. Business Development Corporation ("BCD"). The BDC was created as a wholly-owned economic arm of the Tribe for the purpose of creating jobs and generating revenue to contribute to the Tribe's general fund. The BDC is governed by a Board of Directors, which consists of the Tribal Council. The individual Directors have no power to act on behalf of the BDC.

b.   The Tribal Council, on behalf of the Tribe, enacted the Lac du Flambeau Tribal Consumer Financial Services Regulatory Ordinance ("Ordinance"), which authorized lending over the internet provided that such internet lending is consistent with applicable federal and Tribal laws and regulations.

c.   The Ordinance authorized businesses wholly owned by the Tribe to engage in consumer financial services and established the Tribal Consumer Financial Services Regulatory Authority, which governs the Tribe's online consumer financial services.

2

    d.   After creating the BDC, the Tribal Council, on behalf of the Tribe, crated LDF Holdings, LLC ("Holdings") for the purpose of engaging in consumer financial services through the creation and operation of subsidiaries.

    e.   Holdings has numerous subsidiaries that issue online short-term loans.

    f.   The Tribe's online consumer financial services business provides jobs to Tribal and community members.

    7.      Holdings' subsidiaries, through the BDC, distributes profits to the Tribe's general fund, which supports the Tribal government, including economic development and programs and services for Tribal members and the surrounding community, including, but not limited to, the following:

    a.   Law enforcement;

    b.   Water and sewer services;

    c.   Clinical medical and dental care;

    d.   Natural resources management;

    e.   Public roads management;

    f.   Wildlife conservation;

    g.   Fire and ambulance service (joint effort with local government);

    h.   Land management;

    i.   Early childhood education;

    j.   General assistance programs, including low-income housing and food distribution; and

    k.   Domestic-abuse protective services.

3

I.    Without revenue generated from Holdings' subsidiaries, the Tribal Council would have to cut funding to these essential governmental services.

8.    The Lac du Flambeau Band of Lake Superior Chippewa Indians does not have a sufficient tax base to support its governmental service and does not collect taxes. Its services are fully supported by revenue from tribal businesses and federal and state grant funds. Roughly 45-50% of the support comes from revenue from tribal businesses.

9.    I exercise high-level supervision of Lac du Flambeau Band of Lake Superior Chippewa Indians's economic development.

10.    The LDF Business Development Corporation and LDF Holdings generate significant revenue that is used solely to foster further tribal economic development and fund essential governmental services previously identified in paragraph 7.

11.    No revenue generated by these entities is distributed directly to tribal members, tribal officers and employees, or any other individuals. I have not and do not receive direct distribution of any revenue generated by these entities.

12.    Without the revenue generated by the LDF Business Development Corporation and LDF Holdings the Tribal Council would have to cut funding to these essential government services.

13. I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 28, 2020

John Johnson, Sr.

4