# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LORI FITZGERALD, AARON FITZGERALD, and KEVIN WILLIAMS, individually and on behalf of others similarly situated, | Case No: 3:20-cv-00044 |
| | Hon. Glen E. Conrad |
|      Plaintiffs, | |
| v. | |
| JOSEPH WILDCAT SR., TRIBAL PRESIDENT OF THE LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, in his official and individual capacities; NICOLE CHAPMAN REYNOLDS; JESSI PHILLIPS LORENZO; ZENRESOLVE, LLC; and JOHN DOES NOS. 1-20, | |
|      Defendants. | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT ZENRESOLVE, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7).**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ..................................................................................................2

    I.  Formation of ZenResolve ........................................................................................4

    II.  Collection Activity on Loans Made to Plaintiff Kevin Williams .................................5

ARGUMENT ........................................................................................................................6

    I.  The Court Cannot Exercise Subject Matter Jurisdiction over ZenResolve
        Because it is Immune from Suit as an Arm of the Tribe .................................................6

        A.  Because ZenResolve is an arm of Big Valley, Plaintiffs' claims are
           barred by tribal sovereign immunity ...........................................................7

           1. Factor 1 - Method of Creation: ZenResolve was created by the
              Tribe pursuant to Tribal Law......................................................9

           2. Factor 2 - Purpose: ZenResolve's purpose is to operate as a
              third-party vendor to further Big Valley's self-sufficiency and
              self-determination........................................................................10

           3. Factor 3 - Control: The Tribe controls ZenResolve ......................12

           4. Factor 4 - Intent to Vest Immunity: The Tribe intended to vest
              ZenResolve with its sovereign immunity......................................14

           5. Factor 5: ZenResolve generates material benefit to Big Valley.....16

           6. Factor 6: The purpose of sovereign immunity is furthered by
              extending Big Valley's sovereign immunity to ZenResolve .........17

    II.  Plaintiffs lack standing under Article III to bring RICO claims
        against ZenResolve ........................................................................................18

         A. Legal Standard ..................................................................................18

         B. Plaintiffs' Alleged Injuries are not Traceable to ZenResolve ..............19

         C. ZenResolve Cannot Redress Plaintiffs' Injuries ...................................20

    III.  Plaintiff has failed to establish that this Court can exercise personal
         jurisdiction over ZenResolve ...................................................................21

A. Standard of Review Under Fed. R. Civ. P. 12(b)(2) ............................21

B. Plaintiffs Cannot Establish Minimum Contacts Between ZenResolve and Virginia, or Any Connection Between ZenResolve's Alleged Activities and Injuries in Virginia...........................................................23

IV. Plaintiffs Have Failed to State a Claim Under Both RICO and the FDCPA Involving ZenResolve ............................................................................24

A. Plaintiffs Have Failed to State a Claim Under RICO .........................25

1. Plaintiffs failed to state a claim for relief under 18 U.S.C. § 1962(c) because the Complaint does not allege that ZenResolve participated in the operation or management of the alleged enterprise or that they collected unlawful debt. ............................25

2. Plaintiffs similarly fail to state a claim for relief under 18 U.S.C. § 1962(d). ......................................................................................27

B. Plaintiffs Have Failed to Properly Allege a Violation of the FDCPA .28

1. Plaintiff Williams Fails to Adequately Allege that ZenResolve's Communications were false, deceptive, or misleading under 15 U.S.C. § 1962e .........................................................................29

2. Mr. Williams Fails to Adequately Allege that ZenResolve Engaged in Unfair or Unconscionable Means ...............................................30

3. Plaintiff Williams Impermissibly Attempts to Use Inapplicable State Law as a Basis for an FDCPA claim......................................31

V. Venue is Improper under Fed. R. Civ. P 12(b)(3) ........................................32

VI. Dismissal is Warranted Under Rule 12(b)(7) .............................................33

A. LDF Holdings is a Necessary Party .........................................................34

B. LDF and its Subsidiaries Cannot be Joined Because They Enjoy Sovereign Immunity ..................................................................................34

C. LDF Holdings is an Indispensable Party ...................................................34

CONCLUSION..............................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Aces High Coal Sales, Inc. v. Community Bank & Trust of West Georgia*,
   768 Fed. Appx. 446 (6th Cir. 2019)...............................................................27

*Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*,
   929 F.Supp.2d 502 (D. Md. 2013). ...............................................................28

*Albright v. Oliver*,
   510 U.S. 266 (1994)........................................................................................24

*Allen v. Gold Country Casino*,
   464 F.3d 1044 (9th Cir. 2006). ...........................................................8, 10, 16

*Alston v. Calvary Portfolio Services, LLC*,
   No. 8:12–cv–03589–AW, 2013 WL 665036 (D. Md. 2013). ......................28

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)........................................................................................26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................24-25

*Beler v. Blatt, Hasenmiller, Leibsker & Moore*,
   480 F.3d 470 (7th Cir. 2007). ...................................................................31-32

*Bentrud v. Bowman, Heintz, Boscia & Vivian, P.C.*,
   794 F.3d 871 (7th Cir. 2015). ...................................................................31-32

*Boosahda v. Providence Dane LLC*,
   462 Fed. Appx. 331 (4th Cir. 2012). .............................................................28

*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*,
   629 F.3d 1173 (10th Cir. 2010). ..................................8-10, 12, 14, 16-18

*Bristol-Myers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773 (2017)...................................................................................24

*Bryant v. Cheney*,
   924 F. 2d 525 (4th Cir. 1991). .......................................................................19

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
   334 F.3d 390 (4th Cir. 2003). ........................................................................21

*Carlson v. First Revenue Assurance*,
   359 F.3d 1015 (8th Cir. 2004). ......................................................................31

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
   561 F.3d 273 (4th Cir. 2009). ........................................................................23

*Currier v. First Resolution Inv. Corp.,*
762 F.3d 529 (6th Cir. 2014). ....................................................................31

*Davis ex rel. Davis v. United States,*
343 F.3d 1282 (10th Cir. 2003). .......................................................... 35-36

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.,*
276 F.3d 1150 (9th Cir. 2002). ............................................................ 35-36

*Devon Drive Lionville, LP v. Parke Bancorp, Inc.,*
2018 WL 3585069 (E.D. Pa. July 26, 2018)................................................26

*Doe v. Virginia Dept. of State Police,*
713 F.3d 745 (4th Cir. 2013). .....................................................................20

*Edwards v. Schwartz,*
378 F.Supp.3d 468 (W.D. Va. 2019). .........................................................22

*Estate Constr. Co. v. Miller & Smith Holding Co.,*
14 F.3d 213 (4th Cir. 1994). ......................................................................24

*Everette v. Mitchem,*
146 F. Supp. 3d 720 (D. Md. 2015). ...........................................10, 16, 18

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp,*
204 F.3d 149 (4th Cir. 2000). ............................................................. 19-20

*Glessner v. Kenny,*
952 F.2d 702 (3d. Cir. 1991).......................................................................27

*Global Mail Ltd. v. U.S. Postal Service,*
142 F.3d 208 (4th Cir. 1998). .......................................................................6

*Grayson v. Anderson,*
816 F.3d 262 (4th Cir. 2016). .....................................................................22

*Hagen v. Sisseton-Wahpeton Community College,*
205 F.3d 1040 (8th Cir. 2000). .....................................................................8

*Howard v. Plain Green, LLC,*
2:17CV302, 2017 WL 3669565 (E.D. Va. Aug. 7, 2017), *report and
recommendation adopted,* No. 2:17CV302, 2017 WL 3669096
(E.D. Va. Aug. 24, 2017)......................................................7, 8, 10, 16, 17

*Int'l Shoe v. Washington,*
326 U.S. 310 (1945).....................................................................................22

*Jicarilla Apache Tribe v. Hodel,*
821 F.2d 537 (10th Cir. 1987) ......................................................................1

*Kansas v. United States,*
249 F.3d 1213 (10th Cir. 2001) ....................................................................1

*Kerr v. Marshall Univ. Bd. of Governors*,
 824 F.3d 62 (4th Cir. 2016). ...................................................................24

*Kiowa Tribe v. Mfg. Techs., Inc.*,
 523 U.S. 751 (1998). ............................................................................8

*Lac Du Flambeau Band of Lake Superior Chippewa Indians, et al. v. Norton*,
 327 F.Supp. 2d 995 (W.D. Wis. 2004) ...........................................................1

*Lambeth v. Bd. of Comm'rs*,
 407 F.3d 266 (4th Cir. 2005). ..................................................................24

*LeBlanc v. Unifund CCR Partners*,
 601 F.3d 1185 (11th Cir. 2010). ...............................................................31

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ............................................................................18

*McClendon v U.S.*,
 885 F.2d 627 (9th Cir. 1989) ....................................................................1

*Medoil Corp. v. Clark*,
 753 F. Supp. 592 (W.D.N.C. 1990). ..............................................................32

*Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*,
 585 F.3d 917 (6th Cir. 2009). ....................................................................8

*Miami Tribe of Okla. v. Walden*,
 206 F.R.D. 238 (S.D. Ill. 2001). .................................................................1

*Michigan v. Bay Mills Indian Cmty.*,
 572 U.S. 782 (2014)...........................................................................7, 8

*Moss v. BMO Harris Bank, N.A.*,
 258 F. Supp. 3d 289 (E.D.N.Y. 2017). ............................................................25

*Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Authority*,
 207 F.3d 21 (1st Cir. 2000)....................................................................8

*Nolen v. Nucentrix Broadband Networks Inc*,
 293 F.3d 926 (5th Cir. 2002). ...................................................................27

*Papasan v. Allain*,
 478 U.S. 265 (1986).....................................................................25, 30, 31

*Perdue Foods LLC v. BRF S.A.*,
 814 F.3d 185 (4th Cir. 2016). ...................................................................23

*Powell v. Palisades Acquisition XVI, LLC*,
 782 F.3d 119 (4th Cir. 2014). ...................................................................29

*Reves v. Ernst & Young*,
 436 U.S. 49 (1978)..............................................................................26

