# EXHIBIT G

WM FILED MAY 2 9 2020 BIG VALLEY RANCHERIA

# ARTICLES OF ORGANIZATION

## of

## PEAK SERVICING, LLC

The Big Valley Band of Pomo Indians of the Big Valley Rancheria, a federally recognized Indian tribe ("*Tribe*"), acting through the Business Committee pursuant to the Tribe's Constitution, General Community Council Resolution No. 030197-4, and Chapter 3 of the Big Valley Band of Pomo Indians of the Big Valley Rancheria Business Ordinance ("*Ordinance*"), hereby authorizes these Articles of Organization to be filed with the Tribal Secretary, pursuant to Chapter 3 of the Ordinance, for the purpose of creating the Tribal limited liability company called Peak Servicing, LLC ("*Company*") described herein.

The Company described herein is to be a wholly-owned economic arm of the Tribe, with the Tribe, as its sole Member. The Company shall be manager-managed and management of the Company shall be vested in the Board of Managers ("*Board of Managers*").

Section 1. Name. The name of the Company is:

**Peak Servicing, LLC**

Section 2. Duration. The period of existence of the Company shall be perpetual, except that the Company may have these Articles of Organization amended or restated or the Company may be dissolved in accordance with the Operating Agreement of the Company.

Section 3. Purposes and Powers.

3.1. Purposes. The Company is formed pursuant to and shall be subject to the laws of the Tribe and shall at all times be a wholly-owned, separate limited liability entity acting as an economic arm of the Tribe. The Tribe, as the sole Member, shall have the sole proprietary interest in the Company. The purposes for which the Company is organized are:

(a) To serve the social, economic, educational and health needs of the Tribe;

(b) To provide Tribal revenues and enhance the Tribe's economic self-sufficiency and efforts related to self-determination;

(c) To provide positive, long-term social, environmental and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects; and

(d) To generate revenues for Company to use in furtherance of the purposes of the Company for the ultimate benefit of the Tribe and its members.

3.2. Powers. In furtherance of the foregoing purposes the Company shall have all of the rights, powers, privileges and federal immunities of the Tribe. The Company shall have the authority as an instrumentality and agency of the Tribe to carry out all responsibilities as necessary, suitable or proper for the accomplishment of any of its purposes. Without in any way limiting the scope

and generality of the foregoing, the Company shall have and may exercise the following powers, including but not limited:

(a) To engage in any lawful business which may generate revenue for the Tribe to be self-sufficient or provide economic support for the members of the Tribe;

(b) To engage, directly or through wholly owned subsidiary business entities, in business in operating a consumer financial services business that will provide full service internet-based, consumer loan management, servicing, and collections (the "***Company Business***") pursuant to Tribal law;

(c) To engage, participate and provide, directly or through wholly owned subsidiary business entities, the Company Business and other lawful businesses, enterprises or ventures under Tribal laws;

(d) To provide for Tribal economic development, Tribal e-commerce and Tribal internet related business activities;

(e) To create or form subsidiary business entities to engage in lawful acts or activities for which such entity may be allowed under the laws of the Tribe, and to enter into business associations, and other business arrangements designed for the economic benefit and well-being of the Tribe;

(f) To conduct and carry out business either within or outside of the exterior boundaries of the Reservation pursuant to Tribal laws;

(g) To buy, sell, lease, and otherwise acquire and maintain buildings, offices, and other appurtenances proper and necessary for the carrying on of said business;

(h) To guarantee, purchase, hold, assign, mortgage, pledge or otherwise dispose of capital stock or other equity interests, or any bonds, securities or other evidences of indebtedness created by any other corporation, entity or organization that is in existence under the laws of the United States, any state, Indian tribe, nation, government, or country and to exercise all the rights, privileges, and powers of ownership;

(i) To acquire through purchase, merger of subsidiaries, or any other lawful means, an interest in whole or in part of any pre-existing legal entity;

(k) To enter into and make contracts of every kind and nature, including loan agreements, promissory notes, security agreements, guaranties and any agreements or instruments relating thereto, with any person, tribal government agency, firm, association, corporation, municipality, nation and/or Indian tribe;

(1) To purchase, take by gift or bequest, acquire, own lease, manage, operate, deal in and dispose of real and personal property of all kinds and descriptions, whenever situated;

2

72755963.19

(m) To incur debts and raise, borrow and secure the payment of any money in any lawful manner, including the issue and sale or other disposal of stocks, bonds, indentures, obligations, loans, negotiable and transferable instruments and evidence of indebtedness of all kinds, including the provision of security interests as negotiated by the Company;

(n) To apply for, obtain, register, purchase, lease or otherwise acquire, own, hold, use, operate and introduce, and to sell, assign or otherwise dispose of any trademark, trade name, patent invention, improvements, and processes used in connection with or secured under letters patent, and to use, exercise, develop, grant and give licenses in respect thereto;

(o) To employ officers, employees, and agents of the Company, define their duties and set their compensation and benefits;

(p) To distribute revenues of the Company as set forth below:

  1) To settle outstanding Company obligations;

  2) To make distributions of Company's distributable cash to the Member as allowable by the Company; and/or

  3) To donate, irrespective of corporate benefit, for the public welfare; for social, community, charitable, religious, educational, scientific, civic, literary and for similar or related purposes.

