# EXHIBIT O

**The BIG VALLEY BAND of POMO INDIANS of the BIG VALLEY RANCHERIA BUSINESS ORDINANCE**

**CHAPTER 1:  GENERAL PROVISIONS**

| **Section 1.1** | Citation | **Section 1.5** | Filing Fees |
|---|---|---|---|
| **Section 1.2** | Purpose | **Section 1.6** | Interstate Application |
| **Section 1.3** | Definitions | **Section 1.7** | Annual Reports |
| **Section 1.4** | Jurisdiction | **Section 1.8** | Pronouns and Plurals |

**1.1 Citation.** This Ordinance is known as the Big Valley Band of Pomo Indians of the Big Valley Rancheria Business Ordinance ("Ordinance").

**1.2 Purpose.**  The purposes of this Ordinance are to:

1.2.1   encourage the economic development and diversification of the Tribe by providing limitations on liability of participants in businesses under this Ordinance;

1.2.2   ensure that business assets are available for the satisfaction of valid claims of business creditors;

1.2.3   establish simple, clear, and modern laws applicable to businesses created under the sovereign powers of the Tribe;

1.2.4   extend the benefits of limited liability and pass-through taxation to the Tribe, Tribal Members and privately owned LLCs operating within the jurisdiction of the Tribe; and

1.2.5   clearly define the jurisdiction of the Tribe in matters pertaining to businesses operating under this Ordinance.

**1.3 Definitions.**

1.3.1   "Articles of Incorporation" means the documents evidencing the creation of a Corporation pursuant to this Ordinance.

1.3.2   "Articles of Organization" means the documents evidencing the creation of a LLC pursuant to this Ordinance.

1.3.3   "Board of Directors" means the governing body of a Corporation.

1.3.4   "Board of Managers" means the governing body of an LLC, if so designated in the LLC's Articles of Organization.

1.3.5    "Business Committee" means the body created by the General Community Council to effectuate the orderly transaction of any and all business affairs of the Tribe.

1.3.6    "Business Entity" means any Corporation or LLC formed under this Ordinance.

1.3.7    "Bylaws" means the written rules of conduct and operation of the Corporation expressly adopted by the owners or incorporators of the Corporation.

1.3.8    "Contribution" means anything of value that a Member contributes to an LLC, including cash, property, services performed, a promissory note or other binding obligation to contribute cash, property, or services, as a prerequisite for, or in connection with, becoming a Member.

1.3.9    "Corporation" means any Corporation formed under Chapter 2 of this Ordinance.

1.3.10    "Delivery" means delivery by mail, facsimile, overnight express, courier, hand delivery, and service by process.

1.3.11    "Director" means a member of a group elected or otherwise authorized to govern the affairs of a Corporation

1.3.12    "Distribution" means a direct or indirect transfer of money or other property (except its own Shares) by a Corporation or LLC to or for the benefit of its Shareholders in respect of any of its Shares or Members in respect of their Interests, respectively.

1.3.13    "Foreign Business Entity" means any Corporation or LLC formed outside of the jurisdiction of the Tribe and this Ordinance.

1.3.14    "General Community Council" means the governing body of the Tribe as set forth in the Tribe's constitution.

1.3.15    "Interests" means the ownership interests in an LLC, which includes all of a member's rights and interests in, and obligations to, the LLC in its capacity as a member.

1.3.16    "LLC" means a limited liability company formed under Chapter 3 of this Ordinance.

1.3.17    "Majority in Interest" means any Member or group of Members holding an aggregate of more than 50% of the Interests held by all Members.

1.3.18  "Manager" means the person(s) or entity(ies) designated to manage the business and affairs of an LLC pursuant to a provision in the Articles of Organization stating that the LLC is to be managed by or under the authority of a Manager or Board of Managers.

1.3.19  "Member" means the person(s) or entity(ies) that have been admitted to membership in an LLC as provided in this Ordinance and who have not dissociated from the LLC.

1.3.20  "Notice" means written Notice.

1.3.21  "Operating Agreement" means an agreement in writing among all of the Members pertaining to the affairs and conduct of business of an LLC and its relationship with its Members.

1.3.22  "Organizing Documents" means any and all documents used to create a Corporation or LLC under this Ordinance and includes Articles of Incorporation, Articles of Organization, Bylaws, and Operating Agreement, as applicable.

1.3.23  "Registered Agent" means the person authorized to receive service of process and Notice for a Corporation or LLC.

1.3.24  "Reservation" means the territory within the confines of the Big Valley Rancheria and to such other lands as may hereafter be added thereto.

1.3.25  "Shares" means the units into which the ownership interests in a Corporation are divided.

1.3.26  "Shareholder" means the person or entity in whose name Shares are registered in the records of the Corporation.

1.3.27  "Tribal Company" means any LLC that is, directly or indirectly, wholly owned by the Tribe (including subsidiaries), another federally recognized tribe, or group of federally recognized tribes and formed under Chapter 3 of this Ordinance.

1.3.28  "Tribal Corporation" means any Corporation wholly owned by the Tribe under Chapter 2 of this Ordinance.

1.3.29  "Tribal Law" means the laws of the Tribe now or hereafter duly enacted by the General Community Council.

1.3.30  "Tribal Member" means an individual duly enrolled in the Tribe.

1.3.31  "Tribal Secretary" means the Tribal Secretary of the General Community Council.

1.3.32  "Tribe" means the Big Valley Band of Pomo Indians of the Big Valley Rancheria.

**1.4 Jurisdiction.**

1.4.1    To the maximum extent consistent with due process of law, all Business Entities formed under this Ordinance, all Directors, officers, Shareholders, Members, Managers, and all persons, natural or otherwise, operating or employed by a Business Entity, regardless of citizenship or Tribal membership, are subject to the jurisdiction of the Tribe, unless otherwise agreed to by Business Committee resolution.  All persons, natural or otherwise, operating a Business Entity within the territory of the Tribe consent to the jurisdiction of the Tribe by virtue of their conduct of business under this Ordinance. Notwithstanding the foregoing, a Business Entity may, by contract, agree that the laws of a state within the United States may govern the interpretation and enforcement of that contract.

1.4.2    If a Business Entity's principal place of business is located on the Reservation, and is organized or incorporated both under this Ordinance and the laws of any state, then this Ordinance and the Organizing Documents take precedence over any conflicting state laws and in any dispute concerning the status, rights, or obligation of any Business Entity or any person with respect to the same.

1.4.3    This Section may not be construed as a waiver of the sovereign immunity of the Tribe or of any Tribal Corporation or Tribal Company.

**1.5 Filing Fees.**  The Tribal Secretary is charged with collecting fees as per a published schedule authorized by the General Community Council and available upon request through the Tribal Secretary for filing Articles of Incorporation, Articles of Organization, and any amendments thereto.

**1.6 Interstate Application.**  A Business Entity formed under this Ordinance may conduct its business, carry on its operations and have and exercise the powers granted to it under this Ordinance, in any state, territory, district or possession of the United States, or in any foreign jurisdiction.

**1.7 Annual Reports.**  Every Business Entity formed and operating under the jurisdiction of the Tribe must file an annual report that includes the following information:

1.7.1    The name and address of the Business Entity;

1.7.2    The name of its Registered Agent;

1.7.3    The names of its Directors or Members; and

1.7.4   A description of the nature and kind of business in which it is engaged.

**1.8 Pronouns and Plurals.**  All pronouns used in this Ordinance, whether used in the masculine, feminine or neuter gender, shall include all other genders.  All references in this Ordinance to the singular shall include the plural where applicable.

### CHAPTER 2:  CORPORATIONS
### SECTION 1: GENERAL PROVISIONS

| Section 1.1 | Scope |
|---|---|
| Section 1.2 | Tribal Corporations |
| Section 1.3 | Subsidiaries of Tribal Corporations |

**1.1 Scope.**  Sections contained in this Chapter 2 apply to all Tribal Corporations wholly owned by the Tribe, whether directly or as a subsidiary of another tribal corporation wholly owned by the Tribe, as provided in Section 2.2.  Only corporations wholly owned by the Tribe, directly or indirectly as set forth herein, are eligible to incorporate pursuant to this Chapter 2.

**1.2 Tribal Corporations.**  Only the Business Committee may form Tribal Corporations under this Chapter. An incorporator filing the Articles of Incorporation with the Tribal Secretary must also file a certified copy of a resolution of the Business Committee authorizing the formation of a Tribal Corporation.

