IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

LORI FITZGERALD, *et al.*, *individually and on behalf of others similarly situated*,

Plaintiffs,

v.

JOSEPH WILDCAT SR., *et al.*,

Defendants.

Case No. 3:20-cv-00044 (GEC)

**OPPOSITION TO MOTION TO STAY**

Plaintiffs, by counsel, respectfully submit this opposition to the Motion to Stay (Dkt. 61) filed by Defendants Joseph Wildcat, Sr., Jessi Lorenzo, and Nicole Reynolds ("Defendants").

**INTRODUCTION**

"This case, and the tribe-payday lending partnership it challenges, is not unique." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019). Over the last decade, "[c]ourts across the country have confronted," these "transparent attempts to deploy tribal sovereign immunity to skirt state and federal consumer protection laws." *Id*. *Four times*, however, the Fourth Circuit has labeled similar contracts a "farce," designed specifically "to avoid state and federal law," and deployed "to game the entire system." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 674-76 (4th Cir. 2016); *see also Dillon v. BMO Harris Bank*, 856 F.3d 330 (4th Cir. 2017); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332 (4th Cir. July 21, 2020); *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. July 21, 2020). And, while tribal governments may be protected from a suit for these violations, Plaintiffs have followed bedrock principles established by the Supreme Court with respect to sovereign immunity by *only*: (1) seeking prospective relief against Joseph Wildcat

1

in his official capacity; and (2) seeking monetary damages against Defendants in their individual capacities.

None of the issues presented in this case are novel. Nonetheless, relying on the wrong standard,[1] Defendants urge this Court to stay this matter pending the Fourth Circuit's decision in *Hengle v. Asner*, Case No. 20-1062. Far from a landmark case, *Hengle* represents nothing more than the latest attempt to enforce one of these contracts, which four years ago, Judge Wilkinson characterized as a "brazen" attempt to avoid federal and state laws. *Hayes*, 811 F.3d at 676. Since that time, the Fourth Circuit has refused to enforce similar contracts on three other occasions, and other courts of appeals and district courts have uniformly refused to enforce them. *See, e.g., Gingras*, 922 F.3d at 127; *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 232 (3d Cir. 2018); *Williams v. Medley Opportunity Fund II, LP*, 2020 WL 3968078, at *1 (3d Cir. July 14, 2020). Thus, although Plaintiffs agree that this case is similar to *Hengle* in many respects, it is equally true that this case is materially indistinguishable from *Hayes*, *Dillon*, *Sequoia Capital*, and *Haynes Investments*.

Under these circumstances, Defendants have not—and cannot—establish a sufficient justification for staying this case. All of the overlapping issues between this case and *Hengle* have already been decided by the Supreme Court and Fourth Circuit. Thus, the current Fourth Circuit

---

[1] Defendants rely on the standard used when a party seeks a stay of a patent infringement action pending an *inter partes* review by the U.S. Patent and Trademark Office. *See* Dkt. 62 at 4 (quoting the three factors identified in *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2015 WL 7272199, at *2 (E.D. Va. Nov. 16, 2015)). Those factors—proximity to trial, simplification of issues, and prejudice—are different from the traditional factors considered by courts when confronted with a motion to stay. *See, e.g., Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019) (identifying "the interests of judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay" as the typical factors considered).

panel in *Hengle* does not have the authority to ignore or overturn the controlling precedent governing the issues before this Court. *See, e.g.*, *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (*en banc*) ("A number of cases from this court have stated the basic principle that one panel cannot overrule a decision issued by another panel."). Because controlling precedent already dictates the outcome of the issues raised by Defendants' motion to dismiss, staying this case for several months is inefficient and does not promote judicial economy.

In addition, neither of the other factors commonly considered weigh in favor of a stay. *First*, Defendants have not articulated any hardship significant enough to warrant a stay. Instead, the only identified hardship is contained in a single sentence, summarily alleging that Defendants will have to spend time and money defending this lawsuit. Dkt. 62 at 6. But the "mere fact that [an] action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay." *Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 1946262, at *4 (E.D. Va. May 10, 2010); *see also ePlus, Inc. v. Lawson Software, Inc.*, No. CIV. 3:09CV620, 2010 WL 1279092, at *4 (E.D. Va. Mar. 31, 2010) ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity" required to justify a stay) (internal quotations and citations omitted). Defendants' failure to articulate anything more than routine litigation cost warrants a denial of this motion.

