IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| LORI FITZGERALD, *et al.*, *individually and on behalf of others similarly situated*,<br><br>       Plaintiffs,<br><br>v.<br><br>JOSEPH WILDCAT, SR., TRIBAL PRESIDENT OF THE LAC DU FLAMBEAU BANK OF LAKE SUPERIOR CHIPPEWA INDIANS, *in his official and individual capacities, et al.*,<br><br>       Defendants. | Civil Action No. 3:20-cv-44 (NKM) |

## MOTION TO LIFT STAY

Plaintiffs Lori Fitzgerald, Aaron Fitzgerald, and Kevin Williams, individually and on behalf of others similarly situated, respectfully request that the Court lift the stay imposed on May 13, 2021. (Dkt. 73.) In support of their argument, Plaintiffs state as follows:

## ARGUMENT

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Courts adjudicating motions to stay balance three factors: (1) "the interests of judicial economy," (2) "the hardship and inequity to the moving party in the absence of a stay," and (3) "the potential prejudice to the non-moving party in the event of a stay." *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019) (quoting *Crowell v. North Carolina*, No. 1:17-cv-515, 2018 WL 6031190, at *4 (M.D.N.C. Nov. 16, 2018)).

On May 13, 2021, this case was stayed pending the Fourth Circuit's decision in *Hengle v. Treppa*, No. 20-1062. (*See* Dkt. 73.) The Court reasoned that the balance of the three above-mentioned factors favored a stay because:

> (1) The *Hengle* appeal would address several legal questions at issue in this case, including:
>
>> (a) whether loan agreement choice-of-law provisions providing for tribal law to apply violate Virginia public policy;
>>
>> (b) whether private litigants can sue tribal officials in their official; capacities for injunctive relief for alleged violations of state law; and
>>
>> (c) the enforceability of certain arbitration provisions in loan agreements"; *and*
>
> (2) Because oral argument had already been heard in *Hengle* on January 26, 2021, the stay would be of a "relatively short" duration, which would result in reduced risk to Plaintiffs.

(Dkt, 73 at 2–3.) Since then, the following events have transpired:

- *First*, on November 16, 2021, the Fourth Circuit decided *Hengle*, affirming the district court on each of the four issues raised in the interlocutory appeal, including the questions highlighted by this Court in support of its Stay Order, *see Hengle v. Treppa*, No. 20-1062, 2021 WL 5312780, at *21 (4th Cir. Nov. 16, 2021) (attached as Exhibit A);

- *Second*, on December 13, 2021, the Fourth Circuit's decision took effect following the issuance of a mandate under Federal Rule of Appellate Procedure 41(a) (attached as Exhibit B); and

- *Third*, on January 10, 2022, the Supreme Court denied an application to stay the underlying case (attached as Exhibit C).

Consequently, in *Hengle* itself, Judge Novak ordered that the parties resume litigation. *See Hengle v. Asner*, No. 3:19cv250, Dkt. 152 (E.D. Va.) (Jan. 11, 2022) (court's entry of pretrial and scheduling order).

As in *Hengle*, litigation here should continue, and the stay should be lifted. Indeed, the overlapping legal issues—the primary basis for the Court's imposition of the stay—have been

resolved by the Fourth Circuit's decision. Moreover, the actual prejudice to Plaintiffs (*i.e.*, the delay) now exceeds the "relatively short" duration reasonably expected by the Court when considering the January 26, 2021 oral argument in *Hengle*. To be sure, the Fourth Circuit did not issue its opinion until November 2021, meaning that the stay in this case is approaching nearly one year in duration. For those reasons, the Court should lift the stay.

Plaintiffs anticipate that Defendants will argue that the stay should remain in place because, conceivably, the Supreme Court *could* grant certiorari. In fact, on December 15, 2021, Defendants filed a Notice and Request to Allow Briefing on Motion to Extend Stay Pending Supreme Court Review. (Dkt. 76.) That pleading asked that the Court continue to hold this case in abeyance because the *Hengle* defendants *might* file a petition for writ of certiorari, and the Supreme Court *might* grant that petition. (Dkt. 76 at 1–2.) Defendants alternatively asked the Court to allow briefing on the matter. (*Id.* at 2.)

The remote possibility that the Supreme Court will grant certiorari, however, does not warrant an indefinite stay, much less a second indefinite stay. *See Stanley v. Cap. One Fin. Corp.*, No. 7:19-cv-337, 2020 WL 104679, at *4 (W.D. Va. Jan. 8, 2020) (denying motion to stay pending petition for certiorari because "it is unclear when the [Supreme] Court would issue a ruling on the merits of that case, if at all"). Notably, the Supreme Court grants certiorari in just over one percent of all cases in which a petition for certiorari is filed. *See* SCOTUSBlog, *Supreme Court Procedure*, https://www.scotusblog.com/supreme-court-procedure/ (last visited Feb. 2, 2022) ("In most circumstances, the Supreme Court has discretion whether or not to grant review of a particular case. Of the 7,000 to 8,000 cert. petitions filed each Term, the court grants cert. and hears oral argument in only about 80."). Defendants should not be permitted to hold Plaintiffs' case hostage in the face of such low odds.

At best for Defendants, the Court should lift the stay and afford Defendants the option to file a *new* motion to stay if—and only if—the Supreme Court eventually grants certiorari in *Hengle*. This was the resolution reached by Judge Dillion in *Stanley*:

> The court finds that this outcome preserves judicial economy by preventing an indefinite stay while nonetheless leaving open the possibility of revisiting a stay if necessary. As an example, if the Supreme Court denies the defendant's petition for certiorari in *Duguid*, or if the parties find through discovery that Capital One's dialer would meet any proposed definition of an ATDS, then the case will likely proceed without the need for a stay. If, however, the Supreme Court grants the petition for certiorari in *Duguid* and the parties believe the Supreme Court's ruling will be necessary to the resolution of this case, either party may file a subsequent motion to prevent relitigating issues either at trial or on appeal.

*Stanley*, 2020 WL 104679, at *4. Either way, the current stay should be lifted and litigation resumed.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court lift the stay imposed on May 13, 2021.

Respectfully submitted,

**PLAINTIFFS**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com

*Counsel for Plaintiffs*