**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| LORI FITZGERALD, et al., | ) | Case No. 3:20-cv-00044-NKM-JCH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH WILDCAT SR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS JOSEPH WILDCAT, SR., JESSI LORENZO, AND NICOLE
REYNOLD'S BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO
STATE CLAIM**

**Table of Contents**

I.      INTRODUCTION ...................................................................................................1

II.     PLAINTIFFS' COMPLAINT.................................................................................3

     A.      The Tribal Defendants ...............................................................................3

     B.      The Plaintiffs..............................................................................................4

III.    STANDARDS OF REVIEW ..................................................................................5

     A.      Federal Rule of Civil Procedure 12(b)(6) ..................................................5

IV.     ARGUMENT ...........................................................................................................5

     A.      Plaintiffs' Federal Rico Claims Must be Dismissed ..................................5

          1.      Plaintiffs' 1962(c) claims must be dismissed (COUNT ONE)....................6

          2.      Plaintiffs' 1962(d) claims must be dismissed (COUNT II) .......................11

     B.      Plaintiffs' State Law Claims Must be Dismissed (COUNTS III AND IV)...........13

     C.      Plaintiffs' Unjust Enrichment Claim is Not Asserted Against Tribal
           Defendants. ...............................................................................................16

V.      CONCLUSION.....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adolphe v. Option One Mortg. Corp.*,
  No. 3:11-cv-418, 2012 WL 5873308 (W.D.N.C. Nov. 20, 2012) ..........................................10

*Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*,
  11 F. App'x 283 (4th Cir. 2001) .......................................................................................13

*Artis v. TMobile USA, Inc.*,
  No. PJM 18-2575, 2019 WL 1427738 (D. Md. Mar. 29, 2019) ..............................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................................5

*Balt.-Wash. Tel. Co. v. Hot Leads Co., LLC*,
  584 F. Supp. 2d 736 (D. Md. 2008) ...................................................................................11

*In re Brian W. Coughlin*,
  No. 19-14142, 2020 WL 6140388 (Bankr. D. Mass. Oct. 19, 2020) .......................................1

*Eseni v. RIMSI Corp.*,
  No. AW-07-2384, 2007 WL 9782599 (D. Md. Dec. 6, 2007) .................................................14

*Grant v. Shapiro & Burson, LLP*,
  871 F. Supp. 2d 462 (D. Md. 2012) ...................................................................................10

*Harris v. Florida*,
  No. 8:16-cv-12-T-27MAP, 2016 WL 656977 (M.D. Fla. Jan. 12, 2016) ...............................15

*Hauk v. LVNV Funding, LLC*,
  749 F. Supp. 2d 358 (D. Md. 2010) ...................................................................................14

*Hill v. Stryker Sales Corp.*,
  No. 4:13-CV-0786-BHH, 2014 WL 4198906 (D.S.C. Aug. 20, 2014) ....................................6

*Hirsch v. Lyndon S. Ins. Co.*,
  No. 3:17-CV-1215-J-39JBT, 2019 WL 5110622 (M.D. Fla. June 7, 2019), ...........................7

*Jackson v.Warning*,
  No. CV PJM 15-1233, 2016 WL 7228866 (D. Md. Dec. 13, 2016) .........................................7

*Kiessling v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 18-4281, 2019 WL 634639 (E.D. Pa. Feb. 14, 2019) ..................................................5

*McCrea v. Wells Fargo,*
  No. CV RDB-18-2490, 2019 WL 2513770 (D. Md. June 17, 2019)........................................6

*Michigan Corrections Org. v. Michigan Dep't of Corrections,*
  774 F.3d 895 (6th Cir. 2014) ................................................................................................15

*Mitchell Tracey v. First Am. Title Ins. Co.,*
  935 F. Supp. 2d 826 (D. Md. 2013) ...................................................................................2, 10

*Myers v. Lee,*
  No. 1:10CV131 ...............................................................................................................10, 11

*Nunes v. Fusion GPS,*
  531 F. Supp. 3d 993 (E.D. Va. 2021) ...................................................................................10

*Ormet Corp. v. Ohio Power Co.,*
  98 F.3d 799 (4th Cir. 1996) ..................................................................................................14

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993)................................................................................................................8

*Rojas v. Delta Airlines, Inc.,*
  425 F. Supp. 3d 524 (D. Md. 2019) .......................................................................................12

