**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

LORI FITZGERALD, *et al.*,

    Plaintiffs,

v.                                                                   Civil Action No. 3:20-cv-00044-NKM-JCH

JOSEPH WILDCAT SR., *et al.,*

    Defendants.

**MEMORANDUM OF DEFENDANTS SKY TRAIL SERVICING GROUP, LLC AND WILLIAM CHENEY PRUETT IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION OF PLAINTIFF MAVILLE'S CLAIMS AND STAY MAVILLE'S CLAIMS PENDING ARBITRATION**

Defendants Sky Trail Servicing Group, LLC ("Skytrail Servicing") and William Cheney Pruett ("Pruett"), by counsel, submit this Memorandum in Support of their Motion to Compel Individual Arbitration of Plaintiff Angela Maville's ("Maville" or "Plaintiff") Claims and Stay Maville's Claims Pending Arbitration pursuant to Fed. R. Civ. P. 12(b)(3).

**I.  INTRODUCTION**

This case involves a purported class action brought by five plaintiffs ("Plaintiffs") challenging certain loans made by entities that are arms of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized Indian Tribe (the "Tribe"). Plaintiffs originally sued three individuals associated with the Tribe in their personal capacities and subsequently amended the complaint to add additional non-Tribe defendants, including Pruett and Skytrail Servicing.

Skytrail Servicing and Pruett are only tangentially related to this case. They did not make a loan to any of the Plaintiffs, nor did any of the Plaintiffs make any payments to Skytrail Servicing or Pruett. Indeed, the only Plaintiff to assert a claim against Skytrail Servicing and Pruett, Maville,

alleges that she obtained a loan from Ningodwaaswi, LLC d/b/a Sky Trail Cash ("Sky Trail Cash"), a tribal entity not named as a defendant. She repaid a portion of her loan to Sky Trail Cash. She does not allege that she made any payments to Skytrail Servicing or Pruett, nor that she had any relationship with Skytrail Servicing or Pruett.

Despite Maville's tangential connection with Skytrail Servicing and Pruett, she now asserts claims against each of them alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1962(d) ("RICO"), and asserts a claim for unjust enrichment under common law. As explained herein, Maville's claims against Skytrail Servicing and Pruett are subject to individual[1] arbitration pursuant to the arbitration provision ("Arbitration Provision") in Maville's loan agreement with Sky Trail Cash ("Loan Agreement"). Therefore, the claims against Skytrail Servicing and Pruett should be stayed pending arbitration.

## II.  LEGAL STANDARD

"Congress enacted the [Federal Arbitration Act] in response to widespread judicial hostility to arbitration." Pursuant to that Act, "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted. That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (cleaned up).

"Although no Federal Rule of Civil Procedure expressly addresses motions to dismiss or stay pending arbitration, the United States Supreme Court has described arbitration clauses as 'a

---

[1] Maville's Loan Agreement also includes an enforceable class action waiver provision. *See* Declaration of William Cheney Pruett ("Pruett Decl."), Exhibit A. Hence, she cannot pursue her claims as a class representative or on a class-wide basis.

2

specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" *Enter. Info. Mgmt., Inc., v. SuperLetter.com, Inc.,* No. DKC 13-2131, 2013 WL 5964563, at *3 (D. Md. Nov. 7, 2013) (quoting *Scherk v. Alberto-Culver, Co.*, 417 U.S. 506, 519 (1974)). In the Fourth Circuit, a motion to dismiss based on a forum-selection clause is treated as a motion to dismiss for improper venue under Rule 12(b)(3). *Aggarao v. MOL Ship Mgmt. Co.,* 675 F.3d 355, 366 (4th Cir. 2012). On a Rule 12(b)(3) motion, the Court views the facts in the light most favorable to the plaintiff, but the Court may consider evidence outside of the pleadings. *Id.*

## III. ARGUMENT

Maville's claims against Skytrail Servicing and Pruett must be arbitrated. Whether the Court should compel arbitration raises four important issues, all of which require that the claims against Skytrial Servicing and Pruett be compelled to arbitration. First and foremost, the Loan Agreement contains a valid and enforceable Arbitration Provision under which questions of arbitrability must be decided by the arbitrator. Second, to the extent the issue should be decided by this Court and not an arbitrator, Skytrail Servicing and Pruett may enforce the Arbitration Provision even though they are non-signatories to the Loan Agreement. Third, the Arbitration Provision's "delegation clause" and the Loan Agreement's governing law do not prospectively waive Maville's right to pursue any federal statutory claim. Fourth, because the Court should compel arbitration of Maville's claims against Skytrail Servicing and Pruett, the Court should stay those claims pending arbitration.

