**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| LORI FITZGERALD, et al., | ) | Case No. 3:20-cv-00044-GEC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH WILDCAT SR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS JOSEPH WILDCAT, SR., JOHN JOHNSON, GEORGE THOMPSON,
JAMIE ANN ALLEN, JEFFREY BAUMAN, SR., LOUIS ST. GERMAINE, ERIC
CHAPMAN, SR., RACQUEL BELL, GLORIA COBB, WILLIAM GRAVEEN,
WILLIAM STONE SR., SARAH PYAWASIT, JESSI LORENZO, AND NICOLE
REYNOLD'S BRIEF IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL
ARBITRATION OF PLAINTIFFS WILLIAMS, SINGLETON, AND MAVILLE CLAIMS
AND STAY PLAINTIFFS' CLAIMS PENDING ARBITRATION AND MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

        A.      Summary of the Argument.......................................................................2

II.     BACKGROUND ...................................................................................................3

III.    PLAINTIFFS' COMPLAINT.................................................................................5

        A.      Tribal Employees .....................................................................................5

        B.      The Tribal Council Defendants.................................................................5

        C.      The Plaintiffs...........................................................................................9

IV.     STANDARDS OF REVIEW ................................................................................10

        A.      Federal Rule of Civil Procedure 12(b)(1) ...............................................10

        B.      Federal Rule of Civil Procedure 12(b)(3) ...............................................11

V.      ARGUMENT ......................................................................................................13

        A.      The Arbitration Plaintiffs Are Subject to Individual, Binding Arbitration
                And Must Be Compelled to Arbitration..................................................13

                1.      Because the Arbitration Plaintiffs Agreed to Arbitrate Arbitrability,
                        All Issues Concerning the Agreement's Scope, Validity or
                        Enforceability Have Been Delegated to the Arbitrator.............................13

                2.      Neither the Delegation Clause nor Arbitration Provision as a
                        Whole Prospectively Waive Arbitration Plaintiffs' Rights .....................14

                3.      The Arbitration Plaintiffs' Claims Are Subject To Arbitration,
                        Assuming Arguendo That The Court Addresses That Issue.....................22

                4.      The Complaint Vis-A-Vis Arbitration Plaintiffs Should Be Stayed
                        Pending Arbitration...................................................................................23

        B.      Absent Arbitration, This Court Does Not Have Subject Matter Jurisdiction
                Because the Tribe Is the Real Party in Interest and Is Entitled to Sovereign
                Immunity ...............................................................................................24

                1.      The Tribe is the Real Party in Interest, and All Claims Against
                        Tribal Defendant Should Therefore Be Dismissed....................................25

                2.      *Hengle's* Holding Regarding *Ex parte Young* and the Tribe's
                        Sovereign Immunity Should Not be Followed. .........................................28

        C.      Additionally, Tribal Council Defendants are Immune from Liability as
                they Enjoy Absolute Immunity, Qualified Immunity and Legislative
                Immunity in All of Their Legal Capacities..............................................32

                1.      Tribal Council Defendants are Entitled to Absolute Immunity as
                        High-Level Tribal Government Officials ...................................................32

2.    Tribal Council Defendants, at a Minimum, are Entitled to Qualified Immunity as Tribal Government Officials Acting Within their Authority ..................................................................................33

3.    Tribal Council Defendants are Immune From Suit in Their Role as the Tribe's Legislative Officials ...............................................................34

D.    Plaintiffs Lack Standing Under Article III ................................................................37

1.    Plaintiffs' Alleged Injuries are not Traceable to the Tribal Defendants .........................................................................................38

2.    The Tribal Defendants Cannot Redress Plaintiffs' Alleged Injuries .........39

VI.    CONCLUSION ......................................................................................................................41

OM 1061639.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acres Bonusing, Inc. v. Marston*,
   No. 19-CV-05418-WHO, 2020 WL 1877711 (N.D. Cal. Apr. 15, 2020) ..............................27

*Acres Bonusing v. Marston*,
   17 F.4th 901 (9th Cir. 2021) ....................................................................................................32

*Aggarao v. MOL Ship Mgmt. Co.*,
   675 F.3d 355 (4th Cir. 2012) ....................................................................................................11

*Alexander v. Holden*,
   66 F.3d 62 (4th Cir. 1995) ........................................................................................................35

*Allen v. Cooper*,
   895 F.3d 337 (4th Cir. 2018), *cert. granted,* 139 S. Ct. 2664 (2019) ....................................35

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ..................................................................................................................22

*Bell Atl.-Pennsylvania, Inc. v. Penn. Public Utility Commission*,
   107 F. Supp. 2d 653 (E.D. Pa. 200) ...................................................................................11, 24

*Bogan v. Scott Harris*,
   523 U.S. 44 (1998) ....................................................................................................................34

*Bonnet v. Harvest (U.S.) Holdings, Inc.*,
   741 F.3d 1155 (10th Cir. 2014) ................................................................................................28

*Brooks v. Clark County*,
   828 F.3d 910 (2016) ..................................................................................................................32

*Bruce v. Riddle*,
   631 F.2d 272 (4th Cir. 1980) ....................................................................................................35

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ..................................................................................................................11

*Butz v. Economou*,
   438 U.S. 478 (1977) ............................................................................................................32, 33

*Chadwell v. Lee Cty. Sch. Bd.*,
   457 F. Supp. 2d 690 (W.D. Va. 2006) ......................................................................................35

OM 1061639.1

*Chappell v. Robbins,*
    73 F.3d 918 (9th Cir. 1996) ........................................................................35, 36

*Church v. Missouri,*
    913 F.3d 736 (8th Cir. 2019) ............................................................................35

*Cooper v. Lee County Bd. of Supervisors,*
    966 F. Supp. 411 (W.D. Va. 1997) ...................................................................35

*Dan River v. Icahn,*
    701 F.2d 278 (4th Cir. 1983) ............................................................................40

*Davis v. BSH Home Appliances Corp.,*
    No. 4:15-CV-103-FL, 2016 WL 2901741 (E.D.N.C. May 18, 2016) ....................................12

*Davis v. Littell,*
    398 F.2d 83 (1968)...........................................................................................32

*Dillon v. BMO Harris Bank, N.A.,*
    856 F.3d 330 (4th Cir. 2017) ......................................................................17, 19

*DIRECTV v. Saylor,*
    2015 WL 1477885 (W.D. Va. Mar. 31, 2015)...................................................12

*Doe v. Virginia Dept. of State Police,*
    713 F.3d 745 (4th Cir. 2013) ............................................................................39

*Dunn v. Glob. Tr. Mgmt., LLC,*
    506 F.Supp.3d at 1237 ......................................................................................20

*Dunn v. Glob. Tr. Mgmt.,*
    LLC, No. 8:19-CV-2223-WFJ-AEP, 2020 WL 7260771 (M.D. Fla. Dec. 10, 2020) ........................................................................................................18

*E.E.O.C. v. Washington Suburban Sanitary Com'n,*
    631 F.3d 174 (4th Cir. 2011) ............................................................................35

*EEOC v. Waffle House, Inc.,*
    534 U.S. 279 (2002)..........................................................................................11

*F.E. Trotter, Inc. v. Watkins,*
    869 F.2d 1312 (9th Cir. 1989) .....................................................................33, 34

*Ford Motor Co. v. Dep't of Treasury,*
    323 U.S. 459 (1945)..........................................................................................24

*Forrester v. White,*
    484 U.S. 219 (1988)..........................................................................................32

*Friends for Ferrell Parkway, LLC v. Stasko*,
   282 F.3d 315 (4th Cir. 2002) ................................................38

*Genskow v. Prevost*,
   825 F. App'x 388 (7th Cir. 2020) ...........................................27

*Gibbs v. Haynes Investments, LLC*,
   967 F.3d 332 (4th Cir. 2020) ............................................17, 19, 21, 22

*Gibbs v. Sequoia Capital Operations, LLC*,
   966 F.3d 286 (4th Cir. 2020) ...............................................17

*Gibbs v. Stinson*,
   421 F. Supp. 3d at 308 .......................................................20

*Grand Canyon Skywalk Dev., LLC v. Cieslak*,
   No. 2:13-CV-00596-JAD, 2015 WL 3551305 (D. Nev. June 5, 2015) ...................28

*Grand Canyon Skywalk Dev., LLC v. Hualapai Indian Tribe of Ariz.*,
   966 F. Supp. 2d 876 (D. Ariz. 2013) ........................................34

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000)...........................................................12

*Green v. Zachry Industrial, Inc.*,
   36 F.3d 669 (W.D. Va. 2014) ................................................23

*Hayes v. Delbert Services Corp.*,
   811 F.3d 666 (4th Cir. 2016) ...............................................17, 19

*Hengle v. Asner*,
   433 F. Supp. 3d 825 (E.D. Va. 2020), motion to certify appeal granted, No.
   3:19CV250 (DJN), 2020 WL 855970 (E.D. Va. Feb. 20, 2020) ....................*passim*

*Hengle v. Asner*,
   433 F. Supp. 825 (E.D. Va. 2020) ..........................................40

*Hengle v. Treppa*,
   19 F.4th 324 (4th Cir. 2021) ..............................................16, 17, 20, 29

*In Harvey v. Ute Indian Tribe of Uintah & Ouray Reservation*,
   416 P.3d 401 (Utah 2017).....................................................30

*Jamul Action Comm. v. Simermeyer*,
   974 F.3d 984 (9th Cir. 2020) ..............................................26

OM 1061639.1

*JW Gaming Dev., LLC v. James,*
No. 3:18-CV-02669-WHO, 2018 WL 4853222 (N.D. Cal. Oct. 5, 2018), *aff'd,*
78 F. App'x 545 (9th Cir. 2019) *cert. denied,*140 S. Ct. 1297, 206 L. Ed. 2d
376 (2020) .................................................................................................................10, 24

*Larsen v. Senate of the Commonwealth,*
152 F.3d 240 (3d Cir. 1998).................................................................................................35

*Lewis v. Clarke,*
137 S. Ct. 1285 (2017) .....................................................................................25, 26, 27, 31

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992).....................................................................................................37, 38

*MacDonald v. CashCall, Inc,*
No. CV 16-2781, 2017 WL 1536427 (D.N.J. Apr. 28, 2017) aff'd, 883 F.3d
220 (3d Cir. 2018).......................................................................................................19, 20

*Mainstream Loudoun v. Bd. of Trustees of Loudoun Cty. Library,*
2 F. Supp. 2d 783 (E.D. Va. 1998) .....................................................................................34

*Matt v. United States,*
No. CV 15-28-GFBMM, 2015 WL 13560169 (D. Mont. Oct. 6, 2015) ...............................28

*McCray v. Md. Dep't of Transp., Md. Transit Admin.,*
741 F.3d 480 (4th Cir. 2014) ..............................................................................................35

