**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| LORI FITZGERALD, *et al.*, *individually and on behalf of others similarly situated*, | |
| Plaintiffs, | |
| v. | Case No. 3:20-cv-00044 (NKM) |
| JOSEPH WILDCAT SR., *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Lori Fitzgerald, Aaron Fitzgerald, Kevin Williams, Jade Singleton, and Angela Maville, *on behalf of themselves and all individuals similarly situated* ("Plaintiffs"),[1] submit this Memorandum in Support of their Motion for Preliminary Approval of Class Action Settlement.

## INTRODUCTION

This case arises from the making and collection of high-interest loans from online lending companies owned by the LDF Business Development Corporation and its subsidiary, LDF Holdings, LLC (the "LDF Tribal Lending Entities"). The LDF Tribal Lending Entities were formed by the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized Native American tribe (the "Tribe" or "LDF"). Because the LDF Tribal Lending Entities and their subsidiaries may have been entitled to immunity as arms of the Tribe, Plaintiffs brought this case against the members of the Tribe's Tribal Council (the "Tribal Officials"), as well as several high-

---

[1] Three other borrowers, Daniel Goodman, Gustinna De Silva, and John Tucker, have been involved in this case and settlement. Because of the motions to dismiss and appeal, these borrowers were not added as named plaintiffs, but would have been if the Settlement was not agreed to. Because of their involvement, they have been included as signatories to the Settlement and are included when referring to "Plaintiffs."

1

level employees of the LDF Tribal Lending Entities. In addition, Plaintiffs sued several of the LDF Tribal Lending Entities' non-tribal business partners, namely William Pruett and Skytrail Servicing, LLC.

As soon as Plaintiffs filed this case in July 2020, Defendants vigorously defended it, including by filing motions to compel arbitration and to dismiss that raised complex and novel issues of arbitrability, sovereign immunity, and the failure to join necessary parties. *See, e.g., Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756, 767 (W.D. Va. 2023). The Court denied those motions in an extensive opinion—spanning 61 pages—that addressed several matters of first impression in this District and the Fourth Circuit, including (1) the applicability of the prospective waiver doctrine to waivers of rights under state law; and (2) absolute and legislative immunity. *See generally id*. Defendants then appealed that decision to the United States Court of Appeals for the Fourth Circuit. *See Fitzgerald v. Wildcat*, Case No. 23-cv-1930 (4th Cir.); *Fitzgerald v. Skytrail Servicing Group, LLC*, Case No. 23-cv-1929 (4th Cir.).

During the pendency of the appeal, the parties attended eleven mediation sessions with the Honorable Jane M. Roush (Ret.) with the McCammon Group. Through these mediation sessions, as well as countless communications, the parties have entered into a Stipulation and Agreement of Settlement ("Settlement Agreement"), which is attached hereto as Exhibit 1. The proposed settlement affords substantial relief to class members, including: (1) cancellation of approximately $1,400,000,000.00 ($1.4 billion) of outstanding loans; and (2) creation of a $37,350,000.00 ($37.35 million) common fund to be distributed to consumers who repaid unlawful amounts. *See* Ex. 1 at §§ 3.4(a)(i); 3.4(b)(1). Put differently, the proposed settlement provides almost 1.5 billion dollars in benefits to class members before even accounting for other valuable forms of consideration, like deletion of any negative credit reporting associated with the loans.

The proposed settlement is the **<u>largest</u>** ever obtained against participants in the tribal lending industry, and it surpasses multiple settlements approved by courts in similar tribal lending cases. *See Turner v. ZestFinance, Inc.*, No. 3:19-cv-293, Final Approval Order at Dkt. 114 (E.D. Va. July 9, 2020) (granting final approval of a class settlement providing $170 million in debt cancellation and a common fund of $18.5 million); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Final Approval Order at Dkt. 141 (E.D. Va. Dec. 13, 2019) (granting final approval of a class settlement providing $380 million in debt cancellation and a common fund of $53 million); *Galloway v. Williams*, No. 3:19-cv-470, Final Approval Order at Dkt. 115 (E.D. Va. Dec. 18, 2020) (granting final approval of a class settlement providing $100 million in debt cancellation and a common fund of $8.7 million); *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Final Approval Order at Dkt. 95 (E.D. Va. Mar. 29, 2021) (granting final approval of a class settlement providing $383 million in debt cancellation and a common fund of $50 million); *Hengle v. Asner,* No. 3:19-cv-250, Final Approval Order at Dkt. 230 (E.D. Va. Oct. 25, 2022) (granting final approval of a class settlement providing $450 million in debt cancellation and a common fund of $39 million). And critically, the proposed settlement does not release viable claims against other alleged co-conspirators, who will be sued in a new case that will seek to recover even more relief for the class. Ex. 1 § 4.2.

Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs and Defendants now seek preliminary approval of the proposed class action settlement. The parties request that the Court preliminarily certify the proposed class and approve the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement. Plaintiffs will submit a final motion supporting the fairness of the proposed class action settlement: (1) after Settlement Class Members have received notice providing them an opportunity to object or opt-out; and (2) before

the Court's Final Fairness Hearing. For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

**KEY SETTLEMENT TERMS**

**A.      Class Definition**

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide class ("Settlement Class") defined as:

> All consumers residing within the United States who executed loan agreements with any LDF Tribal Corporation between July 24, 2016, and October 1, 2023.

Ex. 1 § 2.29. "LDF Tribal Corporation," in turn, is defined as L.D.F. Business Development Corporation, LDF Holdings, LLC, and their subsidiaries, which are Niiwin d/b/a Lendgreen, Niswi d/b/a LendUMo, Ziibi d/b/a Zfunds, Makwa d/b/a Makwa Financial, Niizh d/b/a Brightstar Cash, Midaaswi d/b/a National Small Loan, Naanan d/b/a Bear Claw Lending, Ningodwaaswi d/b/a Sky Trail Cash, Niizhwaaswi d/b/a Loan at Last, Zhaangaswi d/b/a Nine Torches, Biboon d/b/a Bridge Lending Solutions, Giizis d/b/a Lakeshore Loans, Nigig d/b/a UbiCash, Niibin d/b/a Cash Aisle, Mitig d/b/a MitigCapital, Anong d/b/a Avail Blue, Opichi d/b/a Evergreen Services, Zagime d/b/a Blue River Lending, Waawaatesi d/b/a Quick Help Loans (Greenline), and Ishwaaswi d/b/a Radiant Cash. *Id.* § 2.17. The subsidiaries were the companies that contracted directly with consumers, including each of the Plaintiffs.

The class definition covers all of the tribal lending entities owned by the LDF during the class period. The class definition also mirrors other class definitions approved in similar cases. *See, e.g.*, *Galloway v. Williams* (*Galloway III*), No. 3:19-cv-470, 2020 WL 7482191, at *2 (E.D. Va. Dec. 18, 2020) (granting final approval of settlement class defined as "[a]ll consumers residing within the United States or its territories who executed loan agreements with Red Rock Tribal Lending, LLC or Big Picture Loans, LLC (including loans assigned to Big Picture Loans, LLC)

4

from June 22, 2013 to December 20, 2019," subject to certain exclusions such as plaintiffs' attorneys or any judge working on the case); *Hengle,* No. 3:19-cv-250, Dkt. 230 (E.D. Va. Oct. 25, 2022) (granting final approval of a settlement class defined as "[a]ll consumers residing in the United States who executed loans agreements with: (1) Golden Valley Lending, Inc., Silver Cloud Financial Inc., Majestic Lake Financial Inc., or prior to February 1, 2021, Mountain Summit Financial, Inc.").

Based on the loan-level data assembled by the LDF Tribal Lending Entities, it is estimated that the Settlement Class includes approximately 980,000 class members. Ex. 1 § 3.2.

## B.    The Settlement Provides Significant and Meaningful Relief to Borrowers.

The Settlement provides significant consideration to Settlement Class Members, primarily in the form of debt cancellation and cash payments. As to the debt cancellation, the Tribal Officials have agreed to eliminate the balance due on *all* outstanding debt originated by the LDF Tribal Lending Entities during the class period. Ex. 1 § 3.4(a)(i) ("Within thirty (30) days after the Effective Date, with respect to the Outstanding Loans, the Tribal Officials agree to reduce the balance due on each such loan for all Settlement Class Members to zero on the basis that the debt is disputed."). Based on the loan-level data, the Tribal Officials "estimate that this will result in the cancellation of approximately $1,400,000,000.00 ($1.4 billion) in outstanding debt." *Id.*

In addition to debt cancellation, the Tribal Officials further agreed to cease collecting any of the class members' loans upon the entry of the Preliminary Approval Order. *Id.* § 3.4(a)(ii). And "[t]o the extent any amounts are collected, inadvertently or otherwise, after the entry of the Preliminary Approval Order, the Tribal Officials will remit the funds back to the Settlement Class Member." *Id.* This means that borrowers will receive *immediate* relief from the burdens of their

loans without having to wait several months for the notice and approval process provided under Rule 23(e).