*Richmond, Fredericksburg & Potomac R. Co. v. U.S*,
  945 F.2d 765 (4th Cir. 1991). .......................................................................7

*Robertson v. Sea Pines Real Estate Co*,
  679 F.3d 278 (4th Cir. 2012). .....................................................................24

*Russell v. Absolute Collection Services, Inc.*,
  63 F.3d 385 (4th Cir. 2014). .......................................................................29

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985). ...................................................................................25

*Simon v. Eastern Ky. Welfare Rights Organization*,
  426 U.S. 26 (1976)......................................................................................19

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).......................................................................................19

*Tatoian v. Andrews*,
  100 F.Supp.3d 549 (W.D. Va. 2015). ..........................................................22

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*
  173 F.3d 915 (4th Cir. 1999). .....................................................................33

*Thomas v. Dugan*,
  168 F.3d 483 (4th Cir. 1998). .......................................................................8

*U.S. ex rel. Morgan Bldgs. & Spas, Inc. v. Iowa Tribe of Oklahoma*,
  No. CIV-09-730-M, 2011 WL 308889 (W.D. Okla. Jan. 26, 2011). ..........10

*U.S. v. Sinito*,
  723 F.2d 1250 (6th Cir. 1983). ...................................................................27

*U.S. v. Testan*,
  424 U.S. 392 (1976)......................................................................................1

*United Black Firefighters v. Hirst*,
  604 F.2d 844 (4th Cir. 1979). .....................................................................25

*Vermont Agency of Nat. Res. v. U.S. ex rel Stevens*,
  529 U.S. 765 (2000)....................................................................................21

*Wade v. Reg'l Credit Ass'n*,
  87 F.3d 1098 (9th Cir.1996). .......................................................................31

*Walters v. McMahen*,
  95 F. Supp. 2d 350 (D. Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012). ...................27

*Warth v. Seldin*,
  422 U.S. 490 (1975)................................................................................20-21

*White v. University of California*,
  765 F.3d 1010 (9th Cir. 2014). .....................................................................9

*Williams v. Big Picture Loans, LLC*,
    929 F.3d 170 (4th Cir. 2019). ........................................................7-12, 14, 16-17, 34

*Wyandotte v. Kansas City*,
    200 F.Supp. 2d 1279 (D. Kan. 2002) ...........................................................................1

*Yashenko v. Harrah's NC Casino Co., LLC*,
    446 F.3d 541 (4th Cir. 2006). ............................................................................ 33-36

*Zych v. Wrecked and Abandoned Vessel*,
    960 F.2d 665 (7th Cir. 1992). ....................................................................................1

## Statutes

18 U.S.C. § 1961(6) .......................................................................................................26

18 U.S.C. § 1962(c) ............................................................................................... 25-27

18 U.S.C. § 1962(d) ............................................................................................... 25-27

18 U.S.C. § 1692e ........................................................................................... 30-32, 34

18 U.S.C. § 1692f ............................................................................................ 28-30, 32

## Other Authorities

Fed. R. Civ. P. 12(b)(1)...............................................................................................2, 6

Fed. R. Civ. P. 12(b)(2).........................................................................................2, 21, 24

Fed. R. Civ. P. 12(b)(3).........................................................................................2, 32, 33

Fed. R. Civ. P. 12(b)(6)...............................................................................................4

Fed. R. Civ. P. 12(b)(7)........................................................................................2, 32

Fed. R. Civ. P. 19 ..............................................................................................33, 36

Fed. R. Civ. P. 19(a)(2)(i) ..........................................................................................34

Fed. R. Civ. P. 19(b) ........................................................................................... 35-36

Matthew L.M. Fletcher, *In Pursuit of Tribal Economic Development as a Substitute for
Reservation Tax Revenue,* 80 N.D.L.Rev. 759 (2004*)*.......................................................8

## INTRODUCTION

As with the other named Defendants in this case, Plaintiffs have improperly named Specially-Appearing Defendant, ZenResolve, LLC ("ZenResolve"), despite Plaintiffs knowing that ZenResolve had no involvement whatsoever in the purported loans at issue, which were received from a tribally-owned online lending businesses of the federally-recognized Lac Du Flambeau Band of Lake Superior Chippewa Indians ("LDF"). A single Plaintiff, Kevin Williams, has made sparse allegations related to ZenResolve,[1] a now defunct business entity and has failed to demonstrate how ZenResolve acted in any capacity beyond that of a third-party vendor, let alone in a manner that would rise to the level of a class-action Racketeer Influenced and Corrupt Organizations ("RICO") lawsuit. 18 U.S.C. § 1961 *et seq.* ZenResolve has no role in making the loans that Plaintiffs' claim to be illegal, notwithstanding valid and binding agreements, pursuant to which Plaintiffs agreed to accept funds that were authorized legally under tribal law. Nor has ZenResolve (as is apparent from the Complaint), in its capacity as a third-party vendor, acted in any manner that would contravene federal consumer protection laws through prohibited communications with the Plaintiffs. Simply put, Plaintiffs have fallaciously lumped ZenResolve into a Complaint involving a different tribal business (ZenResolve's successor entity is wholly owned by a different federally-recognized Indian tribe, as set forth below), in relation to loans that ZenResolve had no role in approving or making.

---

[1] ZenResolve files its Motion to Dismiss for the limited purpose of contesting this Court's jurisdiction to preside over the allegations furthered against it. Such limited or special appearance shall not be construed as waiving any arguments that ZenResolve has with regard to its sovereign immunity as a wholly-owned business entity of a federally recognized Indian tribe or this tribunal's lack of jurisdiction. Indeed, courts have routinely recognized that a sovereign's limited appearance in legal proceedings for the purpose of seeking dismissal for lack of jurisdiction does not waive any claims to sovereign immunity. *See e.g., Kansas v. United States*, 249 F.3d 1213, 1220 (10th Cir. 2001); *Zych v. Wrecked and Abandoned Vessel*, 960 F.2d 665, 667-68 (7th Cir. 1992); *McClendon v. U.S.*, 885 F.2d 627, 630 (9th Cir.1989) ("[T]erms of [a sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit.'") (quoting *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 539 (10th Cir.1987) (quoting *U.S. v. Testan*, 424 U.S. 392, 399 (1976)). *Lac Du Flambeau Band of Lake Superior Chippewa Indians, et al. v. Norton*, 327 F.Supp. 2d 995, 1000 (W.D. Wis. 2004); *Wyandotte v. Kansas City*, 200 F.Supp. 2d 1279, 1287 (D. Kan. 2002); *Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238 (S.D. Ill. 2001).

As such, and as set forth more fully below, dismissal is warranted for five (5) distinct and equally compelling reasons: (1) under Fed. R. Civ. P. 12(b)(1) as this Court lacks subject matter jurisdiction over the claims against ZenResolve; (2) under Fed. R. Civ. P. 12(b)(2) because Plaintiffs' have not established personal jurisdiction over ZenResolve; (3) under Fed. R. Civ. P. 12(b)(3) because this forum is improper and the matter should be moved to arbitration; (4) under Fed. R. Civ. P. 12(b)(6) because the Complaint is devoid of any basis for relief against ZenResolve, let alone one under RICO; and, (5) under 12(b)(7) as this case cannot proceed absent parties that are necessary and indispensable to the claims that have been furthered.

## STATEMENT OF FACTS

The Big Valley Band of Pomo Indians of the Big Valley Rancheria ("Big Valley" or "Tribe") is a federally recognized Indian tribe located in Lake County, California.  As a sovereign Indian nation, the Tribe governs itself according to its own laws, and regulations, and possesses all the attributes of sovereignty. On November 30, 1935, Big Valley adopted its Constitution ("Big Valley Constitution") (and as subsequently amended in 1940), "to secure certain privileges and powers offered…by the Indian Reorganization Act." (**Exhibit A**, Big Valley Const., Preamble).  The Big Valley Constitution establishes its General Community Council as the ultimate governing body, and grants them the authority to delegate enumerated powers and particular authority to Tribal officers, which the Tribe did pursuant to General Community Council Resolution No. 030197-4. (**Exhibit A**, Big Valley Const. Art. 3 Sec. 1, Art. 4 Sec. 1(f); **Exhibit B**, General Community Council Resolution No. 030197-4).  The Resolution empowers the Tribal Business Committee ("Business Committee") – the General Community Council's elected officers – as Big Valley's governing body and bestows authority, in relevant

part, to enact law and manage the economic affairs of the Tribe (**Exhibit B**, General Community Council Resolution No. 030197-4).

The originally named Defendant ZenResolve, LLC, a Wyoming limited liability company ("ZenResolve I"), was merged out of existence earlier this year by operation of law. (**Exhibit C**, Articles of Merger of ZenResolve, LLC). ZenResolve, the successor in interest to ZenResolve I, is a wholly owned business of the Tribe that was formed by and under the laws of Big Valley on May 29, 2020, as an arm of Big Valley and was vested with Big Valley's privileges and immunities. (**Exhibit D**, Articles of Organization of ZenResolve, LLC; **Exhibit E**, Operating Agreement of ZenResolve, LLC; **Exhibit F**, Peak Servicing Resolution 05-29-2020-05, Approving Articles of Organization and Operating Agreement for ZenResolve, LLC).

ZenResolve serves as a third-party vendor for various tribal lending businesses owned by other tribes, including LDF, another federally-recognized tribe. ZenResolve is managed by its sole member, Peak Servicing, LLC ("Peak Servicing"), which is also wholly-owned and operated by Big Valley, formed under the laws of Big Valley as an arm of Big Valley and vested with Big Valley's privileges and immunities. (**Exhibit G**, Articles of Organization of Peak Servicing, LLC; **Exhibit H**, Operating Agreement of Peak Servicing, LLC; **Exhibit I**, Business Committee Resolution 05-28-2020-05, Approving Articles of Organization and Operating Agreement for Peak Servicing, LLC). The Tribe is the sole member of Peak Servicing, which is governed by a Board of Directors that reports to the Tribe's Business Committee. (**Exhibit H**, Operating Agreement of Peak Servicing, LLC, § 2.2).