(q) To make distributions to its Member declared in cash or in property; and

(r) To exercise such powers as are incidental to the Company's powers and as may be at any time permitted under the Ordinance and deemed desirable to give effect to the Company's purpose.

3.3. **Purposes and Powers Not Limited.** The purposes and powers enumerated herein are not exhaustive and shall not be held to limit or restrict the Company's general powers and privileges now or hereafter conferred by the laws of the Tribe upon limited liability companies formed under the Ordinance, or the accomplishment of any purpose now or hereafter permitted to the Company pursuant to these Articles of Organization.

3.4. **Limitation on Company Powers.** The Company is not authorized to:

1) waive the sovereign immunity of the Tribe from suit or consent to any jurisdiction over the Tribe in any state, federal or tribal court;

2) allow recourse to any assets of the Tribe that are non-Company assets;

3) sell, mortgage, or lease for a period exceeding twenty-five (25) years any trust or restricted lands included in the limits of the Reservation;

4) expressly or implicitly enter into agreements of any kind on behalf of the Tribe;

5) pledge the credit of the Tribe;

6) dispose of, pledge, or otherwise encumber real or personal property of the Tribe;

7) waive any right, privilege, or immunity of, or release any obligation owed to, the Tribe; and/or

8) enter into any sublease or other encumbrance or other instrument respecting lands leased to the Company by the Tribe.

3.5 Business Committee Authority. The Business Committee, through the express and unequivocal enactment of a Resolution, compliant with applicable federal and Tribe law, in its sole and absolute discretion on a case-by-case basis, may approve and authorize Company to:

(1) waive the sovereign immunity of the Tribe from suit or consent to any jurisdiction in any state, federal or tribal court, including the Tribe's Court;

(2) allow recourse to any assets of the Tribe that are non-Company assets;

(3) expressly or implicitly enter into agreements of any kind on behalf of the Tribe;

(4) pledge the credit of the Tribe;

(5) dispose of, pledge, or otherwise encumber real or personal property of the Tribe;

(6) enter into any sublease or other encumbrance or other instrument respecting lands leased to Company by the Tribe.

3.6 Company Business. Notwithstanding the foregoing, without the express prior written consent of the Board of Managers, the Company shall not engage in, participate in or provide, directly or through wholly owned subsidiary business entities, in any business or activity other than the Company Business.

Section 4. Immunities of the Company and Personnel.

4.1. Jurisdictional Immunity of the Company. The Tribe hereby confers on the Company all of the Tribe's rights, privileges and federal immunities concerning federal, state, and local taxes, regulation, and jurisdiction, to the same extent that the Tribe would have such rights, privileges, and immunities, if it engaged in the activities undertaken by the Company.

4.2. Sovereign Immunity of the Company and Personnel. The Tribe hereby confers on the Company all of the rights and privileges afforded the Tribe, including but not limited to the fullest measure of the Tribe's sovereign immunity, which the Tribe extends to the Company as if the Tribe itself were engaged in the activities undertaken by the Company. It is the intention of the Tribe that, by conferring such privileges and immunities, sovereign immunity from unconsented suit shall also apply to the Company's managers, officers, subsidiaries, and

employees acting on behalf of the Company. The Company shall have the power to sue and is authorized to consent to be sued in tribunals of competent jurisdiction (including arbitral forums), provided, however, that:

(a) No such consent to suit shall be effective against the Company in any manner and to any extent whatsoever unless such consent is:

(1) Explicit;

(2) Contained in a written contract or commercial document to which the Company is a party;

(3) Limited in scope, duration, and forum for dispute resolution; and

(4) Duly authorized by a resolution of the Board of Managers.

(b) Any recovery against the Company shall be limited to the assets of the Company and shall not provide recourse to any other assets of the Tribe or other Tribal entity, and shall be in the manner and to the extent as explicitly set forth in such consent.

Any consent to suit may, as explicitly set forth in such consent, be limited as to the tribunals in which suit may be brought, the matters that may be made the subject of a suit, and to the assets or revenues of the Company against which any judgment may be executed.