**1.3 Subsidiaries of Tribal Corporations.** A Tribal Corporation's Board of Directors must authorize the incorporation of a subsidiary Corporation to be wholly owned by a parent Tribal Corporation. An incorporator filing the Articles of Incorporation of a subsidiary with the Tribal Secretary must also file a certified copy of a resolution of the Board of Directors of the parent Tribal Corporation authorizing the formation of the subsidiary.

## SECTION 2: FORMATION and POWERS

| Section 2.1 | Articles of Incorporation; Bylaws |
|---|---|
| Section 2.2 | Powers; Effect of Lack of Power, Ultra Vires |
| Section 2.3 | Special Powers, Privileges and Immunities of Tribal Corporations |

**2.1 Articles of Incorporation; Bylaws.**

2.1.1    The Articles of Incorporation must contain:

2.1.1.1  the name of the Tribal Corporation;

2.1.1.2  the address of the registered office of the Tribal Corporation and the name of its Registered Agent, if any, at that address;

2.1.1.3  the aggregate number of Shares that the Tribal Corporation has authority to issue;

2.1.1.4  the name and address of the Business Committee, or its Chairperson, acting as incorporator;

2.1.1.5  a clear statement that the Tribal Corporation is wholly owned by the Tribe; and

2.1.1.6  a statement describing the purpose for which the Tribal Corporation is formed and a description of how that purpose relates to the overall needs, priorities, goals, and objectives of the Tribe, specifically including the Tribe's goals of self-determination and economic self-sufficiency.  Tribal Corporations formed under this Ordinance may be for any lawful business purpose.

2.1.2    The following provisions govern a Tribal Corporation, unless otherwise provided in the Articles of the Corporation filed with the Tribal Secretary:

2.1.2.1  the purpose of a Corporation is to engage in the transaction of any lawful business;

2.1.2.2  the Corporation's existence is perpetual;

2.1.2.3  the power to adopt, amend, or repeal the Bylaws is vested in the Board of Directors;

2.1.2.4  the affirmative vote of a majority of Directors present is required for an action of the Board of Directors; and

2.1.2.5  a written action by the Board of Directors taken without a meeting must be signed by all Directors.

2.1.3    The following provisions govern a Tribal Corporation unless otherwise provided in either in the Articles of Incorporation or in its Bylaws:

2.1.3.1  Directors serve terms of indefinite duration;

2.1.3.2  Directors are compensated as determined by the Business Committee;

2.1.3.3  a majority of Directors present is a quorum for a Board of Directors meeting;

2.1.3.4  the Corporation must indemnify Directors, Officers, and employees for any liabilities, lawsuits, or other civil, criminal, administrative or investigative proceedings against them as a result of actions taken by the Director, Officer, or employee within the scope of their duty and authority; and

2.1.3.5  upon approval of the Business Committee, the Board of Directors may authorize the Corporation to make distributions to Shareholders so long as the Corporation is able to pay its liabilities and expenses as they come due.

2.1.4    Corporations must adopt Bylaws that define and govern the management of the business and the regulation of its affairs, including but not limited to: authority to sign and deliver certain documents, fixing times, dates, and locations of meetings, Director classifications and qualifications, those with authority to call special meetings of the Corporation, and designating additional officers or officers' rights, powers, duties, and responsibilities.

**2.2 Powers; Effect of Lack of Power, Ultra Vires.**

2.2.1    Unless otherwise provided in the Articles of Incorporation, the Bylaws, or Tribal law, Tribal Corporations have the following powers:

2.2.1.1  upon the Tribal Corporation's explicit and unequivocal consent, the Tribal Corporation may complain and defend and participate as a party or otherwise in any legal, administrative, or arbitration proceeding, in its corporate name subject to the special powers, privileges and immunities extended to Tribal Corporations as described in subsection 2.2.2;

2.2.1.2  purchase, lease, or otherwise acquire, own, hold, improve, use, and otherwise deal in and with, real or personal property, or any interest therein, wherever situated;

2.2.1.3  sell, convey, mortgage, create a security interest in, lease, exchange, transfer, or otherwise dispose of all or any part of its real or personal property, or any interest therein, wherever situated;

2.2.1.4  purchase, subscribe for, or otherwise acquire, own, hold, vote, use, employ, sell, exchange, mortgage, lend, create a security interest in, or otherwise dispose of and otherwise use and deal in and with, securities or other interests in, or obligations of, a person or direct or indirect obligations of any tribal or foreign government or instrumentality thereof;

2.2.1.5  make contracts and incur liabilities, borrow money, issue securities, and secure any of its obligations by mortgage of or creation of a security interest in all or any of its property, franchises and income;

2.2.1.6  invest and reinvest its funds;

2.2.1.7  take and hold real and personal property, whether or not a kind sold or otherwise dealt in by the Corporation, as security for the payment of money loaned, advanced, or invested;

2.2.1.8  conduct its business, carry on its operations, have offices, and exercise the powers granted by this Ordinance in any location;

2.2.1.9  make donations, irrespective of corporate benefit, for the public welfare; for social, community, charitable, religious, educational, scientific, civic, literary, and for similar or related purposes;

2.2.1.10  pay pensions and establish pension plans, pension trusts, retirement allowances, profit-sharing plans, and benefit or incentive plans for any or all of its current or former officers, Directors, employees, agents and the families, dependents, and beneficiaries of any of them. It may indemnify and purchase and maintain insurance for and on behalf of a fiduciary of any of the above employee benefit and incentive plans, trusts, and provisions;

2.2.1.11  participate in any capacity in the promotion, organization, ownership, management, and operation of an organization or in any transaction, undertaking, or arrangement that the participating Corporation would have power to conduct by

itself, whether or not the participation involves sharing or delegation of control with or to others;

2.2.1.12  provide for its benefit life insurance and other insurance with respect to the services of any or all of its officers, Directors, employees, and agents;

2.2.1.13  establish, maintain, and use a corporate seal;

2.2.1.14  establish committees of the Board of Directors, elect or appoint persons to the committees, and define their duties;

2.2.1.15  elect or appoint officers, employees, and agents of the corporation, and define their duties and fix their compensation;

2.2.1.16   issue securities and rights to purchase securities;

2.2.1.17   lend money to, guarantee an obligation of, become a surety for, or otherwise financially assist persons;

2.2.1.18   conduct all or part of its business under one or more assumed or fictitious names, provided each assumed or fictitious name is registered with the Tribal Secretary and the assumed or fictitious name is not in use by another already-registered Business Entity; and

2.2.1.19   have and exercise all other powers necessary or convenient to effect any or all of the business purposes for which the Corporation is incorporated.

2.2.2   Consent to suit by a Tribal Corporation shall in no way extend to its Directors, officer, employees or agents acting within the scope of their authority, or to the Tribe or its officials acting within the scope of their authority, or any other Tribal Corporation or Tribal Company. A Tribal Corporation's consent to suit must not be construed as a waiver of any of the rights, privileges and immunities of the Tribe, its officials acting within the scope of their authority, or any other Tribal Corporation or Tribal Company.

2.2.3   Effect of lack of power; ultra vires.  The doing, continuing, or performing by a Tribal Corporation of an act, or a wholly or partially executed contract, conveyance or transfer to or by the Tribal Corporation, if otherwise lawful is not invalid because the Tribal Corporation was without the capacity or power to do, continue, or perform the act, contract, conveyance, or transfer, unless the lack of power is established pursuant to Tribal law.

## 2.3 Special Powers, Privileges and Immunities of Tribal Corporations

2.3.1   All of the rights, privileges and immunities of the Tribe concerning federal, state, or local taxes, regulations and jurisdiction are hereby conferred on all Tribal Corporations to the same extent that the Tribe would have such rights, privileges and immunities if it engaged in the activities undertaken by the Tribal Corporation. Absent consent by the Tribal Corporation shall not be subject to taxation by the Tribe, except to the extent that such taxation is necessary and reasonably appropriate to compensate the Tribe for services it provides to the Tribal Corporation.