*Second,* there is significant risk that Plaintiffs and class members will be prejudiced by the delay. While most litigants want finality, Defendants have every incentive to drag this case out as long as possible because the enterprise will receive millions of dollars on these illegal loans during the pendency of this case. In addition, Plaintiffs will be prejudiced because "[s]taying the case [] delays plaintiff's potential recovery," as well as the recovery of the absent class members. *Sutor v. Amerigroup Corp.*, 2020 WL 2124180, at *2 (E.D. Va. Mar. 10, 2020). And while this is true in

all cases, it is extremely prejudicial in this case because Defendants rebuffed Plaintiffs' request to not collect any amounts on the loans or impose any interest during the stay. Ex. 1, Jan. 28, 2021 Email from Guzzo to Mullin. This posture places borrowers in an untenable situation to either: (1) pay the unconscionable amounts imposed by their loans; or (2) default on their payments and thereby allow their principal balances to balloon to even more unaffordable amounts.

## LEGAL STANDARD

In considering a motion to stay, it is not enough that the moving party ask for the stay or theorize its prejudice. Instead, "the party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). "In considering a motion to stay, a district court must 'weigh competing interests and maintain an even balance.'" *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013) (quoting *Yearwood v. Johnson & Johnson*, 2012 WL 2520865, at *3 (D. Md. June 27, 2012)). Specifically, a district court should consider three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and,] (3) potential prejudice to the non-moving party." *Buzzell v. JP Morgan Chase Bank*, No. 3:13-CV-668, 2015 WL 5254768, at *2 (E.D. Va. Sept. 9, 2015) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001).

## ARGUMENT

### I.   Summary of *Hengle v. Asner*.

Defendants' request to stay revolves around the Fourth Circuit's review of the United States District Court for the Eastern District of Virginia's decision in *Hengle v. Asner*, 433 F. Supp. 3d 825 (E.D. Va. 2020), *motion to certify appeal granted*, 2020 WL 855970 (E.D. Va. Feb. 20, 2020). In that case, the plaintiffs filed a lawsuit against tribal officials of the Habematolel Pomo

4

of Upper Lake, as well as two non-tribal members alleged to be involved in a usurious lending scheme. *Id*. at 838. Prior to any discovery, the defendants moved to dismiss the case on the grounds that: (1) the parties agreed to arbitrate all disputes; (2) sovereign immunity barred the claims against the officials; and (3) the choice-of-law provision required the application of tribal law, not Virginia's usury laws. *See generally id*.

As a matter of right, the defendants appealed the court's decision with respect to the arbitration and sovereign immunity issues. *See, e.g.*, 9 U.S.C. § 16(a)(1)(B) (providing a right to appeal any order refusing to compel arbitration); *Yousuf v. Samantar*, 699 F.3d 763, 768 n.l (4th Cir. 2012) ("A pretrial order denying sovereign immunity is immediately appealable under the collateral-order exception to the final judgment rule ... [including] orders denying claims of sovereign immunity under the common law."). The defendants further requested the Court to certify the choice-of-law question for interlocutory review pursuant to 28 U.S.C. § 1292(b). *See Hengle v. Asner*, 2020 WL 855970, at *1 (E.D. Va. Feb. 20, 2020). The court granted this request and certified the following question: "whether enforcement of the Choice-of-Law Provision would violate Virginia's compelling public policy against unregulated usurious lending?" *Id*. at *1. The Fourth Circuit agreed to the certification and oral argument was heard on January 26, 2021.[2]

## II.     All three factors weigh against staying this case.

### A.     Judicial economy weighs against the stay.

In support of the request for the stay, Defendants contend that *Hengle* "will have a tremendous impact on, and might even[] dictate the outcome of threshold questions in this case."

---

[2] An audio recording of the oral argument in *Hengle* is available through the Fourth Circuit's website by using the following link: https://www.ca4.uscourts.gov/OAarchive/mp3/20-1062-20210126.mp3.

Dkt. 62 at 1. Although Plaintiffs agree that *Hengle* is very similar to this case, staying this case will not serve judicial economy for *six* reasons.

*First*, regardless of the Fourth Circuit's ruling on the enforceability of the arbitration contracts in *Hengle*, it will not have a "tremendous" impact on this case because two of the three Plaintiffs' contracts do not contain an arbitration provision. *See, e.g.,* Ex. 2, Mar. 9, 2016 Loan Agreement; Ex. 3, Oct. 19, 2017 Loan Agreement. For this reason, Defendants only filed a "Motion to Compel Arbitration of Plaintiff Kevin Williams' Claims." *See* Dkt. 15. Because the loan contracts signed by Plaintiffs Aaron and Lori Fitzgerald do not contain arbitration provisions, judicial economy favors moving forward with this case as this aspect of *Hengle* cannot possibly impact the Fitzgerald Plaitniffs' claims. *See, e.g.*, *D.C. v. Trump*, 344 F. Supp. 3d 828, 843 (D. Md. 2018) (finding a stay "would not serve judicial economy" where an appeal "would neither terminate nor narrow the case").