*Solomon v. Am. Web Loan,*
  No. 4:17CV145, 2019 WL 1320790 (E.D. Va. Mar. 22, 2019) ............................................12

*Spiteri v. Russo,*
  No. 12-cv-2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ............................................15

*Springsteen v. Combs,*
  No. A-13-CV-427, 2013 WL 5305312 (W.D. Tex. Sept. 19, 2013) ......................................15

*United States v. Mouzone,*
  687 F.3d 207 (4th Cir. 2012) ...............................................................................................12

*Walters v. McMahen,*
  795 F. Supp. 2d 350 (D. Md. 2011).......................................................................................11

*Worcester v. Georgia,*
  31 U.S. (6 Pet.) 515 (1832) ....................................................................................................1

*Young v. Ditech Fin., LLC,*
  No. PX 16-3986, 2017 WL 3066198 (D. Md. July 19, 2017) ................................................14

**Statutes**

18 U.S.C. § 1962.........................................................................................................................5

28 U.S.C. § 1404(a) .................................................................................................................3

28 U.S.C. § 2201 ...................................................................................................................14

25 U.S.C. § 4301 .....................................................................................................................1

## I.      INTRODUCTION

The Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe") is a federally recognized Indian tribe. The Tribe is located in north central Wisconsin. The Tribal Council enacts and administers the Tribe's laws.[1]

Similar to other tribes, and in accordance with federal policy, the Tribe aims for a self-sustaining economy so that it need not rely on the federal government. *See* Native American Business Development, Trade Promotion, and Tourism Act of 2000, 25 U.S.C. § 4301. The Tribe, like many others, has turned to e-commerce and the online financial services industry for revenue. *See* Lac du Flambeau Band of Lake Superior Indians Tribal Code Ch. 94 "Tribal Consumer Financial Service Regulatory Ordinance" ("Ch. 94").[2]

The Tribe is a sovereign government. *In re Brian W. Coughlin*, No. 19-14142, 2020 WL 6140388 (Bankr. D. Mass. Oct. 19, 2020); *see Worcester v. Georgia*, 31 U.S. (6 Pet.) 515 (1832). As elected officials of a sovereign, the Tribal Council passed comprehensive protections to consumers who choose to access services within the Tribe's jurisdiction. *See generally* Ch. 94. Chapter 94 incorporates the substantive standards of numerous federal consumer protection statutes, including the "Dodd-Frank Wall Street Reform and Consumer Protection Act," the "Truth in Lending Act," the "Equal Credit Opportunity Act," the "Fair Credit Reporting Act," and the "Fair Debt Collection Practices Act," among other federal laws. *See* Ch. 94 § 7.2.

Similar to some states, however, the Tribe opted not to include an interest rate limit in its laws. As a result, non-deceptive unsecured loans at high interest rates—priced to reflect the credit

---

[1] Bylaws, Art. III, https://www.ldftribe.com/uploads/files/Court-Ordinances/BYLAWS.pdf

[2]      https://www.ldftribe.com/uploads/files/Court-Ordinances/CHAP94-Tribal-Consumer-Financial-Services-Reulatory-Ordinance.pdf

1

risk presented by the customers—are generally legal under the Tribe's laws, as they are in several states.

No doubt this is a hotly debated policy issue. Proponents of usury limits believe high-interest loans are predatory; opponents of usury limits believe high-credit-risk individuals deserve access to emergency capital. Either way, the federal government has not spoken on the issue, so the question is resolved on a state-by-state, sovereign-by-sovereign basis.

To offer online consumer loans, the Tribe created tribally owned businesses under Chapter 44a of the Tribal Code.[3] These businesses operate under the Tribe's sovereign immunity, except as expressly waived in writing. Ch. 44a §103(2).

Plaintiffs are five individuals who took out loans through tribally owned businesses, which are afforded sovereign immunity just like the Tribe. The loan documents waived the business' immunity only to the extent that Plaintiffs brought claims under Tribal or federal law in arbitration. But Plaintiffs chose federal court instead of arbitration, and they prefer their state's laws to tribal or federal law. So instead of asserting claims against the tribally owned businesses that actually lent the money, Plaintiffs sue Joseph Wildcat Sr., Jessi Lorenzo, and Nicole Reynolds (the "Tribal Defendants") (who did not lend the money) as an end-run around the tribally owned businesses' sovereign immunity. These legal gymnastics result in a deficient pleading and the assertion of claims upon which relief may not be granted.