### A. The arbitrator, not a court, must decide the question of arbitrability in the first instance.

Maville's claims against Skytrail Servicing and Pruett are subject to individual, binding arbitration pursuant to the Federal Arbitration Act ("FAA"). The FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006).

"When faced with a motion to compel arbitration, the court does not review the contract as a whole. Rather, the court reviews the arbitration agreement as if it were a free-standing contract, with an eye toward two gateway issues." *Davis v. BSH Home Appliances Corp.,* No. 4:15-CV-103-FL, 2016 WL 2901741, at *3 (E.D.N.C. May 18, 2016) (citing *Buckeye Check Cashing, Inc. v. Cardenga*, 546 U.S. 440, 444-46 (2006)). These gateway issues are (1) whether there is a valid agreement between the parties to arbitrate, and, if there is a valid agreement, (2) whether the "specific dispute falls within the substantive scope of that agreement." *Id.* (quoting *Hooters of Am. Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)).

Critically, however, when parties have agreed to delegate these gateway issues to the arbitrator, then the question of "arbitrability" is within the arbitrator's purview, not the Court's. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.; see also Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010); *Novic v. Credit One Bank, Nat'l Ass'n,* 757 F. App'x 263, 266 (4th Cir. 2019) ("As part of their agreement to arbitrate, parties may consent to arbitrate the "gateway" issue of arbitrability[.]"); *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020).

4

Here, the Loan Agreement includes a delegation clause that clearly and unambiguously shows that the parties intended that the gateway issues be decided by an arbitrator, not a court. *See* Pruett Decl., Exhibit A. The Loan Agreement states that any "dispute" between the parties that is not resolved by the informal dispute resolution procedure described therein is subject to the Arbitration Provision. Under the Arbitration Provision, "dispute" is "given the broadest possible meaning" and includes "all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision . . . , *the validity and scope of this Provision* and any claim or attempt to set aside this Provision." *Id.* (emphasis added). That language expresses a "clear and unmistakable" intent to arbitrate the question of arbitrability. Courts in this circuit routinely find that identical or near-identical language offers an unambiguous intent to send the question of arbitrability to the arbitrator. *See e.g., Novic,* 757 F. App'x at 266-67 (citing cases). This Court should do the same.

Because the Arbitration Provision commits the question of arbitrability to the arbitrator, under established Supreme Court caselaw this Court should go no further. It should leave the remaining questions in this motion, and the motion to dismiss, for resolution by the arbitrator, including whether Skytrail Servicing and Pruett, as non-signatories to the Loan Agreement, can enforce the Arbitration Provision. *See Isernia v. Danville Reg'l Med. Ctr., LLC*, 4:22-cv-00022, 2022 U.S. Dist. LEXIS 160263, at *21 (W.D. Va. Sept. 6, 2022) (holding that "where the non-signatory is the moving party, the signatory is bound by his arbitration provision's clear-and-unmakeable delegation of arbitrability issues, and an arbitrator must resolve the third-party enforcement issues.").[2]

---

[2] Judge Cullen certified this issue for interlocutory appeal to the Fourth Circuit pursuant to 28 U.S.C. § 1292(b). The Fourth Circuit granted the plaintiff permission to appeal this ruling, and the parties are in the process of briefing issue to the Fourth Circuit.

### B. Skytrail Servicing and Pruett may enforce the Arbitration Provision even though they are non-signatories.

Even if this Court were to examine the question of arbitrability, Skytrail Servicing and Pruett may enforce the broad language of the Arbitration Provision because they are the affiliates and/or agents of a signatory, Sky Trial Cash. Therefore, they fall within the broad scope of the Arbitration Provision.