*Messerschmidt v. Millender,*
565 U.S. 535 (2012).............................................................................................................33

*Meyers v. Oneida Tribe of Indians of Wisconsin,*
836 F.3d 818 (7th Cir. 2016) ................................................................................10, 16, 24

*Michigan v. Bay Mills Indian Cmty.,*
572 U.S. 782 (2014)...............................................................................................29, 30, 31

*Morrison v. Amway Corp.,*
323 F.3d 920 (11th Cir. 2003) ............................................................................................25

*Noe v. City Nat'l Bank of W. Virginia,*
No. 20-1230, 2020 WL 5814243 (4th Cir. Sept. 30, 2020) ..................................................12

*Novic v. Credit One Bank, Nat'l Ass'n,*
757 F. App'x 263 (4th Cir. 2019) ..................................................................................13, 14

*Pearson v. Callahan,*
555 U.S. 223 (2009).............................................................................................................33

OM 1061639.1

*Pennachietti v. Mansfield*,
No. 17-02582, 2017 WL 6311646 (E.D. Pa. Dec. 11, 2017)..........................................11, 24

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)..........................................................................................................10, 31

*Rateree v. Rockett*,
852 F.2d 946 (7th Cir. 1988) ..................................................................................................35

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)...................................................................................................................13

*Risser v. Thompson*,
930 F.2d 549 (7th Cir. 1991) .............................................................................................6, 35

*Roemen v. United States*,
463 F. Supp. 3d 990 (D.S.D. 2020) .......................................................................................26

*Runs After v. United States*,
766 F.2d 347 (8th Cir. 1985) ..................................................................................................34

*Skrtich v. Thornton*,
280 F.3d 1295 (11th Cir. 2002) ..............................................................................................24

*Smith v. W. Sky Fin., LLC*,
168 F. Supp. 3d 778 (E.D. Pa. 2016) .....................................................................................19

*State Employees Bargaining Agent Coalition v. Rowland*,
494 F.3d 71 (2d Cir. 2007)......................................................................................................35

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 .............................................................................................................................38

*Stevens v. Osuna*,
877 F.3d 1293 (11th Cir. 2017) ..............................................................................................32

*Terry v. Bobb*,
827 F. Supp. 366 (E.D. Va. 1993) ..........................................................................................34

*Trujillo v. Romero*,
No. 13- CV-1178 ....................................................................................................................28

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960)................................................................................................................22

*Vermont Agency of Nat. Res. v. U.S. ex rel Stevens*,
529 U.S. 765 (2000)................................................................................................................39

OM 1061639.1

*Virginia Office for Prot. & Advocacy v. Stewart*,
    563 U.S. 247 (2011) ..................................................................................29

*Wagnon v. Prairie Band Potawatomi Nation*,
    546 U.S. 95 (2005) ...................................................................................31

*Williams v. Big Picture Loans, LLC*,
    929 F.3d 170 (4th Cir. 2019) ...................................................................25

*Williams v. Martorello*,
    No. 21-2116, 2023 WL 364903 (4th Cir. Jan. 24, 2023)..................................18, 19

*Ex parte Young*,
    209 U.S. 123 (1908) ........................................................................ *passim*

**Statutes**

18 U.S.C. § 1964(c) ........................................................................................40

28 U.S.C. § 1404(a) .........................................................................................6

Federal Arbitration Act ........................................................................11, 12, 23

Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301–1303 .........................................31

Indian Gaming Regulatory Act ...........................................................................29, 30

Lac du Flambeau Tribal Consumer Financial Services Regulatory Ordinance.............................4

RICO .........................................................................................35, 36, 38, 40

**Other Authorities**

86 Fed. Reg. 7554 (Jan. 29, 2021) ...........................................................................4

Eleventh Amendment..................................................................................29

Fourteenth Amendment ...............................................................................29

Fed. R. Civ. P. 12(b)(1)...........................................................................3, 10, 11, 24

Fed. R. Civ. P. 12(b)(3).................................................................................3, 11

Fed. R. Civ. P. 12(b)(7)....................................................................................4

Fed. R. Civ. P. 56......................................................................................25

OM 1061639.1

https://dpi.wi.gov/amind/tribalnationswi/ldf (last visited Oct. 15, 2020)........................................4

Fed. R Civ. P. 12(b)(6)...........................................................................................................24, 25

x

## I.     INTRODUCTION

This case concerns loans originated by a tribal lender, the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe") a federally recognized Indian tribe, which are governed by loan agreements that expressly requires all claims, including arbitrability, be brought in arbitration.[1]  Plaintiffs do not dispute this. Nor do Plaintiffs dispute that the tribal lending entities ("TLE") are entitled to tribal sovereign immunity as arms of the Tribe.

Instead, to avoid tribal sovereign immunity from suit and attempt to obtain monetary damages, Plaintiffs have sued a number of individuals who undisputedly did nothing more than serve the Tribe and its TLEs as they were elected or hired to do. Plaintiffs trumpet that they seek damages against the Defendants individually, but the essential nature and effect of Plaintiffs' Complaint[2] demonstrates otherwise. The Complaint demonstrates that the judgment Plaintiffs seek would invalidate the Tribe's loans, which would interfere with the Tribe's public administration and/or the effect of it would be to restrain the Tribe, through its TLEs, from acting (or compel it to act). Plaintiffs' attempt to skirt the Tribe and its TLEs' sovereign immunity should not be countenanced, and these individuals should not be forced to stand trial for claims that are truly against the Tribe itself.  Plaintiffs' claims are not maintainable against Defendants Joseph Wildcat, Sr., John Johnson, George Thompson, Jamie Ann Allen, Jeffrey Bauman, William Stone Sr., Louis St. Germaine, Eric Chapman, Sr., Racquel Bell, Gloria Cobb, William Graveen, and Sarah Pyawasit (collectively "Tribal Council Defendants"), Jessi Lorenzo, and Nicole Reynolds (the

---

[1] The Tribal Defendants assert that the loans at issue are governed by and issued in accordance with Tribal law and applicable federal law and dispute that the loans are subject to state law, however, the instant Motion does not require resolution of that issue.

[2] All references to Complaint herein refer to Plaintiffs' Second Amended Complaint [Doc. 135] filed on January 10, 2023.

OM 1061639.1

"Tribal Council Defendants," Ms. Lorenzo, and Ms. Reynolds are collectively "Tribal Defendants") for numerous reasons.

Plaintiffs Aaron Fitzgerald, Lori Fitzgerald, Kevin Williams, Jade Singleton, and Angela Maville allege they applied for and received loans from "LDF Holdings" or its subsidiaries and that the loans did not comply with state law (Virginia, Georgia, Maryland and Florida). Plaintiffs specified the tribal lending subsidiary entities they obtained the loans from, *inter alia*. Plaintiffs admit that LDF Holdings is an entity that was formed by the Tribe, and that its subsidiaries are also organized under the laws of the Tribe.[3] In their Complaint, Plaintiffs identify 20 subsidiaries of LDF Holdings and seek to certify a nationwide class of persons who (1) entered into a loan agreement with the LDF Lending Entities as defined above; (2) from Virginia, Georgia, Maryland, Florida, Alabama, Arizona, Arkansas, California, Connecticut, Idaho, Illinois, Kansas, Minnesota, New York, Oregon, Rhode Island, South Dakota, Texas, West Virginia, or Wisconsin; and (3) repaid any amount on the loans.[4]

Instead of suing the Tribal entity(ies) that issued the loans, Plaintiffs have improperly sued Ms. Lorenzo, Ms. Reynolds, former employees of the Tribe, and various members of the Tribe's legislative council. Plaintiffs have also sued the loan servicer, SkyTrail Servicing Group, LLC.

### A.   Summary of the Argument

As to Mr. Williams, Ms. Singleton, and Ms. Maville (the "Arbitration Plaintiffs"), their claims must be compelled to arbitration. As set forth below, the Arbitration Plaintiffs each entered

---

[3] Doc. 135 ¶¶ 5, 119.

[4] Doc. 135 ¶ 197. Plaintiffs also propose a number of subclasses. *See id.* 135 ¶ 198-202.

OM 1061639.1

into loan agreements with entities of the Tribe and all of the loan agreements contain a binding "Arbitration Provision" that includes a delegation clause.[5]

Second and independently, the relevant lending agencies, which were established pursuant to Tribal Law, are vested with the Tribe's privileges and immunities, including immunity from suit. Similarly, Tribal Defendants are officials and employees of the Tribe who are also cloaked with the Tribe's immunity. As a consequence, this matter must be dismissed, because this Court does not have subject matter jurisdiction over the Tribe pursuant to its sovereign immunity.

Third, the Tribal Council Defendants are shielded from suit in all capacities under the theories of absolute immunity, qualified immunity and legislative immunity, as the only allegations in the Complaint are that they took actions while acting on behalf of the Tribe as its legislative body.

Finally, this Court does not have subject matter jurisdiction because Plaintiffs lack standing to bring their claims. Specifically, Plaintiffs have not–and cannot–show their damages are fairly traceable to the Tribal Council Defendants and the Tribe's former employees, Ms. Lorenzo, and Ms. Reynolds. For this independent reason, all defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(3).

## II.    BACKGROUND

The Tribe is an Indian tribal government that executed treaties with the United States in 1837, 1842, and 1854.[6] The Tribe is recognized by the United States Department of the Interior to have the immunities and privileges available to federally recognized Indian tribes by virtue of

---

[5] Declaration of Aron Mitchell in Support of Motion to Compel Arbitration, which is attached hereto as **"Exhibit 1."**

[6] Treaty with the Chippewa 1837 (7 Stat., 536; Proclamation, June 15,1838), Treaty with the Chippewa 1842 (7 Stat., 591; Proclamation, March 23, 1843), and Treaty of LaPointe 1854 (10 Stats., 1109; Proclamation January 10, 1855).

their government-to-government relationship with the United States.  86 Fed. Reg. 7554 (Jan. 29, 2021).  The Tribe has over 3,000 members, with more than 2,000 residing on the Tribe's 86,000-acre treaty guaranteed reservation, located northern Wisconsin.  The Tribe (including its entities) is the largest employer in Vilas County, Wisconsin.[7]

The Tribe is governed by the duly elected Lac du Flambeau Tribal Council ("LDF Tribal Council"), which acts to pass laws and ordinances governing tribal members and the Lac du Flambeau Indian Reservation.[8]   In August 2012, the LDF Tribal Council created the Lac du Flambeau Business Development Corporation ("BDC") as an economic arm of the Tribe.[9]  The LDF Tribal Council established the BDC to create jobs and generate revenue to contribute to the Tribe's general fund.  The BDC is governed by a Board of Directors, which consists of the members of the LDF Tribal Council. The Directors individually have no power to act on behalf of the BDC.[10]

In the exercise of Tribal sovereignty, the LDF Tribal Council enacted the Lac du Flambeau Tribal Consumer Financial Services Regulatory Ordinance ("Ordinance"), which authorized "lending over the internet provided that such internet lending is consistent with applicable federal and Tribal laws and regulations."  The Ordinance authorized businesses wholly owned by the Tribe to engage in consumer financial services and also established the Tribal Consumer Financial

---

[7] *See* https://dpi.wi.gov/amind/tribalnationswi/ldf (last visited Oct. 15, 2020).