The proposed settlement will also result in the creation of a Settlement Fund in the amount of $37,350,000.00 ($37.35 million), which will be distributed to borrowers who repaid more than the principal balance of their loans. *Id.* § 2.14. As outlined in the Settlement Agreement and approved by several courts in similar cases,[2] the payments will be allocated using a tiered formula after deducting the service awards, attorneys' fees, and costs approved by this Court:

Tier 1:  The dollar amount of all payments made by each Settlement Class Member if the original principal amount of their loan was repaid and if the Settlement Class Member resided in Arizona, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, South Dakota, Vermont, and Virginia, at the time the Settlement Class Member took out the loan.

Tier 2:  The dollar amount of payments made above the legal interest limits in that respective state if the original principal amount of their loan was repaid and if the Settlement Class Member resided in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Washington, Washington D.C., or Wyoming at the time the Settlement Class Member took out the loan.

Tier 3:  Settlement Class Members in Nevada and Utah will not receive cash payments.

---

[2] This tiered formula—which takes into account the differences in remedies available to borrowers in each state—has been approved by multiple courts in other tribal lending cases. *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, *Gibbs v. Stinson*, Case No. 3:18-cv-676, Dkt. 141 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293, Dkt. 114 (E.D. Va. July 9, 2020); *Hengle v. Asner*, No. 3:19-cv-250-DJN, Dkt. 230 (E.D. Va. Oct. 25, 2022); *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146, Dkt. 228 (E.D. Va. Mar. 2, 2024); *Galloway v. Martorello*, 3:19-cv-00314, Dkt. 662 (E.D. Va. June 4, 2024).

*Id.* § 3.4(b)(ii).[3] Settlement Class Members in Tier 1 or Tier 2 who repaid more than the principal amount borrowered will receive a cash award based on a pro rata calculation rounded down to the nearest cent. *Id.* § 3.4(b)(iii)(2). In the event any Settlement Class Member took out more than one loan during the class period, his or her claim amount will be calculated by determining the claim amount for each loan and adding them together. *Id.* § 3.4(b)(ii).

The relief provided by the proposed class action settlement is significant. Every consumer will receive either a cash payment or debt cancellation, and many will receive both. The Tribal Officials have also agreed that "they will not sell, transfer, or assign for collection any Outstanding Loans of Settlement Class Members," and they will "request permanent removal of any negative tradelines for Settlement Class Members previously reported to [any Credit Reporting Agency] in the name of the LDF Tribal Corporations." *Id.* § 3.4(a)(ii), (iv). This will ensure that borrowers will not be subject to any future collection efforts or suffer adverse consequences to their credit.

Importantly, Settlement Class Members will receive all of the foregoing consideration without needing to submit a claim form, prove any harm, or take any affirmative action.

## C.      Class Action Fairness Notice

At their own expense, Defendants will provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). Ex. 1 § 3.8. To account for the deadlines under governing law, the parties request that the Court schedule the Final Approval Hearing at least 90 days after the CAFA Notice is mailed.

---

[3] Arkansas, New York, West Virginia, and Wisconsin are not included in the list because the LDF Tribal Lending Entities never made loans in these states.

7

D.      **Attorneys' Fees, Costs, and Service Awards.**

Class Counsel will apply for attorneys' fees and costs in an amount to be approved by the Court, but not to exceed one-third of the monetary consideration (*i.e.*, $12,449,999) created by the Settlement Fund. Ex. 1 § 3.6. The Settlement "is not conditioned upon the District Court's approval of the attorneys' fees and costs sought by Plaintiffs." *Id.* § 3.6. Plaintiffs will also apply for service awards of $15,000 each for their role as class representatives to compensate them for their efforts in prosecuting this case and obtaining the excellent result for Settlement Class Members. Like attorneys' fees, the settlement "is not conditioned upon the District Court's approval of the service awards sought by Plaintiffs." *Id.* § 3.5.

E.      **Notices and Exclusions.**

Class notice will be a combination of email notice to verified email addresses or U.S Mail to each Settlement Class Member. If approved by the Court, the selected Settlement Administrator, American Legal Claims Services,[4] will first email direct notice to Settlement Class Members at the most recent email address shown in the LDF Tribal Lending Entities' electronic records, as maintained in the ordinary course of business, for each loan at issue. *Id.* § 5.3(a). If email notice results in a bounce-back email, direct notice will be mailed to Settlement Class Members via first class mail. *Id.* § 5.3(b). Prior to mailing, the Settlement Administrator will run mailing addresses once through the National Change of Address (NCOA) system or any other postal address verification database that the Administrator deems proper. *Id.* Returned direct notices will be remailed if they are returned within twenty days of the postmark date and contain a forwarding address. *Id.* Additionally, the Settlement Administrator will create and update a website on which