As its parent company and manager, Peak Servicing retains all profits and losses of ZenResolve, subject to the rights and obligations of limited liability companies under Tribal law, which inure directly to the benefit of the Tribe. (**Exhibit E**, Operating Agreement of

3

ZenResolve, LLC, Sec. 7.1).  Peak Servicing's Articles of Organization establish the company's powers to distribute Peak Servicing revenues to the benefit of the Tribe.  Peak Servicing plainly has the mandate, authority, and obligation under Tribal law "to make distributions of Company's distributable cash to the Member [the Tribe]…" and "to make distributions to its Member [the Tribe] declared in cash or property."  (*See* **Exhibit G**, Articles of Organization of Peak Servicing Secs. 3.2(p) and (q)).  Simply put, the Tribe is ultimately the sole beneficiary of ZenResolve and Peak Servicing's business operations.  (*See* **Exhibit I**, Business Committee Resolution 05-28-2020-05).

### I.   Formation of ZenResolve

Big Valley formed ZenResolve to advance the Tribe's goals of economic self-sufficiency. Prior to this, and as part of the Tribe's strategy for economic diversification, Big Valley formed several entities under the holding company Peak Acquisition, LLC ("Peak Acquisition"), a wholly owned business of the Tribe, explicitly and purposely vested with its privileges and immunities.  Peak Acquisition's subsidiaries merged with several other servicing entities with whom the Tribe had preexisting relationships, including ZenResolve I.

One such Peak Acquisition subsidiary was Granite Acquisitions, LLC ("Granite Acquisitions"), a wholly owned business of the Tribe, formed as an arm of Big Valley and vested with Big Valley's privileges and immunities.  (**Exhibit J**, Articles of Organization of Granite Acquisitions, LLC; **Exhibit K**, Operating Agreement of Granite Acquisitions, LLC; **Exhibit L**, Peak Acquisition Resolution 05-29-2020-05, Approving Articles of Organization and Operating Agreement for Granite Acquisitions, LLC).  Granite Acquisitions merged with ZenResolve I and, upon the merger, all debts, obligations, and other liabilities of ZenResolve I vested in Granite Acquisitions in accordance with Wyoming law. *Id.*  Through operation of merger,

ZenResolve I ceased to exist, and Granite Acquisitions survived.   Subsequently, all of Granite Acquisitions' assets were assigned to the tribally-formed ZenResolve, which also assumed Granite Acquisitions' liabilities.  (**Exhibit M**, Petition for Transfer of Assets, Obligations, and Liabilities of Granite Acquisitions, LLC to ZenResolve, LLC; **Exhibit N**, Business Committee Resolution 06-01-2020-05, Approving Petition for Transfer of Assets, Obligations, and Liabilities of Granite Acquisitions, LLC to ZenResolve, LLC).  Pursuant to the terms of the Articles of Organization, the Tribe as Member is entitled to distribution of Peak Servicing's profits.  (*See* **Exhibit G**).

## II. Collection Activity on Loans Issued to Plaintiff Kevin Williams

It is alleged that Makwa LLC d/b/a Makwa Finance ("Makwa"), a wholly owned economic arm of LDF, issued a loan to Plaintiff Kevin Williams.  *See,* Compl., ¶ 104.  The Complaint further alleges that Makwa referred the Williams loan to ZenResolve I for collection on the outstanding balance.  *See,* Compl., ¶ 100.

The Complaint then alleges that ZenResolve I sent a letter to Plaintiff Williams on March 2, 2020, requesting payment on the outstanding loan balance.  Compl., ¶ 103.  In response to a letter from Plaintiff Williams disputing the validity of the debt, the Complaint alleges, through correspondence dated March 24, 2020, ZenResolve I explained the terms of the loan agreement agreed upon by Plaintiff Williams and Makwa and pursuant to these terms, the loan was valid under tribal law because it was issued by Makwa, an LDF entity owned and operated by LDF. Compl., ¶ 104).

Plaintiff Williams and two other Plaintiffs,[2] seeking to represent a class of plaintiffs, now bring suit alleging all Defendants, including ZenResolve I, acting in their individual capacities, violated two provisions of RICO by both participating, and conspiring to participate, in an

---

[2] Plaintiff Williams is the only plaintiff that has brought allegations related to ZenResolve I.

enterprise to collect unlawful debt.   Compl., Counts I, II.   Moreover, Plaintiff Williams specifically raises allegations against ZenResolve I for purported violations of two provisions of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., alleging both that ZenResolve I made false and misleading misrepresentations to Plaintiff Williams during its communications and that ZenResolve I somehow used unfair practices in collecting the debt because it was not valid under Georgia law.  Compl., Counts IV, V.

Each of these claims are meritless and must be dismissed for several independent and compelling reasons.   First, ZenResolve, as an arm and instrumentality of the Tribe, is immune from unconsented suit.   As such, this Court lacks subject matter jurisdiction over Plaintiffs' claims.   Second, Plaintiffs lack standing to bring suit under RICO because they have failed to allege a cognizable injury proximately caused by ZenResolve I, and further their claims cannot be redressed by ZenResolve.   Third, Plaintiffs have not established personal jurisdiction over ZenResolve.  Moreover, and related to Plaintiffs' lack of standing, Plaintiffs have failed to state a claim under both RICO and the FDCPA because the Complaint does not adequately allege the loans issued by LDF were "unlawful" or that ZenResolve I was part of an "enterprise."   The claims must also be dismissed because the Western District is not the proper venue for Plaintiffs' claims.   Finally, Plaintiffs have failed to join LDF Holdings an indispensable party necessary to the relief Plaintiffs seek.

## ARGUMENT

### I.   The Court Cannot Exercise Subject Matter Jurisdiction over ZenResolve Because it is Immune from Suit as an Arm of the Tribe.

A defense of sovereign immunity deprives the court of subject matter jurisdiction. *Global Mail Ltd. v. U.S. Postal Service*, 142 F.3d 208, 210 (4th Cir. 1998).  When a defendant challenges subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the district court is to

regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Howard v. Plain Green, LLC*, No. 2:17CV302, 2017 WL 3669565, at *2 (E.D. Va. Aug. 7, 2017), *report and recommendation adopted*, No. 2:17CV302, 2017 WL 3669096 (E.D. Va. Aug. 24, 2017).

Plaintiffs generally have the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019). However, when an entity asserts immunity as an arm of the tribe, the burden is allocated to the entity. *Williams*, 929 F.3d at 176. Once the entity has demonstrated that it is in fact an extension of the tribe, the burden shifts to plaintiffs to prove such immunity has been abrogated or waived. *Id.*

### A. Because ZenResolve is an arm of Big Valley, Plaintiffs' claims are barred by tribal sovereign immunity.

As sovereign governments, federally recognized Indian tribes possess common law immunity from suit. *Mich. v. Bay Mills Indian Cmty.*, 572 U.S. 782, 134 S. Ct. 2024, 2030 (2014). Tribal sovereign immunity has been recognized by the Supreme Court "for well over a century," as a "core attribute" of tribal sovereignty and remains fully intact unless expressly waived by the tribe or abrogated by Congress. *Id.* at 2030, 2037, 2040 ("[I]t is fundamentally Congress's job, not [the Courts], to determine whether or how to limit tribal immunity."). It is incontrovertible that as a federally recognized tribe, Big Valley is shielded from unconsented suit under the doctrine of tribal sovereign immunity. *Id.* at 2030–31 (2014) ("[A]bsent such an abrogation (or a waiver), Indian tribes have immunity even when a suit arises from off-Reservation commercial activity").

Tribal sovereign immunity is broad in scope and applies to economic instrumentalities of the tribal government, deemed "arms of the tribe." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006); *Howard*, No. 2:17CV302, 2017 WL 3669565, at *3-4 (E.D. Va. Aug. 7, 2017), *report and recommendation adopted*, No. 2:17CV302, 2017 WL 3669096 (E.D. Va. Aug. 24, 2017). The Supreme Court, as well as other courts, have consistently recognized the significance of immunity extending to tribally-owned commercial enterprises, as these enterprises are "a central means" of raising revenue to fund tribal governmental services.[3] *Bay Mills*, 134 S. Ct. at 2041, 2043 (Sotomayor concurring); *see also, Thomas v. Dugan*, 168 F.3d 483, at *1 (4th Cir. 1998); *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010); *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917, 920-921 (6th Cir. 2009); *Allen*, 464 F.3d at 1046; *Hagen v. Sisseton-Wahpeton Comty. College*, 205 F.3d 1040, 1043 (8th Cir. 2000); *Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Authority*, 207 F.3d 21, 29 (1st Cir. 2000). This judicial recognition highlights the purpose and necessity of extending tribal sovereign immunity to a tribe's commercial as well as governmental activities, even when they take place off Reservation lands. *See Bay Mills*, 134 S. Ct. at 2031; *Kiowa*, 523 U.S. at 755.

When determining whether an entity is an arm of the tribe entitled to immunity, the Fourth Circuit in *Williams* adopted a modified version of the six factors established in

---

[3] "[T]ribal economic development—often in the form of tribally owned and controlled businesses—is necessary to generate revenue to support tribal government and services." *Cash Advance and Preferred Cash Loans v. State*, 242 P.3d 1099, 1107 (Colo. 2010); relying on Matthew L.M. Fletcher, IN PURSUIT OF TRIBAL ECONOMIC DEVELOPMENT AS A SUBSTITUTE FOR RESERVATION TAX REVENUE, 80 N.D.L.Rev. 759 (2004). Indeed, Indian tribes are unique compared to other sovereigns in that "[t]ribal governments directly control or participate in commercial activities more frequently than other [types of] governments. . . . [T]he tribal organization may be part of the tribal government and protected by tribal immunity, even though it may have a separate corporate structure." *Id*. at 1183–84 (quoting William V. Vetter, Doing Business with Indians and the Three "S"es: Secretarial Approval, Sovereign Immunity, and Subject Matter Jurisdiction, 36 Ariz. L. Rev. 169, 174 (1994)). And, "[a]lthough the Supreme Court has expressed limited enthusiasm for tribal sovereign immunity, the doctrine is firmly ensconced in our law until Congress chooses to modify it." *Allen*, 464 F.3d at 1046; *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 757–60 (1998).