Unless approved by the Business Committee pursuant to Section 3.5, any consent to suit by the Company shall in no way extend to an action against the Tribe, nor shall consent to suit by the Company in any way be deemed a waiver of any of the rights, privileges, or immunities of the Tribe. The Tribe shall not be liable for the payment or performance of any of the obligations of the Company, and no recourse shall be had against any assets or revenues of the Tribe, aside from those of the Company, in order to satisfy the obligations of the Company.

The sovereign immunity of the Company shall not extend to actions against the Company by the Tribe.

Section 5. Principal Place of Business; Mailing Address; Registered Agent.

5.1. Principal Place of Business. The Company shall be a resident of and maintain its corporate headquarters on the Tribe's Reservation, but may conduct its business activities any place in or outside of the United States. The Company may have such other offices, either within or without the Tribe's Reservation as the business of the Company may require from time to time.

5.2. Mailing Address and Registered Agent. The mailing address of the Company's initial registered office is Ben G. Ray III and the name of the initial registered agent at this address is 2726 Mission Rancheria Rd., Lakeport, CA 95453.

5

72755963.19

Case 3:20-cv-00044-NKM-JCH     Document 44-7     Filed 12/04/20     Page 7 of 9
                                Pageid#: 409

Section 6. Operational Requirements.

    6.1. Operating Agreement. The Company shall prepare an Operating Agreement to set forth how the day-to-day operational duties and responsibilities will be carried out. The Operating Agreement and any amendments or modifications thereto must be approved by the Board of Managers.

    6.2. Annual Report. Not less than 150 days following the end of each fiscal year, the Company shall prepare and deliver an annual report in accordance with the Ordinance.

    6.3. Financial Report. Not less than 120 days following the end of the fiscal year, the Company shall prepare and deliver to the Member an audited financial statement, including a balance sheet and a statement of income and expenses, including comparative figures from the preceding fiscal year, if applicable.

Section 7. Board of Managers.

    7.1. Duties and Powers; Operating Agreement. The business and activities of the Company shall be managed by a Board of Managers. The Board of Managers is vested with all powers necessary to carry out the purposes of the Company and shall have control and management of the business and activities of the Company. The Board of Managers may adopt such provisions in an Operating Agreement for the conduct of their meetings and the management of the Company as the Board of Managers may deem proper, not inconsistent with the Ordinance and other Tribal laws, or these Articles of Organization.

    7.2. Composition. The Board of Managers shall initially be comprised of four (4) members but shall be expanded to eight (8) members as set forth in the Operating Agreement and the Board shall be appointed, removed, and replaced as set forth in the Operating Agreement.

    7.3. Manager Qualifications. Each Manager shall be at least eighteen (18) years of age and legally capable of entering into a binding contract.

    7.4. Officers. The Company shall appoint a Chief Executive Officer and may appoint other officers as determined by the Board of Managers.

    7.6. Manner of Acting. Unless the Operating Agreement requires a greater number, all actions by the Board of Managers shall require the consent of a majority of the members of the Board of Managers.

Section 8. Indemnification. The Company shall indemnify and hold harmless any Member, current or former executive employee, Manager, or officer, against all liability, loss and reasonable costs (including without limitation, attorney's fees) incurred by such person by reason of or arising from the fact that such person is or was a Member, executive employee, Manager or officer of the Company, or is or was serving at the request of the Company as an executive employee, manager, director, officer, partner, trustee, employee, or agent of another limited liability company, corporation, partnership, joint venture, trust, benefit plan, or other enterprise; provided, that, no Person named above shall be entitled to protection under this Section (i) when such Person acts recklessly or with gross negligence or with intent to defraud any person or for any fraudulent in

6

carrying out the business of the Company;(ii) in respect of any fraudulent, negligent, default, breach of duty, or breach of trust which he or she may be guilty; or (iii) if the Person seeking indemnification acted beyond the scope of his or her employment or office. The indemnification provided in this Section shall not be exclusive of any other rights to which any person may be entitled under any statute, bylaw, agreement, resolution of Board of Managers or Member, contract, or otherwise.

Section 9. <u>Amendments.</u> These Articles of Organization may be modified or amended only by written consent signed by all of the Managers. No amendments to the Articles of Organization shall become operative until, upon delivery to the Tribal Secretary, official approval is provided by the Board of Managers, and ratification by the Member.

**[Remainder of Page Intentionally Left Blank]**

Dated: 5/28/2020                     Organizers:

_____

_____

[Signature Page to Articles of Organization of Peak Servicing, LLC]

72755963.19