2.3.2   The sovereign immunity of the Tribe is hereby conferred on all Tribal Corporations.  A Tribal Corporation has the power to sue and is authorized to consent to be sued  in  courts of competent jurisdiction, provided that:

2.3.2.1   no such consent to suit shall be effective against the Tribal Corporation unless such consent is:
2.3.2.1.1   explicit,

2.3.2.1.2   contained in a written contract or commercial document to which the Tribal Corporation is a party, and

2.3.2.1.3   specifically approved by resolution of the Board of Directors, and

2.3.2.2      any recovery against a Tribal Corporation is limited to the assets of the Tribal Corporation and specifically excludes the assets of the Tribe and the Tribal Corporation's parent, subsidiary(ies), or affiliate(s). Any consent to suit must be limited to as to courts in which suit may be brought, to the matters that may be made the subject of the suit, to the time in which suit may be brought, to the assets or revenues of the Tribal Corporation against which any judgment may be executed, and to other dispute resolution procedures or provisions.

2.3.2.3 Nothing in this Ordinance is intended to waive the Tribe's, or the Tribal Corporation's sovereign immunity from suit.

## SECTION 3: OPERATION

| Section 3.1 | Board of Directors |
| Section 3.2 | Shares in Tribal Corporations; Shareholders; Voting; Meetings |
| Section 3.3 | Liability of Tribe as Shareholder |
| Section 3.4 | Board of Directors Meetings |
| Section 3.5 | Assets; Distribution of Income |

**3.1 Board of Directors.**

    3.1.1  The Business Committee must appoint the Directors of any Tribal Corporation.

    3.1.2  A Director of a Tribal Corporation may be removed for cause by the Business Committee or as otherwise provided in the Bylaws.

    3.1.3  A Tribal Corporation is prohibited from lending money to or guaranteeing the personal obligation of a Director, officer or employee of the Tribal Corporation.

**3.2  Shares in Tribal Corporations; Shareholders; Voting; Meetings.**

    3.2.1  Share certificates (or transaction statements for un-certificated shares) of Tribal Corporations must be issued in the name of the Tribe and must be held by and for the Tribe. No member of the Tribe has any personal ownership interest in any Tribal Corporation by virtue of such person's status as a member of the Tribe or otherwise.

    3.2.2  Tribal Corporations may not issue preferred or special shares.

    3.2.3  The Business Committee or Board of Directors of a Tribal Corporation, as the case may be, acting as Shareholder of a Tribal Corporation on behalf of the Tribe, must vote in accordance with the Tribe's Constitution and any applicable Tribal laws, policies, or procedures.

**3.3 Liability of Tribe as Shareholder.**  Neither the Tribe nor any member of the Business Committee, nor any Director, has any obligation to a Tribal Corporation or to its creditors and nothing may be construed as a waiver of the Tribe's privileges or immunities by reason of the Tribe being the sole Shareholder of the Tribal Corporation.

**3.4  Board of Directors Meetings.**

    3.4.1  Unless otherwise provided in the Bylaws, the Board of Directors must meet at least annually.

        3.4.1.1  The annual meeting of the Board of Directors may be held at such time and at such place on the Rancheria as the Board of Directors determines.

3.4.1.2  Unless otherwise determined by the Board of Directors, the annual meeting must be held on the second Tuesday in January of each year.

3.4.1.3  At the annual meeting, the Board of Directors may transact any business it deems necessary or advisable.

3.4.1.4  The annual meeting must be called and held as set forth in the Bylaws.

3.4.2  Special meetings of the Board of Directors may be called and held for any purpose in the manner set forth in the Bylaws.

3.4.3  Unless otherwise provided in the Bylaws, the Board of Directors may conduct regular or special meetings through the use of any means and procedures deemed appropriate by the Board of the Directors.

**3.5  Assets; Distribution of Income.**

3.5.1  A Tribal Corporation has those assets formally assigned to it by the Business Committee together with any and all assets it acquires from other sources and through the operation of its business.  No activity of a Tribal Corporation nor any indebtedness incurred by it may implicate or otherwise involve any assets of the Tribe.

3.5.2  All or a portion of the net income of a Tribal Corporation  must be distributed to the Tribe as provided in the Bylaws or as otherwise determined by the Business Committee in accordance with this Chapter.

3.5.2.1  The net income of any wholly owned subsidiary of a Tribal Corporation and its share of the net income of any its subsidiaries must be determined in accordance with generally accepted accounting principles.

3.5.2.2  Upon request of the Business Committee, the Board of Directors will cause the Tribal Corporation or any of its subsidiaries to make a distribution to the Tribe or to the parent Tribal Corporation, respectively, so long as the Tribal Corporation or its subsidiary can continue to pay its liabilities and expenses as they come due after the distribution is effective.

**The BIG VALLEY BAND of POMO INDIANS of the BIG VALLEY RANCHERIA
BUSINESS ORDINANCE**

**CHAPTER 3:  LIMITED LIABILITY COMPANIES**

**SECTION 1:  GENERAL PROVISIONS**

| Section 1.1 | Definitions |
|---|---|
| Section 1.2 | Rules of Construction |
| Section 1.3 | Documents to be Maintained at a Principal Place of Business |
| Section 1.4 | General Powers of an LLC |
| Section 1.5 | Limited Liability |

**1.1 Definitions.**  All capitalized terms in this Chapter have the meanings provided in Chapter 1, Section 1.3.

**1.2 Rules of Construction.**

    1.2.1    Nothing in this Chapter may be construed as a waiver of the Tribe's or a Tribal Company's sovereign immunity or that of their respective officers or employees, except as provided for herein.

    1.2.2    Nothing in this Chapter may be construed as creating a claim for monetary or injunctive relief against the Tribe, a Tribal Company, or their respective officers or employees.

    1.2.3    Nothing in this Chapter may be construed as consent by the Tribe or a Tribal Company to the jurisdiction of the United States or of any state.

    1.2.4    Nothing in this Chapter may be construed as a waiver by the Tribe of its regulatory jurisdiction over LLCs operating within its jurisdiction.

    1.2.5    The provisions of this Chapter must be construed to give maximum effect to the freedom of contract and enforceability of Operating Agreements and all other agreements.

**1.3 Documents Required to be Maintained at the Principal Place of Business.**  All LLC's must keep the following documents at its principal place of business:

    1.3.1    a current list of the full name and last known address of each Member and Manager;

    1.3.2    a copy of the Articles of Organization together with any amendments thereto;

1.3.3    copies of the LLC's federal, state, and local tax returns and reports, if applicable, for the three (3) most recent years;

1.3.4    copies of any financial statements of the LLC for the three (3) most recent years;

1.3.5    copies of the LLC's Operating Agreement; and

1.3.6    copies of records that would enable a Member to determine the Members' relative Interests, including rights to the LLC's Distributions and the Members' relative voting rights, if different than the Operating Agreement.

**1.4 General Powers of an LLC.**  An LLC may be organized under this Chapter for any lawful purpose.  Unless otherwise provided in the Articles of Organization or Operating Agreement, an LLC organized and existing under this Chapter has the same powers as an individual to do all things necessary and convenient to carry out its business, including but not limited to the following:

1.4.1    sue and be sued, complaint, and defend its name; provided that if the LLC is wholly owned by the Tribe, directly or indirectly, the LLC is entitled to and enjoys the Tribe's sovereign immunity from suit, except as such sovereign immunity is explicitly waived by the General Community Council or Business Committee, as applicable, or as set forth in Section 3.2 of this Chapter;

1.4.2    purchase, receive, lease, or otherwise acquire and own, hold improve, use, and otherwise deal in or with real or personal property, or any legal or equitable interest in real or personal property, wherever situated;

1.4.3    sell, convey, mortgage, pledge, create a security interest in, lease, exchange, or otherwise dispose of all or any part of its property;

1.4.4    purchase, receive, or otherwise acquire and own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of and deal in and with Shares or other interests in, or obligations of, any other entity;

1.4.5    make contracts and guarantees; incur liabilities; borrow money; issue notes, bonds, and other obligations; and secure any of its obligations by mortgage or pledge of all or part of its property, franchises, and income;

1.4.6    lend money, invest and reinvest its funds, and receive and hold real or personal property as security for repayment;

1.4.7    conduct its business, locate offices, and exercise the powers granted by this Chapter within or outside the exterior boundaries of the Reservation;

1.4.8    be a promoter, partner, Shareholder, Member, associate, or Manager of any entity;

1.4.9    elect or appoint Managers, agents, and employees, define their duties, and fix their compensation and lend them money, services, and credit;

1.4.10   pay pensions and establish pension plans, pension trusts, profit-sharing plans, and benefit or incentive plans for any or all of its current or former Members, Managers, employees, and agents;

1.4.11   make donations to and otherwise devote its resources for the public welfare or for charitable, scientific, educational, humanitarian, philanthropic, or religious purposes;

1.4.12   indemnify a Member, Manager, employee, officer or agent, or any other person;

1.4.13   transact any lawful business;

1.4.14   create and form subsidiaries pursuant to this Ordinance;

1.4.15   make payments or donations, or do any other act not prohibited by law, that furthers the business of the LLC; and

1.4.16   provide benefits or payments to Members, Managers, employees, and agents of the LLC, and to their estates, families, dependents or beneficiaries in recognition of the past services of the Members, Managers, employees, and agents of the LLC.