*Second*, with respect to Plaintiff Williams, a stay will not serve judicial economy because his arbitration provision is unenforceable under the Fourth Circuit's controlling decisions in *Sequoia Capital* and *Haynes Investments*. In those cases, the Fourth Circuit considered multiple arbitration contracts that did "not explicitly preclude the application of federal law." *Haynes Investments*, 967 F.3d at 342. Even though the contracts did not expressly disclaim federal law, the Fourth Circuit concluded that the contracts nonetheless violated the prospective waiver doctrine because the "relevant tribal codes would not permit" a borrower "to effectively vindicate the federal protections and remedies they seek." *Id*. at 343. As explained at length in Plaintiff Williams' Opposition to the Motion to Compel Arbitration (Dkt. 50 at pgs. 3-4, 6-11), the Fourth Circuit took issue with three sections of the tribe's code—all of which mirror the "Tribal Consumer Financial Services Regulatory Ordinance" ("Tribal Code") enacted by the Lac du Flambeau Band

6

of Lake Superior Chippewa Indians. Because the Tribal Code at issue in this case is identical, *Sequoia Capital* and *Haynes Investments* control the outcome with respect to Defendants' attempt to compel arbitration of Plaintiff Williams' claims.

***Third***, the Fourth Circuit's decision with respect to Virginia's choice-of-law question will have no impact on the claims of Plaintiff Williams, who obtained his online loan while residing in Georgia. *See, e.g.*, Compl. at ¶¶ 95-96. And just as important, the Supreme Court of Georgia has already decided this question with respect to residents in its state. *See generally W. Sky Fin., LLC v. State ex rel. Olens*, 300 Ga. 340, 347, 793 S.E.2d 357, 366 (2016). In that case, the Supreme Court of Georgia rejected that the defendants' argument that "a choice-of-law clause in the loan agreements purporting to stipulate that tribal law controls" prohibited the application of Georgia's usury laws. *Id*. In doing so, the court adopted an earlier decision from the Court of Appeals of Georgia, holding that "parties to a private contract who admittedly make loans to Georgia residents cannot, by virtue of a choice of law provision, exempt themselves from investigation for potential violations of Georgia's usury laws." *Id*. (quoting *BankWest, Inc. v. Oxendine*, 266 Ga. App. 771, 775, 598 S.E.2d 343 (2004)). Because Plaintiff Williams resides in Georgia, *Hengle's* determination of the Virginia choice-of-law issue will have no bearing on his claim.

***Fourth***, even with respect to the Fitzgerald Plaintiffs, Defendants knowingly and intentionally did not raise the choice-of-law clause as a basis for dismissal. Although defendants in comparable cases have moved to dismiss on the basis of the tribal choice-of-law provision, Defendants have not raised this issue in their motion to dismiss. Dkt. 16 at pg. 11, n. 2 ("The Tribal Defendants assert that the loans at issue are governed by and issued in accordance with Tribal law and applicable federal law and dispute that the loans are subject to state law, however, *the instant Motion does not require resolution of that issue*.") (emphasis added). Because they have not raised

7

the enforceability of the choice-of-law clause as a basis to dismiss, there is no reason to delay a resolution of the motion on this basis.[3]

*Fifth*, with respect to the sovereign immunity issues in this case, there is controlling precedent from the Supreme Court regarding the issues before this Court. In particular, the Supreme Court has held that "tribal immunity does not bar" a "suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 796 (2014). Tribal sovereign immunity is also "simply not in play" when a person seeks recovery from a tribal employee in his or her individual capacity—even when the wrongful conduct was within the scope of tribal employment. *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). Because Plaintiffs have faithfully followed this controlling precedent, there is no reason to delay a resolution of the motion to dismiss pending a ruling in *Hengle*.

*Sixth*, Defendants have raised a significant number of challenges to the Complaint that have no relation to *Hengle*. For example, Defendants argued that: (1) Plaintiffs failed to allege an enterprise that was distinct from Defendants (Dkt. 16 at pg. 39); (2) Plaintiffs failed to adequately allege any damages (*Id*. at pg. 40); (3) the intra-corporate conspiracy doctrine requires dismissal (*Id*. at pg. 41); (4) Plaintiffs failed to state a viable claim for declaratory relief (*Id*. at pg. 40-41); (5) the tribal lenders are necessary and indispensable parties (*Id*. at 45-47); and (6) the class allegations should be stricken (*Id*. at 49-51). Because the Court will ultimately need to resolve all

---

[3] This is especially true here because there are multiple other reasons—beyond Virginia's public policy— that the choice-of-law is unenforceable. For example, the prospective waiver doctrine applies to all prospective waivers whether in an arbitration agreement or any other contracts. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637, and n. 19, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Because the choice-of-law clause prospectively waives federal rights and remedies, it fails as a matter of law. In other words, any decision from the Fourth Circuit in *Hengle* regarding Virginia's public policy makes no difference because the choice-of-law is an unenforceable prospective waiver under *Haynes Investments*.

of these issues, judicial economy does not warrant delaying consideration of them under the circumstances of this case.