*First*, Plaintiffs fail to plead that specific defendants committed specific misconduct. Instead, Plaintiffs lodge a shotgun pleading, alleging one of over ten defendants committed the exact same misconduct in conclusory fashion. Plaintiffs likewise fail to plead a RICO enterprise

---

[3]    https://www.ldftribe.com/uploads/files/Court-Ordinances/CHAP44a-Tribally-Owned-Business-Organization-Code-1-.pdf

or that the enterprise is distinct from the defendants. As result, Plaintiffs' Count One (RICO under 1962(c)) should be dismissed.

*Second*, Plaintiffs' RICO conspiracy claim fails because it is barred by the intracorporate conspiracy doctrine and because Plaintiffs fail to plead an agreement amongst defendants. Thus, Plaintiffs' Count Two (RICO under 1962(d)) should be dismissed.

*Third*, without a federal cause of action, this Court cannot exercise pendent jurisdiction over the statutory state law claims. Even if it could, Plaintiffs admit that the Tribal Defendants are not lenders, and no state licensing law provides a private right of action. So, the claims would fail even if the Court could address them. And Plaintiffs cannot use the Declaratory Judgment Act as a basis for relief without underlying state or federal claims. Plaintiffs' Counts Three and Four should therefore be dismissed.

*Fourth*, Plaintiffs do not lodge the unjust enrichment claim (Count Five) against the Tribal Defendants, precluding any reading of the Complaint that permits this claim against them.

For these reasons, Plaintiffs' Amended[4] Complaint should be dismissed.

## II.   PLAINTIFFS' COMPLAINT

## A.   The Tribal Defendants

***Mr. Wildcat.*** Plaintiffs allege he is a resident of Wisconsin and "currently a general council member and previously served as President of the Band between 2016 and 2020. Both as the President and a general member of the Tribal Council, Defendant Wildcat's role and duties include oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." Doc. 99 ¶ 16.

---

[4] Plaintiffs' Amended Complaint adds many new defendants, none of whom reside in Virginia. If defendants ultimately file answers, at which point the relevant and material witnesses will become clear, Plaintiffs may move to transfer venue for convenience purposes under 28 U.S.C. § 1404(a).

*Ms. Reynolds.* Plaintiffs allege that Ms. Reynolds is a resident of Wisconsin and that "[s]he is or has previously served as the Board President for the LDF Business Development Corp." *Id.* ¶ 28.

*Ms. Lorenzo.* Plaintiffs allege that Ms. Lorenzo "is a resident of Florida and holds herself out as both the President of LDF Holdings and the Vice President of Lending at LDF Holdings." *Id.* ¶ 29.

**B.    The Plaintiffs**

*Aaron Fitzgerald.* Mr. Fitzgerald applied for and received a loan from non-party Ishwaaswi, LLC d/b/a Radiant Cash. Doc. 99 at ¶ 146. He applied for the loan using his Virginia address. *Id.* ¶ 158.

*Lori Fitzgerald.* Ms. Fitzgerald applied for and received a loan from non-party Niizhwaaswi LLC, d/b/a Loan at Last. *Id.* ¶ 159. She applied for the loan using her Virginia address. *Id.* ¶ 162.

*Kevin Williams.* Mr. William applied for and received loans from non-party Niizhwaaswi LLC, d/b/a Loan at Last, non-party Niswi, LLC d/b/a Amplify Funding, and non-party Makwa, LLC d/b/a Makwa Finance. *Id.* ¶¶ 163-165. Mr. Williams applied for the loans using his Georgia address. *Id.* ¶ 172.

*Jade Singleton.* Ms. Singleton applied for and received loans from non-party Niswi, LLC d/b/a Lendumo. *Id.* ¶ 173. She applied for the loan using her Maryland address. *Id.* ¶ 180.

*Angela Maville.* Ms. Maville applied for and received a loan from Ningodwaaswi, LLC d/b/a Sky Trail Cash. *Id.* ¶ 181. Ms. Maville applied for the loan using her Florida address. *Id.* at ¶ 187.