In deciding whether a dispute falls within the scope of an arbitration agreement, state law principles are used to determine whether a party that was not a signatory to the contract may invoke an arbitration provision in the contract. *Barber v. Charlotte Motor Speedway, LLC*, No. 1:13CV99, 2014 WL 6686730, at *2 (M.D.N.C. Nov. 26, 2014) (citing *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001)). "[T]he Supreme Court has noted that 'traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ago, incorporation by reference, third-party beneficiary theories, waiver or estoppel.'" *Id.* (quoting *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009)). The Fourth Circuit has recognized under "contract law generally," a third-party beneficiary where the third party is an *intended* beneficiary—that is, "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *BIS Computer Solutions, Inc. v. City of Richmond*, 122 Fed. App'x 608, 611 (4th Cir. 2005) (quoting Restatement (Second) of Contracts § 302(1) (1981)).

Where an arbitration provision is drafted broadly, there is a heightened presumption of arbitrability so that "in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 584-85 (1960). "An order to arbitrate the particular grievance should not be denied unless it

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 582-83; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986).

Here, the Arbitration Provision in the Loan Agreement broadly covers "all U.S. federal or state law claims" and "all claims asserted by you individually or on behalf of another person arising out of the loan agreement against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities (collectively, 'related third parties')." *See* Pruett Decl., Exh. A. Such broad language, and the absence of any explicit exclusion, unquestionably provides for arbitration of any claims related to the Loan Agreement.

Although Skytrail Servicing and Pruett are not signatories to the Loan Agreement, the Arbitration Provision covers claims against them because they are "related third parties" as that term is defined in the Arbitration Provision. The Loan Agreement states that the agreement is made between Maville and Sky Trail Cash, including any "agent" or "affiliate" of Sky Trail Cash.[3] The Arbitration Provision states that the parties will arbitrate all disputes, including claims against any agent or affiliated entities of Sky Trail Cash. As the loan servicer hired by Sky Trail Cash, Skytrail Servicing is an agent of Sky Trail Cash, thus making Skytrail Servicing an intended third-party beneficiary of the Arbitration Provision. Skytrail Servicing is also an affiliated entity of Sky Trail Cash, which further evidences the intent that Skytrail Servicing be considered a third-party beneficiary of the Arbitration Provision. *See, e.g.,* Second Amended Compl. ("SAC"), Exhibit 3, June 18, 2014 Servicing Agreement between Skytrail Servicing Group and Sky Trail Cash, at ¶

---

[3] *See* Pruett Decl., Exh. A ("In this Agreement ('Agreement'), the words 'we,' 'us,' and 'our' mean Ningodwaaswi, LLC d/b/a Sky Trail Cash, an economic development arm, instrumentality of, and a limited liability company wholly-owned and controlled by, the Lac du Flambeau Band of Lake Superior Chippewa Indians ('Tribe'), and any authorized representative, ***agent,*** independent contractor, ***affiliate*** or assignee we use in the provision of your loan." (emphasis added).

7

1.6. As a result, Skytrail Servicing has standing to enforce the Arbitration Provision, and Maville's claims against Skytrail Servicing must be arbitrated. *See Elder v. BMO Harris Bank*, Civil No. – JFM-13-3043, 2014 U.S. Dist. LEXIS 50194, *3-5, 2014 WL 1429334 (D. Md. April 11, 2014) ("Non-signatories to an arbitration agreement (such as defendants) may enforce arbitration agreements when … the claim is based on conduct which the non-signatory allegedly took as an agent on behalf of the party with which the plaintiff agreed to arbitrate.") (citing *Arthur Anderson*, 556 U.S. at 631).

Likewise, Pruett is entitled to enforce the Arbitration Provision and have Maville's claims against him arbitrated because he too is affiliate and an agent of Sky Trail Cash and, therefore, a "related third party." The Servicing Agreement defines the term "Affiliate" as "any corporation, partnership, limited liability company, joint venture, trust, department or agency or *individual* controlled by, under common control with, *or which controls, directly or indirectly Servicing Agent* or Company." SAC, Exhibit 3 at ¶ 2.1. Pruett has at all times owned, controlled, and maintained the power to vote 25% of the outstanding shares of Skytrail Servicing, and is therefore, by definition, an affiliate. Pruett Decl., at ¶ 3. As previously stated and referenced in footnote 3, the Loan Agreement states that the agreement is made between Maville and Sky Trail Cash, including any "affiliate" or "agent" of Sky Trail Cash. In addition to clearly being an affiliate, there is no question that Pruett was an intended third-party beneficiary of the Arbitration Provision because he is an agent of Sky Trail Cash. In fact, the only reason that Pruett has any relation to this case is because he is the president of Skytrail Servicing. Because his position with Skytrail Servicing makes him an agent of the Tribe, all claims against him should also be subject to arbitration.