[8] Plaintiffs admit in the Complaint that the LDF Tribal Council is the "governing body" of the Tribe. Doc. 135 ¶ 129-130. In further support, Plaintiffs even attach *the Constitution and Bylaws of the Lac du Lambeau Band of Lake Superior Chippewa Indians of Wisconsin* to their Second Amended Complaint. *See* Doc. 135-2.

[9] Declaration of President Johnson in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7) ("Johnson Decl."), attached hereto as **"Exhibit 2**," ¶ 6(a).

[10] Johnson Decl. ¶ 6(a).

Services Regulatory Authority ("TFSRA"), which regulates the Tribe's online consumer financial services.[11]

Thereafter, the LDF Tribal Council created LDF Holdings, LLC for the purpose of engaging in consumer financial services through the creation and operation of subsidiaries. The Tribe's online consumer financial services business provides jobs to Tribal and community members. The BDC (and its tribal lending subsidiaries) distributes profits to the Tribe's general fund that is overseen by the LDF Tribal Council, and those funds are used to support the Tribal government as well as programs and services for Tribal members.[12]

## III.   PLAINTIFFS' COMPLAINT

### A.   Tribal Employees

*Ms. Reynolds*. Plaintiffs allege that Ms. Reynolds is a resident of Wisconsin and that "she is or has previously served as the Board President of the LDF Business Development Corp." Doc. 135 ¶ 30.

*Ms. Lorenzo*. Plaintiffs allege that Ms. Lorenzo "is a resident of Florida and holds herself out as both the President of LDF Holdings and the Vice President of Lending at LDF Holdings." *Id.* ¶ 31.

### B.   The Tribal Council Defendants

Plaintiffs allege in the Complaint that the LDF Tribal Council is the "governing body" of the Tribe and in that role has the power and duties to manage "all economic affairs of the Tribe including its lending activities" and has the power to pass "legislation, statutes, codes and ordinances including those related to lending activities." Doc 135 ¶¶ 129-130. Plaintiffs allege the

---

[11] Johnson Decl. ¶¶ 6(e)(f), 7.

[12] Johnson Decl. ¶ 6(b)(c)(d).

OM 1061639.1

Tribal Council Defendants, while serving as the governing body of the Tribe, conspired to pass ordinances and establish lending operations which charged and collected unlawful interest on loans to Plaintiffs. *Id.* ¶ 149-153. Specifically, Plaintiffs allege the following against each Tribal Council Defendant:

**Mr. Wildcat.** Plaintiffs allege he is a resident of Wisconsin and "currently a general council member and previously served as President of the Band between 2016 and 2020. Both as the President and a general member of the Tribal Council, Defendant Wildcat's role and duties "include oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 18. Plaintiffs allege that Mr. Wildcat and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

**Mr. Johnson.** Plaintiffs allege he is a resident of Wisconsin[13] and "is the President of the Band's Tribal Council." Plaintiffs allege that both as the President and a general member of the LDF Tribal Council, Defendant Johnson's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 19. Plaintiffs allege that Mr. Johnson and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

**Mr. Thompson.** Plaintiffs allege he is a resident of Wisconsin and "is the Vice President of the Band's Tribal Council." Plaintiffs allege that as the Vice President of the LDF Tribal Council, Defendant Thompson's role and duties include "oversight and management of 'all

---

[13] Plaintiffs' most recent Complaint adds many new defendants, many of whom reside in Wisconsin and none of whom reside in Virginia. If defendants ultimately file answers, at which point the relevant and material witnesses will become clear, defendants may move to transfer venue for convenience purposes under 28 U.S.C. § 1404(a).

OM 1061639.1

economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 20.  Plaintiffs allege that Mr. Thompson and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

***Ms. Allen.*** Plaintiffs allege she is a resident of Wisconsin and "is the Secretary of the Band's Tribal Council." Plaintiffs allege that as the Secretary of the LDF Tribal Council, Defendant Allen's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 21.  Plaintiffs allege that Ms. Allen and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

***Mr. Stone.*** Plaintiffs allege he is a resident of Wisconsin and "is the Treasurer of the Band's Tribal Council." Plaintiffs allege that as the Treasurer of the LDF Tribal Council, Defendant Stone's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 22.  Plaintiffs allege that Mr. Stone and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

***Mr. Bauman.*** Plaintiffs allege he is a resident of Wisconsin and "is a member of the Band's Tribal Council." Plaintiffs allege that as a member of the LDF Tribal Council, Defendant Bauman's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 23.  Plaintiffs allege that Mr. Bauman and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

OM 1061639.1

*Mr. St. Germaine.* Plaintiffs allege Mr. St. Germaine is a resident of Wisconsin and "is a member of the Band's Tribal Council." Plaintiffs allege that as a member of the LDF Tribal Council, Defendant St. Germaine's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 24.  Plaintiffs allege that Mr. St. Germaine and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

*Mr. Chapman.* Plaintiffs allege he is a resident of Wisconsin and "is a member of the Band's Tribal Council." Plaintiffs allege that as a member of the LDF Tribal Council, Defendant Chapman's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 24.  Plaintiffs further allege that Defendant Chapman and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

*Ms. Bell.* Plaintiffs allege she is a resident of Wisconsin and "is a member of the Band's Tribal Council." Plaintiffs allege that as a member of the LDF Tribal Council, Defendant Bell's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 28.  Plaintiffs allege that Ms. Bell and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

*Ms. Cobb.* Plaintiffs allege she is a resident of Wisconsin and "is a member of the Band's Tribal Council." Plaintiffs allege that as a member of the LDF Tribal Council, Defendant Cobb's role and duties include "oversight and management of 'all economic affairs and enterprises of the

OM 1061639.1

Tribe,' including its lending activities." *Id.* ¶ 27.  Plaintiffs allege that Ms. Cobb and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

 ***Mr. Graveen.*** Plaintiffs allege he is a resident of Wisconsin and "is a member of the Band's Tribal Council." Plaintiffs allege that as a member of the LDF Tribal Council, Defendant Graveen's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 28.  Plaintiffs further allege that Defendant Graveen and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

 ***Ms. Pyawasit.*** Plaintiffs allege Ms. Pyawasit is a resident of Wisconsin and "is a member of the Band's Tribal Council." Plaintiffs allege that as a member of the LDF Tribal Council, Defendant Pyawasit's role and duties include "oversight and management of 'all economic affairs and enterprises of the Tribe,' including its lending activities." *Id.* ¶ 26.  Plaintiffs further allege that Defendant Pyawasit and the other LDF Tribal Council members met "at least twice a month to review and implement high-level management decisions related to LDF Lending Entities." *Id.* ¶ 132.

 **C.** **The Plaintiffs**

 ***Aaron Fitzgerald.*** Mr. Fitzgerald applied for and received a loan from non-party Ishwaaswi, LLC d/b/a Radiant Cash. Doc. 135 at ¶ 154. He applied for the loan using his Virginia address. *Id.* ¶ 166.

 ***Lori Fitzgerald***. Ms. Fitzgerald applied for and received a loan from non-party Niizhwaaswi LLC, d/b/a Loan at Last. *Id.* ¶ 167. She applied for the loan using her Virginia address. *Id.* ¶ 170.

OM 1061639.1

*Kevin Williams.* Mr. William applied for and received loans from non-party Niizhwaaswi LLC, d/b/a Loan at Last, non-party Niswi, LLC d/b/a Amplify Funding, and non-party Makwa, LLC d/b/a Makwa Finance. *Id.* ¶¶ 171-173. Mr. Williams applied for the loans using his Georgia address. *Id.* ¶ 180.

*Jade Singleton*. Ms. Singleton (also known as Jade Johnson) applied for and received loans from non-party Niswi, LLC d/b/a Lendumo. *Id.* ¶ 181. She applied for the loan using her Maryland address. *Id.* ¶ 188.

*Angela Maville.* Ms. Maville applied for and received a loan from Ningodwaaswi, LLC d/b/a Sky Trail Cash[14]. *Id.* ¶ 189. Ms. Maville applied for the loan using her Florida address. *Id.* ¶ 195.

## IV.   STANDARDS OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(1)

"When a suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Sovereign immunity will bar a suit against state officials when "'the state is the real, substantial party in interest.'" *Id*. (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

When a suit is brought against an official or employee in their individual capacity, it may proceed unless the "sovereign is the real party in interest." *JW Gaming Dev., LLC v. James*, No. 3:18-CV-02669-WHO, 2018 WL 4853222, at *3 (N.D. Cal. Oct. 5, 2018), *aff'd*, 78 F. App'x 545 (9th Cir. 2019) *cert. denied*,140 S. Ct. 1297, 206 L. Ed. 2d 376 (2020). "Sovereign immunity bars individual-capacity suits when 'the remedy sought is truly against the sovereign.'" *Id*.

---

[14] Ishwaaswi, LLC, Niizhaaswi, LLC, Niswi, LLC, Makwa, LLC and Ningodwaaswi, LLC, along with the BDC, LDF Holding, the Tribe and the LDF Tribal Council, are herein collectively referred to as the "Tribe."

Issues related to tribal sovereign immunity from suit are addressed pursuant to a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Pennachietti v. Mansfield*, No. 17-02582, 2017 WL 6311646, *2 (E.D. Pa. Dec. 11, 2017). The standard depends on "whether the defendant makes a facial or factual challenge." *Bell Atl.-Pennsylvania, Inc. v. Penn. Public Utility Commission*, 107 F. Supp. 2d 653, 659 (E.D. Pa. 2000). "Under either approach, it is generally the plaintiff's burden to prove that jurisdiction exists." *Id.* Because Plaintiffs have admitted that the Tribe created and owns or controls the BDC and LDF Holdings and its TLE subsidiaries, the challenge is a facial challenge. In a facial challenge, where the allegations of jurisdiction in the complaint are disputed, "the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present." *Id.*

### B.      Federal Rule of Civil Procedure 12(b)(3)

The Fourth Circuit has held that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *Aggarao v. MOL Ship Mgmt. Co.,* 675 F.3d 355, 366 (4th Cir. 2012). Venue is not proper in this Court as to Mr. Williams' claims because his claims are subject to individual, binding arbitration pursuant to the Federal Arbitration Act ("FAA").

The FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006). The Federal Arbitration Act ("FAA") "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3 & 4). "When faced with a motion to compel arbitration, the court does not review the contract as a whole. Rather, the court reviews the arbitration agreement as if it were a free-standing

contract, with an eye toward two gateway issues." *Davis v. BSH Home Appliances Corp.*, No. 4:15-CV-103-FL, 2016 WL 2901741, at *3 (E.D.N.C. May 18, 2016).  The Arbitration Provision in the loan agreements at issue here specifically invoke the FAA.[15]

The party resisting arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91, (2000).  Also, "[w]here a valid arbitration agreement exists and the issues in a case fall within its purview, a court has no choice but to grant a motion to compel arbitration." *DIRECTV v. Saylor*, 2015 WL 1477885, *4 (W.D. Va. Mar. 31, 2015).

Arbitration agreements may also agree to arbitrate certain "gateway questions of arbitrability," such as "whether the parties have agreed to arbitration or whether their agreement covers a particular controversy." *Hengle v. Asner*, 433 F. Supp. 3d 825, 846 (E.D. Va. 2020), motion to certify appeal granted, No. 3:19CV250 (DJN), 2020 WL 855970 (E.D. Va. Feb. 20, 2020) (internal quotations omitted).  "If a delegation provision both clearly and unmistakably delegates gateway issues to an arbitrator and proves valid under § 2, a court may not decide the merits of any arbitrability issues and must submit such questions to the arbitrator consistent with the parties' agreement, even if the argument for arbitration proves 'wholly groundless.'" *Id.*

In ruling on a motion to compel arbitration, the Court may consider evidence beyond the pleadings.  *Noe v. City Nat'l Bank of W. Virginia*, No. 20-1230, 2020 WL 5814243, at *2 (4th Cir. Sept. 30, 2020).

---

[15] *See* Mitchell Decl. at "**Exhibit 1-A**" at 14; "**Exhibit 1-B**" at 14; "**Exhibit 1-C**" at 14; "**Exhibit 1-D**" at 17-18; "**Exhibit 1-E**" at 16; "**Exhibit 2**"at 8; "**Exhibit 3-A**" at 16; "**Exhibit 3-B**" at 16; "**Exhibit 3-C**" at 16; "**Exhibit 3-D**" at 16.

OM 1061639.1

## V.      ARGUMENT

### A.      The Arbitration Plaintiffs Are Subject to Individual, Binding Arbitration And Their Claims Must Be Compelled to Arbitration

#### 1.      Because the Arbitration Plaintiffs Agreed to Arbitrate Arbitrability, All Issues Concerning the Agreement's Scope, Validity or Enforceability Have Been Delegated to the Arbitrator

The United States Supreme Court mandates that where parties have agreed to arbitrate "gateway" questions of "arbitrability," including "whether the parties have agreed to arbitrate or whether their agreement covers a particular dispute," such disputes are for the arbitrator to decide. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *see also Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x 263, 266 (4th Cir. 2019) (holding that the following language constituted a plain delegation of issues of arbitrability to an arbitrator: "[c]laims subject to arbitration include ... *the application, enforceability or interpretation of* [the cardholder agreement], *including this arbitration provision*.").

Mr. Williams, Ms. Singleton, and Ms. Maville all entered into loan agreements that contained identical Arbitration Provisions.[16]

Here, the Arbitration Provisions in the loan agreements contain a delegation provision which mandates that claims subject to arbitration include, "[a]ll claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision ("this Provision"), the validity and scope of this Provision and any claim or attempt to set aside this Provision."[17]   The Arbitration Provisions further state that the arbitrator:

[S]hall apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and

---

[16] *See supra* at 12, n.15.

[17] Mitchell Decl. at Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 16; Ex. 1-E at 15; Ex. 2 at 8, Ex 3-A at 16 Ex. 3-B at 16; Ex. 3-C at 16; Ex. 3-D at 16.

OM 1061639.1

applicable statutes of limitation, and shall honor claims of privilege recognized at law.[18]

Further, the Governing Law section of the loan agreements provides that the "laws of the Tribe and applicable federal law will govern this Agreement . . . ."[19]

The above language contained in the loan agreements is the very type of language that courts have held to constitute a delegation clause.  *E.g., Novic*, 757 F. App'x at 266-67 (citing cases).  Therefore, because the Arbitration Provisions in the loan agreements contain a delegation clause that encompasses any disputes concerning the application of the delegation clause, among other things, the Court should compel the Arbitration Plaintiffs' individual claims to arbitration and stay the case pending such arbitration.  Any issue Arbitration Plaintiffs may have with the delegation clause is for the Arbitrator, not this Court, to decide.

> ### 2.     Neither the Delegation Clause nor the Arbitration Provision as a Whole Prospectively Waive Arbitration Plaintiffs' Rights

In order to avoid arbitration, the Arbitration Plaintiffs will likely argue that both the delegation clause and arbitration provision as a whole are unenforceable because they contain "prospective waivers" of the Arbitration Plaintiffs' claims.  This argument fails – the Arbitration Plaintiffs' loan agreements simply do not waive substantive claims, based on state law or otherwise.  In fact, of all the cases addressing this issue, no case, Fourth Circuit or otherwise, has found a prospective waiver existed where the loan agreement allowed application of Tribal law, federal law, and all other applicable substantive law pursuant to Tribal and federal law.  Although there are a number of cases finding prospective waivers in other tribal lending agreements

---

[18] Ex. 1-A at 14; Ex. 1-B at 14; Ex. 1-C at 14; Ex. 1-D at 17; and Ex. 1-E at 16; Ex. 2 at 8, Ex 3-A at 16; Ex. 3-B at 16; Ex. 3-C at 16; Ex. 3-D at 16.

[19] Ex. 1-A at 8-9; Ex. 1-B at 8-9; Ex. 1-C at 8-9; Ex. 1-D at 10; Ex. 1-E at 10; Ex. 2 at 5-6, Ex 3-A at 10; Ex. 3-B at 10; Ex. 3-C at 10; Ex. 3-D at 10.

requiring *exclusive application of tribal law,* that is not the case here.  The Arbitration Plaintiffs'

loan agreement does not contain that same flaw, and for that reason, there is no prospective waiver.

Although Arbitration Plaintiffs' will undoubtedly direct this Court's attention to language

in *other* tribal lending agreements, the only relevant language is that found in the loan agreements

signed by these Arbitration Plaintiffs.  There, the agreements provide a two-step process for a

consumer (*i.e.* the borrower) to raise disputes related to their loans. First, the consumer may:

> [D]irect his or her concerns in the first instance to our management… A consumer's
> complaint to us shall be considered similar in nature to a petition for redress
> submitted to a sovereign government, without waiver of sovereign immunity and
> exclusive jurisdiction, and does not create any binding procedural or substantive
> rights. We will investigate the consumer's complaint and provide our initial
> determination as soon as is reasonably practicable. [20]

Further pursuant to the loan agreements, "if the dispute is not resolved to [the consumer's]

satisfaction, you and we agree that we shall arbitrate that dispute in accordance with the terms of

the Arbitration Provision, described below."[21]  Put differently, the first step of the process is for

the consumer to send a letter to the Tribe's management, with the goal being fast and efficient

relief for both parties.  If the *consumer* is not satisfied with the Tribe's proposed resolution, the

consumer may then file their claims in arbitration, where the Tribe has voluntarily agreed to a

limited waiver of its sovereign immunity to address the claims.[22] ("In order to resolve a dispute

that we cannot resolve to your satisfaction as set forth above, we consent to a limited waiver of

sovereign immunity as expressly set forth below.").

---

[20] Mitchell Decl. at Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 16; Ex. 1-E at 15; Ex. 2 at 7, Ex 3-A at 16; Ex. 3-B at 16; Ex. 3-C at 16; Ex. 3-D at 16.

[21] *Id.*

[22] *Id.*

15

As for step two, submitting the claim to binding arbitration, the arbitration provision further details which claims a consumer may bring in arbitration and how the Arbitrator is to consider those claims. This includes, in relevant part:

> (a) all claims, disputes or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision ("this Provision"), the validity and scope of this Provision and any claim or attempt to set aside this Provision (b) *all U.S. federal or state law claims*, disputes or controversies, arising from or relating directly or indirectly to this Agreement…(d) *all common law claims*, based upon contract, tort, fraud, or other intentional torts (e) *all claims based upon a violation of any state or federal constitution, statute or regulation*…
>
> …
>
> The Arbitrator shall apply *applicable substantive law consistent with the Governing Law set forth above*, and the Federal Arbitration Act, 9 U.S.C §§ 1-16 ("FAA") and applicable statutes of limitation, and shall honor claims of privilege recognized at law.[23]

Accordingly, by the clear language of the arbitration provisions, consumers may bring any and all claims related to the loan at issue in arbitration.  Thus, the loan agreements simply do contain any prospective waiver of the Arbitration Plaintiffs' claims.

The Fourth Circuit has recently addressed a different tribal lending entity, *and different arbitration provision*, in *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021).  In *Hengle*, just as here, plaintiffs entered into loan agreement with other tribal lenders.  *Id.* at 325.  Those loan agreements contained the following governing arbitration provision:

> *Dispute[s] will be governed by the laws of the [Tribe*] and such rules and procedures used by the applicable arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Arbitration Provision or the law of the [Tribe], including the limitations on the arbitrator below.

---

[23] Mitchell Decl. at Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 16; Ex. 1-E at 15; Ex. 2 at 8, Ex 3-A at 16-17; Ex. 3-B at 16-17; Ex. 3-C at 16-17; Ex. 3-D at 16-17 (emphasis added).

OM 1061639.1

*Id.* at 332. When defendants in *Hengle* moved to compel arbitration pursuant to the arbitration provision, plaintiffs argued the arbitration provision and delegation clause were unenforceable because they contained "a prospective waiver of their right to pursue federal substantive statutory remedies." *Id.* at 336.

Acknowledging that "[t]his is not the first time this Court has encountered a prospective waiver challenge to an arbitration provision with a delegation clause in a tribal lending agreement," the *Hengle* court discussed in depth four prior cases addressing the issue, each of which required "*application of tribal law* to the practical exclusion of other law." *Id.* (emphasis added); *see also Hayes v. Delbert Services Corp.*, 811 F.3d 666, 675 (4th Cir. 2016) (finding prospective waiver in loan agreement that required the arbitrator to apply "the laws of the [tribe]" but not "any law other than the law of the [tribe]" no matter where the arbitration occurred); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017) (finding prospective waiver in loan agreement that required "any dispute ..be resolved by arbitration in accordance with the law of the [tribe]."); *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332 (4th Cir. 2020) (finding prospective waiver in loan agreement that "shall be governed by tribal law," required the arbitrator to "apply Tribal law and the terms of this Agreement."); *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) (same).[24]

Relying on the above federal precedent that found arbitration agreements requiring *exclusive application of Tribal law* unenforceable, the *Hengle* court similarly found its arbitration provision unenforceable because "the choice-of-law clauses of this arbitration provision, which mandate *exclusive application of tribal law* during any arbitration, operate as prospective waivers." *Id.* at 337 (emphasis added).