---

[4] Plaintiffs obtained three bids for settlement administration. American Legal Claims Services was the lowest, and it has successfully administered similar class settlements such as in *Galloway* and *Hengle*. *See Galloway III*, 2020 WL 7482191 at *3; *Hengle*, No. 3:19-cv-250, Dkt. 209.

pertinent information related to this settlement will be made available to Settlement Class Members, including the Class Action Complaint; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action settlement. *Id.*

A Settlement Class Member who wants to be excluded from the class must advise the Class Administrator in writing, and his or her opt-out request must be postmarked no later than the opt-out deadline. *Id.* § 7.3. The Settlement Class Member's opt-out request must contain the Member's full name, address, and telephone number. *Id.* Further, the Settlement Class Member must sign the request and include a statement that he or she wishes to be excluded from the Settlement Agreement. *Id.* Requests for exclusion that do not comply with any of the foregoing requirements will be deemed invalid. *Id.*

## ARGUMENT

### A.    Class Certification Standard

Courts in the Fourth Circuit favor resolution of litigation before trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources.  As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)). Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case. *In re*

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases). A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement. *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement. *Id.* at 547. Second, class members must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies Rule 23's requirements and, thus, may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of the class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class, which they respectfully request be preliminarily certified.

**B.      The Settlement Class Meets the Certification Elements**

    *i.      The Settlement Class satisfies Rule 23(a)*

         1.      Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). But where the class numbers 25 or more, joinder is usually impracticable. *See Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here. As detailed above, it is estimated that there are approximately 980,000 Settlement Class Members, including the named Plaintiffs. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003). Indeed, courts have found joinder impracticable based on smaller (albeit still numerous) class sizes in other tribal lending cases. *See, e.g.*, *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 58 (E.D. Va. 2021) ("Here, the numerosity requirement is easily met; the putative class consists of at least 12,530 individuals. Joinder of over 12,000 individuals would undoubtedly be impracticable." (citation omitted)), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023); *Gibbs v. Stinson*, 2021 WL 4812451, at *13 (E.D. Va. Oct. 14, 2021) (finding that "43,598 consumers" who

11

received tribal loans was sufficiently numerous for the purposes of Rule 23(a)); *Hengle*, No. 3:19-cv-250, Dkt. 209 (finding that 555,000 class members satisfied numerosity requirement).

   2.   Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class," the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). The standard is a liberal one that "will not be defeated solely because of some factual variances in individual grievances [among class members]." *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share multiple questions of law and fact. The Settlement Class Members are alleged to be the subject of a practice in which the lending enterprise, with allegations of Defendants' direct participation and support, charged usurious interest rates on consumer loans in violation of federal and state law. The practices at issue for this claim are identical across all class members. The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a). And as with numerosity, courts have repeatedly found that there are common questions of law and facts in similar usurious lending cases. *See, e.g., Williams*, 339 F.R.D. at 58 ("The proposed class members' claims are all based on the same tribal lending scheme, and in particular, on 'the same conduct, practice, and procedure on the part of [the participant].'"); *Gibbs*, 2021 WL 4812451, at *13 (finding "Defendants' ownership and involvement in developing a lending scheme" raised "at least eight

12

common questions of law that can be evaluated with common proof," such as whether the interest rates violated the law, whether the choice-of-law provisions were enforceable, and whether participants constituted an enterprise); *Brice v. Haynes Invs., LLC*, 2021 WL 1916466, at *5 (N.D. Cal. Apr. 23, 2021) (explaining that "whether or not these defendants may be liable for particular violations – given their knowledge of and involvement in the Tribal Lending Schemes, how they were compensated or otherwise benefitted, and any agency defense or RICO proximate cause defense – are issues common to the class and more appropriately tested on summary judgment."); *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 343 (D.N.J. 2019) (same).

3.     Typicality

A class representative's claims or defenses must be "typical" of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The Fourth Circuit has described the typicality requirement as "the heart of a representative [party's] ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Typicality demands "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.*; *accord Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 264 (4th Cir. 2012); *Lienhart*, 255 F.3d at 146. A plaintiff's interest in prosecuting her case must advance the interests of the class. *Soutter*, 498 F. App'x at 264.

Nonetheless, typicality does not require that a class representative's claims be perfectly identical to the class members' claims. *See, e.g.*, *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998); *Deiter*, 436 F.3d at 467; *Soutter*, 498 F. App'x at 265; *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009). Rather, "the interests of the party representing a class must be substantially similar to those of the unrepresented parties." *Id.*; *see also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006). Thus, "the mere existence of individualized factual questions with respect to the class representative's claim will

13

not bar class certification." *In re BearingPoint,* 232 F.R.D. at 538 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 178 (2d Cir. 1990)). As the Fourth Circuit has explained:

> To determine if [the plaintiff] has shown typicality, we compare her claims and [the opposing party's] defenses to her claims with those of purported class members by reviewing the elements of [the plaintiff's] prima facie case and the fact supporting those elements and examining "the extent" to which those facts "would also prove the claims of the absent class members."