*Breakthrough*[4] by the Tenth Circuit. The factors must be balanced to determine whether immunity extends to a tribal entity and no single factor is determinative. *See Breakthrough*, 629 F.3d at 1191-96; *see also Williams*, 929 F.3d at 185.

Under the *Williams/Breakthrough* factors, ZenResolve is undoubtedly an arm of the Tribe and consequently entitled to sovereign immunity.

1.  Factor 1 - Method of Creation: ZenResolve was created by the Tribe pursuant to Tribal Law

In considering the "method of creation of the economic entities," the court focuses on the law under which the entities were formed. *Breakthrough*, 629 F.3d at 1191–92. Formation under tribal law weighs in favor of immunity. *Id.* at 1191; *see also White v. University of California*, 765 F.3d 1010, 1025 (9th Cir. 2014). In *Williams*, the Court found that the resolutions enacted by the tribal council forming the tribal business entities were the most important documents relating to the method of creation. *Williams*, 929 F.3d at 177-78. Further, in *Williams*, the Court recognized that if the entity was created "in part to reduce exposure to liability [that] does not necessarily invalidate or even undercut the Tribe's stated purpose, *i.e.*, tribal economic development." *Id.* at 179. The first *Breakthrough* factor plainly weighs in favor of ZenResolve as it cannot be disputed that ZenResolve was created by Big Valley and pursuant to Tribal law. (*See* **Exhibit F**).

First, the Business Committee enacted the Tribe's business organization laws (the "Big Valley Business Ordinance") pursuant to its authority under Article IV, Section 1(f) of the Big Valley Constitution.  (*See* **Exhibit A**).  The Business Committee created ZenResolve as a

---

[4] *Breakthrough* requires the court to look to six factors to determine whether an entity is an arm of a tribe: (1) the method of creation of the entity; (2) the purpose of the entity; (3) the entity's structure, ownership, and management, including the Tribe's control over the entity; (4) whether the Tribe intended for the entity to have sovereign immunity; (5) the financial relationship between the Tribe and the entity; and (6) whether the purposes of tribal sovereign immunity are served by granting sovereign immunity to the entity.  629 F.3d at 1187.

wholly-owned Tribal limited liability company pursuant to the Big Valley Business Ordinance. (**Exhibit F**, Peak Servicing Resolution No. 05-29-2020-05; **Exhibit O**, Big Valley Business Ordinance); *Breakthrough*, 629 F.3d at 1191-92; *Allen*, 464 F.3d at 1046; *Howard*, No. 2:17CV302, 2017 WL 3669565, at *3 (E.D. Va. Aug. 7, 2017), *report and recommendation adopted*, No. 2:17CV302, 2017 WL 3669096 (E.D. Va. Aug. 24, 2017); *Everette v. Mitchem*, 146 F. Supp. 3d 720, 724 (D. Md. 2015); *see also, e.g.*, *U.S. ex rel. Morgan Bldgs. & Spas, Inc. v. Iowa Tribe of Oklahoma*, No. CIV-09-730-M, 2011 WL 308889, at *3 (W.D. Okla. Jan. 26, 2011) (finding a tribal business formed by the tribal business committee under tribal law and the tribe's constitution weighed in favor of finding the tribal business was a subordinate economic entity entitled to sovereign immunity).  Big Valley is the ultimate member of ZenResolve, by virtue of Peak Servicing, as clearly set forth in all organizational documents and related Tribal legislation.  (**Exhibit D**, Articles of Organization of ZenResolve LLC; **Exhibit F**, Peak Servicing Resolution No. 05-29-2020-05; **Exhibit G**, Articles of Organization of Peak Servicing, LLC; **Exhibit I**, Business Committee Resolution No. 05-28-2020-05).

   2.  Factor 2 - Purpose: ZenResolve's purpose is to operate as a third-party vendor to further Big Valley's self-sufficiency and self-determination.

   The "purpose" factor includes "both the stated purpose for which the Entities were created as well as evidence related to that purpose."  *Williams*, 929 F.3d at 178-82.  The "purpose" factor under *Williams* requires identification of the Tribe's stated purpose(s) of the entities and whether the purpose(s) as stated by the Tribe are furthered by the entity.  *Id*. at 178-79.  "The stated purpose need not be purely governmental to weigh in favor of immunity as long as it relates to broader goals of tribal self-governance."  *Id*. at 178.  Further, the degree of fulfillment of the Tribe's purpose is not the issue so long as the purpose is "significantly" met.  *Id*. at 181.

Importantly, the Court in *Williams* noted in reversing the district court that "one of the primary purposes underlying tribal immunity is the promotion of tribal self-governance, which counsels against courts demanding exacting information about the minutiae of a tribe's budget." *Williams*, 929 F.3d at 179. "Even more importantly, policy considerations of tribal self-governance and self-determination counsel against second-guessing a financial decision of the Tribe. . . ." *Id*. at 181. This includes how a sovereign tribe such as Big Valley decides to finance a transaction, as tribes are often required to enter into creative financing arrangements because they lack the necessary capital to enter the market. *Id*. at 180 ("Indeed, the evidence suggests that the Tribe would not have been able to finance a loan operation on its own and thus entered a loan agreement with a non-tribal entity in order to obtain revenue both now and in the future.")

Specifically, ZenResolve's purpose is "[t]o engage in all business activities allowable pursuant to applicable law, including but not limited to consumer finance, loan servicing and loan collection." More generally, it operates:

> (1) to serve the social, economic, educational and health needs of the Tribe;
>
> (2) to create and stimulate the economy of the Tribe, provide Tribal revenues and enhance the Tribe's economic self-sufficiency and efforts related to self-determination;
>
> (3) to provide positive, long-term social, environmental and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects;
>
> (4) to generate revenues for the Company to utilize in furtherance of the purposes of the Company for the ultimate benefit of the Tribe and its members;
>
> (5) to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the Tribe including creation of subordinate entities; and
>
> (6) to work cooperatively with other Tribal corporations, limited liability companies or entities of the Tribe and to chart and to fulfill the long-term and immediate business goals of the Tribe.

(**Exhibit D**, Articles of Organization of ZenResolve, LLC; **Exhibit E**, Operating Agreement of ZenResolve, LLC, Sec. 3.1).

Thus, ZenResolve's role in Big Valley's greater economic development strategy is to serve as a third-party vendor and generate profits exclusively for Big Valley to help Big Valley meet its members' needs. Its mandate is to help Big Valley "enhance the Tribe's economic self-sufficiency and efforts related to self-determination" by ultimately providing an income stream for Peak Servicing (and thus distribution to the Tribe as Member) from the date of merger and into the future. (**Exhibit D**, Articles of Organization of ZenResolve, LLC, Sec. 3.1). ZenResolve achieves this purpose.

Further, Big Valley formed ZenResolve and negotiated and completed the related merger as part of a larger effort by the Tribe to bring various vendor services in-house to make its businesses more efficient, to eliminate third-party payments, and to increase revenues to the Tribe. *Id.*

It is clear that ZenResolve's and Peak Servicing's purpose is to generate essential revenues to further Big Valley's self-sufficiency, and its purposes are being achieved, thereby demonstrating that ZenResolve serves as an extension of the Tribe.

  3.  Factor 3 - Control: The Tribe controls ZenResolve

"The third *Breakthrough* factor examines the structure, ownership, and management of the entities, 'including the amount of control the Tribe has over the entities.'" *Williams*, 929 F.3d at 182 (quoting *Breakthrough*, 629 F.3d at 1191). Relevant to this factor are the entities' formal governance structure, the extent to which the entities are owned by the tribe, and the day-to-day management of the entities. *Williams*, 929 F.3d at 182 (internal citations omitted). Further, an entity's decision to outsource management in and of itself does not weigh against

tribal immunity. *Id*. at 182. What is important is that the structure ensures the Peak Servicing Board, as manager of ZenResolve, is subject to oversight by the Business Committee. *Id*.

ZenResolve is 100% owned by Big Valley through Big Valley's ownership of Peak Servicing. Big Valley is the sole member of Peak Servicing, and, by extension, the ultimate sole owner of ZenResolve. (**Exhibit G**, Articles of Organization of Peak Servicing, LLC; **Exhibit D**, Articles of Organization of ZenResolve, LLC, Sec. 6). Peak Servicing "is vested with all powers necessary to carry out the day-to-day business and activities of [ZenResolve] and [has] control and management of the business and activities of [ZenResolve]". (**Exhibit D**, Articles of Organization of ZenResolve LLC, Sec. 8. Because Big Valley is the sole member of Peak Servicing, the Business Committee ultimately controls Peak Servicing and consequently ZenResolve.

Through appointment and removal of the Board of Directors of Peak Servicing, the Business Committee has ultimate control over the operations of Peak Servicing and consequently ZenResolve. (**Exhibit H**, Operating Agreement of Peak Servicing, LLC, Sec. 2.2). The Tribe prudently negotiated a way to ensure sound business decisions at the Peak Servicing level by appointing service industry experts to serve on the Board of Directors side-by-side with members of the Tribe. (**Exhibit I**, Business Committee Resolution 05-28-2020-05). The Board structure requires consensus building among directors in order to change the regular operation of business. *Id*. Thus, the Tribe's consent is required to alter the business or deviate from the Tribe's approved policies and practices. *Id*.

While Peak Servicing has a Board of Directors and an executive team, the Business Committee ultimately oversees the Board of Directors that serves as Peak Servicing's manager through appointment and removal of members to the Board, quarterly meetings and regular

13

financial reports regarding business operations, and exercising powers specifically reserved to the Business Committee.  (*Id.; See also* **Exhibit G**, Articles of Organization of Peak Servicing, LLC, Sec. 3.5).