## 1.5 Limited Liability.

1.5.1    The debts, obligations, and liabilities of an LLC, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the LLC.

1.5.2    Except as otherwise specifically provided in this Chapter, a Member or Manager of an LLC is not personally liable for any debt, obligation or liability of an LLC as defined in the Operating Agreement.

1.5.3    No Member or Manager of any LLC formed under this Chapter is liable to any creditor of the LLC by reason of his status as a Member or Manager, except insofar as said Member or Manager may be indebted to the LLC.

1.5.4    The failure of an LLC to observe formalities or requirements relating to the exercise of its powers or the management of its business and affairs is not grounds for imposing personal liability on Members or Managers for obligations of the LLC.

# SECTION 2:  FORMATION

| Section 2.1 | Articles of Organization |
|---|---|
| Section 2.2 | Filing Articles of Organization |
| Section 2.3 | Operating Agreement |
| Section 2.4 | Registered Agent |
| Section 2.5 | Names |

## 2.1 Articles of Organization.

2.1.1   One or more persons can organize an LLC by signing and Delivering the Articles of Organization to the Tribal Secretary for filing.

2.1.2   The Articles of Organization must contain all of the following information:

2.1.2.1  a statement that the LLC is organized under this Chapter;

2.1.2.2  a name for the LLC that satisfies the requirements of Section 2.5;

2.1.2.3  the period of duration, which may be perpetual or for a stated term of years or specific purpose;

2.1.2.4  the purpose(s) for which the LLC is organized, which may be stated to be or include, the transaction of any or all lawful business for which LLC's may be organized under this Chapter;

2.1.2.5  the name and address of the Registered Agent and the address of its principal place of business as required by Section 2.4;

2.1.2.6  if management is vested in one or more Managers or if vested in a Board of Managers, a statement to that effect;

2.1.2.7  the name and address of each person organizing the LLC;

2.1.2.8  a list of Members; and

2.1.2.9  if the LLC is wholly owned by the Tribe, a statement to that effect.

2.1.3   An LLC may amend its Articles of Organization at any time by Delivering an amendment to the Tribal Secretary.

## 2.2   Filing Articles of Organization.

2.2.1   Duplicate originals of the Articles of Organization shall be Delivered to the Tribal Secretary.

2.2.2   If the Tribal Secretary finds that the Articles of Organization substantially meet the requirements of this Chapter, the Tribal Secretary must endorse on each of the originals the word "Filed" and the effective date of the filing, file one of the originals and return the other file-stamped copy to the organizer.

2.2.3   The existence of the LLC begins upon the filing of the Articles of Organization.

**2.3   Operating Agreement.**

2.3.1   In addition to the Articles of Organization, the LLC may also create an Operating Agreement, not inconsistent with this Ordinance, regarding:

2.3.1.1  the direction of the management of the business and the regulation of the affairs of the LLC;

2.3.1.2  the definition, limitation, and regulation of the powers of the LLC, the Members or Managers; and

2.3.1.3 any other provision that this Ordinance requires or permits to be set forth.

2.3.2   If there is a conflict between the Articles of Organization and the Operating Agreement, the Articles of Organization shall control.

**2.4   Registered Agent and Principal Place of Business.**

2.4.1   At the time of organization, an LLC must select a Registered Agent to accept the service of judicial process on behalf of the LLC.  The name and address of the Registered Agent must appear in the initial Articles of Organization.  All LLCs must notify the Tribal Secretary upon any change in the name or address of the Registered Agent.

2.4.2   At the time of organization, an LLC must establish an address to be its principal place of business.  The address of the principal place of business must appear in the initial Articles of Organization.  All LLCs must notify the Tribal Secretary upon any change in the address of its principal place of business.

**2.5   LLC Names.**  The name of an LLC must contain the words "Limited Liability Company", an abbreviation thereof, "LLC" of "L.L.C.".

## SECTION 3:  TRIBE AS MEMBER

| Section 3.1 | Tribe as Member |
| --- | --- |

### 3.1  Tribe as Member.

3.1.1    The Tribe's Constitution anticipates the Tribe's need for economic development and empowers the General Community Council to delegate economic development and management responsibilities to Tribal Companies.

3.1.2    The Tribe may form or become a Member of a Tribal Company formed under this Chapter only upon a duly approved resolution of the General Community Council or of the Business Committee, as applicable.

3.1.3    If the Tribe is a Member of any Tribal Company formed under this Chapter, any action which the Tribe, acting as Member is required or permitted to take with respect to any vote, approval, consent, appointment, direction, or other matter must be taken as stated in the Articles of Organization or the Operating Agreement.

3.1.4    In no event may any Manager or Member of a Tribal Company in which the Tribe is a Member, bind the Tribe in any manner; provided that the Tribe's Interests as Member may be bound by Manager, Member or Board of Managers actions as stated in this Chapter and the Articles of Organization or Operating Agreement of the Tribal Company.

3.1.5    Nothing contained in this Chapter may be construed as creating any liability or waiving the sovereign immunity of the Tribe in any manner; provided that the assets of the Tribal Company in which the Tribe holds any Interests, or of any Tribal Company wholly owned by such Tribal Company, may be subject to liabilities and claims unless otherwise provided herein.  In no event may any action be taken by the Tribe concerning the exercise of any right or privilege or discharge of any duty with respect to any Interests in a Tribal Company be construed as a waiver of sovereign immunity or creation of liability on the part of the Tribe separate and apart from its Interests as a Member of the Tribal Company.

3.1.6    Any time a Tribal Company obtains capital for the operation of its business from any private investor, whether an individual or entity, the Tribal Company must perform a due diligence review of the private investor and any person or entity that has at  least a ten-percent (10%) ownership interest in the investment entity.

    3.1.6.1  At a minimum, the Tribal Company must request the following information for review:

3.1.6.1.1  the private investor's articles of incorporation or articles of organization, as the case may be, and any certificates of good standing or similar document from the jurisdiction in which the investor is registered;

3.1.6.1.2  a list of all owners that own more than ten-percent (10%) of the investor; and

3.1.6.1.3  a list and description of any prior or pending regulatory, criminal or civil investigations or lawsuits against the investor or any of its owners with at least a ten-percent (10%) ownership interest.

3.1.6.2  Any private investor providing capital to a Tribal Company does not have any rights in the control or management of the Tribal Company.

3.1.7  A Tribal Company's Manager(s) or Board of Managers must authorize the formation of a subsidiary LLC to be wholly owned by a parent Tribal Company. An organizer filing the Articles of Organization of a subsidiary with the Tribal Secretary must also file a certified copy of a resolution of the Manager(s) or Board of Managers of the parent Tribal Company authorizing the formation of the subsidiary.

3.1.8  In the case of a Tribal Company, the Tribal Company may merge with either a Business Entity or Foreign Business Entity pursuant to the procedure laid out in Chapter 4 of this Ordinance.

## 3.2  Special Powers, Privileges and Immunities of Tribal Companies

3.2.1  All of the rights, privileges and immunities of the Tribe concerning federal, state, or local taxes, regulations and jurisdiction, including but not limited to the Tribe's sovereign immunity from suit, are hereby conferred on all Tribal Companies to the same extent that the Tribe would have such rights, privileges and immunities if it engaged in the activities undertaken by the Tribal Company. Absent consent by the Tribal Company it shall not be subject to taxation by the Tribe except to the extent that such taxation is necessary and reasonably appropriate to compensate the Tribe for services it provides to the Tribal Company.

3.2.2  The sovereign immunity of the Tribe is hereby conferred on all Tribal Companies.  A Tribal Company has the power to sue and is authorized to consent to be sued (including waiving the Tribal Company's sovereign immunity) in tribunals of competent jurisdiction, provided that:

3.2.2.1  no such consent to suit shall be effective against the Tribal Company unless such consent is:

3.2.2.1.1   explicit;

3.2.2.1.2   contained in a written contract or commercial document to which the Tribal Company is a party;

3.2.2.1.3   approved by resolution of the Manager(s) or Board of Managers, or if there is no Manager or Board of Managers, the Member;

3.2.2.1.4   limited in duration and to a particular forum; and

3.2.2.1.5   any recovery against such Company shall be limited to the assets of the Company and shall not provide recourse to any other assets of the Tribe or other Tribal entity, and shall be in the manner and to the extent as explicitly set forth in such consent.