### B. Defendants have not identified any recognized hardship.

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citations omitted). Furthermore, the proponent "must make out a clear case of hardship or inequity in being required to go forward[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Defendants have not met that burden here. The Court should deny the request to stay this action for this reason alone.

In particular, Defendants only identified hardship is contained in a single sentence, summarily asserting that continued litigation "would necessarily require them to incur significant attorneys' fees for the preparation" of "oral argument on their multifaceted dispositive motion." Dkt. 16 at 6. But the "mere fact that [an] action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay." *Sunbeam Prod.,* , 2010 WL 1946262, at *4; *Sutor*, 2020 WL 2124180 at *2 (same); *see also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Atl. Coast Pipeline, LLC v. 1.52 Acres, More or Less, in Nottoway Cty., Virginia*, 2019 WL 4871481, at *1 (E.D. Va. Jan. 31, 2019) (same). Moreover, because this case is still in a very early stage, any cost should be negligible as the parties have already submitted extensive briefs on the issues before this Court. *CFA Inst. v. Am. Soc'y of Pension Professionals & Actuaries*, 2019 WL 1983062, at *4 (W.D. Va. May 3, 2019) (rejecting the movant's argument that cost to defend itself was sufficiently burdensome, in part, because the case was still in its early stages).

9

### C.     Plaintiffs would suffer prejudice if the case is stayed.

Unlike Defendants, Plaintiffs will suffer hardship if the case is stayed, primarily for two reasons. *First*, as explained above, Plaintiffs will be prejudiced because "[s]taying the case [] delays plaintiff's potential recovery," as well as the recovery of the absent class members. *Sutor*, 2020 WL 2124180 at *2; *see also Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) ("Plaintiffs have a strong interest in being fully compensated for their losses as soon as possible, and therefore, a stay is not appropriate."); *United States v. Swissco Properties within S. Dist.*, 821 F. Supp. 1472, 1475 (S.D. Fla. 1993) ("justice delayed is justice denied."); *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) ("Plaintiffs have a substantial interest in the efficient conduct of this complex litigation"). And while this is true in all cases, it is extremely prejudicial in this case because Defendants rebuffed Plaintiffs' request to not collect any amounts on the loans or impose any interest during the stay. *See* Ex. 1. This means that Defendants will still charge and continue to attempt to collect the unconscionable interest rates on these loans, such as the 756% imposed under Plaintiff Lori Fitzgerald's agreement. If the case is delayed a mere six months, borrowers like Plaintiffs will incur thousands of dollars in finance charges on loans as small as $400. *See, e.g.*, Ex. 3.

*Second*, a stay compounds the already-substantial difficulty of gathering information relevant to this case because over time relevant employees leave, documents or data are lost or corrupted, and memories fade. *See Sutor,* 2020 WL 2124180 at *2 ("a prolonged stay can make discovery unnecessarily difficult for other reasons, as relevant employees leave and memories fade."); *Young v. Peraza*, No. 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n,*

*Inc.*, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems"). This is a real concern, here, especially when considering that class members may move, making it more difficult to provide them with any notice related to class certification.

## CONCLUSION

For the reasons explained above, Plaintiffs request the Court to deny the Motion to Stay.

                                  Respectfully submitted,
                                  **PLAINTIFFS**

                                  By:    */s/ Kristi C. Kelly*
                                  Kristi C. Kelly, Esq., VSB #72791
                                  Andrew J. Guzzo, Esq., VSB #82170
                                  KELLY GUZZO, PLC
                                  3925 Chain Bridge Road, Suite 202
                                  Fairfax, VA 22030
                                  (703) 424-7572
                                  (703) 591-0167 Facsimile
                                  Email: kkelly@kellyguzzo.com
                                  Email: aguzzo@kellyguzzo.com
                                  *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February, 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

                                         ___/s/_____
                                         Kristi C. Kelly, Esq. VSB # 72791
                                         KELLY GUZZO, PLC
                                         3925 Chain Bridge Road, Suite 202
                                         Fairfax, Virginia 22030
                                         Telephone: (703) 424-7570
                                         Facsimile:  (703) 591-0167
                                         E-mail:  kkelly@kellyguzzo.com
                                         *Counsel for Plaintiffs*