### III.    STANDARDS OF REVIEW

#### A.    Federal Rule of Civil Procedure 12(b)(6)

"The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Kiessling v. State Farm Mut. Auto. Ins. Co.*, No. CV 18-4281, 2019 WL 634639, at *2 (E.D. Pa. Feb. 14, 2019). After *Iqbal*, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to defeat a Rule 12(b)(6) motion to dismiss." *Id.* (internal quotations omitted). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id.* (quoting cases). "Facial plausibility is 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* To have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### IV.    ARGUMENT

#### A.  Plaintiffs' Federal RICO Claims Must be Dismissed

Plaintiffs' Counts One and Two assert RICO claims under 18 U.S.C. § 1962. Count One asserts claims under subsection (c) and Count Two asserts claims under subsection (d). The subsection (c) claims fail because Plaintiffs assert conclusory wrongdoing in shotgun fashion, and none of the specific allegations establish wrongdoing by any Tribal Defendant. Moreover, Plaintiffs fail to plead adequately an enterprise or that the enterprise is distinct. The subsection (d) claims fail because the intracorporate conspiracy bars the claims and, in addition, Plaintiffs fail to plead an agreement. For these reasons, the federal RICO claims must be dismissed.

1. **Plaintiffs' 1962(c) claims must be dismissed (COUNT ONE)**

   a. **Plaintiffs' shotgun pleading fails to attribute misconduct to any defendant on an individual basis.**

*The majority of the Amended Complaint is not aimed at Tribal Defendants.* The Amended Complaint is 262 paragraphs. Hardly any of it even claims to describe the conduct—let alone misconduct—of any Tribal Defendant in a factual manner:

- Conclusory introduction of the claims and relief sought. Doc. 99 ¶¶ 1-8.

- Recitation of jurisdiction and venue. *Id.* ¶¶ 9-10.

- Recitation of the parties. *Id.* ¶¶ 11-31.

- Recitations of state usury laws. *Id.* ¶¶ 32-60.

- Recitation of other tribes' alleged lending structures. *Id.* ¶¶ 61-97.

- Recitation of conduct undertaken by non-tribal defendants. *Id.* ¶¶ 98-111.

- Recitation of RICO case law. *Id.* ¶¶ 112-117.

- Recitation of creation of lending entities. *Id.* ¶¶ 118-129.

- Recitation of the job history of one defendant. *Id.* ¶¶ 130-134.

- Recitation of the non-party entities that made the loans. *Id.* ¶¶ 146-187.

- Threadbare recitations of causes of action *Id.* ¶¶ 188-262.

*The allegations of misconduct are pleaded in a shotgun manner.* Sandwiched between those largely irrelevant allegations are a few threadbare allegations that the Tribal Defendants committed misconduct. "A Shotgun pleading is '[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading.'" *Hill v. Stryker Sales Corp.*, No. 4:13-CV-0786-BHH, 2014 WL 4198906, at *2 (D.S.C. Aug. 20, 2014). A complaint constitutes an impermissible shotgun pleading where it is unclear which defendants are allegedly responsible for which alleged misconduct. *McCrea v. Wells Fargo*, No. CV RDB-18-2490, 2019

WL 2513770, at *7 (D. Md. June 17, 2019), *motion for relief from judgment denied*, No. CV RDB-18-2490, 2019 WL 4962022 (D. Md. Oct. 8, 2019). Also, vague allegations that the alleged violation was made by "Defendants" is not sufficient and constitutes a shotgun pleading. *Hirsch v. Lyndon S. Ins. Co*., No. 3:17-CV-1215-J-39JBT, 2019 WL 5110622, at *4 (M.D. Fla. June 7, 2019), *report and recommendation adopted sub nom. Hirsch v. Ensurety Ventures, LLC*, No. 3:17-CV-1215-J- 39JBT, 2019 WL 8370863 (M.D. Fla. Aug. 6, 2019), aff'd, 805 F. App'x 987 (11th Cir. 2020) (citing cases).

According to Plaintiffs, "Defendants . . . marketed, initiated, and collected usurious loans through the country[.]" Doc. 99 at ¶ 141 (emphasis added). And "Defendants knew the loans were illegal[.]" *Id.* at ¶ 142 (emphasis added). And an unidentified "[t]hey" charged "astronomical interest rates that far exceed rates allowed by applicable state laws." *Id.* at ¶ 143 (emphasis added). And it is unlawful for "Defendants, LDF Holdings [a non-party], or any of their affiliates to collect or receive any principal, interest or charges whatsoever on said loans[.]" *Id.* at ¶ 145 (emphasis added).