    C.   **The delegation clause and Arbitration Provision do not prospectively waive Maville's rights.**

Skytrail Servicing and Pruett anticipate Maville will argue that the entire Arbitration Provision—including the delegation clause—is unenforceable because it contains a "prospective waiver" of Maville's claims. This argument fails. Maville's Loan Agreement is governed by the "laws of the Tribe and applicable federal law, without regard to the laws of any state or other jurisdiction . . . ." Pruett Decl., Exh. A. The Arbitration Provision also permits Maville to bring common law claims as well as claims under state and federal law. *Id.* The Arbitration Provision does not waive any substantive claims.

"The Supreme Court has recognized that arbitration agreements that operate 'as a prospective waiver of a party's right to pursue statutory remedies' are not enforceable because they are in violation of public policy." *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 340 (4th Cir. 2020) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 637 n.19 (1985)). Courts will therefore not enforce an arbitration agreement if the agreement "prevents a litigant from vindicating federal substantive statutory rights." *Id.* (quoting *Mitsubishi*, 473 U.S. at 637). But that doctrine is inapplicable when a litigant is able to pursue their federal statutory rights in arbitration. *Id.* (citing *Mitsubishi*, 473 U.S. at 637).

Here, the Loan Agreement explicitly allows Maville to vindicate her federal substantive statutory rights. It expressly provides that the laws of the Tribe and applicable federal law govern the agreement. Furthermore, as set forth above, Maville's Loan Agreement does not waive state law substantive rights. In fact, it expressly *allows* Maville to bring "*all state law claims*" and "all claims based upon *a violation of any state statute.*" *See* Pruett Decl., Exh. A. While Maville's Loan Agreement is governed by Tribal and federal law, it allows application of *all* applicable substantive law consistent with governing Tribal and federal law. This language does not prevent the arbitrator from considering Maville's state law claim for unjust enrichment. Instead, it simply

9

directs the arbitrator to look to Tribal and federal case law when analyzing that claim.[4] Nothing in the Loan Agreement prevents Maville from vindicating her federal statutory rights, or any other rights, in arbitration, and the Arbitration Provision therefore falls outside the prohibition outlined in *Gibbs v. Haynes Invs., LLC*.

While Defendants recognize that certain other courts have held that *other* tribal lending agreements run afoul of the prospective waiver requirement, the language in the agreements in those cases was materially different than the Arbitration Provision here. In those cases, the loan agreements required the *exclusive* application of tribal law, foreclosing any federal statutory claims. *See, e.g.*, *Haynes Invs.*, 967 F.3d at 341 (discussing cases exclusively applying tribal law and waiving federal statutory claims). In contrast, the Arbitration Provision here details which claims a consumer may bring in arbitration and how the Arbitrator will consider these claims. This includes, in relevant part:

> (a) all claims, disputes or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision ("this Provision"), the validity and scope of this Provision and any claim or attempt to set aside this Provision (b) <u>all U.S. federal or state law claims,</u> disputes or controversies, arising from or relating directly or indirectly to this Agreement . . . (d) <u>all common law claims,</u> based upon contract, tort, fraud, or other intentional torts *(e)* <u>all claims based upon a violation of any state or federal constitution, statute or regulation . . . .</u>
>
> The Arbitrator shall apply <u>applicable substantive law consistent with the Governing Law set forth above,</u> and the Federal Arbitration Act, 9 U.S.0 §§ 1-16 ("FAA") and applicable statutes of limitation, and shall honor claims of privilege recognized at law.

---

[4] This is not a new or extreme concept. In fact, the majority of federal tribal lending cases also look to and apply applicable state law. *See, e.g., MacDonald v. CashCall, Inc,* 2017 WL 1536427 at *8 (looking to and applying New Jersey state law); *Gibbs v. Stinson,* 421 F. Supp. 3d at 308 (looking to and applying Virginia state law); *Dunn v. Glob. Tr. Mgmt., LLC,* 506 F.Supp.3d at 1237 (looking to and applying Florida law); *Hengle v. Treppa,* 19 F.4th at 351 (looking to and applying Virginia law). Arbitration would be no different.