---

[24] The arbitration provisions in *Gibbs v. Haynes* and *Gibbs v. Sequoia* were identical.

The Fourth Circuit recently reaffirmed *Hengle* and again held that exclusive application of tribal law constitutes an impermissible waiver in *Williams v. Martorello*, No. 21-2116, 2023 WL 364903 (4th Cir. Jan. 24, 2023). In *Williams*, the loan agreement provided, in relevant part, that, "[a]ll disputes ***shall be solely and exclusively resolved*** pursuant to the Tribal Dispute Resolution Procedure set forth in Section 9 of the Code and summarized below for Your convenience." *Id.* at *2 (emphasis added). The *Williams* Tribal Dispute Resolution Procedure proceeded as follows:

> If the consumer was dissatisfied with the [consumer's] response, he or she could request review by the [tribe]. In turn, the [tribe] could hold a hearing and issue a written decision grant[ing] or deny[ing] any relief as [it] determine[d] appropriate. The consumer could then appeal to the Tribal Court which could reverse and remand the [tribe's] decision if that court concluded that the decision conflict[ed] with Tribal law or the Tribal Constitution[.] But any decision by the Tribal Court could not be appealed.

*Id.* (internal citations and quotations omitted). The loan agreement further provided that it was "subject solely and exclusively to the Tribal law and jurisdiction of the [Tribe]," and that the that the Tribal Dispute Resolution Procedure was "the sole and exclusive forum for resolving disputes and/or claims arising from or relating to this Agreement." *Id.*

Referencing these key provisions and relying on *Hengle*, the *Williams* court found the loan agreement contained a prospective waiver because, just as in *Hengle*, "[the loan agreement] is governed ***solely*** by Tribal law." *Id.* at *10.

Unmistakably, the language in Arbitration Plaintiffs' loan agreements is noticeably different from the language in *Hengle* and *Williams*. The same is true for other federal cases finding tribal lending loan agreements containing prospective waivers. For example, in *Dunn v. Glob. Tr. Mgmt.*, LLC, No. 8:19-CV-2223-WFJ-AEP, 2020 WL 7260771 (M.D. Fla. Dec. 10, 2020), that loan agreement "restrict[ed] the arbitrator to applying *the Tribe's substantive law*" only. *Id.* at 1231 (emphasis added). Here, the Arbitration Plaintiffs' loan agreements do not suffer the same flaw.

The list of inapplicable cases could continue on, but the fact remains: each case finding a prospective waiver did so when faced with loan agreements requiring <u>exclusive application of tribal law</u>. *See MacDonald v. CashCall, Inc*, No. CV 16-2781, 2017 WL 1536427, at *2 (D.N.J. Apr. 28, 2017) aff'd, 883 F.3d 220 (3d Cir. 2018) (agreement was "subject solely to the exclusive laws and jurisdiction of the [Tribe]); *see also Smith v. W. Sky Fin*., *LLC*, 168 F. Supp. 3d 778, 784 (E.D. Pa. 2016) (delegation clause unenforceable because the agreement was "governed by the law of the [Tribe]. The Arbitrator will apply the laws of the [Tribe].").

Although *Williams*, *Hengle*, *Hayes*, *Dillon*, *Haynes,* and *Sequoia* may render loan agreements requiring exclusive application of Tribal law unenforceable, that precedent is inapplicable to the Arbitration Provision found in the Arbitration Plaintiffs' loan agreements. The Arbitration Provision in Arbitration Plaintiffs' loan agreements simply do not require exclusive application of Tribal law, but instead allow consumers to bring all claims, state, federal, common law or otherwise, and directs the Arbitrator to apply Tribal law, federal law, and all other substantive law pursuant to Tribal and federal law. This is not a prospective waiver.

In an effort to avoid the distinguishability of the Fourth Circuit cases above, specifically *Hengle*, Arbitration Plaintiffs will likely argue the relevant loan agreements waive <u>all</u> procedural and substantive rights, including federal rights. This is simply not true and is nothing more than an attempt to circumvent the holding in *Hengle* and other Fourth Circuit precedent. Just as they have in the past, Arbitration Plaintiffs are likely to pluck certain language from the loan agreement and give it meaning that is not only a stretch, but defies basic logic.

Specifically, Arbitration Plaintiffs will likely argue that the two-step process outlined above is actually a secret mechanism to prevent *any* claims from ever reaching Arbitration, simply because it states the first step (submitting disputes to the Tribe's management) does not "create

OM 1061639.1

any procedural or substantive rights."  But this language is not diabolical nor secretive as the Arbitration Plaintiffs will likely argue – it simply means that there are no _additional_ rights created if a consumer is dissatisfied with the Tribe's initial response.  For example, a consumer may not bring an _additional_ breach of contract claim against the Tribe, basing the specific breach of contract on the Tribe's failure to respond to its initial dispute resolution request in whatever way the consumer desired.  It does not, in any way, prevent a consumer from bringing all other cognizable claims related to the loan.

Further, although the loan agreements are governed by Tribal and Federal law, the loan agreements explicitly allow application of all applicable substantive law consistent with governing Tribal and federal law.  This language is not convoluted nor conniving as Arbitration Plaintiffs are likely to argue, and it certainly does not prevent the arbitrator from considering the Arbitration Plaintiffs' state law claims.  Instead, in agreeing to a limited waiver of sovereign immunity for claims brought by borrowers in arbitration, the Tribe directs the arbitrator to look to Tribal and federal case law when analyzing those claims.  If those federal cases, in turn, look to applicable state law, the arbitrator is free to do the same.  This is not a new or extreme concept.  In fact, the majority of federal tribal lending cases likely to be cited by Arbitration Plaintiffs and looked to by this Court also look to and apply applicable state law.  *See, e.g.*, *MacDonald v. CashCall, Inc*, 2017 WL 1536427 at *8 (looking to and applying New Jersey state law); *Gibbs v. Stinson*, 421 F. Supp. 3d at 308 (looking to and applying Virginia state law); *Dunn v. Glob. Tr. Mgmt., LLC*, 506 F.Supp.3d at 1237 (looking to and applying Florida law); *Hengle v. Treppa*, 19 F.4th at 351 (looking to and applying Virginia law).  Arbitration would be no different.

The Arbitration Provision allows, on its face, Arbitration Plaintiffs to bring any state law claim arising from the loan agreement.  Requiring the arbitrator to look to federal law in

interpreting the loan agreements, which in light of the federal precedent may suggest application of state law, does not waive Arbitration Plaintiffs' right to assert state law claims.

Accordingly, the Arbitration Plaintiffs cannot avoid arbitration by claiming, without support, that the loan agreement waives their right to bring state law claims. Instead, the Arbitration Plaintiff's claims must be brought in arbitration pursuant to the Arbitration Provision. There, the arbitrator could and would look to federal precedent in analyzing Arbitration Plaintiffs' state law claims; claims that the loan agreement explicitly allows Arbitration Plaintiffs to bring. The arbitrator would then apply all substantive law–whether that be state, federal, or a mix of the two–in making the final decision. This process cannot be said to disclaim all state law claims.

Accordingly, the Arbitration Plaintiffs' loan agreements do not contain prospective waivers, and any issue the Arbitration Plaintiffs may have with arbitrability is, therefore, for the arbitrator to decide. In fact, in *Haynes*, the Fourth Circuit made clear that only where there is "no uncertainty" that the choice-of-law provisions amount to an "unambiguous and categorical waiver of federal statutory rights" that the court—as opposed to the arbitrator—may decide that a delegation clause is unenforceable. *Haynes Invs.*, LLC, 967 F.3d at 340. Even if there were uncertainty in this case,[25] "[w]hen there is uncertainty whether the foreign choice of law would preclude otherwise applicable federal substantive statutory remedies, *the arbitrator should determine* in the first instance whether the choice of law provision would deprive a party of those remedies." *Haynes*, 967 F.3d at 340 (emphasis added). Thus, pursuant to *Haynes*, the Arbitration Plaintiffs' claims must be compelled to arbitration, and any prospective waiver issue "would not

---

[25] Tribal Defendants maintain that the Arbitration Plaintiffs' loan agreements do *not* contain impermissible waivers of Arbitration Plaintiffs' rights.

become ripe for final determination until the federal court was asked to enforce the arbitrator's decision." *Id*.

### 3. The Arbitration Plaintiffs' Claims Are Subject To Arbitration, Assuming Arguendo That The Court Addresses That Issue

Notwithstanding that the issue of whether the Arbitration Plaintiffs' claims are subject to arbitration is for the arbitrator to decide, their claims are, in fact, covered by the arbitration provision. The Arbitration Provision in the loan agreements broadly covers "all U.S. federal or state law claims," "all claims asserted by you individually or on behalf of another person arising out of the loan agreement against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities."[26] Thus, the loan agreements include arbitration of any claims relating to the loans, no matter what legal theory and including claims made against anyone connected with the Tribe.[27]

Where an arbitration provision is broad, such as the one here, there is a heightened presumption of arbitrability so that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 584-85 (1960). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 582-83; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

---

[26] Mitchell Decl. at Ex. 1-A at 13; Ex. 1-B at 13; Ex. 1-C at 13; Ex. 1-D at 16; Ex. 1-E at 15; Ex. 2 at 8, Ex 3-A at 16-17; Ex. 3-B at 16-17; Ex. 3-C at 16-17; Ex. 3-D at 16-17.

[27] *Id*.

OM 1061639.1

The broad, plain language of the Arbitration Provisions encompasses the Arbitration Plaintiffs' claims, which are premised on the debt the Arbitration Plaintiffs incurred under the loan agreements. Thus, because Arbitration Plaintiffs' claims fall squarely within the category of "disputes" under the Arbitration Provisions, they should be arbitrated.

### 4. The Complaint Vis-A-Vis Arbitration Plaintiffs Should Be Stayed Pending Arbitration

As discussed above, the Arbitration Provision is to be interpreted according to the FAA, which reflects a liberal federal policy favoring arbitration. To that end, Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Section 3 of the FAA is clear that where any suit or proceeding brought in a district court is referable to arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* The only exception, not applicable here, is where the applicant for the stay is in default with proceeding with such arbitration. *Id.*

This Court has recognized that a stay is appropriate in light of the uncertainty in the Fourth Circuit of whether a district court has discretion to dismiss rather than stay an action subject to arbitration. *Green v. Zachry Industrial, Inc.*, 36 F.3d 669, 678-79 (W.D. Va. 2014). Accordingly, the Tribal Defendants ask that an order be entered, pursuant to Section 3 of the FAA, staying all

proceedings vis-à-vis Arbitration Plaintiffs until arbitration has been had as provided for in the Arbitration Provision.