*Soutter*, 498 F. App'x at 265.

Here, Plaintiffs' and the Settlement Class Members' claims arise from the same course of events, and each of them would have made virtually the same legal arguments to prove Defendants' liability. Plaintiffs' claims are typical of all class members because they were all subject to Defendants' uniform practice of charging usurious amounts to consumers using the tribal lending model. In this respect, Plaintiffs and the Settlement Class Members are all in the same boat as recipients of the usurious loans; the only genuine difference from one member to another is the level of financial harm incurred, which itself is readily calculable for each class member using the loan-level data. As one court has explained in a comparable case:

> Plaintiffs have shown that their claims are legally identical to those of the class, as they obtained loans from Western Sky at allegedly usurious interest rates, under loan agreements purporting to be governed exclusively by [tribal] law. These are precisely the theories and claims under which each class seeks to recover.

*MacDonald*, 333 F.R.D. at 343; *see also Williams*, 339 F.R.D. at 59 (explaining, in a tribal lending case, that "the proposed class representatives suffered the same injury and have the same basic legal claims as those of the proposed class members. The only difference across class members would be the actual damages they are asserting which will not preclude a finding of typicality."); *Gibbs*, 2021 WL 4812451 at *15 ("The only loan term that matters with respect to the claims of each class member, including those of each Named Plaintiff, is whether the interest rate exceeds

the relevant thresholds: 12% interest per year for claims under Virginia usury laws and 24% interest per year for claims under RICO. Because the loan agreements originated by all three tribal lending entities exceeded those thresholds, any differences in the terms of these agreements would be immaterial and, as a result, would not destroy typicality[.]" (citations omitted)); *Brice*, 2021 WL 1916466, at *6 ("Regarding differences in the terms of the Plain Green and Great Plains loans, defendants identify no differences that are *material* between the loan documents that would create atypicality given the claims asserted." (emphasis supplied)).

4. Adequacy

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Both Plaintiffs and the Settlement Class Members seek monetary and injunctive relief for Defendants' allegedly unlawful actions. Considering the similarities of their claims, there is no potential for conflicting interests in this action. *Williams*, 339 F.R.D. at 59 ("As noted under the analysis of the commonality and typicality factors, Plaintiffs' interests are in line with those of the broader classes."); *Gibbs*, 2021 WL 4812451 at *16 ("Plaintiffs have no interests antagonistic to the class's interests. Named Plaintiffs and the class share the identical interest of establishing Defendants' liability based on the same questions of law and fact. Defendants do not contend otherwise, and the record demonstrates no conflicts of interest."). Plaintiffs have also been active in this litigation, including the preparation

of a Complaint and the Amended Complaints and staying abreast of the case as well as settlement efforts. Ex. 2, Kelly Decl. at ¶ 17.

Plaintiffs' attorneys have also provided more than adequate representation for the Settlement Class. Indeed, they have been approved as class counsel in more than a half-dozen tribal lending cases, each time being recognized for their expertise in this area. *See, e.g.*, *Williams*, 339 F.R.D. at 59 ("Proposed Class Counsel have extensive experience with class actions, consumer financial protection law, and tribal lending operations[.]"); *Galloway III*, 2020 WL 7482191, at *8 (same); *Gibbs*, 2021 WL 4812451 at *16 (explaining, in a tribal lending case, that "[t]his Court has repeatedly found Plaintiffs' Counsel qualified to conduct complex consumer class action litigation such as the one at bar"); *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Dkt. 141; *Gibbs v. Stinson*, Case No. 3:18-cv-676 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293 (E.D. Va.), Dkt. 114; *Hengle*, No. 3:19-cv-250-DJN, Dkt. 230 (E.D. Va.); *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146, Dkt. 228 (E.D. Va. Mar. 2, 2024).

Plaintiffs' counsel has not only been approved in these cases, but expressly called out and commended for their work. For example, when granting approval to a similar settlement, Judge Lauck commented:

> The representation by class counsel is certainly adequate. I don't want to belabor the issue at the expense of folks, one, getting tired of hearing me, but, two, also maybe feeling a little too good about themselves. But it is the case that the track record here and the success of litigating complex cases, and specifically in tribal payday lenders, is, I think, as high as it gets in this country.