The Business Committee retains exclusive control over certain critical activities of Peak Servicing.  Only "[t]he Business Committee, through the express and unequivocal enactment of a Resolution . . . in its sole and absolute discretion on a case-by-case basis, may approve and authorize [Peak Servicing] to:

> 1) waive the sovereign immunity of the Tribe from suit or consent to any jurisdiction in any state, federal or tribal court, including the Tribe's Court;
>
> (2) allow recourse to any assets of the Tribe that are non-Company assets;
>
> (3) expressly or implicitly enter into agreements of any kind on behalf of the Tribe;
>
> (4) pledge the credit of the Tribe;
>
> (5) dispose of, pledge, or otherwise encumber real or personal property of the Tribe;
>
> (6) enter into any sublease or other encumbrance or other instrument respecting lands leased to Company by the Tribe."

(**Exhibit G**, Articles of Organization of Peak Servicing, LLC, Sec. 3.5).  The Tribe has the ultimate control over Peak Servicing and ZenResolve by virtue of its organizational documents and the Board's resulting management.

### 4. Factor 4 - Intent to Vest Immunity: The Tribe intended to vest ZenResolve with its sovereign immunity.

This factor focuses *solely* on whether the Tribe intended to provide its immunity to the ZenResolve.  *Williams*, 329 F.3d at 184.  For both the creation factor and intent to share immunity factor the *Williams* Court considered only "the law under which the entities were formed."  *Id*. at 177 (citing *Breakthrough*, 629 F.3d at 1191–92).  In *Williams*, based solely on

the undisputed fact that the tribal entities were created under tribal law, the Court held this factor weighed in favor of tribal sovereign immunity for the tribal entities as "[t]he Tribe unequivocally stated its intention to share its immunity in [the tribal entities'] formation documents." *Id*. at 184.

The creation documents here are indisputable. ZenResolve's and Peak Servicing's formation documents establish the same motivations by Big Valley as in the foregoing cases finding immunity.  For example, ZenResolve's Articles of Organization state:

> ZenResolve shall have all of the rights and privileges afforded the Tribe, including but not limited to the fullest measure of the Tribe's sovereign immunity, which is extended to [ZenResolve] as if the Tribe itself were engaged in the activities undertaken by [ZenResolve].

(**Exhibit D**, Articles of Organization of ZenResolve, LLC, Sec.  4.2).  Big Valley's Business Ordinance, pursuant to which ZenResolve was organized, explicitly confers

> All of the rights, privileges and immunities of the Tribe concerning federal, state, or local taxes, regulations and jurisdiction, including but not limited to the Tribe's sovereign immunity from suit . . .[on]all Tribal Companies to the same extent that the Tribe would have such rights, privileges and immunities if it engaged in the activities undertaken by the Tribal Company.

(**Exhibit O**, Big Valley Business Ordinance, Sec. 3.2).  Additionally, the resolution creating ZenResolve states:

> as a wholly owned business of the Tribe, ZenResolve, LLC will be vested with all of the privileges and immunities of the Tribe afforded to all Tribal limited liability companies under Chapter 3, Section 3.2 of the Business Ordinance.

(**Exhibit F**, Peak Servicing Resolution No. 05-29-2020-05).

As such, there is no doubt that all of ZenResolve's creation documents contain very similar provisions to those entities analyzed in *Williams*, *Breakthrough*, *Howard*, and *Everette*, crystalizing Big Valley's intent to vest ZenResolve with all aspects of sovereignty and sovereign immunity. *See Williams*, 929 F.3d 170 (4th Cir. 2019); *Breakthrough*, 629 F.3d 1173 (10th Cir. 2010); *Howard*, No. 2:17CV302, 2017 WL 3669565 (E.D. Va. Aug. 7, 2017), *report and recommendation adopted*, No. 2:17CV302, 2017 WL 3669096 (E.D. Va. Aug. 24, 2017); *Everette*, 146 F. Supp. 3d 720 (D. Md. 2015).   Thus, this factor also favors a finding of immunity.

5.   Factor 5: ZenResolve generates material benefit to Big Valley.

The financial relationship between Zen Resolve and Big Valley weighs compellingly in favor of tribal sovereign immunity.  Both the Ninth and Tenth Circuits have emphasized that "the economic benefits produced by the [tribal business] inure to the Tribe's benefit because [the entity's] articles of incorporation state that all capital surplus from the [entity] shall be deposited in the Tribe's treasury and because the Tribe, as the sole shareholder, enjoys all of the benefits of an increase in the [entity]'s value." *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 726 (9th Cir. 2008); *Allen*, 464 F.3d at 1047; *Breakthrough*, 629 F3d at 1195; see also *Howard*, No. 2:17CV302, 2017 WL 3669565, at *4 (E.D. Va. Aug. 7, 2017), *report and recommendation adopted*, No. 2:17CV302, 2017 WL 3669096 (E.D. Va. Aug. 24, 2017); *Everette*, 146 F. Supp. 3d at 725.

Here, ZenResolve's profits and losses are allocated to Peak Servicing, subject to the rights and obligations of limited liability companies under Tribal law, which, in turn, inure to the direct benefit of the Tribe.  (**Exhibit E**, Operating Agreement of ZenResolve, LLC, Sec. 7.1).

Furthermore, any money judgment against ZenResolve would directly impact funds to the Tribe and therefore, to Tribal government operations benefitting Tribal members. A money judgment against ZenResolve would necessarily impact Peak Servicing revenues, which would materially impact the Tribe's expected (and actual) profit distributions from Peak Servicing. These profits can be used to retire debt, fund government services, and provide direct benefits to Tribal members.  Loss of this income source would materially impact the Tribe and its ability to operate both Peak Servicing and its government.  Big Valley is the ultimate beneficiary of ZenResolve's profits.  As such, this factor is clearly satisfied.

6. <u>Factor 6: The purpose of sovereign immunity is furthered by extending Big Valley's sovereign immunity to ZenResolve.</u>

In *Williams*, the Court recognized that the purpose of immunity being furthered by extending immunity is a concept that bleeds into every other factor and is an overarching concern.[5]  929 F.3d at 177.  In *Breakthrough*, the court considered whether "the policies underlying tribal sovereign immunity and its connection to tribal economic development . . . are served by granting immunity to the economic entities."  629 F.3d at 1187 (citing *Dixon v. Picopa Const. Co.,* 772 P.2d 1104, 1111 (Ariz. 1989) ("Tribal immunity should only apply when doing so furthers the federal policies behind the immunity doctrine.")); *Howard,* No. 2:17CV302, 2017 WL 3669565 at *11–12 (E.D. Va. Aug. 7, 2017), *report and recommendation adopted*, No. 2:17CV302, 2017 WL 3669096 (E.D. Va. Aug. 24, 2017).  "Those policies include protection of the tribe's monies, as well as preservation of tribal cultural autonomy, preservation of tribal self-determination, and promotion of commercial dealings between Indians and non-Indians."

---

[5] *Williams* utilized the first five factors, while the sixth factor "inform[s] the entire analysis."  929 F.3d at 177; ("The sixth *Breakthrough* factor, whether the purposes underlying tribal sovereign immunity would be served by granting an entity immunity, overlaps significantly with the first five *Breakthrough* factors. Thus, the extent to which a grant of arm-of-the-tribe immunity promotes the purposes of tribal sovereign immunity is too important to constitute a single factor and will instead inform the entire analysis."); *Breakthrough*, 629 F.3d at 1191.

*Breakthrough*, 629 F.3d at 1187–88 (internal citations and quotations omitted).  Similarly, in *Everette*, the court found that extending sovereign immunity to a tribe's lending businesses protects the tribe's treasury, which is "one of the historic purposes of sovereign immunity in general." *Everette*, 146 F. Supp. 3d at 725.  The same is true here.

ZenResolve was created explicitly to promote tribal self-governance.  Specifically, ZenResolve was created to help provide for the social, economic, educational, and health needs of the Tribe, to stimulate the Tribe's economy, provide revenues, fulfill the economic goals of the Tribe in both the short- and long-term.  (See **Exhibit D**, Articles of Organization of ZenResolve, LLC; **Exhibit E**, Operating Agreement of ZenResolve, LLC, Sec. 3.1).  By extending the Tribe's sovereign immunity to ZenResolve, the goal was to protect the Tribal treasury, preserve its cultural autonomy and self-determination, and promote the commercial dealings of the Tribe.  Accordingly, this factor weighs in favor of immunity and should inform the entire arm-of-the-tribe analysis.

### II.  Plaintiffs lack standing under Article III to bring RICO claims against ZenResolve

### A.  Legal Standard

In addition to the sovereign immunity that prevents this lawsuit against ZenResolve, Plaintiffs also lack standing under Article III of the United States Constitution to bring RICO claims against ZenResolve.  Article III limits the jurisdiction of federal courts to justiciable cases and controversies.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  One way to determine which cases are justiciable is through the doctrine of standing.  *See Id*.

The Supreme Court has made it clear that standing requires three elements.  First, the plaintiff must have suffered an "injury in fact" which must be "concrete and particularized" and "actual or imminent."  *Id*. at 560.  Second, "there must be a causal connection between the injury

and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id*. (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).  Third, it cannot be "merely 'speculative'" that the injury will be 'redressed by a favorable decision' but must be "'likely.'" *Id*. (quoting *Simon*, 426 U.S. at 38).  The burden to establish these elements falls on the party invoking federal jurisdiction.  *Id*.

Against these standards, it is clear that Plaintiffs unquestionably lack standing to bring claims under RICO against ZenResolve.  Plaintiffs have failed to allege facts sufficient to show that their alleged injuries resulting from their alleged loans are traceable in any manner whatsoever to ZenResolve, and further, ZenResolve cannot under any scenario provide redressability.

### B.  Plaintiffs' alleged injuries are not traceable to ZenResolve

Causation requires a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Simon*, 426 U.S. at 41–42; *Defenders of Wildlife*, 504 U.S. at 560.    In order to request the relief they seek, Plaintiffs cannot simply allege that they have been harmed in the past – rather, they must demonstrate that they have suffered "present adverse effects" due to ZenResolve's actions.  *Bryant v. Cheney*, 924 F.2d 525 (4th Cir. 1991) (internal citations omitted); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp*, 204 F.3d 149, 162-63 (4th Cir. 2000).