3.2.3   Nothing in this Ordinance is intended to waive the Tribe's or a Tribal Company's sovereign immunity from suit.

## SECTION 4:  OPERATION

| Section 4.1 | Management |
|---|---|
| Section 4.2 | Duties of Members and Managers |
| Section 4.3 | Agency Power of Members and Managers |
| Section 4.4 | Parties to an Action and Authority to Sue |
| Section 4.5 | Limitation of Liability and Indemnification |
| Section 4.6 | Admission of Members |
| Section 4.7 | Voting |
| Section 4.8 | Inspection of Records |
| Section 4.9 | Dissociation of Members |
| Section 4.10 | Contributions |
| Section 4.11 | Allocation of Profits, Losses, and Distributions |
| Section 4.12 | LLC Property |
| Section 4.13 | Assignment of an Interest in the LLC |

**4.1  Management.**

4.1.1   Unless the Articles of Organization vest management in one or more Managers or a Board of Managers, management of the LLC is vested in the Members subject to any provision in the Operating Agreement or this Chapter restricting or enlarging the management rights and duties of any Member.

4.1.2   If the Articles of Organization vest management in one or more Managers or a Board of Managers, management of the business or affairs of the LLC is vested in the Manager(s) or Board of Managers, as applicable, subject to any provisions in the Operating Agreement or this Chapter restricting or enlarging the management rights and duties.  Unless otherwise provided in the Articles of Organization or Operating Agreement, the Manager(s):

4.1.2.1  must be designated, appointed, elected, removed, or replaced by a vote of a Majority in Interest of the Members;

4.1.2.2  the Members may remove a Manager for cause only at a meeting called expressly for that purpose, and the Manager must have reasonable advance Notice of the allegations against him and an opportunity to be heard;

4.1.2.3  the Managers need not be Members of the LLC nor natural persons; and

4.1.2.4  unless earlier removed or earlier resigned, the Manager holds office until a qualified successor is determined by the Members.

<u>4.1.3</u>    The Articles of Organization or Operating Agreement of a Tribal Company may not provide that Managers may be appointed, removed or replaced by action of persons who are not members or managers, unless approved by a resolution of the Business Committee.

**4.2  Duties of Members and Managers.**

4.2.1    Unless otherwise provided in the Articles of Organization or Operating Agreement, Members and Managers are prohibited from acting in the following manner:

4.2.1.1  a willful failure to deal fairly with the LLC or its Members in connection with a matter in which the Member or Manager has a material conflict of interest;

4.2.1.2  a violation of criminal law, unless the Member or Manager had reasonable cause to believe that the person's conduct was lawful or no reasonable cause to believe that the conduct was unlawful;

4.2.1.3  a transaction from which the Member or Manager derived an improper personal profit; or

4.2.1.4  willful misconduct, gross misconduct or malice.

4.2.2    A Manager may rely on information, opinions, reports, or statements including, but not limited to, financial statements or other financial data, if prepared or presented by a person whom the Manager reasonably believes to be competent in the matter presented.  A Manager is not entitled to rely on such information if he has knowledge concerning the matter in question that makes reliance otherwise unwarranted.

4.2.3    Unless otherwise provided in the Articles of Organization or Operating Agreement, every Member or Manager shall account to the LLC and hold as trustee for it any profit derived by that Member or Manager without the consent of a majority of the disinterested Members or Managers, or other persons participating in the management of the LLC, from any of the following:

4.2.3.1  a transaction connected with the organization, conduct, or winding up of the LLC; and

4.2.3.2  an improper use by a Member, Manager of LLC property, including confidential or proprietary information or other matters entrusted to the Member or Manager as a result of his status as Member or Manager.

4.2.4    A Manager is not liable for an action taken as a Manager, or the failure to act, if he performs his duties in compliance with this Section and the Operating Agreement, if any, but not in abrogation of, those provided in subsections 4.2.1 and 4.2.2 unless otherwise provided in the Articles of Organization or Operating Agreement.

4.2.5    To the extent that a Manager or officer has fiduciary or other duties to the LLC, a Member or another Manager or to another person that is a party to or is otherwise bound by the Operating Agreement, the Manager's or officer's fiduciary or other duties may be expanded or restricted or eliminated by provisions in the Articles of Organization or Operating Agreement.

4.2.6    Any action against a Member or Manager for failure to perform duties in accordance with this Ordinance shall be commenced within three (3) years after the cause of action has accrued or within two (2) years after the cause of action is discovered or should reasonably have been discovered, whichever occurs first.

**4.3   Agency Power of Members and** Managers.

4.3.1    If the Operating Agreement delegates management of the LLC to the Members, the following shall apply:

4.3.1.1  each Member is an agent of the LLC for the purpose of its business, but not an agent of any of the other Members of the LLC;

4.3.1.2  the act of any Member, including the execution in the name of the LLC of any instrument for carrying on in the ordinary course of business of the LLC, binds the LLC in the particular matter, unless the person with whom the Member is dealing has knowledge that the Member has no authority to act in this matter;

4.3.1.3  if the Tribe is a Member, the Tribe's authority shall be exercised only as authorized by General Community Council, or by the Business Committee as delegated by the General Community Council.

4.3.2    If the Articles of Organization delegate management of the LLC in one or more Managers or a Board of Managers the following shall apply:

4.3.2.1  the Articles of Organization shall serve as Notice to third parties that the Manager or Board of Managers has agency authority and not the Members of the LLC;

4.3.2.2  no Member, solely by being a Member, is an agent of the LLC, nor is he an agent of any of the other Members; and

4.3.2.3  the Manager or Board of Managers is an agent of the LLC for the purpose of its business, but is not an agent of any of the Members.  The act of a Manager or Board of Managers, including the execution in the name of the LLC of any instrument for carrying on in the ordinary course of business of the LLC, binds the LLC unless the Manager or Board of Managers has, in fact, no authority to act for the LLC in the particular matter, and the person with whom the Manager or Board of Managers is dealing has knowledge that the Manager or Board of Managers has no authority to act in the matter.

4.3.3    No act of a Member or, if management of the LLC is vested in one or more Managers or a Board of Managers, of a Manager or Board of Managers, that is not apparently for the carrying on in the ordinary course of business of the LLC will bind the LLC unless, in fact, authorized at the time of the transaction or at any other time.

## 4.4  Parties to an Action and Authority to Sue.

4.4.1    A Member of an LLC is not a proper party to a proceeding by or against an LLC solely by reason of being a Member of the LLC, except if any of the following exist:

4.4.1.1  the object of the proceeding is to enforce a Member's right against or liability to the LLC; or

4.4.1.2  the action is brought by a Member.

4.4.2    Unless otherwise provided in the Articles of Organization or Operating Agreement an action on behalf of an LLC may be brought in the name of the LLC by:

4.4.2.1  one or more Members of the LLC, if authorized by a Majority in Interest of Members, excluding the vote of any Member who has an interest in the outcome of the action that is adverse to the interest of the LLC; or

4.4.2.2  one or more Managers of an LLC if the management of the LLC is vested in one or more Managers, or if the Managers are authorized to sue by a Majority in Interest of Members; or

4.4.2.3 The Board of Managers of an LLC if the management of the LLC is vested in a Board of Managers.

## 4.5  Limitation of Liability and Indemnification.

4.5.1    An LLC must indemnify or reimburse each Member and Manager for all reasonable expenses incurred with respect to a proceeding if that Member or Manager was a party to the proceeding in his capacity as a Member or Manager, respectively; provided

that the Operating Agreement or Articles of Organization may alter or provide additional rights to indemnification or allowance of expenses to Members and Managers;

4.5.2    Notwithstanding subsection 4.5.1, an LLC may not indemnify a Member or Manager unless it is determined that the Member or Manager or did not breach or fail to perform a duty to the LLC as provided in Section 4.2; unless otherwise provided in the Articles of Organization or Operating Agreement:

    4.5.2.1  A Member or Manager shall be conclusively presumed not to have breached or failed to perform a duty to the LLC to the extent that the Member or Manager has been successful on the merits or otherwise in the defense of the proceeding; and

    4.5.2.2   In situations not described in paragraph 4.5.2.1, above, the determination of whether a Member or Manager has breached or failed to perform a duty to the LLC must be made by the vote of a Majority in Interest of the Members, excluding any Member who is a party to the same or related proceeding or who has a conflict of interest unless all Members are parties.