While Plaintiffs allege each defendant is liable for their own misconduct, Plaintiffs fail to allege how each defendant participated in such misconduct. Instead, allegedly over ten "Defendants" committed every facet of every aspect of the alleged misconduct—but which defendant, when, how, for what purpose, with what level of scienter, and the like is left to the reader's imagination. Thus, the Complaint simply does not "plead[] factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (quoting *Iqbal*, 556 U.S. at 663).

*The allegations related to authority are copied and pasted.* In the section reciting the parties (Doc. 99 ¶¶ 11-31), Plaintiffs copied and pasted their allegations related to each member of the Tribal Council's authority. To read the allegations against Joseph Wildcat Sr., for example, is to read the allegations against them all. According to Plaintiffs, each member of the Tribal Council's duties includes (or included) "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 16 (quoting the Tribe's Bylaws). Each member allegedly "meets [or met] twice a month with other members" to "implement high-level management of the LDF Lending Entities," including creating "the entities" and approving the "servicing agreements". *Id.* ¶ 16.

That the members of the Tribal Council "manage" all "economic affairs" is merely a threadbare reference to the "operate or management" test under RICO case law,[5] appended to a recitation of the Tribe's Bylaws. *See* Doc. 99 ¶ 16 (citing Art. VI(f) of the Tribe's Bylaws). Threadbare references to each members' official duties are not "factual content" that allows the Court to draw reasonable inferences that any individual engaged—in his or her personal capacity no less—in a violation of the RICO statute.

*No defendant made any of the alleged illegal loans.* The crux of Plaintiffs' claims is that usurious loans were made. But made by whom? Not Tribal Defendants. Instead, Plaintiffs readily admit that the loans were allegedly made by non-party entities. *Compare* Doc. 99 ¶¶ 146-187 (setting forth the non-defendants that made the loans) *with id.* ¶¶ 11-31 (setting forth the parties). This fact alone explains why Plaintiffs' factual allegations against the Tribal Defendants are so

---

[5] *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("The 'operation or management' test express this requirement . . . .")

deficient: Plaintiffs are suing the wrong parties, and try as they might, Plaintiffs cannot state a claim against Tribal Defendants.

*****

Individually and collectively, Plaintiffs do not state a cause of action against each Tribal Defendant because: (1) the majority of the Amended Complaint does not describe their conduct, (2) the portion of the complaint related to misconduct is pleaded in shotgun fashion, (3) the portion of the complaint related to authority is simply a copy-and-paste job of the Tribe's Bylaws and RICO case law, and (4) the thrust of Plaintiffs' claims is that entities who are not defendants allegedly made illegal loans. Against that backdrop, Plaintiffs try to hide their lack of claims against the Tribal Defendants through the faux complexity of a statutory RICO claim.

### b. Plaintiffs fail to plead an enterprise.

Plaintiffs fail to plead sufficient facts to establish a RICO enterprise, and they do so through a clever pleading tactic.

Section E of the Amended Complaint purports to set forth the "RICO Enterprise(s)." *See* Doc. 99 ¶¶ 112-140. In the beginning of that section, in paragraphs 112 through 117, Plaintiffs set forth general case law related to RICO enterprises. And then Plaintiffs use a clever pleading tactic: In paragraph 118, Plaintiffs allege "<u>As detailed above</u>, Defendants created an array of different companies for the purpose of making usurious loans . . . ." Doc. 99 ¶ 118 (emphasis added). But "detailed above" were *other* alleged tribal lending "schemes"—not ones allegedly undertaken by Tribal Defendants. *See id.* ¶¶ 61-97.

Plaintiffs simply do not allege any facts that would allow the Court to plausibly infer the alleged participants <u>in this purported enterprise</u>—as opposed to other alleged tribal lending programs—engaged in the allegedly common purpose, or to identify the exact roles and responsibilities of the alleged participants (save for copying and pasting the Tribe's Bylaws).