*See* Pruett Decl., Exh. A. Further, as mentioned above, the Governing Law in the Loan Agreement is the "laws of the Tribe and applicable federal law." *Id.* Therefore, Maville may bring <u>*all claims*</u> related to the loan at issue in arbitration. No claim under federal law is precluded by the Loan Agreement, and Maville may pursue any federal statutory remedy of her choosing. Maville's argument that the Loan Agreement contains a prospective waiver therefore fails.

To the extent Maville would rely on the Fourth Circuit's decision in *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021), that reliance is misplaced. For example:

- The loan agreements in *Hengle* contained the following governing law: <u>*Dispute[s] will be governed by the laws of the [Tribe]*</u> and such rules and procedures used by the applicable arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Arbitration Provision or the law of the [Tribe], including the limitations on the arbitrator below. *Id.* at 332.

- The Fourth Circuit's analysis focused on its prior decisions related to prospective waiver language in tribal lending agreements, and each required "<u>*application of tribal law*</u> to the practical exclusion of other law." *Id.*[5]; Relying on the above federal precedent that found arbitration agreements requiring *exclusive application of Tribal law* unenforceable, the *Hengle* Court concluded that the arbitration agreement before it contained a prospective waiver.[6]

But, once again, the Loan Agreement here plainly does not make tribal law the *exclusive* governing law. It explicitly includes the application of federal law, state law, and common

---

[5] *See also Hayes*, 811 F.3d at 675 (finding prospective waiver in loan agreement that required the arbitrator to apply "the laws of the [tribe]" but not "any law other than the law of the [tribe]" no matter where the arbitration occurred)*; Dillon*, 856 F.3d at 332 (finding prospective waiver in loan agreement that required "any dispute . . . be resolved by arbitration in accordance with the law of the [tribe]."); *Haynes Investments, LLC,* 967 F.3d at 340 (4th Cir. 2020) (finding prospective waiver in loan agreement that "shall be governed by tribal law," required the arbitrator to "apply Tribal law and the terms of this Agreement."); *Gibbs v. Sequoia Capital Operations, LLC,* 966 F.3d 286 (4th Cir. 2020) (same).

[6] The same is true with respect to the Fourth Circuit's recent decision in *Williams v. Martorello* where the Court considered an agreement that was governed exclusively by the laws of the tribe. *Williams v. Martorello,* No. 21-2116, 2023 U.S. App. LEXIS 1768, at *30 (4th Cir. Jan. 24, 2023). Maville's Loan Agreement is not governed exclusively by the law of the Tribe.

law. This distinction defeats any comparison of the Arbitration Provision here from other arbitration provisions that have been found to be unenforceable. Thus, to the extent Maville would argue that her Loan Agreement waives all procedural and substantive rights, including federal rights, that argument fails.

### D. The claims against Skytrail Servicing and Pruett should be stayed pending arbitration.

Finally, as discussed above, the Arbitration Provision is to be interpreted according to the FAA, which reflects a liberal federal policy favoring arbitration. To that end, Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Supreme Court has explained that this requires "stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002).

This Court has previously recognized that a stay is appropriate in light of the uncertainty in the Fourth Circuit as to whether a district court has discretion to dismiss rather than stay an action subject to arbitration. *Green v. Zachry Industrial, Inc.,* 36 F.3d 669, 678-79 (W.D. Va. 2014). Accordingly, Skytrail Servicing and Pruett request that an order be entered, pursuant to Section 3 of the FAA, staying all proceedings until arbitration has been ordered as provided for in the Arbitration Provision.

## IV. CONCLUSION

Skytrail Servicing and Pruett ask that the Court compel arbitration of Maville's claims against Skytrail Servicing and Pruett and stay these proceedings as to Skytrail Servicing and Pruett pending that arbitration.

          **WILLIAM CHENEY PRUETT and**
          **SKY TRAIL SERVICING GROUP, LLC**


By: */s/David N. Anthony*
    David N. Anthony
    Virginia State Bar No. 31696
    *Counsel for William Cheney Pruett and Sky Trail Servicing Group, LLC*
    TROUTMAN PEPPER HAMILTON SANDERS LLP
    1001 Haxall Point
    Richmond, VA  23219
    Telephone: (804) 697-5410
    Facsimile: (804) 698-5118
    Email: david.anthony@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February 2023, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
*Counsel for William Cheney Pruett and Sky Trail Servicing Group, LLC*
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutman.com