> **B.    Absent Arbitration, This Court Does Not Have Subject Matter Jurisdiction Because the Tribe Is the Real Party in Interest and Is Entitled to Sovereign Immunity**

A defense of sovereign immunity deprives the court of subject matter jurisdiction, as it is a threshold ground for denying audience to a case on the merits. *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 (7th Cir. 2016). Sovereign immunity not only deprives the court of jurisdiction over the sovereign, but also state officials when "the state is the real, substantial party of interest." *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945).

When a suit is brought against an official or employee in their individual capacity, it may proceed unless the "sovereign is the real party in interest." *JW Gaming Dev., LLC v. James,* No. 3:18-CV-02669-WHO, 2018 WL 4853222, at *3 (N.D. Cal. Oct. 5, 2018), aff'd, 78 F. App'x 545 (9th Cir. 2019) cert. denied, 140 S. Ct. 1297 (2020). "Sovereign immunity bars individual-capacity suits when 'the remedy sought is truly against the sovereign.'" *Id.*

Issues related to tribal sovereign immunity from suit are addressed pursuant to a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[28] *Pennachietti v. Mansfield*, No. 17-02582, 2017 WL 6311646, *2 (E.D. Pa. Dec. 11, 2017). The standard depends on "whether the defendant makes a facial or factual challenge." *Bell Atl.-Pennsylvania, Inc. v. Pennsylvania Public Utility Com'n*., 107 F. Supp. 2d 653, 659 (E.D. Pa. 2000). "Under either approach, it is generally the plaintiff's burden to prove that jurisdiction exists." *Id.* Finally, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district

---

[28] While the Tribal Defendants assert that the appropriate standard to be applied to the issue of tribal sovereign immunity for the Tribe is Rule 12(b)(1), the Tribal Defendants also request dismissal pursuant to Rule 12(b)(6). *See e.g.*, *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (finding that individual persons seeking immunity from suit "is a question of law generally asserted [] on a pretrial motion to dismiss under Rule 12(b)(6)").

court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (*quoting Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

As described above, *see supra* Section II, the Tribe is a federally recognized Indian tribe and has all immunities and privileges available to federally recognized Indian tribes.  The Tribe's arms, including the BDC, Holdings, Niizhwaaswi LLC, Ishwaaswi LLC, Niswi LLC, Makwa LLC and Ningodwaaswi LLC (the entities that actually made loans with the Plaintiff) operate as arms of the Tribe cloaked with the privileges and immunities afforded to the Tribe.

### 1.    The Tribe is the Real Party in Interest, and All Claims Against Tribal Defendant Should Therefore Be Dismissed.

Knowing that the Fourth Circuit has ruled that entities that are arms of a tribe that issue loans to residents of Virginia are entitled to tribal sovereign immunity, Plaintiffs have attempted a work-around. *See Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 174 (4th Cir. 2019). Once again, Plaintiffs seek prospective relief against Tribal Defendants in their official capacity and individual capacities.  Due to this pleading device, Plaintiffs assert that the Tribe (and its entities) are not the real party in interest. That, however, is not the end of the inquiry.

An examination of the effect of the claims and relief sought demonstrates that the Tribe is the real party in interest for Plaintiffs' claims, and Plaintiffs' assertion that the claims are against the Tribal Defendants individually does not make it so.

Undoubtedly recognizing that the Tribe, BDC, and LDF Holdings (and its TLE subsidiaries, namely Niizhwaaswi LLC, Ishwaaswi LLC, Niswi LLC, Makwa LLC and Ningodwaaswi LLC) are entitled to tribal sovereign immunity from suit, Plaintiffs named the individual Tribal Defendants, which consist of current and former Tribal employees and LDF Tribal Council members. Plaintiffs are likely to rely on *Lewis v. Clarke*, 137 S. Ct. 1285, 1291

(2017) to argue that tribal sovereign immunity is unavailable merely by naming the Tribal Defendants in their individual capacities.  But this reading of *Lewis* would be far too broad.

In *Lewis*, the plaintiffs filed suit against Clarke, a tribal employee, in his individual capacity, for hitting them while driving on a highway. *Id*. at 1289. The Court found that Clarke was not entitled sovereign immunity because, "[t]he suit is brought against a tribal employee operating a vehicle within the scope of his employment but on state lands, and the judgment will not operate against the Tribe." *Id*. at 1291. However, the court in *Lewis* recognized that "courts must determine whether tribal sovereign immunity applies by evaluating whether the sovereign is the 'real party in interest.'" *Roemen v. United States*, 463 F. Supp. 3d 990, 998 (D.S.D. 2020) (quoting *Lewis*, 137 S.Ct. at 1290). The Supreme Court has held that the test for determining if a suit is indeed against the sovereign is if: "'[T]he judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting or to compel it to act.'" *Roemen*, 463 F. Supp. 3d at 999 (quoting *Pennhurst*, 465 U.S. at 102, n.11). Courts also look to whether the remedy sought will go to the tribe's sovereign and proprietary interests. *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020).

Here, the Plaintiffs' Complaint alleges that they have received several "usurious loans" from LDF Holdings through its TLE subsidiaries, that the loans violated Virginia, Georgia, Maryland and Florida's licensing and usury laws, and that the loans are "null and void under applicable state law."[29]  The Complaint seeks a declaration that the loans are invalid. It also seeks

---

[29] Doc. 135 ¶¶ 241, 254.

OM 1061639.1

to establish nationwide classes for individuals who entered into loan agreements "with any subsidiary of LDF Holdings" and "repaid any amount on the loan."[30]

These remedies all rest on Plaintiffs' contention that the Tribe's loans are invalid under state law.  Plaintiffs seek to prevent the Tribe from collecting on its loans, thereby invading the Tribe's sovereign and proprietary interests.  The Complaint contains no well-pled allegations as to the Tribal Defendants' individual, personal actions (unlike *Lewis*, where the tribal employee was driving a limousine).  Instead, the actions complained of are the Tribe's own actions—issuance of loans. *See Acres Bonusing, Inc. v. Marston,* No. 19-CV-05418-WHO, 2020 WL 1877711, at *7 (N.D. Cal. Apr. 15, 2020) (finding that "entertaining [this] suit would require the court to adjudicate the propriety of the manner in which tribal officials carried out an inherently tribal function."); *Genskow v. Prevost*, 825 F. App'x 388, 391 (7th Cir. 2020) (distinguishing *Lewis* and holding that the claim against an individual "is essentially a claim against the tribe and therefore barred by its sovereign immunity.").

As intimated, further support that the Tribe and its tribal lending arm, is the real party in interest is that Plaintiffs' suit cannot proceed without the Tribe's and its tribal lending arm's involvement through discovery.  In their individual capacity, these Tribal Defendants cannot possibly have any information as to how many loans the Tribe issued, to whom, when, and in what amounts, for example.  That information can only come from the Tribe itself (and its tribal lending arms).  Comparatively, in cases like *Lewis*, the suit could most certainly proceed without the tribe's involvement (*e.g.*, any discovery from the tribal employer should not be necessary for the plaintiff to establish that the tribal employee drove negligently, for example.).

---

[30] Doc. 135 ¶ 197.

Furthermore, Plaintiffs will likely assert that the necessity of the Tribe's involvement does not matter because the doctrine of sovereign immunity is inapplicable to a third-party subpoena. Not only is this untrue, but again, it misses the point.  The necessity of obtaining information from the Tribe matters, because it further demonstrates that the Tribe is the real party in interest.  As to Plaintiffs' likely assertion that tribal sovereign immunity is inapplicable to subpoenas issued to the Tribe, it would be incorrect.  "[A] federal court's third party subpoena in private litigation is a 'suit' that is subject to Indian tribal immunity." *Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-CV-00596-JAD, 2015 WL 3551305, at *6 (D. Nev. June 5, 2015), objections overruled, No. 215CV00663JADGWF, 2016 WL 890921 (D. Nev. Mar. 7, 2016); *Trujillo v. Romero*, No. 13-CV-1178 MCA/SCY, 2014 WL 12783016, at *3 (D.N.M. Dec. 1, 2014); *Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155, 1156 (10th Cir. 2014); *Matt v. United States*, No. CV 15-28-GFBMM, 2015 WL 13560169, at *1 (D. Mont. Oct. 6, 2015).

Finally, Plaintiffs will likely assert that the necessity of the Tribe's involvement does not matter because there is no derivative sovereign immunity for third parties that possess tribal documents, and they could obtain information about the class members' loan histories from third parties.  Again, however, Plaintiffs' assertion serves as support that Tribal information *is* needed, which serves as further support that the Tribe is the real party in interest.  For all of these reasons, the claims, which are based on the Tribe's issuance of loans, are essentially a claim against the Tribe and must be barred by the Tribe's sovereign immunity.

2.    ***Hengle's* Holding Regarding *Ex parte Young* and the Tribe's Sovereign Immunity Should Not be Followed.**

In Counts Three and Four, Plaintiffs seek to enjoin the LDF Tribal Council from allegedly violating state—not federal—law.

In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment did not bar a suit in federal court seeking to enjoin a state official from enforcing a statute claimed to violate the Fourteenth Amendment. *Ex parte Young*, 209 U.S. 123, 159-60 (1908). The Court reasoned that when a state official is alleged "to use the name of the state to enforce an unconstitutional act," the official is treated as if he "proceed[ed] without the authority of state in its sovereign or governmental capacity" and, thus, is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id*. at 159. That is because the Court concluded, "[t]he state has no power to impart [the state official] any immunity from responsibility to the supreme authority of the United States." *Id*. at 160.

*Ex parte Young* thus "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes[,]" but is the State for the purpose of finding state action to which the Constitution applies. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984)).

Despite the *Ex parte Young* doctrine's genesis as an instrument to uphold the supremacy of *federal* law, the Fourth Circuit recently held that the Supreme Court's decision in *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014), extended the *Ex parte Young* doctrine to provide an exception to tribal sovereign immunity in suits against tribal officials seeking prospective injunctive relief to enjoin alleged violations of *both* federal and state law. *Hengle*, 19 F.4th at 354.

The *Hengle* decision flew in the face of the Supreme Court's prior decisions. *Bay Mills* addressed whether the State of Michigan could sue a tribe for opening a casino outside tribal lands, allegedly in violation of the Indian Gaming Regulatory Act (IGRA) and a compact between the

state and the tribe. The Court held that the suit was barred by tribal sovereign immunity. *Id.* at 791.

After reaching that holding, the Court observed that Michigan had other avenues for relief:

> Michigan could bring suit against tribal officials or employees (rather than the Tribe itself) seeking an injunction for, say, gambling without a license. See § 432.220; see also § 600.3801(1)(a) (West 2013) (designating illegal gambling facilities as public nuisances). As this Court has stated before, analogizing to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), tribal immunity does not bar such a suit for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct. *See Santa Clara Pueblo*, 436 U.S., at 59.

*Id.* at 796.