*Gibbs v. TCV V, L.P.,* 3:19-cv-789, Fairness Hr'g Tr. at 139:10-17 (E.D. Va. Mar. 25, 2021). Similarly, when recently approving a settlement in the *Blackburn* matter, Judge Novak noted:

> Plaintiffs and lead counsel have adequately represented the class. Actually, they've done it in an exceptional manner considering where we started in *Hengle* and now we're here. I don't think I can overstate that.

*Blackburn v. A.C. Israel Enterprises,* 3:22-cv-146, Fairness Hr'g Tr. at 6:18-21 (E.D. Va. Oct. 30, 2023); *see also In re Think Finance, LLC*, 17-33964-hdh11 (N.D. Tex.) (Dkt. 1432 at 40) (finding that the settlement of a tribal lending case was the product of "the most hard-fought bankruptcy case that [the Court] presided over in [] 17 years as a judge" litigated by "some of the best lawyers in America").[5]

Accordingly, the Class is adequately represented and meets Rule 23's requirements.

ii.      *The Settlement Class satisfies Rule 23(b)(3)*

The proposed settlement contemplates permitting opt-outs under Rule 23(b)(3). An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied, and in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts have already found these requirements satisfied based on very similar class claims. *See, e.g.*, *Galloway III*, No. 3:19-cv-470, Dkt. 65 (E.D. Va. Dec. 20, 2019) (finding "the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and, [] a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule

---

[5] Beyond tribal lending cases, counsel has also been approved in dozens of other consumer-protection and complex class actions, typically as lead or co-lead counsel. *See, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) ("This Court echoes the sentiments previously stated about Clark's counsel because they pertain here with equal vigor."); *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-624, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."); Ex. 2, Kelly Decl. at ¶¶ 9-10 (listing cases).

23 and is superior to alternative means of resolving the claims and disputes at issue in this Lawsuit."); *Hengle*, No. 3:19-cv-250, Dkt. 209 (E.D. Va. May 12, 2022) (same). So too here.

    1.    Predominance

Rule 23(b)(3) requires that the common issues of law and fact shared by the Settlement Class Members "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott v. GC Servs. Ltd.*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And predominance exists where the resolution of class members' individual claims depends on examining common conduct by a defendant. *Jeffreys*, 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

As many courts have found in similar cases, the predominance requirement is satisfied here because the essential factual and legal issues for the Settlement Class Members' claims are common and relate to alleged standardized usury violations. *See Gibbs*, 2021 WL 4812451, at *16-20 (finding, on contested motion, that common questions of law and fact predominated under similar circumstances); *MacDonald*, 333 F.R.D. at 350 ("Plaintiffs can answer the question of whether a loan agreement is usurious by using the common evidence of the agreements themselves, which will suffice to demonstrate their claims. Plaintiffs have shown that common questions predominate as to their usury cause of action."); *Upshaw v. Georgia (GA) Catalog Sales, Inc.*, 206 F.R.D. 694, 700-01 (M.D. Ga. 2002) (finding predominance satisfied because "Defendants'

18

conduct was substantially the same with respect to all members of the class," and "[t]his conduct gives rise to Plaintiffs' class-wide liability claims for violation of the Georgia usury laws and RICO"); *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct.").

In sum, "the majority of the liability questions with regard to Plaintiff's RICO claims do not require inquiry into any individual transactions or file[s] and are identical regardless of which class member would be presenting his or her RICO claim." *Robinson v. Fountainhead Title Grp. Corp.*, 257 F.R.D. 92, 94 (D. Md. 2009). Because this case involves an "alleged scheme to defraud" that "if proven, operated in the same manner with regard to all customers," predominance is satisfied. *Id.*

### 2.   Superiority

Finally, the Court should determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors courts consider in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[6] *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and

---

[6] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Thus, this criterion is not material to the Court's analysis in this posture.

the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D. at 323. The same is true here. Common issues predominate and the Settlement Class Members' individual claims are small, thus providing little incentive for individual litigation. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))).

A class action is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above far outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might not gain such access standing alone, particularly given the small amount of the damage claims that would be available to individuals. Moreover, apart from the fact that the proposed class action settlement allows a recovery of actual damages, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. *See Gibbs*, 2021 WL 4812451, at *20 (Lauck, J.) (finding predominance and superiority satisfied under nearly identical circumstances on a contested class certification motion). For these reasons, the Court should conditionally certify the Settlement Class for settlement purposes.

**C.      The Settlement Satisfies the Requirements of Rule 23(e)(2).**

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorneys' fees, including timing of payments; and

(iv)   any agreement required to be identified under Rule 23(e)(3);

(D)    the proposal treats class members equitably relative to each other.