Here, the Complaint is patently devoid of any specific or particularized facts giving rise to an injury under RICO that was proximately caused by ZenResolve.  In conclusory fashion, Plaintiffs allege that Defendants were involved in a scheme to collect debt that is unlawful under

Virginia and Georgia usury laws.   While Plaintiffs provide basic allegations about communications between Plaintiff Williams and ZenResolve, Plaintiffs failed to plead what, if any amount, was actually collected by ZenResolve after the delinquent debt was received by ZenResolve, or even that such communications caused Plaintiff Williams to pay any of the debt at issue.   In fact, Plaintiffs failed to allege they were harmed by any of ZenResolve's alleged conduct. Plaintiffs only allege "legal conclusions couched as factual allegations" such as the loans they obtained "included interest rates far in excess of twice the enforceable rates in their states" and that they were injured by "the payment of unlawful and usurious rates of interest." *Kimberlin v. Hunton & Williams LLP*, No. GJH-15-723, 2016 WL 1270982, at *11 (D. Md. 2016); Compl. ¶¶ 124, 129, 140.  Such conclusory allegations by Plaintiffs are a blatant disregard of the factual elements required to bring the pending claims against ZenResolve.   Given that these conclusory allegations are completely "devoid of any reference to actual events," and Plaintiffs have failed to allege a cognizable injury, let alone one caused by ZenResolve.  As such, Plaintiffs lack standing to bring claims against ZenResolve.  *Kimberlin*, No. GJH-15-723, 2016 WL 1270982, at *11 (quoting *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *2 (D. Md. 2015)).

### C.  ZenResolve cannot redress Plaintiffs' alleged injuries.[6]

---

[6] Further Plaintiffs' RICO claims against ZenResolve are not redressable because they only seek damages from ZenResolve in its individual capacity and ZenResolve cannot act in an individual capacity. The redressability requirement for Article III standing "ensures that a plaintiff personally would benefit in a tangible way from the court's intervention." *Gaston Copper*, 204 F.3d at 162 (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975) (internal quotations omitted)).  An injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."   *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)).  Even if the Court found that Plaintiffs alleged a cognizable injury under RICO, Plaintiffs seek redress against ZenResolve that is unavailable because ZenResolve is an entity that cannot act in an "individual capacity." Compl., ¶¶ 119, 130, 143; Prayer for Relief ¶¶ (C), (D).  Counts I and II explicitly state "(Class Claims: All Plaintiffs Against All Defendants in their Individual Capacities Only)."  Plaintiffs do not allege any conduct on the part of any employees or officers of ZenResolve or moreover, how ZenResolve, a limited liability company, can act or pay damages in an "individual capacity."  As such, the requested relief is unavailable and Plaintiffs claims cannot be redressed.  Because Plaintiffs lack standing, Counts I and II should be dismissed as to ZenResolve.

The third requirement for Article III standing is redressability, which "ensures that a plaintiff personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508 (1975). To put it simply, it must be shown that the "requested relief will remedy the alleged injury in fact." *Vermont Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 771 (2000).

The Complaint alleges collection of unlawful debt, seeks a declaration that the loans are void and seeks damages related to collections of such loans. However, the Complaint's factual allegations make plain that ZenResolve is neither the originator of the loans nor the owner of record. As such, ZenResolve cannot provide the relief Plaintiffs seek.[7] Moreover, as noted above, Plaintiffs do not allege ZenResolve obtained payment on any delinquent loans placed with it from Makwa, foreclosing the possibility of compensatory damages or equitable remedies like disgorgement or restitution.

Thus, because Plaintiffs cannot satisfy the requirements for standing under Article III, the claims against ZenResolve must be dismissed for lack of subject matter jurisdiction.

### III.   Plaintiff has failed to establish that this Court can exercise personal jurisdiction over ZenResolve

In addition to lack of subject matter jurisdiction over ZenResolve, this Court also lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

#### A.   Standard of Review Under Fed. R. Civ. P. 12(b)(2)

A plaintiff bears the burden of proof for the exercise of personal jurisdiction over a non-resident defendant and must allege sufficient facts within the Complaint to make out a *prima facie* showing of jurisdiction. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,

---

[7] The relief Plaintiffs ultimately seek is against Makwa. Unfortunately, Plaintiffs have not named Makwa as a defendant, presumably to attempt to sidestep sovereign immunity.

334 F.3d 390, 396 (4th Cir. 2003) ("When…a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction."); *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *Edwards v. Schwartz*, 378 F.Supp.3d 468, 487 (W.D. Va. 2019).

To bear this burden and establish personal jurisdiction over ZenResolve under the Virginia long-arm statute,[8] Plaintiffs must show that each of them has had sufficient minimum contacts with Virginia such that requiring ZenResolve to defend in this forum "does not offend traditional notions of fair play and substantial justice" under the Fourteenth Amendment. *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). In the Fourth Circuit, to establish minimum contacts for purposes of comporting with the Fourteenth Amendment, a plaintiff must show (1) that each defendant purposefully availed themselves of the privilege of conducting activities in Virginia, (2) that the plaintiffs' claims arose out of defendants' activities directed at Virginia, and (3) that the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Plaintiffs must satisfy the first prong – showing each defendants' activities within the forum to establish minimum contacts – before courts will analyze whether those activities gave rise to Plaintiffs' claims and whether the exercise of personal jurisdiction is reasonable. *Id.* at 278-79; *Tatoian v. Andrews*, 100 F.Supp.3d 549, 553 (W.D. Va. 2015) ("A court considers the second and third prongs of this test only if each preceding prong is satisfied."). Among other things, courts in the Fourth Circuit consider whether the defendant maintains offices or agents or owns property in the forum state, conducts business in the forum state, contractually agreed to perform in the forum or that the law of the forum would govern the dispute, and the nature and

---

[8] Plaintiffs do not allege that ZenResolve has had continuous and systematic contacts with Virginia to support general jurisdiction.

extent of communications with residents of the forum relating to the claim. *Consulting Eng'rs Corp.*, 561 F.3d at 278; *Perdue Foods LLC v. BRF S.A.,* 814 F.3d 185, 189 (4th Cir. 2016).

**B. Plaintiffs Cannot Establish Minimum Contacts Between ZenResolve and Virginia, or Any Connection Between ZenResolve's Alleged Activities and Injuries in Virginia**

ZenResolve lacks sufficient minimum contacts with Virginia to establish specific personal jurisdiction under the Virginia long-arm statute. As such, the inquiry ends there, and the Court cannot exercise personal jurisdiction over ZenResolve. *Noble Sec., Inc.*, 411 F. Supp, 2d at 530.

The Complaint alleges virtually no conduct by ZenResolve, and no conduct whatsoever by ZenResolve that took place in or was directed at Virginia. Without any allegation of conduct by ZenResolve in or directed at Virginia, Plaintiffs cannot meet their burden of showing that each has sufficient minimum contacts with the forum, and therefore, cannot establish personal jurisdiction. *Perdue Foods*, 814 F.3d at 191 ("Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just.") (quoting *Consulting Eng'rs Corp*., 561 F. 3d at 277-78).

Furthermore, Plaintiffs would never be able to establish sufficient minimum contacts between ZenResolve and Virginia. ZenResolve does not maintain an office, have a place of business, or registration to do business in Virginia. *See* Compl., ¶ 14. Nor does it maintain a bank account, telephone, post-office box, or employees who maintain an office in Virginia. And it further does not own real or personal property in Virginia or have a registered agent in Virginia. Moreover, the activities of which a single Plaintiff, Kevin Williams, alleges legal violations against ZenResolve, has no connection whatsoever with Virginia. *Id*. ¶ 100-109.

Indeed, both Plaintiff Williams and the communication that he alleges was received from ZenResolve, took place in Georgia.  *Id.* ¶ 101-104.  Therefore, on this basis alone, the Court should dismiss the claims of Plaintiff Williams as alleged against ZenResolve.  *See Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773, 1781 (2017) (holding that the non-resident plaintiffs could not establish specific personal jurisdiction over the defendant, because there must be "a connection between *the forum* and the specific claims at issue") (emphasis added).

In short, because a finding of either general or specific personal jurisdiction has not and cannot be alleged as to ZenResolve, this action cannot proceed and should be dismissed with prejudice under Rule 12(b)(2) in relation to ZenResolve.

## IV.   Plaintiffs Have Failed to State a Claim Under Both RICO and the FDCPA Involving ZenResolve

Allegations in a complaint "must be stated in terms that are neither vague nor conclusory" and must, when taken as true, "state a claim to relief that is plausible on its face." *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220-21 (4th Cir. 1994); *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Moreover, the allegations "must be enough to raise a right to relief above the speculative level." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 71 (4th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citation omitted).

Well-pleaded factual allegations in a complaint should be taken as true and construed in favor of the plaintiffs. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005).  However, courts do not have to accept as true "a legal conclusion couched as a factual allegation" or conclusory allegations devoid of any

reference to actual events.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The determination of whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft*, 556 U.S. at 679.  Plaintiffs cannot simply further vague allegations, especially when bringing claims against an arm of a sovereign government.  Moreover, this determination is exceedingly important when RICO is alleged because RICO is "an unusually potent weapon—the litigation equivalent of a thermonuclear device" and the mere assertion of RICO "has an almost inevitable stigmatizing effect on those named as defendants." *See Moss v. BMO Harris Bank, N.A*., 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017).

**A.  Plaintiffs have failed to state a claim under RICO.**

Plaintiffs fail to sufficiently plead allegations under RICO against ZenResolve and as such the claims should be dismissed.  Specifically, Plaintiffs allege they received loans in amounts that exceeded limits set by Virginia and Georgia law and the licensing requirements of those states.  Compl., ¶¶ 18-19.  According to Plaintiffs, these alleged violations of state law give rise to violations of 18 U.S.C. § 1962(c), for "the collection of unlawful debt," and 18 U.S.C. § 1962(d), for "conspiring to violate § 1962(c)." *Id*. at ¶¶ 122, 139.  This is inaccurate.