## 4.6  Admission of Members.

4.6.1    In connection with the formation of an LLC, a person or entity acquiring any Interests in the LLC is admitted as a Member upon formation unless the Articles of Organization or Operating Agreement otherwise provides.

4.6.2    After the formation of an LLC, a person or entity acquiring any Interests in the LLC is admitted as a Member of the LLC as specified in the Operating Agreement or, if not so specified, by unanimous consent of the Members.

## 4.7  Voting.

4.7.1    Unless otherwise provided in the Articles of Organization or Operating Agreement or this Section, and subject to subsection 4.7.2, below, an affirmative vote, approval, or consent is required to decide any matter connected with the business of an LLC as follows:

    4.7.1.1  if management of an LLC is reserved to the Members, an affirmative vote, approval, or consent by Majority in Interest of the Members; or

    4.7.1.2  if the management of an LLC is vested in one or more Managers or a Board of Managers, the affirmative, vote, consent, or approval of more than fifty percent (50%) of the Managers.

4.7.2    Unless otherwise provided in the Articles of Organization or Operating Agreement or this Chapter, the affirmative vote, approval, or consent of all disinterested Members is required to do any of the following:

4.7.2.1  amend the Articles of Organization;

4.7.2.2  issue any Interests in an LLC to any person or entity;

4.7.2.3  adopt, amend, or revoke the Operating Agreement;

4.7.2.4  allow an LLC to accept any additional Contribution from a Member;

4.7.2.5  value Contributions of Members under Section 4.10; and

4.7.2.6  authorize a Manager, Member, or other person to do any act on behalf of the LLC that contravenes the Operating Agreement.

4.7.3    Unless otherwise provided in the Articles of Organization or Operating Agreement, if any Member is precluded from voting with respect to a given matter, the value of the Contribution represented by the Interests in the LLC with respect to which the Member would otherwise have been entitled to vote shall be excluded from the total Contributions made to the LLC for purposes of determining the fifty percent (50%) threshold under subsection 4.7.1, for that matter.

4.7.4    Unless otherwise provided in the Articles of Organization or Operating Agreement or this Section, if all or part of any Interests in the LLC is assigned, the assigning Member is considered the owner of the assigned Interests for purposes of determining the 50% threshold under subsection 4.7.1 until the assignee of the Interests in the LLC becomes a Member.

**4.8  Inspection of Records.**

4.8.1    Upon reasonable request, a Member may, at the Member's own expense, inspect and copy during ordinary business hours any LLC record unless otherwise provided in the Articles of Organization or Operating Agreement.

4.8.2    Members or, if the management of the LLC is vested in one or more Managers or a Board of Managers, the Managers must provide true and full information of all things affecting the Members to any Member or to the legal representative of any Member upon reasonable request of the Member or the legal representative.

4.8.3   Failure of an LLC to keep or maintain any of the records of information required under this Section is not grounds for imposing personal liability on any Manager or Member for the debts and obligations of the LLC.

**4.9   Dissociation of Members.**

4.9.1   A Member ceases to be a Member of an LLC upon the occurrence of any of the following events:

4.9.1.1  the Member withdraws by voluntary act as provided in subsection 4.9.3, below;

4.9.1.2  the Member is removed in accordance with the Operating Agreement or this Chapter;

4.9.1.3 unless otherwise provided in the Articles of Organization or the Operating Agreement or by the written consent of all Members at the time of the event, the Member does any of the following:

4.9.1.3.1   makes an assignment for the benefit of the creditors;

4.9.1.3.2   files a voluntary petition in bankruptcy;

4.9.1.3.3   becomes the subject of an order for relief under federal bankruptcy laws or state or Tribal insolvency laws; or

4.9.1.3.4   fails to obtain a dismissal of any federal bankruptcy or state or Tribal insolvency proceeding within one hundred twenty (120) days of commencement of an involuntary proceeding.

4.9.1.4  Unless otherwise provided in the Articles of Organization or Operating Agreement or by the written consent of all Members, if the Member is a natural person:

4.9.1.4.1   the Member's death; or

4.9.1.4.2   the entry of an order by a court of competent jurisdiction adjudicating the Member incompetent to manage the Member's person or estate.

4.9.1.5  Unless otherwise provided in the Articles of Organization or Operating Agreement or by the written consent of all Members at the time, if the Member is a

trust, Corporation, partnership, or LLC upon liquidation, dissolution, or termination.

4.9.2    The Members may provide in the Operating Agreement for other events, the occurrence of which, result in a Member dissociating from the LLC.

4.9.3    Unless the Articles of Organization or Operating Agreement provides that a Member does not have the power to withdraw by voluntary act from an LLC, the Member may do so at any time by giving written Notice to the other Members or as provided in Operating Agreement.  If the Member has the power to withdraw but the withdrawal is in breach of the Operating Agreement, the LLC may offset the damages against the amount otherwise distributable to the Member, in addition to pursuing any remedies provided for in the Operating Agreement or otherwise available under applicable law.

**4.10 Contributions.**

4.10.1  A Member's Contributions to an LLC may consist of cash, property, or services rendered, or promissory notes, contracts for services to be performed or other written obligations to provide cash or property or to perform services.

4.10.2  The value of a Member's Contribution shall be determined in the manner provided in the Operating Agreement.  If the Operating Agreement does not fix a value to a Contribution, the value of a Contribution must be determined and approved by a Majority in Interest of the Members and must be properly reflected in the records and information kept by the LLC.  The value of Contributions so determined are binding and conclusive on the LLC and its Members.

4.10.3  An obligation of a Member to provide cash or property or to perform services as a Contribution to an LLC is not enforceable unless specified in a writing signed by the Member.

**4.11 Allocation of Profits, Losses, and Distributions.**

4.11.1   The profits and losses of an LLC must be allocated among the Members in the manner provided in the Operating Agreement, or in the case of a Tribal Company, as designated by the Operating Agreement and pursuant to the fiduciary duties of the Members.  If the Members do not enter into an Operating Agreement or the Operating Agreement does not so provide, profits and losses are allocated on the basis of value of the Contributions made by each Member.

4.11.2   Except as provided in this Chapter, a Member is entitled to receive Distributions from an LLC before the Member's dissociation from the LLC and before its dissolution and winding up to the extent, and at the times or upon the events specified in the Articles

of Organization, or to the extent and at the times determined by the Members or Managers.

4.11.2.1   Distributions of cash or other assets of an LLC must be allocated among the Members as provided in the Operating Agreement, or if the Operating Agreement does not provide, on the basis of the value of the Contributions made by each Member.

4.11.2.2   Except as provided in this Chapter, upon the Distribution in partial liquidation of a Member's Interests, the redeeming Member is entitled to receive the amount to which the Member is entitled under the Operating Agreement and, if not otherwise provided in the Operating Agreement, the fair value of the redeemed Interests based on the Member's right to share in Distributions from the LLC.

4.11.2.3   Except as otherwise provided in this Chapter, upon an event of dissociation under Section 4.9 that does not cause dissolution of the LLC, a dissociating Member is entitled to receive any Distribution to which the Member is entitled under the Operating Agreement and, if not otherwise provided in the Operating Agreement, the fair value of the Member's Interests in the LLC based on the Member's rights to share in Distributions from the LLC.

4.11.2.4   Unless otherwise provided in the Articles of Organization or Operating Agreement, a Member may not demand and receive any Distribution from an LLC in any form other than cash and may not be compelled to accept a Distribution of any asset in kind except for a liquidating Distribution made proportionately.

4.11.2.5   At the time that a Member becomes entitled to receive a Distribution from an LLC, the Member has the status of and is entitled to all remedies available to a creditor of the LLC with respect to the Distribution.

4.11.3   An LLC may not declare or make a Distribution to any of its Members, if after giving effect to the Distribution, any of the following would occur:

4.11.3.1   the LLC would be unable to pay its debts as they become due in the usual course of business; or

4.11.3.2   the fair market value of the LLC's total assets would be less than the sum of its total liabilities plus, unless the Articles of Organization or Operating Agreement provides otherwise, the amount that would be needed for the preferential rights of Members under Section 6.2.5 upon dissolution, if any.