9

Without more, such "'vague allegations of a RICO enterprise . . . lacking any distinct existence and structure' will not survive dismissal." *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1007 (E.D. Va. 2021) (holding that Plaintiff's "rote allegations that Defendants 'operated' and 'conducted the business of the enterprise' . . . unsupported by any specific fact[,]" and "mere conclusory language that Defendants and supposed enterprise participants operated as a RICO enterprise" fails to satisfy the requirements of Rule 12(b)(6) to plead an enterprise under RICO); *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 843 (D. Md. 2013) (citation omitted); *see also Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 473 (D. Md. 2012) (dismissing RICO claim that "contain[ed] no factual averments regarding the relationships between or among Defendants, much less how they functioned as a continuing unit"); *Adolphe v. Option One Mortg. Corp.*, No. 3:11-cv-418, 2012 WL 5873308, at *5 (W.D.N.C. Nov. 20, 2012) (dismissing RICO claim where "Plaintiff failed to aver any factual allegations that demonstrate the individual roles played by each Defendant, much less how those roles combined to form a continuing unit, or 'enterprise'").

### c.   Plaintiffs fail to plead distinctness.

Looking past Plaintiffs' deficient allegations of an enterprise, Plaintiffs in conclusory fashion fail to plead a "RICO enterprise that operates or functions in a way distinct from the defendants themselves." *Myers v. Lee*, No. 1:10CV131 AJTJFA, 2010 WL 3745632, at *4 (E.D. Va. Sept. 21, 2010). A "RICO person must be distinct from the RICO enterprise." *Id.* at *3. As a result, "liability depends on showing that the defendants conduct or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Id.* The "sum total of the allegations" cannot merely allege "that the defendants associated themselves for the purpose of conducting" their "business affairs through entities created for that purpose." *Id.* at *5.

In Plaintiffs' view, the Tribal Council has the power to manage lending activities. Doc. 99 ¶ 122. And the Tribal Council has allegedly, in turn, delegated agents or entities to manage those

lending activities as an unlawful enterprise. *Id.* ¶¶ 123-129. But that simply means "[t]here is a complete overlap between the defendants, their alleged agents, and the enterprise." *Myers*, 2010 WL 3745632, at *4. It is of no concern that Plaintiffs summarily plead a "series of interconnecting agency relationship, including . . . non-party participants." *Id.* at *3. Because, even so, "nowhere in the Amended Complaint are there any allegations that the affairs of the enterprise are any different from the affairs of the defendants." *Id.* at *4.

Plaintiffs cannot turn a business relationship into a RICO enterprise by invoking the ephemeral phrase "association-in-fact" or other similar legal tests. At the end of the day, Plaintiffs alleged that the Tribal Defendants have the power to engage in a lending business and engaged in a lending business through the Tribe's entities and agents. There is thus no "purpose" of the defendants that is "distinct from the goals and objectives" of the alleged enterprise (which are, according to Plaintiffs, simply defendants' agents). *Id.* at *5.

### 2.   Plaintiffs' 1962(d) claims must be dismissed (COUNT II)

#### a.   Intracorporate conspiracy bars Plaintiffs' RICO conspiracy claim.

Pursuant to the intracorporate conspiracy doctrine, a business entity "cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Balt.-Wash. Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 744 (D. Md. 2008). This is because the "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Id.*; *see also Walters v. McMahen*, 795 F. Supp. 2d 350, 358 (D. Md. 2011) ("[T]he Fourth Circuit has consistently found that the intracorporate conspiracy doctrine can be broadly applied to conspiracy cases, including civil RICO claims."). The doctrine extends not only to a company's employees, but also to its subsidiaries, sister companies, and other corporate affiliates. *Bailey*, 992 F. Supp. 2d at 568.

11

The intracorporate conspiracy doctrine squarely applies here. Plaintiffs allege that the "Tribal Council" (which controls the Tribe) conspired with its subsidiaries (which are Tribal businesses), and non-tribal members "including but not limited to Pruett and Sky Trail Servicing Group" (which, according to Plaintiffs, "delegat[ed] responsibilities over the day-to-day operations" of the tribal lending business by the Tribe, *see, e.g.*, Doc. 99 ¶ 16). But Plaintiffs do not allege that any of the individual defendants or unnamed individuals ever acted outside the scope of their employment or agency relationships. Thus, Plaintiffs' own allegations run them headlong into the intracorporate conspiracy bar.

### b.  Plaintiffs fail to plead an agreement.

A RICO conspiracy requires "the knowing agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012) (quotations and citations omitted). "[T]o prove a RICO conspiracy, two things must be established: '(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense.'" *Solomon v. Am. Web Loan,* No. 4:17CV145, 2019 WL 1320790, at *11 (E.D. Va. Mar. 22, 2019) (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)).