The passage in *Bay Mills* relied on is most naturally understood as dicta—it came after the court had already announced its ruling based on the text of IGRA. But more importantly, that passage is best read as being completely consistent with this Court's longstanding precedents. Tribal officials can be sued in their official capacity for violations of federal law (hence the citations to *Ex parte Young* and *Santa Clara Pueblo*). Those officials can also be sued in their individual capacities for conduct that does not implicate their official functions (hence the court's emphasis on word "individuals").

Following this logic, the Utah Supreme Court has held that *Ex parte Young's* exception to sovereign immunity for official-capacity suits extends only to federal law. *In Harvey v. Ute Indian Tribe of Uintah & Ouray Reservation*, 416 P.3d 401 (Utah 2017), the plaintiff sued a tribe and its officials, contending that the tribe had exceeded its jurisdiction and had violated state law. The Utah Supreme Court held that because "*Ex parte Young* only applies when bringing a claim under federal law," *id.* at 415, sovereign immunity barred claims based on tribal law and state law against the official-capacity defendants. *See id.* at 416 ("[A]ny claim that the tribal officials, in their official capacities, exceeded the authority granted to them by the tribe is not subject to *Ex parte Young* and is barred under sovereign immunity, along with the rest of Harvey's state law claims. . . .").

OM 1061639.1

Along those same lines, the U.S. Supreme Court has expressly held that *Ex parte Young's* rationale—and thus the rationale for avoiding sovereign immunity—falls away in suits against state officials that do not involve claims under federal law. *Pennhurst*, 465 U.S. at 103–06. No Supreme Court precedents suggest a different rule for tribes. On the contrary, the Supreme Court has made clear that tribal and state officials should be treated similarly regarding sovereign immunity. *See, e.g., Lewis*, 137 S. Ct. at 1291. The cases *Bay Mills* cited are to the same effect. As noted above, *Santa Clara Pueblo* involved a straightforward application of *Ex parte Young*. The plaintiff sought to enjoin a tribe's governor for a claimed violation of the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301–1303. *Santa Clara Pueblo*, 436 U.S. at 51, 59. That supports only an exception to sovereign immunity for alleged violations of <u>federal</u> law.

*Bay Mills* also cited *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95 (2005), for the proposition that "'Indians going beyond reservation boundaries' are subject to any generally applicable state law." *Bay Mills*, 572 U.S. at 795 (quoting *Wagnon*, 546 U.S. at 113). But that observation has always been understood to apply to non-official conduct by tribal members. The facts of *Wagnon* confirm the point: That case did not involve any tribal officials, but addressed whether Kansas could apply a state tax to the receipt of fuel by non-tribal distributors who subsequently delivered the fuel to tribal lands. 546 U.S. at 99. Further, the specific line *Bay Mills* quoted addressed whether States can exercise their tax authority outside tribal lands—not whether private plaintiffs can seek to bind tribal governments to the law of co-equal sovereigns. *Id.* at 113.

In sum, *Ex parte Young* does not provide an exception to sovereign immunity for private plaintiffs to enjoin tribal officials from violating state law and, therefore, Counts Three and Four of the Second Amended Complaint should be dismissed for lack of subject matter jurisdiction.

**C.      Additionally, Tribal Council Defendants are Immune from Liability as They Enjoy Absolute Immunity, Qualified Immunity and Legislative Immunity in All of Their Legal Capacities**

Plaintiffs allege that the Tribal Council Defendants, both in their individual and official capacities, should be held liable for decisions that impacted the Tribe, and only the Tribe, they made while serving as elected officials for the Tribe.  It is well-established, that "[t]ribal officials, like federal and state officials, can invoke personal immunity defenses."  *Acres Bonusing v. Marston*, 17 F.4th 901, 915 (9th Cir. 2021).  Here, there are relevant personal immunities shielding the Tribal Council Defendants from suit in each of their alleged legal capacities.  The immunities afforded to executives, officers and legislators available to federal and state officials, are equally available to similar officials in tribal governments.

**1.      Tribal Council Defendants are Entitled to Absolute Immunity as High-Level Tribal Government Officials**

Absolute executive immunity may be conferred to the highest-level tribal officials under federal common law principles. *Davis v. Littell*, 398 F.2d 83, 84-85 (1968). Executive officials shielded by absolute immunity "cannot be held liable for damages under any circumstances, even if they violate clearly established federal rights, and even if they do so intentionally or maliciously." *Brooks v. Clark County*, 828 F.3d 910, 915-16 (2016).  Absolute immunity of executive officials from suit is justified when a suit poses a great danger of deflecting officials from the performance of their duties. *Forrester v. White*, 484 U.S. 219, 224 (1988). It is appropriate in "those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." *Butz v. Economou*, 438 U.S. 478, 507 (1977). Absolute immunity is less focused on the official's job title or organizational position, and more on the nature of the official's responsibilities. *Stevens v. Osuna*, 877 F.3d 1293 (11th Cir. 2017).

OM 1061639.1

Here, the Tribal Council Defendants are entitled to absolute executive immunity under federal law in their capacity as elected tribal officials.  The heart of Plaintiffs' allegations is that the Tribal Council Defendants, acting with the power as the highest elected officials of the Tribe, took actions regarding the Tribe's lending enterprises.  In that role, Plaintiffs allege that the Tribal Council Defendants entered an enterprise to conspire to violate state lending laws which allegedly harmed Plaintiffs.  Any actions Tribal Council Defendants would have taken, such as voting to approve the lending subsidiaries creation or passing ordinances legalizing lending operations on the Tribe's Reservation, would be deemed "conduct of public business," shielding the Tribal Defendants from any suit related to those actions. *See, Butz*, 438 U.S. at 507.

2. **Tribal Council Defendants, at a Minimum, are Entitled to Qualified Immunity as Tribal Government Officials Acting Within their Authority**

Even if absolute immunity is not available, the Tribal Council Defendants are entitled to qualitied immunity as Tribal governmental officials.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known for administrative, legislative, or executive functions." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotes omitted).

Qualified immunity protects against the official's discretionary actions caused by legal or factual mistakes. *Id*. The official is immune from liability where a complaint fails to allege a violation of a clearly established law. *Id*. The objective reasonableness of the public official's actions is viewed in context of the legal rules that were clearly established when the acts occurred. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). The official's state of mind is generally not a factor in determining whether qualified immunity applies. *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989). Qualified immunity does not shield against ministerial,

nondiscretionary functions, lending themselves readily to formulaic determination, while discretionary functions are those requiring particularized judgments. *Id.*

Here, Plaintiffs sued the Tribal Council Defendants in connection with discretionary actions they took to establish consumer lending on the Reservation.  These actions did not violate a clearly established statutory or constitutional right when the actions occurred.  In fact, there is and was no federal usury law that bars tribal lending at the time the Tribal Council Defendants voted to legalize online consumer lending on the Reservation. And, it still remains undecided in the courts whether tribal lending entities originating loans on reservation land and through the internet, are required to comply with state's usuary and license laws.

### 3.    Tribal Council Defendants are Immune From Suit in Their Role as the Tribe's Legislative Officials

Alternatively, the Tribal Council Defendants are immune under the doctrine of legislative immunity. *Terry v. Bobb*, 827 F. Supp. 366, 367 (E.D. Va. 1993) ("It is clear that local legislators enjoy absolute immunity from suit for decisions made in their capacity as legislators."). Legislative immunity extends to legislators at all levels of government, including tribal governments.  *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985)("[I]ndividual members of the Tribal Council… enjoy absolute legislative immunity… for official actions taken when acting in a legislative capacity."); *Grand Canyon Skywalk Dev., LLC v. Hualapai Indian Tribe of Ariz.*, 966 F. Supp. 2d 876, 885-86 (D. Ariz. 2013) ("[T]o the extent the complaint names Tribal Council members for their role in passing the takings ordinance and resolution, they have legislative immunity."); *See Bogan*, 523 U.S. at 47; *Mainstream Loudoun v. Bd. of Trustees of Loudoun Cty. Library,* 2 F. Supp. 2d 783, 788 (E.D. Va. 1998).[31]

---

[31] Moreover, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity'" which "typically involve[s] the adoption of prospective, legislative-type rules, rules that establish a general policy affecting the larger population," and budgetary decisions. *Bogan v. Scott Harris*, 523

Legislative immunity is extensive and has been applied in numerous circumstances. It applies in actions for damages, injunctive relief, and declaratory relief,[32] it protects legislators from individual capacity suits and claims of conspiracy,[33] and it applies regardless of whether the legislative function is shielded by immunity under *Ex Parte Young*.[34]   It also applies regardless of the motive or intent of the official performing the legislative act.  *Chadwell v. Lee Cty. Sch. Bd.*, 457 F. Supp. 2d 690, 693 (W.D. Va. 2006) (citing *Bogan,* 523 U.S. at 54); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 485 (4th Cir. 2014) (noting that "[l]egislative immunity is a shield that protects despicable motives as much as it protects pure ones"); *Chappell v. Robbins*, 73 F.3d 918, 921-22 (9th Cir. 1996) (holding that "legislative immunity hinges on the character of the action taken, not the motives behind it."); *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir. 1980). Moreover, legislative immunity clearly shields legislators from RICO claims.

---

U.S. 44, 54 (1998) (citing *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *E.E.O.C. v. Washington Suburban Sanitary Com'n*, 631 F.3d 174, 184 (4th Cir. 2011); *Cooper v. Lee County Bd. of Supervisors,* 966 F. Supp. 411, 414 (W.D. Va. 1997); *Rateree v. Rockett,* 852 F.2d 946, 950 (7th Cir. 1988); *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995).   Legislative activity "also generally bear[s] the outward marks of public decision-making, including the observance of formal legislative procedures." *Washington Suburban Sanitary Com'n*, 631 F.3d at 184.

[32] *State Employees Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 85-87 (2d Cir. 2007) (holding that state officials were entitled to legislative immunity in official-capacity suit for injunctive relief); *Larsen v. Senate of the Commonwealth,* 152 F.3d 240, 252–54 (3d Cir. 1998), (holding that state senators were entitled to legislative immunity in official-capacity suit for declaratory and injunctive relief); *Risser v. Thompson,* 930 F.2d 549, 551 (7th Cir. 1991) ("Legislators' immunity is absolute, and extends to injunctive as well as to damages suits.") (citations omitted).

[33] *Allen v. Cooper*, 895 F.3d 337, 358 (4th Cir. 2018), *cert. granted,* 139 S. Ct. 2664 (2019), and *aff'd*, 140 S. Ct. 994 (2020) (where North Carolina officials were entitled to legislative immunity in an individual capacity suit alleging a conspiracy to enact laws that infringed on plaintiffs' copyrighted works.).