*Galloway III*, 2020 WL 7482191 at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing

21

line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

> i.      *Plaintiff and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)). Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs*, 2021 WL 4812451, at *16 (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied. Plaintiffs' interests and those of Class Members are fully aligned as they were all subjected to the same unlawful lending practices. *See, e.g.*, *Gibbs*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

Additionally, Class Counsel have spent their entire careers practicing in the field of consumer protection, and they believe that this settlement is among the best achieved in the industry. *See* Ex. 2, Kelly Decl. ¶¶ 14-16.[7] As explained above, the proposed settlement is the <u>largest</u> ever obtained against participants in the tribal lending industry, and it surpasses (often

---

[7] Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

significantly) multiple other settlements approved by courts in tribal lending cases. *See Turner*, No. 3:19-cv-293, Final Approval Order at Dkt. 114 (granting final approval of a class settlement providing $170 million in debt cancellation and a common fund of $18.5 million); *Gibbs*, Case No. 3:17-cv-495, Final Approval Order at Dkt. 141 (granting final approval of a class settlement providing $380 million in debt cancellation and a common fund of $53 million); *Galloway*, No. 3:19-cv-470, Final Approval Order at Dkt. 115 (granting final approval of a class settlement providing $100 million in debt cancellation and a common fund of $8.7 million); *Gibbs*, No. 3:19-cv-00789, Final Approval Order at Dkt. 95 (granting final approval of a class settlement providing $383 million in debt cancellation and a common fund of $50 million); *Hengle,* No. 3:19-cv-250, Final Approval Order at Dkt. 230 (granting final approval of a class settlement providing $450 million in debt cancellation and a common fund of $39 million).

Given the substantial relief afforded by the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for approval. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience).

        ii.     *Negotiations Were at Arm's Length and Involved a Respected Mediator.*

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at

23

*21 (E.D. Mich. Mar. 31, 2006)). Here, the four-year history of this litigation demonstrates that there was no collusion or fraud between the parties.

To be sure, courts look at several other factors to help confirm that negotiations were at arm's length, including the presence of a mediator. As the leading class action treatise explains: "There appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a third-party mediator." Conte & Newberg, *supra*, § 13:48; *see also Flint Water Cases*, 571 F. Supp. 3d at 780 ("highly experienced mediators" provide "ample protections in their roles"). Here, over the course of the last year, the parties attended eleven mediation sessions with the Honorable Jane M. Roush (Ret.) with the McCammon Group. *See, e.g.*, Ex. 1 at pg. 5 (noting that the parties attended mediations on September 26, 2023, October 6, 2023, November 9, 2023, December 15, 2023, February 2, 2024, February 26, 2024, March 27, 2024, April 8, 2024, April 30, 2024, May 22, 2024, and June 14, 2024).

In sum, the history of this litigation, as well as the extensive involvement of a skilled mediator, establishes that there was no collusion among the parties.

### iii.    *The Relief Provided to the Class is Adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy. *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). An analysis of each factor shows that this settlement is fair, reasonable, and adequate.

24

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal. This factor strongly supports approval of the settlement. While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation. Defendants have disputed Plaintiffs' claims since the inception of this case and have raised several defenses, including factual disputes over the degree and nature of their alleged involvement in the lending enterprise and possible merits defenses, such as mistake of law, absolute immunity, and qualified immunity. Beyond merits defenses, Defendants also steadfastly insisted that this case should be in arbitration and had appealed this Court's ruling of that issue. *See Fitzgerald*, 687 F. Supp. 3d 756; *Fitzgerald v. Wildcat*, Case No. 23-cv-1930 (4th Cir.); *Fitzgerald v. Skytrail Servicing Group, LLC*, Case No. 23-cv-1929 (4th Cir.). If Defendants succeeded in that appeal, it would wipe away the availability of classwide relief. Put differently, the settlement avoids a substantial risk that the appeal could have resulted in no return to the class while still achieving an unprecedented amount of relief.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, just as with multiple similar settlements in other tribal lending cases,[8] Class Members will receive automatic cash payments based on the unlawful amount repaid on their loans

---

[8] As explained in above, this tiered formula has been approved by multiple courts in other cases. *See, e.g.*, *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, *Gibbs v. Stinson*, Case No. 3:18-cv-676, Dkt. 141 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293, Dkt. 114 (E.D. Va. July 9, 2020); *Hengle v. Asner*, No. 3:19-cv-250-DJN, Dkt. 230 (E.D. Va. Oct. 25, 2022); *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146, Dkt. 228 (E.D. Va. Mar. 2, 2024); *Galloway v. Martorello*, 3:19-cv-00314, Dkt. 662 (E.D. Va. June 4, 2024).