1.  Plaintiffs failed to state a claim for relief under 18 U.S.C. § 1962(c) because the Complaint does not allege that ZenResolve participated in the operation or management of the alleged enterprise or that they collected unlawful debt.

To state a claim for relief under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity or collection of unlawful debt. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  With regard to the conduct element, a plaintiff must allege that the defendant "participated in the operation or management

of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  Further, to establish liability under RICO, a plaintiff must assert that the defendant's conduct was the proximate cause of their injuries.  *Id.*; *Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. 15-3435, 2018 WL 3585069, at *5 (E.D. Pa. July 26, 2018), *appeal docketed*, No. 18-2862 (3d Cir. Aug. 22, 2018); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).

In addition, liability under 18 U.S.C. § 1962(c) "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs' not just in their own affairs." *Reves*, 507 U.S. at 185.  As such, RICO requires plaintiffs allege and prove the existence of both a "person" and an "enterprise" working in concert.  Plaintiffs fail to meet this threshold burden.

The Complaint fails to allege that ZenResolve participated in the "operation or management" of the alleged "enterprise," purportedly "established" by LDF Holdings, LDF Business Development Corp., and LDF (neither of which are parties to the action).  Compl., ¶ 118.  Plaintiffs only attempt to forge a connection between ZenResolve and the enterprise in a conclusory statement that "ZenResolve agreed to the collection of unlawful debt when it agreed to pursue collections on Mr. Williams[sic] account."  Compl., ¶ 109.   This is worefully inadequate to state a claim for RICO against ZenResolve because it does not (and cannot) credibly assert that ZenResolve operates or manages Makwa's business or the alleged "enterprise."  The Complaint notes that ZenResolve operates as a third-party vendor with whom Makwa places delinquent debt.  That alone does not support the instant RICO allegations.[9]

---

[9] RICO defines "unlawful debt" as debt that is "unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury." 18 U.S.C. § 1961(6).  No federal law designates particular interest rates as usurious, *see, e.g.*, 12 U.S.C. §§ 85, 5517(o), and the only other law that governs plaintiffs' loan agreement is LDF's law.  As such, Plaintiffs fail to demonstrate that the loans made by LDF's business entities constitute "unlawful debt" under RICO.

2.  <u>Plaintiffs similarly fail to state a claim for relief under 18 U.S.C. § 1962(d).</u>

To state a claim for relief under § 1962(d), Plaintiffs must (1) successfully allege a violation of § 1962(c) and allege (2) "the existence of an illicit agreement to violate [§ 1962(c)]," (3) the period of conspiracy, (4) the object of the conspiracy, (5) the certain actions of the alleged conspirators taken to achieve that purpose, and (6) knowledge on the part of each alleged conspirator. *U.S. v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983); *Glessner v. Kenny*, 952 F.2d 702, 714 (3d. Cir. 1991) (quoting *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d. Cir. 1989), *abrogated on other grounds*, 46 F.3d 258, 260 (3d. Cir. 1995)).

Plaintiffs' claim under § 1962(d) fails for two reasons: (1) Plaintiffs failed to state a claim under § 1962(c), and (2) they have not pled the elements of a conspiracy.  First, because Plaintiffs failed to state a claim under § 1962(c), as discussed above, their claims under § 1962(d) necessarily fail, as they are predicated on a violation of § 1962(c).  *See Aces High Coal Sales, Inc. v. Comty. Bank & Trust of West Georgia*, 768 Fed. Appx. 446, 459 (6th Cir. 2019) (affirming dismissal of a claim under § 1962(d) when the plaintiffs failed to adequately allege a violation of § 1962(c)); *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) (holding that an alleged conspiracy under § 1962(d) failed when the plaintiffs failed to plead the requisite elements under § 1962(c)).  Next, Plaintiffs' allegations that an "illicit agreement" existed between the parties to violate § 1962(c) is entirely speculative (and false), based only "upon information and belief" of the Plaintiffs.  Compl., ¶ 55.  *Walters v. McMahen*, 795 F. Supp. 2d 350, 356 (D. Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012) (finding plaintiffs' allegations of conspiracy pled "on information and belief alone" relied "heavily on conjecture" and "[did] not advance[] their allegations beyond a 'speculative level'").  As such, Plaintiffs' vague and scant allegations fail to meet the required standard under § 1962(c).

**B.  Plaintiffs Have Failed to Properly Allege a Violation of the FDCPA.**

Generally, to state a claim for relief under the FDCPA, a plaintiff must allege (1) they have been the object of collection activity arising from a consumer "debt," (2) the defendant is a "debt collector," and (3) the defendant, "in connection with" plaintiff's debt, has "engaged in debt collection activity prohibited by the FDCPA."  *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F.Supp.2d 502, 524 (D. Md. 2013).  A "debt" is defined as an obligation "to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  16 U.S.C. § 1692a(5).  Thus, "to establish a claim under the FDCPA, plaintiffs must allege and prove that the subject of the debt is primarily for 'personal, family, or household purposes.'"  *Alston v. Calvary Portfolio Services, LLC*, No. 8:12–cv–03589–AW, 2013 WL 665036, at *2 (D. Md. 2013); *See Boosahda v. Providence Dane LLC*, 462 Fed. Appx. 331, 335 (4th Cir. 2012).

As a primary matter, Plaintiff Williams has failed to allege that the loans he received from Makwa were "primarily for personal, family, or household purposes."  Therefore, Plaintiff Williams has failed to allege ZenResolve's alleged activities arose from a consumer debt and thus, has failed to state a claim under the FDCPA.  Furthermore, Plaintiff Williams has failed to adequately allege that the communication from ZenResolve was prohibited by the FDCPA i.e., that it was false, misleading, or deceptive under § 1692e or unfair or unconscionable under § 1692f.  While the complaint makes a legal conclusion that disclosing LDF's ownership in the loan and reiterating the terms of the executed loan agreement somehow was misleading or deceptive as defined in the FDCPA, which it was not, the assertion is conclusory and circuitous.  Plaintiff Williams asserts: (1) ZenResolve attempted to collect a debt on behalf of Makwa, (2)

ZenResolve's communication cited terms from Plaintiff Williams' executed loan agreement that were "misleading," and (3) the communications were "misleading" because Plaintiff Williams seeks declaratory judgment that the loan is unlawful.  Plaintiff Williams cannot use the ultimate relief sought in the Complaint to circumvent the requirements of FDCPA and conjure up an independent FDCPA claim.  Plaintiff Williams seeks to impermissibly bootstrap his allegations that the loan issued to him violated Georgia law to his claims under the FDCPA.  Based on the foregoing, Plaintiff Williams has clearly failed to state an FDCPA claim against ZenResolve.

1. <u>Plaintiff Williams Fails to Adequately Allege that ZenResolve's Communications were false, deceptive, or misleading under 15 U.S.C. § 1962e.</u>

Under 15 U.S.C. § 1962e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The statute goes on to provide a non-exhaustive list of conduct that would violate this standard.  *See* 15 U.S.C. § 1692e(1)-(16).  Allegations under this provision are assessed under an objective standard "based upon how the least sophisticated consumer would interpret the allegedly offensive language." *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385, 394-95 (4th Cir. 2014).  An alleged misrepresentation must also be "material" i.e., "important in the sense that they could objectively affect the least sophisticated consumer's decision-making." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014).

The Complaint alleges generally that ZenResolve violated § 1692e, yet fails to allege nay violations of the enumerated conduct.  The Complaint references three separate communications from ZenResolve to Plaintiff Williams: (1) a letter on or around November 1, 2019 representing that Plaintiff Williams owed an outstanding balance on his loan of $1,512.57; (2) a letter dated March 2, 2020 representing the same; and (3) a letter dated March 24, 2020 representing that

Plaintiff Williams's loan was governed by the laws of the tribe and not the laws of any state or other jurisdiction, issued in response to a communication from Mr. Williams disputing that the debt was valid.  Compl., ¶¶ 102-104.  The Complaint alleges that because Plaintiff Williams's loan was "void under Georgia law," the representations made by ZenResolve with respect to the outstanding balance owed by Plaintiff Williams were "false and misleading*." Id.* at ¶¶ 106-107. Additionally, Plaintiffs allege that because tribes "are subject to laws of general applicability when conducting business outside the reservation," it was false and misleading for ZenResolve to represent that Plaintiff Williams's loan was governed by tribal law in its March 24, 2020 letter.  *Id.* at ¶ 108.

 Here, Plaintiff Williams failed to adequately allege that ZenResolve's communication to Plaintiff Williams relaying the outstanding balance on his loan was false or misleading, the Complaint simply concludes that it was.  Merely asserting a legal conclusion in a complaint is insufficient to meet Plaintiffs' pleading requirements.  *Papasan*, 478 U.S. at 286.

2.  Mr. Williams Fails to Adequately Allege that ZenResolve Engaged in Unfair or Unconscionable Means

Under 15 U.S.C. § 1962f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  As with § 1692e, a non-exhaustive list of conduct that would violate this standard is provided and includes "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1) – (8).

As with Plaintiff Williams's claim under § 1692e, the Complaint fails to adequately allege that ZenResolve used unfair means in attempting to collect on his loan under § 1692f. Plaintiff Williams assets almost no allegations with respect to this section except in a legal conclusion that merely recites the statute.  Compl., ¶ 179 ("ZenResolve violated § 1692f by using

30

unfair practices to collect on the invalid loans.").  Such an allegation is wholly conclusory and insufficient to support his claim.  *Papasan*, 478 U.S. at 286.

Communications to verify the existence of debt, without more, does not constitute unfair or unconscionable means.

     3.   <u>Plaintiff Williams Impermissibly Attempts to Use Inapplicable State Law as a Basis for an FDCPA claim.</u>

Plaintiff Williams's claims under the FDCPA are a blatant attempt to have this Court rule on the legality of the loans under the guise of the FDCPA without the Court examining the loan agreement's applicable law or LDF's sovereign right to contract with third parties pursuant to tribal law.  However, "[t]he FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law."  *Bentrud v. Bowman, Heintz, Boscia & Vivian, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015) (citing *Beler v. Blatt, Hasenmiller, Leibsker & Moore,* LLC, 480 F.3d 470, 474 (7th Cir. 2007)).  Every circuit court that has encountered the issue has concluded the same; "violations of state and local debt collection statutes are not per se actionable under the FDCPA."  *Gallego v. Northland Group Inc.*, 814 F.3d 123, 127 (2d. Cir. 2016); *See Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir.2014) (stating that "Congress did not turn every violation of state law into a violation of the FDCPA"); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir.2010) (holding that "the conduct or communication at issue must also violate the relevant provision of the FDCPA," and not merely a state-law provision); *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004) (stating that the FDCPA "was not meant to convert every violation of a state debt collection law into a federal violation"); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (disagreeing "that debt collection practices in violation of state law are per se violations of the FDCPA").

Similarly, in *Beler*, the plaintiff brought suit under § 1692f under the theory that "it [was] 'unfair' or 'unconscionable' for a debt collector to violate any other rule of positive law." *Beler*, 480 F.3d at 473.  The court rejected the theory, reasoning that if the defendant "violated [another statute], that statute's rules should be applied." *Id*. at 474.  In *Bentrud*, the plaintiff had asserted that it was unfair or unconscionable for the defendant to deviate from the arbitration provisions of the parties' contract.  The court refused to "transform the FDCPA into an enforcement mechanism for [the breach of contract claim] governed by state law." *Bentrud*, 794 F.3d at 876.

Plaintiff Williams cannot bootstrap his claims that the loan he received from Makwa violated Georgia law to claims under the FDCPA that ZenResolve, after being referred that loan, violated the FDCPA.  For this reason, and because the Complaint fails to adequately allege specific violations under § 1692e or § 1692f, the claims under the FDCPA must fail.

## V.      Venue is Improper under Fed. R. Civ. P 12(b)(3).

Plaintiffs allege in the Complaint that venue is proper under 18 U.S.C. § 1965(a) because "Defendants have transacted their affairs in this District." Compl., ¶ 8.  The burden for selecting a proper venue rests with the Plaintiffs.  *Medoil Corp. v. Clark*, 753 F. Supp. 592, 600 (W.D.N.C. 1990).  As noted above, none of the "affairs" to which any Plaintiff refers in relation to ZenResolve are activities alleged to have been taken in Virginia. *See* Compl., at ¶¶ 11, 101-104.  On this basis alone, Plaintiffs have failed to demonstrate that the Western District of Virginia is the appropriate venue for claims as to ZenResolve involving claims made by a single Plaintiff that resides in Georgia and alleges activities that did not take place in Virginia.  Accordingly, Plaintiffs' claims against ZenResolve should be dismissed. *See Medoil*, 753 F. Supp. at 600-01 (dismissing claims against one defendant when no motion to transfer was

pending and plaintiffs failed to provide facts the court could use to determine an appropriate venue).

Additionally, ZenResolve has reviewed the LDF Defendants'[10] motion challenging venue pursuant to Rule 12(b)(3) and asserts the same.  Therefore, in the interest of judicial efficiency, ZenResolve wishes to incorporate by reference the relevant portions and arguments of that brief herein.  (*See* ECF Nos. 15 and 16).

**VI.    Dismissal is Warranted Under Rule 12(b)(7).**

A claim may be dismissed for failure to join a necessary party under Fed. R. Civ. P. 19 pursuant to Fed. R. Civ. P 12(b)(7).  In the Fourth Circuit, Rule 19 involves a two-step inquiry. Specifically, a court must consider if (1) "a party is necessary to a proceeding because of its relationship to the matter under consideration" and (2) "if a necessary party is unavailable . . . [and] the proceeding [cannot] proceed in that party's absence." *Teamsters Local Union No. 171, v. Keal Driveaway Co.* 173 F.3d 915, 917–18 (4th Cir. 1999).  In assessing the second step, a court must consider three factors to determine if the party is indispensable: (1) the prejudice that would be suffered if a judgment is rendered in the party's absence, (2) the extent to which mitigating measures can reduce this prejudice (i.e., protective provisions of judgment), (3) whether a judgment rendered in the party's absence would be adequate, and (4) whether the plaintiff's remedy will be adequate if the case is dismissed.  *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 552 (4th Cir. 2006).

Here, because LDF Holdings and its subsidiaries are necessary parties that cannot be joined, and who would suffer irreparable prejudice if the case advances without them, the case must be dismissed.

---

[10] "LDF Defendants" include Defendants Joseph Wildcat, Sr., Jessi Loenzo and Nicole Chapman.

**A.  LDF Holdings is a Necessary Party.**

First, a party is necessary to litigation when the proceeding would impair the party's interests.  Fed. R. Civ. P. 19(a)(2)(i).   Here, LDF Holdings is clearly and directly interested in the outcome of the litigation, because the crux of the Complaint rests on whether loan agreement between the Plaintiffs and the lending subsidiaries are valid.  (*See generally,* Complaint). The relief requested can only be effected by LDF Holdings as it is the lender with the right to collect on the loans.  Compl., Prayer for Relief, ¶¶ B, C, E.

Second, a party is necessary to litigation when the proceeding could subject other parties to conflicting legal obligations.  Fed. R. Civ. P 19(a)(2)(ii).   Because the parties named as defendants here are not the actual lender of record, a finding in favor of the requested relief regarding the validity of the loans may result in inconsistent obligations for these parties.

**B.  LDF and its Subsidiaries Cannot Be Joined Because They Enjoy Sovereign Immunity.**

LDF, as a sovereign nation, cannot be joined in this case.  *Yashenko*, 446 F.3d at 553 ("Although the Tribe is a necessary party, because of its status as a sovereign nation . . . the Tribe cannot 'feasibly be joined as a party' to the action.") (internal citations omitted). Similarly, the subsidiaries, as arms and instrumentalities of LDF, share in LDF's sovereign immunity and therefore also cannot be joined.  *See, e.g., Williams*, 929 F.3d 170.  Accordingly, LDF Holdings is a necessary party that cannot be joined.

**C.  LDF Holdings is an Indispensable Party.**

In determining whether a necessary party is indispensable and thus the Complaint must be dismissed, courts must consider four factors:

> first, to what extent a judgment rendered in the person's absence
> might be prejudicial to the person or those already parties; second,
> the extent to which, by protective provisions in the judgment, by

the shaping of relief, or other measures, the prejudice can be
lessened or avoided; third, whether a judgment rendered in the
person's absence will be adequate; fourth, whether the plaintiff will
have an adequate remedy if the action is dismissed for nonjoinder

Fed. R. Civ. P. 19(b); *Yashenko*, 446 F.3d at 552.

First, a judgment rendered in this lawsuit absent LDF Holdings would clearly prejudice
both parties.  As discussed above, the case hinges on the validity of LDF Holdings' loan
agreements with Plaintiffs, and any relief directly impacts and would be implemented by LDF
Holdings.  No other named party is able to present LDF Holdings' defenses and arguments
related to the loan agreements and business.  LDF's interest in governing itself as a "sovereign in
negotiating contracts and governing the reservation" are also implicated.  *Yashenko*, 446 F.3d at
552.

Second, given the necessity of the business and LDF's perspective on their own
businesses, it is not at all clear how any measures could be put in place to reduce this prejudice.
*See, e.g., Id.* at 552.

Third, any judgment entered into in LDF Holdings' absence would be inadequate because
it would bind certain individuals and LDF officials, but not LDF Holdings leaving confusion and
doubt as to the enforceability of the loan agreements or any relief awarded to Plaintiffs.  *See,
e.g., Id.*  That doubt and inconsistency would lead to an inadequate judgment. *Davis ex rel. Davis
v. United States*, 343 F.3d 1282, 1292-93 (10th Cir. 2003).  Any relief awarded would be
partial—and "[n]o partial relief is adequate." *Dawavendewa v. Salt River Project Agr. Imp. &
Power Dist.*, 276 F.3d 1150, 1162 (9th Cir. 2002).

Finally, even in instances where alternative fora are not available, courts have held that
when a tribe is indispensable, the lack of an alternative forum is not reason enough to proceed
with the tribe. *See Id.* (stating that in seven different cases, the Ninth Circuit "determined that

the plaintiff would be without an alternative forum to air his grievances. Nevertheless, in each case, [the Ninth Circuit] determined that the absent Indian Tribe was indispensable and dismissed the case."); *Yashenko*, 446 F.3d at 552 (failing to even address the available forum factor in favor of finding the Indian tribe indispensable and relying on *Dawavendewa*); *Davis*, 343 F.3d at 1293 (noting that when tribal sovereignty is a factor, "there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves.").

LDF Holdings is a necessary and indispensable party under Rule 19.  Because it cannot be joined, the case should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint must be dismissed in its entirety as to ZenResolve, with prejudice.


DATED: December 4, 2020                    Respectfully submitted,


                            _____/s/_____
                            Joshua D. Goad (VSB No. 74915)
                            Kathryn A. Poe (VSB No. 92465)
                            JOHNSON, AYERS & MATTHEWS, PLC
                            P.O. Box 2200
                            310 First Street Suite 700
                            Roanoke, VA 24009
                            Tel. (540) 767-2000
                            Fax (540) 982-1552
                            jgoad@jamlaw.net
                            kpoe@jamlaw.net

                            Robert A. Rosette (*pro hac vice pending*)
                            Nicole St. Germain (*pro hac vice pending*)
                            ROSETTE, LLP
                            565 West Chandler Road Suite 212

Chandler, AZ 85225
Tel. (480) 889-8990
Fax (480) 889-8997
rosette@rosettelaw.com
nstgermain@rosettelaw.com

*Attorneys for Specially-appearing Defendant*
*ZenResolve, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will cause a Notice of Electronic Filing

(NEF) to be delivered to all parties' counsel of record.

                                  /s/

37