4.11.4  An LLC may base a determination that a Distribution is not prohibited by subsection 4.11.3 on any of the following:

    4.11.4.1  financial statements and other financial data prepared on the basis of accounting practices and principles that are reasonable under the circumstances; and

    4.11.4.2  a fair market valuation or other method that is reasonable under the circumstances.

4.11.5  An LLC's indebtedness to a Member incurred by reason of a Distribution made in accordance with this Section is at parity with the LLC's indebtedness to its general unsecured creditors, except to the extent subordinated by written agreement.  This Section does not affect the validity or priority of a security interest in an LLC's property that is created to secure the indebtedness to the Member.

4.11.6  Except as provided in paragraph 4.11.6.1, below, a Member who votes or assents to a Distribution in violation of Section 4.11.3 or of the Operating Agreement is personally liable, jointly and severally, to the LLC for the amount of the excess Distribution, subject to contribution from all other Members participating in such action.  A Member is presumed to have assented to a Distribution unless he files a written dissent with the LLC.

    4.11.6.1  A Member who accepts or receives a Distribution with knowledge that it is in violation of subsection 4.11.2 or of the Operating Agreement is liable to the LLC for the amount that exceeds the Member's share that could have been distributed without violating subsection 4.11.1 or the Operating Agreement.

    4.11.6.2  A proceeding under this Section is barred unless it is brought within two (2) years after the date on which the Distribution was made.

**4.12 LLC Property.**

4.12.1  All property originally transferred to or acquired by an LLC is property of the LLC and not of the Members individually.

4.12.2  Property acquired with LLC funds is presumed to be property of the LLC.

4.12.3  Property may be acquired, held, and conveyed in the name of the LLC.

4.12.4  The property of an LLC may be transferred by an instrument of transfer executed by any Member in the name of the LLC, unless management is vested in Managers or a Board of Managers, in which case the document of transfer must be executed by a

Manager or the Board of Managers, subject to any limitation that may be imposed by the Operating Agreement.

**4.13 Assignment of an Interest in the LLC.**

4.13.1  Unless otherwise provided in the Articles of Organization or Operating Agreement:

4.13.1.1  Interests in an LLC are assignable in whole or in part;

4.13.1.2  an assignment of Interests entitles the assignee to receive only the Distributions and to share in the allocation of profits and losses to which the assignor would be entitled with respect to the assigned Interests;

4.13.1.3  an assignment of Interests does not dissolve the LLC;

4.13.1.4  unless and until the assignee becomes a Member of the LLC, the assignment of Interests does not entitle the assignee to participate in the management or exercise the rights of a Member;

4.13.1.5  unless and until the assignee of Interests becomes a Member of the LLC, the assignor continues to be a Member;

4.13.1.6  the assignor of Interests is not released from any personal liability arising under this Chapter as a Member of the LLC solely as a result of the assignment.

4.13.2  Unless otherwise provided in the Articles of Organization or Operating Agreement, the granting of a security interest, lien, or other encumbrance in or against any or all of a Member's Interests is not assignable and does not cause the Member to cease to have the power to exercise any rights or powers of any Member.

4.13.3  Unless otherwise provided in the Articles of Organization or Operating Agreement, an assignee of Interests may become a Member only if the other Members unanimously consent.

4.13.3.1  An assignee of Interests who becomes a Member has, to the extent assigned, the rights and powers and is subject to the restrictions and liabilities of the assignor under the Operating Agreement and this Chapter.

4.13.3.2  Unless otherwise provided in the Articles of Organization or Operating Agreement, an assignor of Interests is not released from any liability to the LLC without the written consent of all the Members, whether or not the assignee becomes a Member.

4.13.4  If a Member who is an individual dies or a court of competent jurisdiction adjudges the Member to be incompetent to manage his person or property, the Member's personal representative, administrator, guardian, conservator, trustee, or other legal representative has all the rights of an assignee of the Member's Interests.  If a Member is a Corporation, trust, partnership, LLC, or other entity and is dissolved or terminated, the powers of that Member may be exercised by its legal representative or successor.

4.13.5  On application to a tribunal of competent jurisdiction having valid jurisdiction over the Member by any judgment creditor of a Member, the tribunal may charge the Interests of any Member other than the Tribe with payment of the unsatisfied amount of the judgment.  This subsection does not deprive any Member of the benefit of any exemption laws applicable to the Interests.  In no event shall the Tribe's Interests be attachable in abrogation of its sovereign immunity.

**The BIG VALLEY BAND of POMO INDIANS of the BIG VALLEY RANCHERIA BUSINESS ORDINANCE**

**CHAPTER 4:  MERGER; CONVERSION; and DISSOLUTION
SECTION 1: MERGER**

| Section 1.1 | Merger |
|-------------|--------|
| Section 1.2 | Effect of Merger |

**1.1. Merger.** Two or more Business Entities may merge if all of the following requirements are met:

1.1.1.  The merging Business Entities a adopt a plan of merger that includes the following information:

1.1.1.1.  The name of each participating Business Entity and the name of the surviving Business Entity;

1.1.1.2.  The terms and conditions of the proposed merger, including the manner for converting ownership of the merging Business Entity into Interests or Shares, as the case may be, of the surviving Business Entity;

1.1.1.3.  A statement of any amendment to the Organizing Documents of the surviving Business Entity or a statement that no changes are to be made; and

1.1.1.4.  Any other provisions that the merging Business Entities consider necessary.

1.1.2.  A plan of merger must be approved by unanimous vote of the Members or Shareholders, as the case may be, of each Business Entity participating in the merger, unless otherwise provided in their respective Organizing Documents.

1.1.3.  Once the plan of merger is approved by the Members or Shareholders, as the case may be, in accordance with subsection 1.1.2, if a Business Entity is merging under this Chapter, the Business Entity surviving the merger shall file a certificate of merger executed by one or more authorized persons on behalf of the Business Entity when it is the surviving entity with the Tribal Secretary. The certificate of merger must include the following information:

1.1.3.1.  the requirements in Section 1.1.1.1 and 1.1.1.3;

1.1.3.2.   a statement that the plan of merger has been approved by the Members pursuant to subsection 1.1.2; and

1.1.3.3.   the effective date of the merger, if later than the date the certificate of merger is filed.

1.1.4.   Notwithstanding any provisions to the contrary herein, a Tribal Company may merge with a Foreign Business Entity by fulfilling the same requirements set forth in this Section 1.1 as if the Tribal Company and the Foreign Business Entity were both Business Entities.

## 1.2.  Effect of Merger.

1.2.1.   The separate legal existence of each Business Entity, Tribal Company and Foreign Business Entity participating in the merger ceases except that of the surviving Business Entity, Tribal Company or Foreign Business Entity.  The Organizing Documents of the Business Entities, Tribal Companies and Foreign Business Entities participating in the merger, except those of the surviving entity, are cancelled.

1.2.2.   All assets and liabilities of the Business Entities, Tribal Companies or Foreign Business Entities participating in the merger are vested in the surviving entity.

## SECTION 2: CONVERSION

| Section 2.1 | Conversion of a Business Entity |
|---|---|
| Section 2.2 | Effect of Conversion |

**2.1. Conversion of a Business Entity.** A Business Entity may convert into another Business Entity if all of the following requirements are satisfied:

    2.1.1.   The surviving Business Entity complies with Chapter 2 or 3, as the case may be, of this Ordinance.

    2.1.2.   The Business Entity proposing to convert adopts a plan of conversion that includes the following:

        2.1.2.1.   the names of both the Business Entity that is converting and the surviving Business Entity;

        2.1.2.2.   the address of the surviving Business Entity, if different from that of the converting Business Entity;

        2.1.2.3.   the terms and conditions of the proposed conversion, including the manner of converting Interests or Shares, as the case may be, into that of the surviving Business Entity;

        2.1.2.4.   the terms and conditions of the Organizing Documents that are to govern the organization of the surviving Business Entity; and

        2.1.2.5.   any other provision that the surviving Business Entity deems necessary.

    2.1.3.   A unanimous vote of the Members or Shareholders, as the case may be, is required to approve a plan of conversion, unless otherwise provided by the Organizing Documents.

    2.1.4.   When a plan of conversion is approved pursuant to subsection 2.1.3, the surviving Business Entity must file all Organizing Documents required to be filed pursuant to Chapter 2 or 3, as the case may be, of this Ordinance.

**2.2.   Effect of Conversion.**

    2.2.1.   The Organizing Documents of the converting Business Entity are cancelled, and that Business Entity ceases its legal existence.

2.2.2.   All assets and liabilities of the converting Business Entity are vested with the surviving Business Entity.

2.2.3.   A proceeding pending against the converting Business Entity may be continued as if the conversion had not occurred or the surviving Business Entity may be substituted in the proceeding for the converting Business Entity.

2.2.4.   The surviving Business Entity is considered to be the same entity that existed before the conversion and its legal existence is considered to have begun on the date that the converting Business Entity was formed.

2.2.5.   The Interests or Shares, as the case may be, of the converting Business Entity are to be converted into that of the surviving Business Entity.

2.2.6.   Unless otherwise provided in the plan of conversion, the converting Business Entity is not required to wind up its affairs pursuant to Chapter 4, Section 3 and the conversion is not considered a dissolution of the converting Business Entity.

## SECTION 3:  DISSOLUTION AND WIND UP

| Section 3.1 | Dissolution |
|---|---|
| Section 3.2 | Winding Up |

**3.1 Dissolution.**

3.1.1    A Business Entity is dissolved and its affairs must be wound up upon the happening of the first of the following , except as may be provided in the Articles of Organization or Operating Agreement;

3.1.1.1    the occurrence of events specified in the Operating Agreement or Bylaws, as the case may be;

3.1.1.2    the written consent of all Members or that number of Managers as specified in the Articles of Incorporation or the Operating Agreement, or Shareholders, as the case may be;

3.1.1.3    if an LLC, an event of dissociation of a Member, unless otherwise provided in the Articles of Organization or Operating Agreement or continuation is consented to in writing by all remaining Members; or

3.1.1.4    if a Corporation, by a vote of the Board of Directors in accordance with Chapter 2, Section 2.1.2.4; or

3.1.1.5    by resolution of the Business Committee under subsection 3.1.2.

3.1.2    Except as may be provided in the Articles of Organization or Operating Agreement, the Business Committee may dissolve a Business Entity by resolution under the following circumstances:

3.1.2.1    the Business Entity or its Members, Managers, Shareholders, Directors, or Officers are acting or have acted in a manner that is illegal under applicable law as found by the final judgment of a court of competent jurisdiction not subject to appeal; or

3.1.2.2    a  Business Entity not owned by the Tribe, or its Members, Managers, Shareholders, Directors, or Officers are wrongfully carrying on the business of the Business Entity in the name of the Tribe or in such a manner that a reasonably prudent person would believe it to be a Tribal Corporation or a Tribal Company.

3.1.3    Within five (5) days of the occurrence of an event described in subsection 3.1.1 or 3.1.2,    Articles of Dissolution must be filed with the Tribal Secretary that include the following:

    3.1.3.1  the name of the Business Entity;

    3.1.3.2  the date of filing or delayed effective date of the Articles of Dissolution; and

    3.1.3.3  the grounds for dissolution and the date authorized.

## 3.2 Winding Up.

3.2.1    A dissolved Business Entity continues its legal existence but may not carry on any business except that which is appropriate to wind up and liquidate its business.

3.2.2    Unless otherwise provided in the Organizing Documents, the business of the Business Entity may be wound up by any of the following:

    3.2.2.1  the Members, Managers, Directors, or Officers, as the case may be, with authority to manage the Business Entity before dissolution; or

    3.2.2.2  by a receiver appointed by the Business Committee, if dissolved under section 3.1.2.

3.2.3    Unless otherwise provided in the Organizing Documents, the persons winding up the business of the Business Entity may do all of the following in the name of and on behalf of the Business Entity:

    3.2.3.1  collect its assets;

    3.2.3.2  prosecute and defend lawsuits;

    3.2.3.3  take any action necessary to settle and close the business of the Business Entity;

    3.2.3.4  dispose of and transfer the property of the Business Entity;

    3.2.3.5  discharge or make provision for discharging the liabilities of the Business Entity; and

    3.2.3.6  distribute the remaining assets of the Business Entity to the Members or Shareholders, as the case may be.

3.2.4    Dissolution of a Business Entity does not do any of the following:

3.2.4.1  transfer title to the Business Entity's property;

3.2.4.2  prevent transfer of all or part of a Member's or Shareholder's Interests or Shares, as the case may be;

3.2.4.3  prevent commencement of a civil, criminal, administrative, or investigatory proceeding by or against the Business Entity, except as provided in subsections 3.2.8 and 3.2.9.

3.2.4.4  terminate the authority of the Registered Agent of the Business Entity; or

3.2.4.5  alter the limited liability of a Member or Shareholder, as the case may be.

3.2.5    Upon the winding up of a Business Entity, its assets must be distributed in the following order:

3.2.5.1 if an LLC:

3.2.5.1.1    to creditors, including to the extent permitted by law, Members, and former Members, including the Tribe, in satisfaction of liabilities of the LLC;

3.2.5.1.2    unless otherwise provided in the Articles of Organization or Operating Agreement, to Members and former Members in satisfaction of liabilities for Distributions;

3.2.5.1.3    unless otherwise provided in the Articles of Organization or Operating Agreement, to Members and former Members, first for the return of their Contributions in proportion to their respective values and, thereafter, in proportion to their respective rights to share in Distributions from the LLC before dissolution.

3.2.5.2 if a Corporation:

3.2.5.2.1    to creditors in satisfaction of liabilities of the Corporation;

3.2.5.2.2    unless otherwise provided in the Bylaws or Shareholder Agreement, to the Shareholders in proportion to their respective Shares.

3.2.6    Assets of a dissolved Business Entity that should be transferred to an individual creditor or claimant who cannot be found, is a minor, or who is not competent to receive them must be reduced to cash and deposited into an escrow account for safekeeping. When the individual furnishes satisfactory proof of entitlement to the amount deposited, the escrow agent must pay the amount due to the individual.

3.2.7    A dissolved Business Entity must notify its known claimants in writing of the dissolution and specify a procedure for making claims.  A claim against a dissolved Business Entity is barred if:

    3.2.7.1  a claimant who was given written Notice does not Deliver the claim, in writing, to the Business Entity by the deadline specified in the Notice or within ninety (90) days, whichever is longer; or

    3.2.7.2  a claimant whose claim is rejected by the Business Entity and does not commence a proceeding to enforce the claim within ninety (90) days after receipt of the rejection Notice.

3.2.8    A claim not barred under subsection 3.2.7 may be enforced:

    3.2.8.1  against the dissolved Business Entity, to the extent of its undistributed assets; or

    3.2.8.2  if the dissolved Business Entity's assets have been distributed in liquidation, against a Member or Shareholder, as the case may be, other than the Tribe, to the extent of the Member's or Shareholder's proportionate share of the claim or of the assets of the Business Entity distributed to the Member or Shareholder in liquidation, whichever is less, but a Member's or Shareholder's total liability for all claims under this subsection may not exceed the total value of the assets distributed to the Member or Shareholder in liquidation.

3.2.9    A dissolved Business Entity must notify its unknown claimants of the dissolution by publishing the Notice on any and all websites owned or used by the Business Entity, and if the Business Entity is a Tribal Corporation or Tribal Company, on the Tribe's website, for a minimum of ninety (90) days.  A claim against the Business Entity is barred if:

    3.2.9.1  a claimant does not deliver the claim, in writing, to the Business Entity by the deadline specified in the Notice; or

3.2.9.2  a claimant whose claim is rejected by the Business Entity and does not commence a proceeding to enforce the claim within ninety (90) days after receipt of the rejection Notice.

3.2.10  After the ninety (90) day publication of Notice to unknown claimants, the Business Entity must file with the Tribal Secretary, a notarized confirmation of dissolution confirming that all Notice requirements were met, and must include:

3.2.10.1  the date the Business Entity filed the Articles of Dissolution;

3.2.10.2  the date the publication of Notice required by subsection 3.2.9 occurred;

3.2.10.3  the exact language used in the Notice and the website addresses where the publication was posted;

3.2.10.4  the date the publication of Notice ended; and

3.2.10.5  a statement confirming that the Business Entity has been wound up in accordance with this Chapter.

3.2.11  Filing of the confirmation of dissolution with the Tribal Secretary, as described in Section 3.2.10, has the following effects:

3.2.11.1  the Business Entity ceases its legal existence; and

3.2.11.2  any agent of the Business Entity no longer has the legal capacity to act on behalf of the now dissolved Business Entity.