Plaintiffs fail to adequately plead an agreement to violate RICO. Plaintiffs simply assert, in conclusory fashion, that the Defendants "aid[ed], abet[ed], and facilitate[ed] a series of agreements designed to § 1962(b)-(c) . . . . " Doc. 99 ¶ 223. Plaintiffs do not explain how, when, or where an agreement was reached (or even that an agreement was reached), nor do Plaintiffs explain what it means to facilitate an agreement "designed to" violate other sections of the RICO statute. Absent well-pleaded facts showing how, when, and where the alleged agreement occurred, the RICO conspiracy claim fails. *See, e.g., Rojas v. Delta Airlines, Inc*., 425 F. Supp. 3d 524, 538

(D. Md. 2019) ("That Defendants reached an express or tacit agreement to fraudulently collect the [purportedly unlawful] Tax is conclusory, and Plaintiffs fail to provide any specific allegations as to how, when, or where this agreement actually occurred or who made what communications to bring the agreement about.").

## B. Plaintiffs' State Law Claims Must be Dismissed (COUNTS III AND IV)

Plaintiffs purport to bring claims under a litany of state laws, despite Plaintiffs only residing in Virginia, Georgia, Maryland, and Florida. In the interest of judicial economy, the Tribal Defendants will broadly address why those four state law claims fail.[6]

First, for the reasons stated above, Plaintiffs' alleged federal causes of action fail. If "the federal claims are dismissed before trial . . . the state claim should be dismissed." *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001). If there is an early dismissal of the federal cause of action, the "justifications behind pendent jurisdiction" over state law claims are "typically absent." *Id.* It is therefore an abuse of discretion to exercise pendent jurisdiction over state law claims after dismissing federal claims well before trial. *Id.*

Second, even if this Court had jurisdiction, Plaintiffs' own allegations show that they have no state law claims against the Tribal Defendants. Plaintiffs allege that the "LDF Lending Entities"—which are non-parties to this suit—purportedly violated state laws by making the loans. *See* Doc. 99 ¶ 232. These state laws, according to Plaintiffs, apply to "lenders." *Id.* ¶¶ 146-187. But nowhere do Plaintiffs allege that any of the Tribal Defendants were lenders. Indeed, Plaintiffs allege the exact opposite: the lenders are non-parties. *Id.* ¶¶ 146-187.

---

[6] Even if Plaintiffs could bring class claims on behalf of others who are subject to a different state's laws—which they cannot—the same analysis would apply.

13

Third, to the extent any of these claims rely on state-law licensing requirements, there is no private right of action related to those state's licensing regimes. "If a statute does not expressly create a private cause of action, one does not exist…By now, Congress is well aware of this presumption and how to provide private remedies." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 805 (4th Cir. 1996). So, while there might be an enforcement mechanism for state regulators, private plaintiffs cannot vindicate the states' licensing regimes in federal court.

Fourth, these state law claims are styled as ones for a declaratory judgment, *see* Doc. 99 ¶¶ 236, 249, but a declaratory judgment action is not an affirmative claim for relief. Rather, these purported causes of action are remedies. *Artis v. TMobile USA, Inc.*, No. PJM 18-2575, 2019 WL 1427738, at *5 (D. Md. Mar. 29, 2019) ("[B]oth a declaratory judgment and an injunction are remedies, not independent claims themselves. . . ."); *Young v. Ditech Fin., LLC*, No. PX 16-3986, 2017 WL 3066198, at *8 (D. Md. July 19, 2017) (court cannot issue declaratory judgment under 28 U.S.C. § 2201 or injunction under Federal Rule of Civil Procedure 65 "unless an independent valid cause of action survives challenge").

Absent an independent valid cause of action against the Tribal Defendants, Plaintiffs claims under the Declaratory Judgment Act and for "Violations of State Law" must also be dismissed. *See, e.g., Eseni v. RIMSI Corp.*, No. AW-07-2384, 2007 WL 9782599, at *4 & n.4 (D. Md. Dec. 6, 2007) (dismissing request for injunctive relief where it was unavailable under statutes providing alleged causes of action); *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 368-69 (D. Md. 2010) (dismissing count for declaratory and injunctive relief, noting "[t]he principal deficiency with the plaintiffs' argument is that the amended complaint does not cite any federal or state statutes that independently entitle the plaintiffs to declaratory or injunctive relief"); *Artis*, 2019 WL 1427738, at *5 ("Since declaratory and injunctive relief are remedies unavailable to plaintiffs

14

under both the [Maryland Consumer Protection Act] and the [Maryland Consumer Debt Collection Act] . . . there is no basis for the Court to grant his request for declaratory and injunctive relief.").

The fact that Plaintiffs sue the Tribal Defendants in their official capacities in an effort to invoke the *Ex parte Young* exception to sovereign immunity does not change this analysis. Plaintiffs cannot manufacture *Ex parte Young* claims by styling Declaratory Judgment Act claims and other procedural remedies as independent claims for relief. "*Ex parte Young* does not supply a right of action by itself. . . . *Ex parte Young* provides a path around sovereign immunity if the plaintiff already has a cause of action from somewhere else." *Michigan Corrections Org. v. Michigan Dep't of Corrections*, 774 F.3d 895, 902-07 (6th Cir. 2014) (finding *Ex parte Young* did not apply to private plaintiffs' Declaratory Judgment Act claim against state officials alleging violation of Fair Labor Standards Act because statute precluded private party injunction actions); *Spiteri v. Russo*, No. 12-cv-2780, 2013 WL 4806960, at *19 & n.30 (E.D.N.Y. Sept. 7, 2013) (assuming without deciding that defendants could be sued for declaratory and injunctive relief under *Ex parte Young*; holding requests for injunctive and declaratory relief should be dismissed because plaintiff failed to state an underlying claim for relief); *Harris v. Florida*, No. 8:16-cv-12-T-27MAP, 2016 WL 656977, at *2 (M.D. Fla. Jan. 12, 2016) (noting that Declaratory Judgment Act "does not provide an independent cause of action for determination of the constitutionality of a statute" and that "[a]n appropriate way for Plaintiff to challenge the constitutionality of the state laws at issue (if indeed he can go forward notwithstanding the Eleventh Amendment's jurisdictional bar) is under the federal civil rights statute, 42 U.S.C. § 1983"); *Springsteen v. Combs*, No. A-13-CV-427, 2013 WL 5305312, at *4 (W.D. Tex. Sept. 19, 2013) ("The Declaratory Judgment Act is insufficient by itself to establish a federal cause of action sufficient to qualify for the *Ex Parte Young* exception to immunity that requires that [plaintiff] make out a federal claim.").

15

**C.      Plaintiffs' Unjust Enrichment Claim is Not Asserted Against Tribal Defendants.**

Plaintiffs' only remaining claim is Count V for unjust enrichment. This claim is not asserted against the Tribal Defendants. *See* Doc. 99 at ¶ 262. As a result, Count V provides no basis to keep Tribal Defendants in the case.

**V.      CONCLUSION**

For the reasons set forth above, the Tribal Defendants ask that Plaintiffs' Amended Complaint be dismissed for failure to state a plausible claim against Tribal Defendants.

By:  /s/ Alan D. Wingfield
Alan D. Wingfield (VSB No. 27489)
John E. Komisin (VSB No. 84061)
Troutman Pepper Hamilton Sanders LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
Email: alan.wingfield@troutman.com
Email:  jed.komisin@troutman.com
*Counsel for Jessi Lorenzo, Nicole Reynolds and Joseph Wildcat, Sr.*

and

Shilee T. Mullin *(admitted pro hac vice)*
Spencer Fane LLP
13520 California Street, Suite 290
Omaha, NE 68154
Telephone: (402) 965-8600
Fax: (402) 965-8601
E-mail: smullin@spencerfane.com

Patrick J. McAndrews (admitted pro hac vice)
Spencer Fane LLP
1000 Walnut
Kansas City, MO 64106
Telephone: (816) 292-8300
Fax: (816) 474-3216
E-mail: pmcandrews@spencerfane.com
*Counsel for Jessi Lorenzo and Nicole Reynolds*

and

16

Andrew Adams III (*admitted pro hac vice*)
Hogen Adams PLLC
1935 County Road B2 W., Suite 460
Saint Paul, MN 55113
Telephone: (651) 842-9100
Fax: (651) 842-9101
E-mail: aadams@hogenadams.com
*Counsel for Joseph Wildcat, Sr.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2022, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

/s/ Alan D. Wingfield
Alan D. Wingfield

135277150v1