[34] *Church v. Missouri*, 913 F.3d 736, 753 (8th Cir. 2019) (holding that, that for governor's legislative functions, even if "not shielded by sovereign immunity through *Ex parte Young*, legislative immunity, a separate defense, forecloses suit against the governor.").

OM 1061639.1

In *NRP Holdings LLC v. City of Buffalo*, the plaintiff brought RICO claims against a mayor for choosing not to introduce a resolution to the municipal council.  96 F.3d. 177, 194 (2d Cir. 2019). The court found the mayor's decision was a policymaking decision which was legislative in substance and protected by legislative immunity regardless of whether the mayor had legitimate or illegitimate reasons for his inaction.  *Id*.; *see also Hoekstra v. City of Arnold, Mo.*, No. 4:08CV0267 TCM, 2009 WL 259857, at *10 (E.D. Mo. Feb. 3, 2009) (dismissing RICO claims against the City's Mayor, Council Members, and Police Officers as barred by absolute legislative immunity).

In *Chappell*, the Ninth Circuit explained that legislative immunity prevented the plaintiff from proving his RICO case against a legislator because the alleged wrongful conduct— accepting bribes—did not directly injure the plaintiff.  73 F.3d at 921–22.  To show proximate cause, the plaintiff would have to show that the legislator "acted on those bribes and pushed legislation through," and that the legislation caused damage. *Id*.  Thus, to prove injury, the plaintiff would have to establish "that the legislative acts of writing a bill, voting for it, and persuading others to vote for it" caused harm, but those legislative acts could not give rise to liability for damages because of legislative immunity.  *Id*.  Consequently, the RICO claims were barred.  *Id*.

Plaintiffs' allegations are clear: the LDF Tribal Council is composed of the elected Tribal Council Defendants and is the legislative body of the Tribe, with authority to pass tribal laws. Essentially, Plaintiffs' claims are that the elected Tribal Council Defendants enacted Tribal laws and created tribal lending businesses, and that those businesses caused the alleged harm to Plaintiffs.  Doc. 135 ¶¶ 130-134.  These are clearly legislative acts subject to legislative immunity, regardless of any alleged improper motives.

OM 1061639.1

Accordingly, legislative immunity precludes the enjoining of such governmental action. Plaintiffs also seek injunctive relief to *compel* legislative action by the Tribal Council Defendants, actions that the Tribal Council Defendants cannot take individually—but must take, if at all, collectively as the LDF Tribal Council. For the reasons discussed in *infra* Section D(2), this Court cannot grant any such relief.

As such, absolute immunity, qualified immunity and legislative immunity serves as a bar to each and every claim Plaintiffs make against the Tribal Council Defendants.

### D.    Plaintiffs Lack Standing Under Article III

Plaintiffs cannot establish Article III standing because: (1) Plaintiffs' alleged injury is not fairly traceable to the Tribal Defendants' conduct; and, (2) Plaintiffs seek legal redress that the Tribal Defendants cannot provide. As such, Plaintiffs lack standing to maintain a cause of action against the Tribal Defendants and the claims against Tribal Defendants should be dismissed for lack of jurisdiction.

Article III limits the jurisdiction of federal courts to justiciable cases and controversies. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). One way to determine which cases are justiciable is through the doctrine of standing. *See id*. The Supreme Court teaches that standing requires three elements. First, the plaintiff must have suffered an "injury in fact" which must be "concrete and particularized" and "actual or imminent." *Id*. at 560. Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id*. (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). Third, it cannot be "merely 'speculative'" that the injury will be 'redressed by a favorable decision' but must be "'likely.'" *Id*. (quoting *Simon*, 426 U.S. at 38). The burden to establish these elements falls on the party invoking federal jurisdiction.

*Id.*  Measured against these standards, Plaintiffs unquestionably lack standing to bring claims under RICO against the Tribal Defendants.  Plaintiffs have failed to allege facts sufficient to show that the injuries that allegedly resulted from their loans are traceable in any manner to the Tribal Defendants.

### 1.    Plaintiffs' Alleged Injuries are not Traceable to the Tribal Defendants

Article III standing requires "fairly traceable" causation between the plaintiff's injury and the complained-of conduct of the defendant.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002). Starting with the Tribal Council Defendants, their actions alleged in the Complaint—voting on certain matters—did not cause the alleged injuries.

In *Imperial Granite Co. v. Pala Band of Mission Indians*, the Ninth Circuit found that tribal legislative action does not support a legal cause of action:

> As far as we are informed in argument, the only action taken by those officials was to vote as members of the Band's governing body against permitting Imperial to use the road. . . . *The votes individually have no legal effect; it is the official action of the Band, following the votes, that caused Imperial's alleged injury.*

940 F.2d 1269, 1271 (9th Cir. 1991) (emphasis added).  In purportedly voting to enact certain Tribal laws and voting to create tribal lending businesses, the Tribal Council Defendants did not cause the alleged injuries related specifically to Plaintiffs loans issued by separate tribally-owned businesses.

The same is true for Ms. Lorenzo and Ms. Reynolds.  Plaintiffs have failed to allege any causation between the Plaintiffs' injuries and the conduct of Ms. Lorenzo and Ms. Reynolds, as (former) employees of the Tribe.  Neither the Tribal Council Defendants nor Ms. Lorenzo or Ms. Reynolds are the lenders.  Plaintiffs do not and cannot allege that the Tribal Council Defendants nor Ms. Lorenzo or Ms. Reynolds directly issued any loans to Plaintiffs.  As a result, none of the

OM 1061639.1

Tribal Defendants could not have directly caused any of the alleged injuries. Any causal connection between the Tribal Council Defendants' voting as members of the Tribe's governing legislative body and Ms. Lorenzo and Ms. Reynolds actions as employees of the Tribe to the alleged issuance of loans to Plaintiffs is far too attenuated for Article III traceability.

Moreover, because there is no allegation that any of the Tribal Defendants, at any time, acted in his or her individual capacity, there can be no causation or traceability between any individual-capacity conduct and the Plaintiffs' alleged injuries. The Complaint, therefore, fails to satisfy the traceability element of Article III standing and should be dismissed.

### 2.    The Tribal Defendants Cannot Redress Plaintiffs' Alleged Injuries

The last requirement for Article III standing, redressability, "ensures that a plaintiff personally would benefit in a tangible way from the court's intervention." *Gaston Copper*, 204 F.3d at 162 (quoting *Warth v. v. Seldin,* 422 U.S. 490, 508 (1975) (internal quotations omitted)). An injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)). To put it simply, it must be shown that the "requested relief will remedy the alleged injury in fact." *Vermont Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 771 (2000). Plaintiffs' alleged injuries cannot be redressed by the Tribal Defendants for multiple reasons.

First, injunctive relief against the Tribal Council Defendants is not available here because the Tribal Council Defendants cannot accord relief individually and they cannot be enjoined in their official capacities to vote collectively. Such a remedy would not be against an individual Tribal official, but against the Tribe itself. As noted in *Imperial Granite*, individual votes cast by tribal officials are not operative, but the effect of such votes is Tribal governmental action. 940 F.2d at 1271. However, the Tribe is not a party to this action as it is entitled to sovereign immunity.

And, Ms. Lorenzo and Ms. Reynolds are no longer employed by the Tribe, so enjoining their actions would not redress Plaintiffs' claims.

Second, RICO does not authorize injunctive relief in actions brought by private parties, only compensatory relief in certain instances. 18 U.S.C. § 1964(c); *Hengle v. Asner*, 433 F. Supp. 825, 866 (E.D. Va. 2020); *see also Dan River v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983). Thus, the injunctive relief sought against the Tribal Defendants, its ineffectiveness notwithstanding, is simply not available under RICO.

Third, were the Court to issue an injunction "enjoin[ing] the Tribal Council, in their official capacity, from allowing collection of the loans," Doc. 135 at ¶ 245, the injunction would have no effect. The Tribal Defendants do not issue or collect any of the debts described in the Complaint— the Tribe's businesses do. The Tribal Defendants also do not have any personally-held interest to divest. The Tribal Defendants do not own the lending companies in either their official or individual capacities—only the Tribe does. Just as a state legislator or state employee has no ownership interest in government owned enterprise by virtue of his or her position as a legislator or employee, the Tribal Defendants do not have ownership interests in the assets of lending-entities owned by the Tribe.

Finally, the Court cannot issue the requested injunctive relief as it pertains to the Tribe's lending business, because the Tribe's business is not a defendant. Plaintiffs clearly know of and allege the existence of different lending companies, but they choose not to name those entities as defendants in an obvious attempt to avoid the application of sovereign immunity. The cost of that evasion, assuming a modicum of due process, is that the parties targeted by Plaintiffs are not before the Court. The Court cannot provide a remedy against the Tribal Defendants that provides meaningful redress, and Plaintiffs lack Article III standing.

## VI.   CONCLUSION

For the reasons set forth above, the Tribal Defendants ask that Arbitration Plaintiffs' claims be compelled to arbitration or, alternatively, dismissed.  In regard to all Plaintiffs, the Tribal Defendants ask that their claims also be dismissed for the reasons stated above.

By:  /s/ Alan D. Wingfield
   Alan D. Wingfield (VSB No. 27489)
   John E. Komisin (VSB No. 84061)
   Troutman Pepper Hamilton Sanders LLP
   1001 Haxall Point
   Richmond, VA  23219
   Telephone: (804) 697-1200
   Facsimile: (804) 697-1339
   Email: alan.wingfield@troutman.com
   Email:  jed.komisin@troutman.com

   and

   Shilee T. Mullin *(admitted pro hac vice)*
   Spencer Fane LLP
   13520 California Street, Suite 290
   Omaha, NE 68154
   Telephone: (402) 965-8600
   Fax: (402) 965-8601
   E-mail: smullin@spencerfane.com

   Patrick J. McAndrews (*admitted pro hac vice*)
   Spencer Fane LLP
   1000 Walnut
   Kansas City, MO 64106
   Telephone: (816) 292-8300
   Fax: (816) 474-3216
   E-mail: pmcandrews@spencerfane.com

   and

   Andrew Adams III (*admitted pro hac vice*)
   Hogen Adams PLLC
   1935 County Road B2 W., Suite 460
   Saint Paul, MN 55113
   Telephone: (651) 842-9100

OM 1061639.1

Fax: (651) 842-9101
E-mail: aadams@hogenadams.com

*Counsel for John Johnson, George Thompson,*
*Jamie Ann Allen, Jeffrey Bauman, Sr., William*
*Stone Sr., Louis St. Germaine, Eric Chapman,*
*Sr., Racquel Bell, Gloria Cobb, William*
*Graveen, Sarah Pyawasit, Jessi Lorenzo, Nicole*
*Reynolds and Joseph Wildcat, Sr., Jessi*
*Lorenzo, Nicole Reynolds and Joseph Wildcat,*
*Sr.*

42

OM 1061639.1

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

/s/ Alan D. Wingfield
Alan D. Wingfield