and the protections afforded by their states of residence at the time they accepted the loans, without having to submit a claim form or any proof of their damages. Thus, cash payments will be automatically distributed based on predetermined, objective criteria. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781. Because an automatic cash payment is based on objective criteria and does not require any action by Class Members, this factor weighs strongly in favor of approving the settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request. The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. There are no such indications here. As outlined above, there is no sign that Class Counsel left any money on the negotiating table. Instead, the evidence shows that the parties engaged in eleven mediation sessions, resulting in the largest settlement against participants in the tribal lending industry to date, including the cancellation of nearly $1.5 billion in debt and millions in automatic payments to Class Members who meet objective criteria. And critically, the settlement "is not conditioned upon the District Court's approval of the attorneys' fees and costs sought by Plaintiffs." Ex. 1 § 3.6. This means that the settlement will proceed even if the Court reduces the requested fees sought by Class Counsel.

When considering fees, "courts are to consider this to prevent situations in which the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Flint Water Cases*, 571 F. Supp. 3d at 782. There is no such concern here, as the proposed the Settlement Class and Notice identifies that Class Counsel will seek one-third of the Settlement Fund. *See, e.g.*, Ex. 1 § 3.6.

Finally, there are no agreements that need to be identified under Rule 23(e)(3).

> iv.    *The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

The Settlement here achieves this balance. It limits payments to only those Members who made unlawful payments on their loans based on the legal protections of their respective states of residence. The Settlement further awards payments on a *pro rata* basis after considering the amount of each qualifying Class Member's payments above the lawful amount in their respective states. The Settlement thus maximizes the possible payout for Class Members who have suffered actual monetary harm, while also obtaining important injunctive relief for those who had outstanding balances on their loans. Class Members, therefore, will be treated equitably relative to each other and their damages.

## IV.    The Proposed Notice and Notice Plan Satisfy Rule 23

Following preliminary approval, the class members must be given notice about the nature of the settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice to the Settlement Class, which is Exhibit 1 to the Settlement Agreement, and the notice program for delivering that notice satisfy these requirements. Ex. 1 § 5.3. Indeed, the notice plan and language are very similar to the notice programs approved in other tribal lending cases, including cases like this with hundreds of thousands of class members. *See Galloway III*, 2020 WL 7482191 at \*3; *Hengle*, No. 3:19-cv-250, Dkt. 209 (approving similar plan for 555,000 member class). These notice programs resulted in presumed delivery of the notice to nearly 100% of class members. *See Galloway III*, 2020 WL 7482191, at \*3 ("successful delivery rate of 99.67%"); *Hengle*, No. 3:19-cv-250, Dkt. 222 (noting delivery rate of 99.27%).

As in *Galloway III* and *Hengle*, the proposed notice program here will provide individual direct notice. Under the Settlement Agreement, the Settlement Administrator will first email direct notice to each Settlement Class Member at his or her most recent email address shown in the LDF Tribal Entities' loan records. Ex. 1 §§ 3.3, 5.3(a). If email notice results in a bounce-back email, direct notice will be mailed to Settlement Class Members via first class mail and returned direct notices will be remailed if they are returned within twenty days of the postmark date and contain a forwarding address. *Id.* The Administrator also will create and maintain a website, on which pertinent information will be made available to Settlement Class Members, including the operative complaint; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action settlement. *Id.* § 5.3(b).

The Settlement's robust notice and administration plan will ensure the most Settlement Class Members possible receive the payments to which they are entitled. Class Notice will be sent in accordance with Federal Rule of Civil Procedure 23(c) in the manner approved by the Court by a combination of email notice to verified email addresses or U.S. Mail to each Settlement Class Member identified on the Class List.

As the *Manual for Complex Litigation* recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified. *See* Manual for Complex Litigation § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C.*, No. 8:11-cv-334, 2013 WL 5881422, at *5 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notice and Notice Plan represent the "best notice that is practicable under the circumstances," and they therefore meet the notice requirements of Rule 23. The Notice and Notice Plan should thus be approved by the Court.

## CONCLUSION

The proposed class action settlement is a hard earned and excellent result considering the circumstances of the litigation, the strength of Plaintiffs' case, and Defendants' resources. The terms of the proposed class action settlement, as well as the circumstances of negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs respectfully request that the Court issue an Order that: (1) grants preliminary approval to the proposed settlement; (2) approves the Proposed Notice attached as Exhibit 1 to the Settlement Agreement; (3) orders that the Proposed Notice be immediately

mailed to Settlement Class Members; (4) approves the appointment of American Legal Claims Services as the Settlement Administrator; and (5) sets the date of the Final Fairness Hearing in November or December based on the Court's availability.

Respectfully submitted,
**PLAINTIFFS,** *individually and on behalf of all others similarly situated*

By: */s/ Kristi C. Kelly*_____
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiffs*