**STIPULATION AND AGREEMENT OF SETTLEMENT**

# TABLE OF CONTENTS

Page

I.  RECITALS ........................................................................................................... 1

II.  DEFINITIONS ................................................................................................... 4

III.  TERMS OF THE SETTLEMENT ................................................................... 11

IV.  RELEASE AND DISMISSAL ......................................................................... 27

V.  NOTICE AND SETTLEMENT ADMINISTRATION .................................... 30

VI.  DISPUTE RESOLUTION ............................................................................... 32

VII.  PRELIMINARY APPROVAL ORDER AND FINAL FAIRNESS HEARING ......... 33

VIII.  FINAL APPROVAL OF SETTLEMENT AND OTHER CONDITIONS ................... 35

IX.  TERMINATION OF SETTLEMENT .............................................................. 36

X.  TAX TREATMENT OF THE FUND ............................................................... 38

XI.  MISCELLANEOUS PROVISIONS ................................................................ 40

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Agreement") is entered into by and between Joseph Wildcat, Sr., Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, John Johnson, George Thompson, Jaime Ann Allen, Jeffrey Bauman, Sr., Louis St. Germaine, Jared Poupart, Paula Poupart, Patricia Zimmerman, Lyle Chapman, Ray Allen, William Stone, Sr., William Cheney Pruett, and Skytrail Servicing Group, LLC, (collectively, "Defendants") on the one hand; and Lori Fitzgerald, Aaron Fitzgerald, Kevin Williams, Jade Singleton, Angela Maville, Daniel Goodman, Gustinna Wadu Jayamalee De Silva, and John Tucker (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated individuals, and as representatives of the Settlement Class, as these terms are defined in Section II, on the other hand.

### I.    RECITALS

The following recitals are material terms of this Agreement, and all capitalized terms are used as defined in Section II, below, except as otherwise defined herein. This Agreement is made in contemplation of the following facts and circumstances.

WHEREAS, on July 24, 2020, Plaintiffs Lori Fitzgerald, Aaron Fitzgerald, and Kevin Williams filed a putative class action complaint against Defendants Joseph Wildcat, Sr., Nicole Chapman-Reynolds, and Jessi Phillips Lorenzo, in the United States District Court for the Western District of Virginia, styled as *Fitzgerald v. Wildcat*, Civil Action No. 3:20-cv-00044-NKM-JCH (the "Action");

WHEREAS, on October 21, 2022, Plaintiffs Lori Fitzgerald, Aaron Fitzgerald, Kevin Williams, Jade Singleton, and Angela Maville filed an amended class action complaint in the Action against Joseph Wildcat, Sr., Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, John Johnson, George Thompson, Jaime Ann Allen, Jeffrey Bauman, Sr., Louis St. Germaine, Eric

Chapman, Sr., Racquel Bell, Gloria Gobb, William Graveen, Sarah Pyawasit, William Stone, Sr., William Cheney Pruett, and Skytrail Servicing Group, LLC;

WHEREAS, the amended class action complaint alleges various class and non-class claims for violation of state and federal law;

WHEREAS, on August 18, 2023, the United States District Court for the Western District of Virginia (the "District Court") entered an order denying Defendants' motions to compel arbitration and to dismiss the Action;

WHEREAS, Defendants appealed the District Court's order to the United States Court of Appeals for the Fourth Circuit, Appeal Nos. 23-1929 and 23-1930 (the "Appeal");

WHEREAS, Daniel Goodman, Gustinna Wadu Jayamalee De Silva and John Tucker retained Class Counsel and would have been added as named plaintiffs to the Action if the Settlement was not agreed to;

WHEREAS, Defendants deny any and all claims alleged by Plaintiffs in the Action, further deny that any Plaintiffs or any members of the Settlement Class they purport to represent have suffered any injury or damage, have to date vigorously defended against the Action, and would if necessary defend against any claims that have or could be asserted against them in any this litigation or any new litigation;

WHEREAS, Plaintiffs and Class Counsel have conducted an investigation of the legal claims at issue, by review and analysis of documents that Defendants provided in discovery and during settlement negotiations;

WHEREAS, Plaintiffs and Defendants participated in multiple negotiations with one another, including mediation sessions with the Honorable Jane Marum Roush (Ret.) on September

26, 2023, October 6, 2023, November 9, 2023, December 15, 2023, February 2, 2024, February 26, 2024, March 27, 2024, April 8, 2024, April 30, 2024, May 22, 2024, and June 14, 2024;

WHEREAS, based on the investigation and mediation sessions described above, Plaintiffs and Class Counsel have concluded that it would be in the best interests of the Settlement Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure benefits to the Settlement Class and that the settlement contemplated herein is fair, reasonable, and adequate and in the best interests of all members of the Settlement Class;

WHEREAS, Defendants deny all material allegations in the Action; deny any jurisdiction in this Court save for purposes of enforcing this Agreement, including, for the Tribal Officials, on grounds of sovereign immunity; deny that this case should be litigated rather than arbitrated; deny any fault, wrongdoing, or liability whatsoever arising out of or related to their business practices; deny that any of the Plaintiffs' claims are timely and affirmatively state that they are barred by the applicable statutes of limitations; affirmatively state that their practices have been lawful and proper; deny that resolution of the merits of the Action is suitable for class treatment; and further deny liability to Plaintiffs or to others similarly situated, including all members of the Settlement Class;

WHEREAS, Defendants are mindful that defending the Action would require them to expend significant time and money, and therefore have decided that it is in their best interest to resolve the Action on the terms set forth in this Agreement and do so solely for the purposes of avoiding the burden, expense, and uncertainty of continuing litigation, and to obtain the conclusive and complete dismissal of the Action and release of all Released Claims;

WHEREAS, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims that have been or could

be brought by or on behalf of Plaintiffs or the Settlement Class relating to the conduct by Defendants alleged in the Action; and

WHEREAS, execution of this Agreement is not, and shall not be construed as, an admission of wrongdoing or liability by Defendants, an admission that Defendants violated any provision of federal, state, or tribal law, or an admission that Defendants concede that class treatment of the Action is appropriate; and, further, this Agreement is inadmissible as evidence against any party except to enforce the terms of the Settlement and is not an admission of wrongdoing or liability on the part of any party to this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, it is hereby STIPULATED AND AGREED, subject to the District Court's approval, that the Action has been fully and finally resolved as to Defendants only upon and subject to the following terms and conditions:

## II.   <u>DEFINITIONS</u>

2.1   "Action" means the case pending in the United States District Court for the Western District of Virginia referred to above in the recitals to this Agreement: *Fitzgerald v. Wildcat*, Civil Action No. 3:20-cv-00044-NKM-JCH.

2.2   "Administrator" means the settlement administrator selected jointly by Class Counsel and Defendants and approved by the District Court.

2.3   "Appeal" means the cases pending in the United States Court of Appeals for the Fourth Circuit referred to above in recitals to this Agreement: *Fitzgerald v. Skytrail Servicing Group, LLC*, Appeal Nos. 23-1929 and 23-1930.

2.4   "CAFA Notice" refers to the notice made pursuant to the requirements imposed by 28 U.S.C. § 1715(b).

2.5    "Cash Award" means a cash payment to an eligible Settlement Class Member pursuant to Section 3.4(c).

2.6    "Class Counsel" means Kelly Guzzo PLC.

2.7    "Direct Notice" means the notice that will be provided pursuant to Sections 5.3(a) and 5.3(b), subject to approval by the District Court, substantially in the form attached hereto as "Exhibit 1."

2.8    "District Court," referred to above in the recitals to this Agreement, means the United States District Court for the Western District of Virginia.

2.9    "Effective Date" means the date that the Final Approval Order becomes final for all purposes because either (i) the Court has entered the Final Approval Order and the time within which an appeal may be noticed and filed under Fed. R. App. P. 4(a) has lapsed; or (ii) if a timely appeal has been filed, the appeal is finally resolved, with no possibility of further appellate or other review, resulting in final judicial approval of the Settlement.

2.10    "Escrow Account" means one or more separate escrow account(s) maintained by the Escrow Agent(s) into which the Fund will be deposited for the benefit of the Settlement Class until such time as the Fund is transferred and distributed pursuant to the terms of this Agreement.

2.11    "Escrow Agent" means a federally insured financial institution previously approved in such capacity by the District Court as selected by Class Counsel, with reasonable right of refusal by Defendants, which shall receive and hold the Monetary Consideration under the terms of this Settlement Agreement.

2.12    "Final Approval Order" means the Final Approval Order and Judgment to be entered by the District Court in the Action providing final approval of this Settlement and resolving

all issues between the Parties, as provided for in Section VIII below, substantially in the form attached hereto as "Exhibit 3."

 2.13 "Final Fairness Hearing" means the hearing at which the District Court will consider and finally decide whether to provide final approval of this Settlement, enter the Final Approval Order, and make such rulings as are contemplated by this Settlement.

 2.14 "Fund" means the total sum of $37,350,000.00 to be paid to the Escrow Agent as provided for in Section 3.4(b) of this Agreement, inclusive of payments to Settlement Class Members, attorneys' fees and costs, service awards to Plaintiffs, and costs of notice and administration funded, to be funded as follows: (1) Tribal Defendants agree to pay $2,000,000.00; (2) the Niibin Released Parties agree to pay $2,500,000.00; (3) the Niizhwaaswi Released Parties agree to pay $20,000,000.00; (4) the Ningodwaaswi Released Parties agree to pay $6,500,000.00; (5) the Waawaatesi Released Parties agree to pay $5,750,000.00; and (6) the Giizis Released Parties agree to pay $600,000.00.

 2.15 "Giizis Released Parties" means those non-tribal individuals and entities involved with or associated in any way with Giizis d/b/a Lakeshore Loans, an LDF Corporation, including each of their respective and related entities and persons, controlling entities, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, partners, managers, investors, vendors, lenders, servicers, consultants, creditors, beneficiaries, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, executors, representatives, assigns and attorneys.

 2.16 "Internet Notice" means notice through the Internet website created pursuant to Section 5.3(c) of this Agreement.

2.17    "LDF Tribal Corporations" means L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin d/b/a Lendgreen, Niswi d/b/a LendUMo, Ziibi d/b/a Zfunds, Makwa d/b/a Makwa Financial, Niizh d/b/a Brightstar Cash, Midaaswi d/b/a National Small Loan, Naanan d/b/a Bear Claw Lending and Stone Lake Lending, Ningodwaaswi d/b/a Sky Trail Cash, Niizhwaaswi d/b/a Loan at Last, Zhaangaswi d/b/a Nine Torches, Biboon d/b/a Bridge Lending Solutions, Giizis d/b/a Lakeshore Loans, Nigig d/b/a UbiCash, Niibin d/b/a Cash Aisle, Mitig d/b/a MitigCapital, Anong d/b/a Avail Blue, Opichi d/b/a Evergreen Services, Zagime d/b/a Blue River Lending, Waawaatesi d/b/a Quick Help Loans (Greenline), and Ishwaaswi d/b/a Radiant Cash.

2.18    "NCOA" means the United States Postal Service's National Change of Address database.

2.19    "Niibin Released Parties" means those non-tribal individuals and entities involved with or associated in any way with Niibin d/b/a Cash Aisle, an LDF Corporation, including each of their respective and related entities and persons, controlling entities, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, partners, managers, investors, vendors, lenders, servicers, consultants, creditors, beneficiaries, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, executors, representatives, assigns and attorneys.

2.20    "Niizhwaaswi Released Parties" means those non-tribal individuals and entities involved with or associated in any way with Niizhwaaswi d/b/a Loan at Last, an LDF Corporation, and each of their respective and related entities and persons, controlling entities, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, partners, managers, investors, vendors, lenders, servicers,

consultants, creditors, beneficiaries, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, executors, representatives, assigns and attorneys.

2.21   "Ningodwaaswi Released Parties" means those non-tribal individuals and entities involved with or associated in any way with Ningodwaaswi d/b/a Sky Trail Cash, an LDF Corporation, and each of their respective and related entities and persons, controlling entities, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, partners, managers, investors, vendors, lenders, servicers, consultants, creditors, beneficiaries, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, executors, representatives, assigns and attorneys.

2.22   "Non-Tribal Unreleased Parties" means any non-tribal persons, entities, or trusts, whether presently or previously in existence, who were servicers, vendors, lenders, consultants, investors, managers, creditors, or beneficiaries of Niiwin d/b/a Lendgreen, Niizh d/b/a Brightstar Cash, Naanan d/b/a Bear Claw Lending and Stone Lake Lending, Zhaangaswi d/b/a Nine Torches, Midaaswi d/b/a National Small Loan, Biboon d/b/a Bridge Lending Solutions,  Nigig d/b/a UbiCash, Mitig d/b/a MitigCapital, Anong d/b/a Avail Blue, Opichi d/b/a Evergreen Services, Zagime d/b/a Blue River Lending, and Ishwaaswi, LLC d/b/a Radiant Cash (collectively, the "Non-Tribal Unreleased Parties").

2.23   "Outstanding Loans" means all loans with an outstanding balance originated by the LDF Tribal Corporations between July 24, 2016 through October 1, 2023.

2.24   "Parties" means Defendants and Plaintiffs, on their own behalf and on behalf of the Settlement Class.

2.25   "Plaintiffs" means Lori Fitzgerald, Aaron Fitzgerald, Kevin Williams, Jade Singleton, Angela Maville, Daniel Goodman, Gustinna Wadu Jayamalee De Silva, and John Tucker, individually and as representatives of the Settlement Class.

2.26   "Preliminary Approval Order" means an order to be entered by the District Court, providing preliminary approval of the Agreement, as provided for in Section 7.1 below, substantially in the form attached hereto as "Exhibit 2."

2.27   "Pruett Released Parties" means William C. Pruett, Skytrail Servicing Group, LLC and each of their respective and related entities and persons, controlling entities, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, partners, managers, investors, vendors, lenders, servicers, consultants, creditors, beneficiaries, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, executors, assigns and attorneys.

2.28   "Released Claims" means the claims released by this Agreement as set forth in Section IV.

2.29   "Settlement" means the settlement set forth and identified in this Agreement.

2.30   "Settlement Class" means all consumers residing within the United States who executed loan agreements with any LDF Tribal Corporation between July 24, 2016 and October 1, 2023.

2.31   "Settlement Class Member" means a person in the Settlement Class who does not timely submit a valid request for exclusion from the Settlement Class.

2.32   "Skytrail Defendants" means William Cheney Pruett and Skytrail Servicing Group, LLC.

2.33    "Taxes" means all taxes on income earned on the Fund (if any); taxes imposed on payments of the Fund, including withholding taxes; and reasonable expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, interest, penalties, and the reasonable expenses of tax attorneys and accountants).

2.34    "Tribal Officials" means Joseph Wildcat, Sr., John Johnson, George Thompson, Jaime Ann Allen, Jeffrey Bauman, Sr., Louis St. Germaine, Jared Poupart, Paula Poupart, Patricia Zimmerman, Lyle Chapman, Ray Allen, and William Stone, Sr.

2.35    "Tribal Released Parties" means Joseph Wildcat, Sr., Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, John Johnson, George Thompson, Jaime Ann Allen, Jeffrey Bauman, Sr., Louis St. Germaine, Eric Chapman, Sr., Racquel Bell, Gloria Gobb, William Graveen, Sarah Pyawasit, William Stone, Sr., Jared Poupart, Paula Poupart, Patricia Zimmerman, Lyle Chapman, Ray Allen, the Big Valley Band of Pomo Indians, and each of their respective and related entities and persons, controlling entities, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, partners, managers, investors, vendors, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, executors, representatives, assigns and attorneys in their individual and official capacities. The term, "Tribal Released Parties," further includes: (1) the LDF Tribal Corporations and each of their tribal related entities and persons, controlling entities, including but not limited to the Lac du Flambeau Band of Lake Superior Chippewa Indians, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, managers, investors, vendors, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, and attorneys; (2) any unnamed tribal officials, their predecessors, and their successors, all in their official and individual capacities, and any of their

10

trusts, trustees, heirs, insurers, reinsurers, administrators, executors, representatives, assigns and attorneys in their individual and official capacities;  (3) the Big Valley Band of Pomo Indians and each of their related tribal entities and persons, including but not limited to subsidiaries, arms and instrumentalities of the Big Valley Band of Pomo Indians, predecessors-in-interest, successors, and each of their former and current members, directors, officers, managers, investors, vendors, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsurers, administrators, and attorneys; and (4) any Big Valley Band of Pomo Indians unnamed tribal officials, their predecessors, and their successors, all in their official and individual capacities, and any of their trusts, trustees, heirs, assigns, insurers, reinsurers, administrators, executors, representatives, assigns and attorneys. For the avoidance of doubt, the Parties agree that the definition of "Tribal Released Parties" does not cover or encompass any *non-tribal* persons, entities, or trusts, whether presently or previously in existence, who were or are servicers, vendors, lenders, consultants, investors, managers, creditors, or beneficiaries of the Non-Tribal Unreleased Parties (as defined in Section 2.22) and does not release any claims or causes of action against the Non-Tribal Unreleased Parties.

  2.36   "Waawaatesi Released Parties" means those non-tribal  individuals and entities involved with or associated in any way with Waawaatesi d/b/a Quick Help Loans (Greenline), an LDF Corporation, including each of their respective and related entities and persons, controlling entities, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and each of their former and current members, directors, officers, partners, managers, investors, vendors, lenders, servicers, consultants, creditors, beneficiaries, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, executors, representatives, assigns and attorneys.

### III.   **TERMS OF THE SETTLEMENT**

3.1 <u>Class Certification</u>. Defendants dispute that a class would be manageable and further deny that a litigation class could be certified on the claims asserted in the Action. However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendants do not oppose the District Court's certification of the Settlement Class for settlement purposes only. No agreements made by Defendants in connection with this Agreement may be used by Plaintiffs, any Settlement Class Member, or any other person, to establish any of the elements of class certification in this or any other proceeding. Preliminary certification of a Settlement Class for settlement purposes shall not be deemed a concession that certification of a class is appropriate, nor are Defendants estopped or otherwise precluded from challenging class certification in further or other proceedings if this Settlement is not finally approved.

3.2 <u>Definition of the Settlement Class</u>. Solely for the purposes of this Settlement, the Parties agree to preliminary certification of the following Settlement Class:

> All consumers residing within the United States who executed loan agreements with any LDF Tribal Corporation between July 24, 2016 and October 1, 2023.

Excluded from the Settlement Class are Class Counsel and their immediate family members and staff, and all judges and justices of the United States District Court for the Western District of Virginia, the United States Court of Appeals for the Fourth Circuit, and the Supreme Court of the United States, as well as their immediate family members and staff.

Based on a review of their records, Tribal Officials estimate that, under this definition, the Settlement Class consists of approximately 980,000 Settlement Class Members. Certification of the Settlement Class will be sought pursuant to Fed. R. of Civ. P. 23(b)(2) and 23(b)(3).  All Settlement Class Members shall have the right to exclude themselves by way of the opt-out procedure set forth in Section 7.2 of this Agreement and the Preliminary Approval Order.

3.3 <u>Identification of the Settlement Class</u>. Tribal Officials will use reasonable efforts and business records to identify all Settlement Class Members. Within seven (7) days of entry of the Preliminary Approval Order, the Tribal Officials agree to provide the Administrator with a list of names, email addresses, social security numbers (to the extent available), and mailing addresses of the Settlement Class as defined in the Preliminary Approval Order. Defendants' Counsel are also entitled to receive and review this information. The Tribal Officials also shall provide Administrator with loan-level information regarding each class member's loan(s) sufficient to demonstrate the original principal balance of the loan, the amount of any payments the class member made on the loan, and the outstanding balance, Class Counsel shall have seven (7) business days to review and approve the anonymized list of Settlement Class members (without any Personal Identifying Information), the criteria used by the Tribal Officials to identify Settlement Class Members, and the loan-level data, or to notify the Tribal Officials of any objections to its completeness. Class Counsel agree that they shall not be permitted to retain any of the above information after settlement administration has been completed or if the settlement does not receive final approval, and all such information (including summaries, copies, extracts, etc.) shall be subject to return or destruction, subject to Section 3.4(c) of this Agreement. Any recipients of this information will be required to provide assurances that they will protect this data, in a form agreed to by Tribal Officials and any recipients. Likewise, Class Counsel shall not use any Personal Identifying Information for any Settlement Class Member received in the Action or in connection with this Settlement for any other purpose against the Released Parties other than the implementation of this Settlement.

3.4 <u>Settlement Consideration</u>. Pursuant to this Agreement, as full and complete consideration for the releases set forth below, relief will be implemented as follows:

a.    Prospective Relief from Tribal Officials.

i.    Cancellation of Debt.  Within thirty (30) days after the Effective Date, with respect to the Outstanding Loans, the Tribal Officials agree to reduce the balance due on each such loan for all Settlement Class Members to zero on the basis that the debt is disputed. The Tribal Officials estimate that this will result in the cancellation of approximately $1,400,000,000.00 ($1.4 billion) in outstanding debt. Within sixty (60) days after the Effective Date, the Administrator shall forward to each Settlement Class Member with such a loan a letter from an LDF Tribal Corporation, in a form approved by Plaintiffs and the Tribal Officials confirming that no further payments are due on such loan.

ii.    No Sale or Attempt to Enforce Outstanding Loans.  Upon the entry of the Preliminary Approval Order, the Tribal Officials further agree that they will not sell, transfer, or assign for collection any Outstanding Loans of Settlement Class Members.  The Tribal Officials also agree that they will cease all direct or indirect collection activity on Outstanding Loans of Settlement Class Members within three (3) business days after the Preliminary Approval Order is entered. To the extent any amounts are collected,

inadvertently or otherwise, after the entry of the Preliminary Approval Order, the Tribal Officials will remit the funds back to the Settlement Class Member. The Tribal Officials shall certify their compliance with this provision in declarations to be filed with the Court within fourteen (14) days after the Effective Date. Such declarations shall not disclose any information concerning specific Settlement Class Members, but shall detail the method, number, aggregate amount, and timing of refunds made.

iii.   The Outstanding Loans are Disputed Debts.  Plaintiffs and the Tribal Officials agree that the Outstanding Loans of Settlement Class Members are disputed debts. If judgments have been or are hereafter obtained regarding any Outstanding Loans of Settlement Class Members, the Tribal Officials agree to notify the relevant courts that the judgments are satisfied within sixty (60) days after the Effective Date.

iv.   Negative Tradeline Deletion Request.  Within thirty (30) days after the Effective Date, the L.D.F. Business Development Corporation shall send all consumer reporting agencies ("CRAs") to which the LDF Tribal Corporations previously had reported information

regarding loans of Settlement Class Members originated during the class period (as set forth in Section 3.2 above) and request permanent removal of any negative tradelines for Settlement Class Members previously reported to the CRAs in the name of the LDF Tribal Corporations. The form of the letter to CRAs shall be approved by the Tribal Officials and Plaintiffs. A tradeline shall be considered "negative" if it indicates that any payment due was missed.  The form letter to CRAs shall request that all other tradelines reported to the CRAs by the LDF Tribal Corporation for loans of Settlement Class Members be reported as paid in full or discharged, with no negative history. Plaintiffs acknowledge that they understand, on behalf of themselves and the Settlement Class Members, that it may take up to thirty (30) days for this update to be reflected on their credit reports. Plaintiffs acknowledge that they understand, on behalf of themselves and the Settlement Class Members, that the Tribal Officials' responsibilities, as set forth in this Section 3.4(a)(iv), shall constitute the sole requirements imposed on the Tribal Officials under this Agreement with respect to credit reporting. Plaintiffs acknowledge that they understand, on behalf of themselves and the Settlement Class Members,

that the Tribal Officials do not control the actions of the CRAs and, thus, the Tribal Officials may only request that the CRAs make updates as set forth in Section 3.4(a)(iv) and do not guarantee that the CRAs will make such updates.

v.   <u>Personal Identifying Information</u>.   The Tribal Officials have agreed as of the date of the execution of this Agreement, not to sell or transfer for commercial purpose to any third party personal identifying information obtained from Settlement Class Members during the class period; provided, however, that this provision shall not prohibit the LDF Tribal Corporations or any tribal company owned by LDF Holdings, LLC from using such information for commercial purposes in its own lending business.   Likewise, Class Counsel shall not use any Personal Identifying Information for any Settlement Class Member received in the Action or in connection with this Settlement for any other purpose against the Released Parties other than the implementation of this Settlement.

b.   <u>Monetary Consideration</u>.   In addition to the consideration set forth in Section 3.4(a), the Fund (as defined in Section 2.14) shall be funded as follows: (a) payment by the Tribal Officials in the amount of $2,000,000.00; (b) payment by the Skytrail Defendants in the amount of $6,500,000.00; (c) payment by the Niibin

Released Parties in the amount of $2,500,000.00; (d) payment by the Niizhwaaswi Released Parties in the amount of $20,000,000.00; (e) payment by the Waawaatesi Released Parties in the amount of $5,750,000.00; and (f) payment by the Giizis Released Parties in the amount of $600,000.00.  Collectively, the total of the payments to the Fund is $37,350,000.00.

  i. <u>Payments into the Escrow Account</u>. Subject to approval by the District Court, the Fund shall be held in the Escrow Account.  Monies will be placed into the Fund, subject to District Court oversight, by wire payment, as follows:

1. The Tribal Officials shall pay $1,000,000.00 into the Fund within ten (10) days after entry of the Preliminary Approval Order.

2. On or before ten days before the Final Approval Hearing, the: (a) Tribal Officials shall pay the remaining $1,000,000.00 of their Fund obligations into the Fund; (b) Niibin Released Parties and the Niizhwaaswi Released Parties shall pay their respective monetary obligations (as described in Section 3.4(b)(i) above) to the Fund; (c) the Waawaatesi Released Parties shall pay $3,833,333.35; and (d) the Giizis Released Parties shall pay $400,000.00.

3. Within ten (10) days after the Effective Date, the Ningodwaaswi Released Parties shall pay their monetary obligation (as described in Section 3.4(b)(i) to the Fund).

4.      No later than July 1, 2025, the Waawaatesi Released Parties shall pay the remaining $1,916,666.65 of their Fund obligations.

5.      No later than July 1, 2025, the Giizis Released Parties shall pay the remaining $200,000.00 of their Fund obligations.

6.      There shall be no reverter of any monies paid into the Escrow Account.

ii.      <u>Method of Payments from the Escrow Account</u>.   The funds from the Escrow Account shall be distributed as follows: (1) first, to pay any amount of service awards to Plaintiffs approved by the District Court and attorneys' fees and costs awarded by the District Court; (2) second, to pay any other costs, fees, or expenses, including any costs of notice and administration above $1,000,000.00; and (3) third, to pay Cash Awards.   Cash Awards to eligible Settlement Class Members that shall be determined based on the following claim amounts:

<u>Tier 1</u>:  The dollar amount of all payments made by each Settlement Class Member if the original principal amount of their loan was repaid and if the Settlement Class Member resided in Arizona, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, South Dakota, Vermont, and Virginia, at the time the Settlement Class Member took out the loan.

<u>Tier 2</u>:  The dollar amount of payments made above the legal interest limits in that respective state if the original principal amount of their loan was repaid and if the Settlement Class Member resided in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina,

Tennessee, Texas, Washington, Washington D.C., or Wyoming at the time the Settlement Class Member took out the loan.

Tier 3:  Settlement Class Members in Nevada and Utah will not receive cash payments.

For each Settlement Class Member who took out more than one loan during the class period, his or her amount shall be calculated by determining the Claim Amount for each loan and adding them together.

iii.   Distributions to the Settlement Class.  Cash Awards shall be calculated and distributed to the Settlement Class Members as follows:

1.   Administrative Costs Reserve.   Before making the *pro rata* calculation below, and subject to approval of the Parties, the Administrator shall provide an estimate of all costs to be reasonably incurred by the Administrator through the competition of the distribution of the Cash Awards.

2.   *Pro Rata* Calculations.  Each Settlement Class Member who repaid the principal amount borrowed and is in Tier 1 or Tier 2, shall be entitled to a Cash Award based on a *pro rata* calculation. After calculation, Cash Awards shall be rounded down to the nearest cent. Cash Awards will be paid to Tier 1 or Tier 2 Settlement Class Members only if their calculated Cash Award is equal to or greater than two dollars ($2.00).

3.   Payment of Cash Awards. Within sixty (60) days after the Effective Date, the Administrator shall mail to each Tier 1 or

Tier 2 Settlement Class Member a check in the amount of such Tier 1 or Tier 2 Settlement Class Member's Cash Award at the most recent address shown in the Tribal Officials' electronic records or identified by the Administrator using the NCOA or any equivalent database, or to any updated address provided by the Tier 1 or Tier 2 Settlement Class Member to the Administrator. Tier 1 and Tier 2 Settlement Class Members shall be advised that the checks must be deposited or cashed within ninety (90) days of the postmarked date. On the forty-fifth (45th) day following the mailing of all Cash Awards, the Administrator shall email all Tier 1 and Tier 2 Settlement Class Members receiving a Cash Award a reminder to cash the check.  After ninety (90) days from the date of mailing (the "void date"), each Cash Award check shall become void.

4.   Remaining Funds.  After the void date has passed, the Parties and the Administrator shall confer regarding the disposition of uncashed settlement payments.  Specifically, the Parties and the Administrator shall determine whether it is reasonable and feasible to make a second distribution to Tier 1 and Tier 2 Settlement Class Members who cashed their initial checks. If it is determined by the Parties and the Administrator that it is reasonable and feasible, the Settlement Administrator shall distribute the remaining Fund using the same procedure detailed

in Sections 3.4(b)(v)(1)-(2), except that second distribution payments shall not be made in amounts less than ten dollars ($10.00) to those Tier 1 and Tier 2 Settlement Class Members who cashed their first check. If any residual funds remain in the Fund after the second distribution, then such residual funds shall be paid, with the approval of the District Court pursuant to the *cy pres* doctrine, to a mutually agreed recipient as determined by the Parties and approved by the Court. If the Parties do not agree on a *cy pres* recipient(s), the Parties agree to submit the issue to the District Court.

iv.   Review Process and Monthly Reports Regarding Distribution of the Fund. Before distributing payments to Tier 1 and Tier 2 Settlement Class Members, the Administrator shall provide Class Counsel and counsel for Defendants with its calculations of the Cash Awards, and the Tier 1 total amount and Tier 2 total amount, in native electronic form, so that counsel may confirm that the calculations are correct.  If there is a dispute as to the calculations, Class Counsel and counsel for Defendants shall attempt to informally resolve the dispute, and if necessary, may thereafter seek the District Court's assistance in resolving the dispute.  The Administrator will provide monthly reports to the Parties on the distribution of the Fund until such time as the Fund is fully paid to eligible recipients and depleted or distributed as set forth in this Section 3.4(b) and Section 5.2. The

Administrator also shall notify counsel to the Parties in writing when settlement administration has been completed.

c.      Other Consideration.

i.      Dismissal of Appeal. Plaintiffs agree that they will not oppose Defendants filing of additional motions to extend the time to file the record and initial brief in the appeal of this case currently pending before the Fourth Circuit, Appeal Nos. 23-1929 and 23-1930. Plaintiffs agree that the motion to extend may cite to the parties' settlement negotiations and which may request an extension date for some time after the Preliminary Approval Hearing.  If the District Court grants preliminary approval of the Settlement, the Parties agree to stay the Appeal pending Final Approval of the Settlement subject to the approval of the Fourth Circuit Court of Appeals. If the Fourth Circuit Court of Appeals does not stay the Appeal pending the Final Approval of the Settlement, the Parties agree to work in good faith to effectuate the best solution to avoid having to pursue the Appeal simultaneously while seeking Final Approval of the Settlement. If the Court grants final approval of the Settlement, Defendants will dismiss the Appeal as moot.

ii.     <u>Use of Documents from the Action</u>. Tribal Officials further agree that Plaintiffs can use previously produced documents by them in this Action for use in any new litigation or other matters that Class Counsel may bring on behalf of the Settlement Class directly related to the causes of action raised in any new litigation against anyone other than the Released Parties (as defined in Section 4.1(a) below), provided their confidentiality designations are maintained and a comparable protective order governs therein. If a protective order has not yet been entered in a case and Plaintiffs need to use certain documents, Plaintiffs agree to work with the Tribal Officials to file such documents in a redacted version or under seal.

iii.    <u>Discovery in the Action or New Litigation</u>.  If Plaintiffs request discovery from Tribal Officials in connection with the Action or new litigation, then, without waiving claims of privilege, sovereign immunity, or other objections and while retaining the right and ability to seek any appropriate relief to the full extent permitted by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the local rules of the Court, Tribal Officials agree to: (1) accept service of subpoenas through counsel designated in Section 11.15; and (2) not contest the

jurisdiction of the United States District Court for the Western District of Virginia to adjudicate any dispute related to subpoenas in any new litigation. Plaintiffs shall provide Tribal Officials seven (7) days written notice before seeking issuance of a subpoena for records in any new litigation. Plaintiffs agree that they shall not seek discovery from or relating in any way to: (1) the Niibin Released Parties; (2) the Niizhwaaswi Released Parties; (3) the Ningodwaaswi Released Parties; (4) the Pruett Released Parties; (5) the Waawaatesi Released Parties; or (6) the Gizzis Released Parties. Any information and documents produced by the Tribal Officials under this Section (the "Section 3.4(c)(iii) Discovery Information and Documents") shall be provided to counsel for the the Niibin Released Parties, the Niizhwaaswi Released Parties, the Ningodwaaswi Released Parties, the Pruett Released Parties, the Waawaatesi Released Parties and the Giizis Released Parties at the same time they are produced to Plaintiff's Counsel.  Counsel for the Niibin Released Parties, the Niizhwaaswi Released Parties, the Ningodwaaswi Released Parties, the Pruett Released Parties, the Waawaatesi Released Parties and the Giizis Released Parties have the right to demand by written

notice to Plaintiff's Counsel that any Section 3.4(c)(iii) Discovery Information and Documents relating in any way to them be clawed back and returned to the Tribal Officials (the "Clawed Back Section 3.4(c)(iii) Discovery Information and Documents") as if they had never been produced. Plaintiff's Counsel shall promptly return and not use any Clawed Back Section 3.4(c)(iii) Discovery Information and Documents in any way or for any purpose.

iv.   <u>Loan-Level Data in Other Matters</u>.  The Tribal Officials agree that Plaintiffs may use loan-level data from any members of the Class to certify a class in the future against any individuals or entities who are not Released Parties, but may be liable to the Class. Plaintiffs acknowledge that their use of such data will be done subject to appropriate protections for confidentiality as well as in accordance with federal laws regarding personal identifying information, including those set forth in stipulated orders in this action or the new litigation.

3.5 <u>Plaintiffs' Service Awards</u>.  No later than thirty (30) days before the Final Fairness Hearing, Plaintiffs may apply to the District Court for Plaintiffs' service awards of $15,000.00 each, totaling $120,000.00. Plaintiffs' service awards will be paid first by the Administrator from the Fund in the amounts approved by the District Court. The Settlement is not conditioned upon

the District Court's approval of the service awards sought by Plaintiffs. The service awards, if any, shall be paid to Plaintiffs no earlier than the Effective Date and no later than fourteen (14) days after the Effective Date.

      3.6 <u>Attorneys' Fees and Costs</u>.  No later than thirty (30) days before the Final Fairness Hearing, Plaintiffs may apply to the District Court for an award of attorneys' fees and costs not to exceed one-third of the Fund. Such attorneys' fees and costs will be paid from the Fund in an amount not to exceed $12,449,999.99 and as approved by the District Court.  The Settlement is not conditioned upon the District Court's approval of the attorneys' fees and costs sought by Plaintiffs. The award of attorneys' fees and costs, if any, shall be paid to Class Counsel by the Administrator from the Fund no earlier than the Effective Date and no later than fourteen (14) days after the Effective Date.

      3.7 <u>Costs of Notice and Administration</u>. All costs of notice and administration are to be paid from the Fund. Under no circumstances will the Released Parties be responsible for payment of any additional costs of notice and administration beyond or separate from the amount each Released Party is required to contribute to the Fund.

      3.8 <u>Total Payments to the Fund by Defendants</u>.  In no event shall the  Released Parties be required to pay any more than the amounts in Section 3.4, inclusive of (i) the amount of the Fund as monetary consideration to the Settlement Class; (ii) notice and administration costs and expenses; (iii) Class Counsel's attorneys' fees and/or litigation costs; (iv) Plaintiffs' service awards; and (v) any other fees or costs associated with this Settlement. Defendants shall bear the responsibility to send the CAFA notice to the appropriate federal and state governments at its or their own expense.

## IV.   <u>**RELEASES AND DISMISSAL**</u>

4.1   <u>Release</u>.  Upon the Effective Date of this Settlement, the following releases shall be effective:

a.   <u>Released Parties</u>. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally, and forever released the Tribal Released Parties, in their individual and official capacities (as defined in Section 2.31 above), the Niibin Released Parties (as defined in Section 2.19 above), the Niizhwaaswi Released Parties (as defined in Section 2.20 above), the Ningodwaaswi Released Parties (as defined in Section 2.21 above), the Pruett Released Parties (as defined in Section 2.27 above), the Waawaatesi Released Parties (as defined in Section 2.36 above) and the Giizis Released Parties (as defined in Section 2.15 above) of any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown that could have been brought against them by Settlement Class Members related in any

28

way to the loans originated by any LDF Tribal Corporation between July 24, 2016, and October 1, 2023 (the "Releases"). Collectively, the Tribal Released Parties, the Niibin Released Parties, the Niizhwaaswi Released Parties, the Ningodwaaswi Released Parties the Pruett Released Parties, the Waawaatesi Released Parties and the Giizis Released Parties shall be referred to as the "Released Parties" (or "Released Party" individually).

b.      The Releases set forth in the immediately preceding paragraphs constitute a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights, and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law, which provide:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and each Settlement Class Member understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. In connection with such waivers and relinquishment, Plaintiffs and each Settlement Class Member acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally

and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts.

4.2   Scope of Release.   The Releases in Section 4.1 shall apply to Plaintiffs and all Settlement Class Members as of the Effective Date of this Settlement. Any Settlement Class Members who do not wish to be subject to these releases shall have the right to exclude themselves by way of the general opt-out procedures set forth in Section 7.2 of this Agreement and the Preliminary Approval Order. For the avoidance of doubt, neither this Settlement Agreement, nor the definition of Released Parties, or Released Claims shall release any claims or causes of action against the Non-Tribal Unreleased Parties (as defined in Section 2.22 above).

4.3   Dismissal.   Provided that the Final Approval Order is entered, the Parties shall work together to file stipulations or other appropriate documents requesting dismissal of the Action as to the Defendants with prejudice within ten (10) days of the Effective Date. Defendants shall also dismiss their appeal as moot consistent with Section 3.4(c)(i) above.

## V.   NOTICE AND SETTLEMENT ADMINISTRATION

5.1   Settlement Administrator.   Subject to approval by the District Court, the Administrator shall be responsible for administering the Settlement in accordance with this Agreement and applicable orders from the Court. The Administrator may disburse money from the Fund only in accordance with this Agreement and applicable orders of the Court. The actions of the Administrator shall be governed by the terms of this Agreement. The Parties shall provide information reasonably requested by the Administrator pursuant to this Agreement.

5.2   Costs of Notice and Administration.   The costs of notice and administration shall be paid entirely from the Fund.

5.3   <u>Class Notice</u>.   Notice consistent with the due process requirements of Fed. R. Civ. P. 23 shall be provided within thirty (30) days following entry of the Preliminary Approval Order, as follows:

a.      Direct Notice, substantially in the form attached hereto as Exhibit 1 or as modified by the District Court with the consent of all Parties, will be sent via electronic mail (email) to Settlement Class Members within thirty (30) days after the date of entry of the Preliminary Approval Order at the most recent email address shown in the Tribal Officials' electronic records, as maintained in the ordinary course of business, for the loan at issue.

b.      Direct Notice, substantially in the form attached hereto as Exhibit 1 or as modified by the District Court with the consent of all Parties, will be mailed, via first class mail, to Settlement Class Members whose email notice results in a bounce-back email. Mailing addresses will be run once through the NCOA, or any other postal address verification database that the Administrator deems proper, prior to mailing. Returned Direct Notices will be re-mailed if they are returned within 20 days of the postmark date of the Direct Notice and contain a forwarding address. No further e-mailed or mailed notice shall be required except as otherwise expressly provided herein.

c.      The Administrator will establish and maintain a website, using a domain name approved by all Parties, on which will be posted the Direct Notice as well as the Class Action Complaint; this Agreement; any motions and memoranda seeking approval of this Settlement, approval of attorneys' fees and costs, or approval of Plaintiffs' service awards; any orders of the District Court relating to this

Settlement; and any other information the Parties believe necessary and appropriate. The Direct Notice shall direct recipients to the location of the website. The website shall make available a form that allows Settlement Class Members to update their mailing addresses; Settlement Class Members may also contact the Administrator by telephone or mail to update their mailing addresses. Within sixty (60) days after entry of the Preliminary Approval Order, the website shall allow Class Members to determine whether they are eligible for a Cash Award by entering their unique identifier (provided on the Direct Notice or available by calling the Administrator) and last name. The website shall become active within ten (10) days after the District Court's entry of the Preliminary Approval Order and shall remain active until at least thirty (30) days after administration of the Settlement has concluded. The Parties shall have the right to audit the work of the Administrator at any time.

d.      Defendants shall ensure compliance with the notice provisions of the Class Action Fairness Act ("CAFA"), and approval dates will be set in accordance with CAFA.

5.4   Certification to the District Court.  No later than twenty-one (21) days before the Final Fairness Hearing, the Administrator and/or its designees shall file a declaration with the District Court verifying that notice has been provided to the Settlement Class in accordance with this Agreement and the District Court's Preliminary Approval Order.

## VI.   DISPUTE RESOLUTION

6.1   Dispute Resolution.  The Parties agree to meet and confer in good faith regarding any dispute relating to this Settlement or to administration of this Settlement. Any dispute that cannot be resolved by the Parties shall be submitted, not earlier than thirty (30) days after written

notice of the dispute was first given, to the Honorable Jane Marum Roush (Ret.) for a non-binding neutral evaluation.  To initiate the neutral evaluation, the Parties agree to execute The McCammon Group's "Agreement For Neutral Evaluation Services" found at mccammongroup.com/services/early-neutral-evaluation. In the event any Party disagrees with the neutral evaluation, the Party must file a motion in the Action to address the issue within ten (10) days of receiving the neutral evaluation, which shall be reviewed by the Court on a de novo basis with no presumption of correction.

## VII.   PRELIMINARY APPROVAL ORDER AND FINAL FAIRNESS HEARING

7.1   <u>Preliminary Approval Order</u>.   Class Counsel will seek the District Court's approval of this Settlement by filing an appropriate Motion for Preliminary Approval and seeking entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 2.

7.2   <u>Opt-Out/Requests for Exclusion from Settlement</u>.

a.   <u>Requests for Exclusion</u>.  Prospective Settlement Class Members shall be given the opportunity to opt out of the Settlement Class. All requests by prospective Settlement Class Members to be excluded must be in writing and mailed to the Administrator, postmarked no later than forty-five (45) days before the Final Approval Hearing. An appropriate written request for exclusion can be found on the website in the form of Exhibit 4 or must be personally signed by the prospective Settlement Class Member and must include: (i) the name of this Action; (ii) the prospective Settlement Class Member's name, address and telephone number; and (iii) the following statement: "I request to be excluded from the class settlement in this case."  No Settlement Class Member, or any person acting on behalf of or in

concert or participation with that Settlement Class Member, may exclude any other Settlement Class Member from the Settlement Class.

b.      <u>Delivery to Parties/Filing with District Court</u>.   The Administrator shall provide copies of the original requests for exclusion to the Parties by no later than five (5) days after the opt-out deadline. Not later than twenty-one (21) days before the Final Fairness Hearing, the Administrator shall file with the District Court a declaration that lists all the opt-outs received.

c.      <u>Effect</u>.   All prospective Settlement Class Members who timely exclude themselves from the Settlement Class will not be eligible to receive any consideration pursuant to this Agreement and will not be bound by any further orders or judgment in this Action and will preserve their ability to independently pursue any individual claims they may have against the Released Parties. In the event of ambiguity as to whether a Settlement Class Member has requested to be excluded, the Settlement Class Member shall be deemed not to have requested exclusion.

7.3   <u>Objections to Settlement</u>.

a.      <u>Right to Object</u>.   Any Settlement Class Member who has not previously opted out as provided in Section 7.2 may appear at the Final Fairness Hearing to argue that the Agreement should not be approved and/or to oppose the service awards to Plaintiffs. Any Settlement Class Member who wishes to object to the Agreement must file a written objection with the District Court no later than the date specified by subsection (b) of this section. Settlement Class Members who fail to timely file and serve written objections shall be deemed to have waived any

objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to this Agreement.

b.      <u>Deadline</u>.  Any such objection must be filed or submitted by mail to the District Court in a writing postmarked no later than forty-five (45) days before the Final Approval Hearing. Copies of all objections must also be mailed or e-mailed to the Administrator, who shall forward by email immediately upon receipt copies of the objections and all related papers to counsel for the Parties.

c.      <u>Content of Objections</u>.  All objections must include: (i) the name of this Action; (ii) the objector's name, address, telephone number and e-mail address; (iii) your account number with the Settlement Class Member's lender; (iv) a sentence confirming that he or she is a Settlement Class Member; (v) any factual basis and legal grounds for the objection to the Agreement; and (vi) a list of any prior cases in which the objector's counsel have objected to a class settlement. Counsel representing an objecting Settlement Class Member must enter an appearance in this Action.  If an objector wants to appear personally at the Preliminary Approval Hearing and Final Approval Hearing, the objector must state this in his or her objection.

The right to object to the Settlement must be exercised individually by a Settlement Class Member or through his or her attorney, and not as a member of a group, class, or subclass.

**VIII.   <u>FINAL APPROVAL OF SETTLEMENT AND OTHER CONDITIONS</u>**

8.1    <u>Final Approval Order</u>.  On a date to be set by the District Court, Plaintiffs will petition the District Court to enter the Final Approval Order in this Action in the form attached as Exhibit 3. The Final Approval Order that the Parties propose to the District Court will provide:

a.      That the Action, for purposes of this Agreement, may be maintained as a class action on behalf of the Settlement Class;

b.      That Plaintiffs fairly and adequately represent the interests of the Settlement Class;

c.      That Class Counsel fairly and adequately represent Plaintiffs and the Settlement Class;

d.      That the Direct Notice and Internet Notice satisfy the requirements of due process, the Federal Rules of Civil Procedure and any other applicable laws;

e.      That the Agreement is fair, reasonable, and adequate to the Settlement Class and that each Settlement Class Member shall be bound by the Agreement, including the releases contained in Section IV above;

f.      That the Agreement represents a fair resolution of all claims asserted on behalf of the Settlement Class and fully and finally resolves all such claims;

g.      That this Agreement should be, and is, approved;

h.      The amounts of Plaintiffs' service awards;

i.      Confirmation of the opt outs from the Agreement;

j.      Overruling of objections, if any;

k.      Dismissal of the Action, on the merits and with prejudice, of all claims and an injunction prohibiting all Settlement Class Members or their representatives or privies from bringing, joining, or continuing to prosecute against the Released Parties any Released Claims and entering judgment thereon; and

l.      Retention of jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of this Agreement.

### IX.    TERMINATION OF SETTLEMENT

9.1    <u>Non-Approval of Settlement</u>.  If the District Court declines to preliminarily or finally approve, or requires material modification of the Agreement, the Parties shall request that the Action be stayed as to Defendants for a period of sixty (60) days to allow the Parties to meet and confer in good faith with regard to how to address any questions raised and/or changes required by the District Court, including whether to accept the Agreement as modified by the District Court or modify the Agreement for resubmission to the District Court for approval. If within sixty (60) days after entry of the District Court's order denying preliminary or final approval or requiring material modification of the Agreement, the Parties do not agree to accept the Agreement as modified by the District Court or fail to agree to modify the Agreement for resubmission to the District Court for approval, any Party may unilaterally terminate the Agreement by providing written notice of this election to all Parties. In such an event, nothing in this Agreement or filed in connection with seeking settlement approval shall be construed as an admission or concession of any fault, wrongdoing, or liability of any kind, nor are Defendants estopped or otherwise precluded from challenging any of the allegations in further proceedings in the Action or any other action. Moreover, the Parties shall be deemed to have preserved all their rights or defenses as of the date that Plaintiffs initiated the Action and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the Settlement Class. Likewise, in the event that this Agreement is approved without material modification by the District Court, but is later reversed or vacated on appeal, each of the Parties shall have the right to withdraw from this Agreement and return to the *status quo ante* as of the date that Plaintiffs

initiated the Action for all litigation purposes, as if no agreement had been negotiated or entered into, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the Settlement Class.

9.2   Right to Withdraw for Excessive Opt-Outs.   If the number of Settlement Class Members who request exclusion exceeds three percent (3%) of the Settlement Class, any one of the Released Parties may withdraw from this Agreement in his, her, or its sole discretion and the Plaintiffs and such withdrawing Released Party shall be returned to the status quo ante as to such withdrawing Released Party as of the time that Plaintiffs initiated the Action for all litigation purposes, as if no settlement had been negotiated or entered into with such withdrawing Released Party.  If one or more of the Released Parties exercises this right to withdraw from this Agreement, it shall provide Class Counsel with written notice of this election no later than twenty (20) days after the opt-out deadline. The withdrawal of a Released Party from this Settlement pursuant to this section shall not affect the Settlement's validity, enforceability, or terms as to the remaining Parties.

## X.   **TAX TREATMENT OF THE FUND**

10.1   Other than the amounts paid pursuant to Section 3.4(b)(i)(1), the dollar amounts of the Fund held in the Escrow Account shall be deemed to be in the custody of the District Court until the Effective Date. After the Effective Date, the Funds in the Escrow Account shall belong to the beneficiaries of the Settlement, for the payment of attorney's fees and costs, taxes (if any), Plaintiffs' service awards, and funding of Cash Awards to Tier 1 and Tier 2 Settlement Class Members. Such funds shall not escheat and shall remain subject to the jurisdiction of the District Court until such time as the money in the Fund shall be disbursed pursuant to the terms of this Agreement, or further order of the Court.

10.2   The Fund shall be established and maintained in accordance with Treasury Regulation 26 C.F.R. §1.468B-1 et seq. by the Administrator subject to the terms of this Agreement and the Court's preliminary and final approval orders. The Parties agree that the Escrow Account is intended to be maintained as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. The Administrator shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the sole responsibility of the Administrator to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to occur.

  i. For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B promulgated thereunder, the "administrator" shall be the Administrator, who shall be responsible for timely and properly filing, or causing to be filed, all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Fund deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Those tax returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on income earned on the Funds deposited in the Escrow Account (if any) shall be paid

out as provided in this Agreement. Notwithstanding this obligation, the Parties agree that the Fund will not earn income.

ii.     All Taxes shall be paid by the Escrow Agent out of the Settlement Fund.

iii.     Taxes (if any) shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Fund without prior order from the Court, and the Escrow Agent and the Settlement Class Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to eligible Settlement Class Members any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(1)(2)).

iv.     Settlement Class Members shall provide any and all information that the Settlement Class Administrator may reasonably require or that is required by applicable law regarding Taxes and filings and reporting for Taxes, before any distributions are made to Settlement Class Members as contemplated hereby, and the Settlement Class Administrator may, without liability to the Settlement Class Members, delay those distributions unless and until such information is provided in the form required by the Settlement Class Administrator. The Settlement Class Administrator shall take all reasonable steps to minimize the disclosure and submission burden on Settlement Class Members.

## XI.    **MISCELLANEOUS PROVISIONS**

11.1   <u>Further Assurance</u>.  Each of the Parties shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

   11.2 <u>No Admission of Liability</u>.  It is expressly recognized and accepted by Plaintiffs that Defendants and all Released Parties deny any liability and that Defendants are settling solely to avoid the cost and inconvenience of litigation.

   11.3 <u>Evidentiary Preclusion</u>.   Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of the Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim, or of any wrongdoing or liability of Defendants or Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendants or Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. In addition, except for purposes of demonstrating the validity of this Agreement or its terms, neither the fact of, nor any documents relating to, any Defendant's withdrawal from the Agreement, any failure of the District Court to approve the Agreement, and/or objections or interventions may be used as evidence for any purpose whatsoever. Defendants and the Released Parties may file this Agreement in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

   11.4 <u>Consent to Jurisdiction for Enforcement</u>. Defendants agree that for settlement purposes only, and without waiving any objections or arguments in this or any other case, including as to subject-matter jurisdiction and personal jurisdiction, to submit to the jurisdiction of the United States District Court for the Western District of Virginia for the sole purpose of enforcement of the Agreement.

11.5    Entire Agreement.  This Agreement constitutes the entire agreement between and among the parties with respect to the settlement of the Action as to Defendants. This Agreement supersedes all prior negotiations and agreements. The Parties, and each of them, represent and warrant that no other party or any agent or attorney of any of the Parties has made any promise, representation, or warranty whatsoever not contained in this Agreement and the other documents referred to in this Agreement to induce them to execute the same. The Parties, and each of them, represent and warrant that they have not executed this Agreement, or the other documents referred to in this Agreement, in reliance on any promise, representation or warranty not contained in this Agreement and the other documents referred to in this Agreement.

11.6    Confidentiality.  Subject to order of the District Court, any and all drafts of this Agreement and other settlement documents relating to the negotiations between the Parties will remain confidential and will not be disclosed or duplicated except as necessary to obtain preliminary and/or final court approval. This provision will not prohibit the Parties from submitting this Agreement to the District Court to obtain preliminary and/or final approval of the settlement.

11.7    Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Parties.

11.8    Immediate Suspension of Proceedings.  The Parties agree to stay the Action as to Defendants. The Parties shall request that the Action be stayed to allow the Settlement to be completed, maintaining the procedural posture of the case pending final approval.

11.9    Competency of the Parties.   The Parties, and each of them, acknowledge, warrant, represent, and agree that in executing and delivering this Agreement, they do so freely, knowingly, and voluntarily, that they had an opportunity to and did discuss its terms and their

implications with legal counsel of their choice, that they are fully aware of the contents and effect of this Agreement, and that such execution and delivery is not the result of any fraud, duress, mistake, or undue influence whatsoever.

11.10 <u>Authority</u>.   Each Plaintiff and each Defendant warrants that he, she or it is authorized to sign this Agreement.

11.11 <u>Modification</u>.   No modification of or amendment to this Agreement shall be valid unless it is in writing and signed by all Parties hereto or agreed to on the record in the District Court.

11.12 <u>Construction</u>.   Each of the Parties has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the Agreement shall not be construed against any of the Parties. Before declaring any provision of this Agreement invalid, the District Court shall first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Agreement valid and enforceable. After applying this rule of construction and still finding a provision invalid, the District Court shall thereupon interpret the invalid provision to the fullest extent possible to otherwise enforce the invalid provision. The invalidity of any one provision shall not render this Agreement otherwise invalid and unenforceable unless the provision found to be invalid materially affects the terms of this Agreement after application of the rules of construction set forth in this paragraph.

11.13 <u>No Waiver</u>.   The failure of any of the Parties to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any of the

Parties thereafter to enforce that provision or each and every other provision. No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

      11.14 <u>Governing Law</u>.  This Agreement shall be governed by, construed, and enforced in accordance with the laws of the Commonwealth of Virginia, including all matters of construction, validity, performance, and enforcement and without giving effect to the principles of conflict of laws.

      11.15 <u>Notices/Communications</u>.  All requests, demands, claims, and other communications hereunder shall: (a) be in writing; (b) delivered by U.S. mail and electronic mail; (c) be deemed to have been duly given on the date received; and (d) be addressed to the intended recipient as set forth below:

> <u>If to Plaintiffs or the Settlement Class:</u>
>
> Kristi C. Kelly
> KELLY GUZZO PLC
> 3925 Chain Bridge Road, Suite 202
> Fairfax, VA 22030
> Email: kkelly@kellylguzzo.com
>
> <u>If to the Tribal Officials:</u>
>
> Patrick J. McAndrews,
> SPENCER FANE LLP
> 1000 Walnut Street, Suite 1400
> Kansas City, MO 64106
> Email: pmcandrews@spencerfane.com
>
> and
>
> Andrew Adams III
> HOGEN ADAMS PLLC
> 1935 County Road B2 W., Suite 460
> Saint Paul, MN 55113
> Email: aadams@hogenadams.com

<u>If to the Niibin Released Parties, the Niizhwaaswi Released Parties, the Ningodwaaswi Released Parties, the Pruett Released Parties or the Giizis Released Parties</u>

David N. Anthony
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA 23218
Email: david.anthony@troutman.com


<u>If to the Waawaatesi Released Parties</u>

Michael N. Feder
DICKINSON WRIGHT
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV, 89169
Email: mfeder@dickinson-wright.com

and

Blake Sims
HUDSON COOK, LLP
9431 Bradmore Lane, Suite 201
Ooltewah, TN 37363
Email: bsims@hudco.com

Each of the Parties may change the address to which requests, demands, claims, or other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth herein.

11.16. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts and, if so executed, the various counterparts shall be and constitute one instrument for all purposes and shall be binding on each of the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement. For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

11.17. Confirmatory Discovery.  This Settlement was negotiated based on information, data and documents provided to Plaintiffs' Counsel by the Tribal Officials.  This Agreement shall be subject to additional reasonable confirmatory discovery by Plaintiffs of the Tribal Officials, of facts necessary to reasonably confirm the material information provided to Class Counsel during settlement negotiations, including class size and composition, loan amounts, etc. Any information, data and documents produced by the Tribal Officials under this Section (the "Section 11.17 Confirmatory Discovery") shall be provided to counsel for the Niibin Released Parties, the Niizhwaaswi Released Parties, the Ningodwaaswi Released Parties, the Pruett Released Parties, the Waawaatesi Released Parties and the Giizis Released Parties at the same time they are produced to Class Counsel.  Counsel for the Niibin Released Parties, the Niizhwaaswi Released Parties, the Ningodwaaswi Released Parties, the Pruett Released Parties, the Waawaatesi Released Parties and the Giizis Released Parties have the right to demand by written notice to Class Counsel that any Section 11.17 Confirmatory Discovery as to them beyond the facts necessary to reasonably confirm the material information provided to Class Counsel during settlement negotiations, including class size and composition, loan amounts, etc. be clawed back and returned to the Tribal Officials (the "Clawed Back Section 11.17 Confirmatory Discovery") as if they had never been produced. Plaintiff's Counsel shall promptly return and not use any Clawed Back Section 11.17 Confirmatory Discovery in any way or for any purpose. This Section 11.17 Confirmatory Discovery shall be completed prior to moving for preliminary approval.  In the event the information obtained through Section 11.17 Confirmatory Discovery from the Tribal Officials differs materially from the information provided by the Tribal Officials in mediation, the Parties will negotiate, and if necessary mediate, to determine whether the Settlement should be amended. The Parties agree to enter into a separate agreement limiting Plaintiffs' disclosure and use of the

Section 11.17 Confirmatory Discovery.

  11.18  Cooperation.  The Parties, and their respective counsel, agree to cooperate with each other and do all things reasonably necessary to obtain preliminary approval of the Settlement; to obtain final approval of the Settlement; and to otherwise ensure that a fully effective final approval of the Settlement occurs. In the event the District Court disapproves or sets aside this Agreement or any material part hereof for any reason, then the Parties will either jointly agree to accept the Agreement as modified by the Court or engage in negotiations in an effort to jointly agree to modify the Agreement for resubmission to the District Court for approval.

  11.19  Limited Waiver of Claim of Sovereign Immunity.  For the limited purpose only of enforcing this Settlement Agreement by Settlement Class Members, the Tribal Officials make a limited waiver of their claims to sovereign immunity from suit.  Except as expressly set forth herein, nothing contained in this Agreement shall be construed as a waiver of any rights or privileges belonging to the Lac du Flambeau Band of Lake Superior Chippewa Indians, L.D.F. Business Development Corporation, L.D.F. Holdings, LLC, the LDF Tribal Corporations and each of their current, past, and future affiliates, subsidiaries, parents, insurers, and all of the respective directors, officers, general and limited partners, shareholders, managers, investors, vendors, representatives, employees, members, agents, attorneys, accountants, successors, and assigns, including sovereign immunity from judicial process, all of which are otherwise reserved. The Parties acknowledge and agree that the Tribal Officials' waiver of sovereign immunity and consent to jurisdiction set forth in this Agreement does not extend to the benefit of any third-party.

  11.20  Non-payment by the Waawaatesi Released Parties. As established by Section 3.4(b)(i)(4), the Waawaatesi Released Parties shall pay the remaining $1,916,666.65 of their Fund obligations no later than July 1, 2025. In the event of non-payment of any such amount, this

settlement shall be null and void (including Section 3.4(c)(iii)) provided that: (1) Class Counsel provide written notice of the default to the Waawaatesi Released Parties' counsel; and (2) the Waawaatesi Released Parties do not cure the non-payment within fourteen (14) business days. If the Waawaatesi Released Parties do not cure the default within fourteen (14) business days, the Plaintiffs may commence litigation against the Waawaatesi Released Parties, and the amounts paid by the Waawaatesi Released Parties shall be forfeited and not subject to recoupment by the Waawaatesi Released Parties. The Waawaatesi Released Parties would be entitled to a setoff/credit for any prior payments.

11.21   <u>Non-payment by the Giizis Released Parties</u>. As established by Section 3.4(b)(i)(5), the Giizis Released Parties shall pay the remaining $200,000.00 of their Fund obligations no later than July 1, 2025. In the event of non-payment of any such amount, this settlement shall be null and void (including Section 3.4(c)(iii)) provided that: (1) Class Counsel provide written notice of the default to the Giizis Released Parties' counsel; and (2) the Giizis Released Parties do not cure the non-payment within fourteen (14) business days. If the Giizis Released Parties do not cure the default within fourteen (14) business days, the Plaintiffs may commence litigation against the Giizis Released Parties, and the amounts paid by the Giizis Released Parties shall be forfeited and not subject to recoupment by the Giizis Released Parties. The Giizis Released Parties would be entitled to a setoff/credit for any prior payments.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates set forth below.

[SIGNATURES ON FOLLOWING PAGES]

48

Dated: _07/11/2024_____, 2024        By: _____
                                          Lori Fitzgerald
                                          Plaintiff

Dated: _07/11/24_____, 2024         By: _____
                                          Aaron Fitzgerald
                                          Plaintiff

Dated: _____, 2024           By: _____
                                          Kevin Williams
                                          Plaintiff

Dated: _07/10/2024____, 2024         By: _____
                                          Jade Singleton
                                          Plaintiff

Dated: _____, 2024           By: _____
                                          Angela Maville
                                          Plaintiff

Dated: _____, 2024           By: _____
                                          Daniel Goodman
                                          Plaintiff

Dated: _____, 2024           By: _____
                                          Gustinna Wadu Jayamalee De Silva
                                          Plaintiff

Dated: _____, 2024           By: _____
                                          John Tucker
                                          Plaintiff

Dated: _____, 2024          By: _____
                                                        Lori Fitzgerald
                                                        Plaintiff


Dated: _____, 2024          By: _____
                                                        Aaron Fitzgerald
                                                        Plaintiff


Dated: _Jul 12_____, 2024          By: _____
                                             Kevin Williams (Jul 12, 2024 16:26 EDT)
                                                        Kevin Williams
                                                        Plaintiff


Dated: _____, 2024          By: _____
                                                        Jade Singleton
                                                        Plaintiff


Dated: _____, 2024          By: _____
                                                        Angela Maville
                                                        Plaintiff


Dated: _____, 2024          By: _____
                                                        Daniel Goodman
                                                        Plaintiff


Dated: _____, 2024          By: _____
                                                Gustinna Wadu Jayamalee De Silva
                                                        Plaintiff


Dated: _____, 2024          By: _____
                                                        John Tucker
                                                        Plaintiff

Dated: _____, 2024        By: _____
                                                 Lori Fitzgerald
                                                 Plaintiff

Dated: _____, 2024        By: _____
                                                 Aaron Fitzgerald
                                                 Plaintiff

Dated: _____, 2024        By: _____
                                                 Kevin Williams
                                                 Plaintiff

Dated: _____, 2024        By: _____
                                                 Jade Singleton
                                                 Plaintiff

Dated: _July 10_, 2024                 By: _Angela Maville_____
                                                 Angela Maville
                                                 Plaintiff

Dated: _____, 2024        By: _____
                                                 Daniel Goodman
                                                 Plaintiff

Dated: _____, 2024        By: _____
                                                 Gustinna Wadu Jayamalee De Silva
                                                 Plaintiff

Dated: _____, 2024        By: _____
                                                 John Tucker
                                                 Plaintiff

Dated: _____, 2024          By: _____
                                                      Lori Fitzgerald
                                                      Plaintiff


Dated: _____, 2024          By: _____
                                                      Aaron Fitzgerald
                                                      Plaintiff


Dated: _____, 2024          By: _____
                                                      Kevin Williams
                                                      Plaintiff


Dated: _____, 2024          By: _____
                                                      Jade Singleton
                                                      Plaintiff


Dated: _____, 2024          By: _____
                                                      Angela Maville
                                                      Plaintiff


Dated: __July 10_____, 2024          By: _____
                                                      Daniel Goodman
                                                      Plaintiff


Dated: _____, 2024          By: _____
                                                      Gustinna Wadu Jayamalee De Silva
                                                      Plaintiff


Dated: _____, 2024          By: _____
                                                      John Tucker
                                                      Plaintiff

Dated: _____, 2024     By: _____
                                              Lori Fitzgerald
                                              Plaintiff


Dated: _____, 2024     By: _____
                                              Aaron Fitzgerald
                                              Plaintiff


Dated: _____, 2024     By: _____
                                              Kevin Williams
                                              Plaintiff


Dated: _____, 2024     By: _____
                                              Jade Singleton
                                              Plaintiff


Dated: _____, 2024     By: _____
                                              Angela Maville
                                              Plaintiff


Dated: _____, 2024     By: _____
                                              Daniel Goodman
                                              Plaintiff


Dated: __Jul 15_____, 2024     By: _____
                                         Gustinna Wadu Jayamalee De Silva (Jul 15, 2024 04:18 PDT)
                                              Gustinna Wadu Jayamalee De Silva
                                              Plaintiff


Dated: _____, 2024     By: _____
                                              John Tucker
                                              Plaintiff

Dated: _____, 2024        By: _____
                                              Lori Fitzgerald
                                              Plaintiff

Dated: _____, 2024        By: _____
                                              Aaron Fitzgerald
                                              Plaintiff

Dated: _____, 2024        By: _____
                                              Kevin Williams
                                              Plaintiff

Dated: _____, 2024        By: _____
                                              Jade Singleton
                                              Plaintiff

Dated: _____, 2024        By: _____
                                              Angela Maville
                                              Plaintiff

Dated: _____, 2024        By: _____
                                              Daniel Goodman
                                              Plaintiff

Dated: _____, 2024        By: _____
                                              Gustinna Wadu Jayamalee De Silva
                                              Plaintiff

Dated: Jul 12 _____, 2024     By: _____
                                              John Tucker (Jul 12, 2024 14:53 CDT)
                                              John Tucker
                                              Plaintiff

Dated: _July 12_____, 2024        By: _____
                                           Joseph Wildcat, Sr.
                                           Defendant

Dated: _July 12_____, 2024        By: _____
                                           John Johnson Sr.
                                           Defendant

Dated: _____, 2024         By: _____
                                           Jessi Phillips Lorenzo
                                           Defendant

Dated: _July 11_____, 2024        By: _____
                                           George Thompson
                                           Defendant

Dated: _July 12_____, 2024        By: _____
                                           Jaime Ann Allen
                                           Defendant

Dated: _July 16th_____, 2024        By: _____
                                           Jeffrey Bauman, Sr.
                                           Defendant

Dated: _July 12_____, 2024        By: _____
                                           Louis St. Germaine
                                           Defendant

Dated: _July 12_____, 2024        By: _____
                                           Lyle Chapman
                                           Defendant

Dated: _July 12_____, 2024        By: _____
                                           Patricia Zimmerman
                                           Defendant

Dated: _July 12_____, 2024        By: _____
                                           Paula Poupart
                                           Defendant

Dated: 7/12/2024 , 2024          By: _____
                                              Jared Poupart
                                              Defendant

Dated: 7/15/24 , 2024            By: _____
                                              William Stone, Sr.
                                              Defendant

Dated: 7/12/24 , 2024            By: _____
                                              Ray Allen
                                              Defendant

Dated: 7/11/2024 , 2024          By: _____
                                              Nicole Chapman-Reynolds
                                              Defendant

Dated: _____, 2024     By: _____
                                              William C. Pruett
                                              Defendant

                                 SKYTRAIL SERVICING GROUP, LLC

Dated: _____, 2024     By: _____

                                 Title: _____

                                 NIIBIN RELEASED PARTIES

Dated: _____, 2024     By: _____
                                              David N. Anthony
                                              Counsel for the Niibin Released
                                              Parties

                                 NIIZHWAASWI RELEASED PARTIES

51

Dated: _____, 2024        By: _____
                                               Joseph Wildcat, Sr.
                                               Defendant


Dated: _____, 2024        By: _____
                                               John Johnson Sr.
                                               Defendant


Dated: _7|12|2024_____, 2024          By: _____
                                               Jessi Phillips Lorenzo
                                               Defendant


Dated: _____, 2024        By: _____
                                               George Thompson
                                               Defendant


Dated: _____, 2024        By: _____
                                               Jaime Ann Allen
                                               Defendant


Dated: _____, 2024        By: _____
                                               Jeffrey Bauman, Sr.
                                               Defendant


Dated: _____, 2024        By: _____
                                               Louis St. Germaine
                                               Defendant


Dated: _____, 2024        By: _____
                                               Lyle Chapman
                                               Defendant


Dated: _____, 2024        By: _____
                                               Patricia Zimmerman
                                               Defendant


Dated: _____, 2024        By: _____
                                               Paula Poupart
                                               Defendant

Docusign Envelope ID: C864B965-8466-4D98-B9E1-58F9ABD4A6D3

Dated: _____, 2024     By: _____
                                            Jared Poupart
                                            Defendant

Dated: _____, 2024     By: _____
                                            William Stone, Sr.
                                            Defendant

Dated: _____, 2024     By: _____
                                            Ray Allen
                                            Defendant

Dated: _____, 2024     By: _____
                                            Nicole Chapman-Reynolds
                                            Defendant

Dated: 7/12/2024 _____, 2024     By: _____
                                            William C. Pruett
                                            Defendant


SKYTRAIL SERVICING GROUP, LLC

Dated: 7/12/2024 _____, 2024     By: _____

                                    Title: CEO _____


NIIBIN RELEASED PARTIES

Dated: __07|12_____, 2024        By: _____
                                            David N. Anthony
                                            Counsel for the Niibin Released
                                            Parties

NIIZHWAASWI RELEASED PARTIES

Dated: _____07/12_____, 2024

By: _____
     David N. Anthony
     Counsel for the Niizhwaaswi
     Released Parties

NINGODWAASWI RELEASED PARTIES

Dated: _____07/12_____, 2024

By: _____
     David N. Anthony
     Counsel for the Ningodwaaswi
     Released Parties

WAAWAATESI RELEASED PARTIES

Dated: _____, 2024

By: _____
     Blake Sims
     Counsel for the Waawaatesi
     Released Parties

GIIZIS RELEASED PARTIES

Dated: _____07/12_____, 2024

By: _____
     David N. Anthony
     Counsel for the Giizis
     Released Parties

Dated: _____, 2024        By: _____

                                             David N. Anthony
                                             Counsel for the Niizhwaaswi
                                             Released Parties

NINGODWAASWI RELEASED PARTIES

Dated: _____, 2024        By: _____

                                             David N. Anthony
                                             Counsel for the Ningodwaaswi
                                           Released Parties

WAAWAATESI RELEASED PARTIES

Dated: _____July 11_____, 2024        By: _____

                                             Blake Sims
                                             Counsel for the Waawaatesi
                                           Released Parties

GIIZIS RELEASED PARTIES

Dated: _____, 2024        By: _____

                                             David N. Anthony
                                             Counsel for the Giizis
                                           Released Parties

**APPROVED AS TO FORM:**

Docusign Envelope ID: C864B965-8466-4D98-B9E1-58F9ABD4A6D3

**APPROVED AS TO FORM:**

Dated: July 12 _____, 2024

KELLY GUZZO PLC

By: _____
Kristi C. Kelly

*Attorney for Plaintiffs*

Dated: _____, 2024

SPENCER FANE LLP

By: _____
Patrick McAndrews

*Attorney for the LDF Tribal Corporations*

Dated: July 17 _____, 2024

HOGEN ADAMS PLLC

By: _____
Andrew Adams III

*Attorney for the LDF Tribal Officials*

Dated: 07/12 _____, 2024

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: _____
David N. Anthony

*Attorney for the Niibin Released Parties, the Niizhwaaswi Released Parties the Ningodwaaswi Released Parties and the Pruett Defendants*

Dated: _____, 2024

HUDSON COOK LLC

By: _____
Blake Sims

*Attorney for the Waawaatesi Released Parties*

53

Dated: _____, 2024      KELLY GUZZO PLC


By: _____
                    Kristi C. Kelly

*Attorney for Plaintiffs*


Dated: __7-16-2024_____, 2024      SPENCER FANE LLP


By: _____
                    Patrick McAndrews

*Attorney for the LDF Tribal Corporations*

Dated: _____, 2024    HOGEN ADAMS PLLC


By: _____
            Andrew Adams III

*Attorney for the LDF Tribal Officials*


Dated: _____, 2024    TROUTMAN PEPPER HAMILTON
                                     SANDERS LLP


By: _____
            David N. Anthony

*Attorney for the Niibin Released Parties, the*
*Niizhwaaswi Released Parties the*
*Ningodwaaswi Released Parties and the*
*Pruett Defendants*


Dated: _____July 11_____, 2024    HUDSON COOK LLC


By: _____
            Blake Sims

*Attorney for the Waawaatesi Released Parties*

# Exhibit 1

Return Address Box 123
Return City, ST 12345-6789

E1234 0000001 P01 T00001 ************5-DIGIT 12345



John Q. Sample
123 Any Street
Any Town, PA 12345-6789

# If You Obtained a Loan from
# Lendgreen, LendUMo, Zfunds, Makwa Financial, Brightstar Cash, National Small Loan, Bear Claw Lending, Sky Trail Cash, Loan at Last, Nine Torches, Bridge Lending Solutions, Lakeshore Loans, UbiCash, Cash Aisle, MitigCapital, Avail Blue, Evergreen Services, Blue River Lending, Quick Help Loans (Greenline), or Radiant Cash,

## You Could Get Loan Forgiveness and a Cash Payment from a Settlement.

*A federal court ordered this notice.  This is not a solicitation from a lawyer.*

- Read this Notice.  It states your rights and provides you with information regarding a proposed nationwide Class Action settlement ("Settlement") against a number of individuals and entities involved in the making and collecting of online loans originated by the 20 lending entities, listed above, associated with the Lac de Flambeau Band of Lake Superior Chippewa Indians (the "Tribe"), which are referred to here as the LDF Lending Companies.  The settling parties listed below are known here as the Released Parties.

- This Notice is a summary of information about the Settlement and explains your legal rights and options because you are a member of the class of borrowers who will be affected if the Settlement is approved by the Court.  The complete terms of the proposed Settlement are available at the Settlement website, **www.xxxxxxxxxxxx.com**.  You may also contact Class Counsel for further details and advice.

- A lawsuit was brought on behalf of all individuals who obtained a loan from any of the LDF Lending Companies against officials of the Tribe ("Tribal Officials"), entities, and individuals alleged to be involved in the Companies' operations. The lawsuit claimed that the disputed loans were made at annual interest rates greater than what is permitted by state law, or the lenders did not have a license to lend when one was required, allegedly making the loans illegal, deceptive, or unfair under various state and federal laws. The defendants and other Released Parties denied all allegations in this lawsuit.

- As part of the proposed Settlement, all loans issued by the LDF Lending Companies between July 24, 2016, and October 1, 2023, will be cancelled if still unpaid, totaling approximately $1.4 billion in cancelled debt.  Class members who do not exclude themselves from the Settlement will also receive automatic cash payments from a $37,350,000.00 ($37.35 million) fund based on applicable state laws and the amounts paid on their loans, as well as other benefits outlined below.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will remain a member of the Settlement Class and may be eligible for benefits, including debt cancellation.  You will give up rights to ever sue the Released Parties about the legal claims that are in the lawsuits. |
| **EXCLUDE YOURSELF** | You can opt out of the Settlement, and you will not be eligible for any benefits, including any cash payments.  This is the only option that allows you to keep any rights you have to bring, or to become part of, another lawsuit involving the claims being settled.  There is no guarantee that another lawsuit would be successful or would lead to a larger or better recovery than this Settlement. |
| **OBJECT TO THE SETTLEMENT** | If you do not exclude yourself, you may write to the Court about why you don't like the Settlement or why the Court should not approve it. |

## 1.   WHY IS THERE A NOTICE?

This Notice is about a proposed nationwide Settlement that will be considered by the United States District Court in Charlottesville, Virginia (the "Court").  The Settlement must be approved by the Court.

The Plaintiffs' claims are being settled in the United States District Court for the Western District of Virginia in the case styled, *Lori Fitzgerald v. Joseph Wildcat, Sr.*, No. 3:20-cv-00044.

## 2.   WHAT IS THIS LAWSUIT ABOUT?

The claims involved in the Settlement arise out of loans made in the name of the LDF Lending Companies, which are owned by the Tribe.

The Plaintiffs in this case claim that the individuals and entities behind the LDF Lending Companies, including the Tribal Officials and other non-tribal participants, violated federal and various state laws by making and collecting loans with annual interest rates in excess of the amount allowed by state laws.  Plaintiffs sought to prevent the Tribal Officials and others from collecting on these loans and also pursued monetary damages.

The Tribal Officials and other Released Parties vigorously deny any wrongdoing.  They assert that the loans are legal because the rates and terms were authorized under the laws of the Tribe that owns and operates the LDF Lending Companies, and because the borrowers each explicitly agreed that tribal law governed the loan(s).  The Released Parties also defend the consumers' claims on a number of additional grounds, including that the loans' rates and terms were fully disclosed, that the loans benefitted the consumers, that officials of the Tribe are immune from suit, and that consumers agreed to arbitrate any disputes.

Important case documents may be accessed at the Settlement website, www.xxxxxxxxxxxx.com.

## 3.   WHY IS THIS A CLASS ACTION?

In a class action or proceeding, one or more people, called class representatives, bring an action on behalf of people who have similar claims.  All the people who have claims similar to the class representatives are a class or class members, except for those who exclude themselves from the class.  Here, the Plaintiffs have filed a lawsuit on behalf of the Class against officials of the Tribe and other individuals and entities who were involved in the lending enterprise.

## 4.   HOW DO I KNOW IF I AM INCLUDED IN THE SETTLEMENT?

You are a member of the Settlement Class and would be affected by the Settlement if you entered into a loan from any of the LDF Lending Companies between July 24, 2016, and October 1, 2023.

If you received this Notice, we believe you are a member of the Settlement Class, and you will be a Settlement Class Member unless you exclude yourself.

## 5.   WHAT DOES THE SETTLEMENT PROVIDE?

The Released Parties have agreed to provide the following benefits and others more fully described at the Settlement website, www.xxxxxxxxxxxx.com:

**Monetary Consideration:**  A $37,350,000.00 ($37.35 million) fund will be created from contributions by the Released Parties to provide cash payments to Class Members after paying any service awards to the named Plaintiffs, attorneys' fees, and the costs of providing notice to the class members and administering the Settlement.  If the Court approves the Settlement, and if you are entitled to any payment, a check for your portion will be automatically mailed to you.

The amount of your check will depend on what you paid in principal and/or what you paid in interest above your state's legal limits, as well as the amount of money available in the settlement fund. The list of the rates by state used in the Settlement is available at the Settlement website, www.xxxxxxx.com. You will receive only a proportionate share of the recovery (because the total in settlement funds available likely will not be enough to pay everyone for the full amount paid on their loan). You may also go to the website to determine if you would receive a payment, and you can contact the Administrator, using the contact information below, to get an estimate of the amount you likely would receive if the Settlement is approved.

The Settlement Administrator will mail the check to the same address as this Notice, so please update your address if you move.

Payments are based on the laws of your state of residence at the time you took out the covered loan. You will **not** receive a cash payment, but will receive the other benefits, if you:

- Did not make any payments on your loan with the LDF Lending Companies; or
- Lived in Arizona, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, South Dakota, Vermont, and Virginia, and did not make payments above the principal of your loan; or
- Lived in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Washington, Washington D.C., or Wyoming and did not pay interest above your state's legal limits; or
- Lived in Utah or Nevada, which have no interest rate restrictions.

**Debt Cancellation:** Any covered loan that still has an outstanding balance will be cancelled, so you will not owe any more money on this debt. This will result in the cancellation of approximately $1.4 billion in debt across all class members. You will not receive a 1099 for the cancellation of this debt. The Tribal Officials have also agreed not to sell, transfer or assign any of the loans covered by the Settlement to any third party.

**Request to Delete Credit Reporting:** Tribal Officials will request that any tradelines for loans made during the class period be deleted from the various consumer reporting agencies.

**Other Benefits**: Tribal Officials will agree not to sell or transfer for commercial purposes your personal identifying information obtained between July 24, 2016 and October 1, 2023.

## 6. WHAT DO I HAVE TO DO TO RECEIVE THE BENEFITS OF THE SETTLEMENT?

Nothing. If the Court approves the Settlement, the benefits described above will happen automatically. The Settlement Administrator will send an email after Final Approval to update you on what happened at the hearing. You can also check the website for an update or contact the Settlement Administrator or Class Counsel if you have additional questions.

## 7. WHAT AM I GIVING UP TO GET A BENEFIT AND STAY IN THE SETTLEMENT CLASS?

Unless you exclude yourself, you are a member of the Settlement Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Released Parties concerning the claims relating to your covered loan(s). This means that you will not be able to pursue or recover any additional money from the Released Parties beyond the benefits of this Settlement. The Released Parties include: Joseph Wildcat, Sr., Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, John Johnson, George Thompson, Jaime Ann Allen, Jeffrey Bauman, Sr., Louis St. Germaine, Eric Chapman, Sr., Racquel Bell, Gloria Gobb, William Graveen, Sarah Pyawasit, William Stone, Sr., Jared Poupart, Paula Poupart, Patricia Zimmerman, Lyle Chapman, Ray Allen, William Cheney Pruett, Skytrail Servicing Group, LLC, the LDF Lending Companies, the Tribe, the Big Valley Band of Pomo Indians and their tribal officials and related entities, and non-tribal individuals and entities involved with or associated in any way with Niibin d/b/a Cash Aisle, Niizhwaasi d/b/a Loan at Last, Ningodwaaswi d/b/a Sky Trail Cash, Waawaatesi d/b/a Quick Help Loans (Greenline) and Giizis d/b/a Lakeshore Loans.

Staying in the Class also means that any Court orders pertaining to this Settlement will apply to you and legally bind you. The complete Release and list of Released Parties can be found in the Settlement Agreement, which is available on the Settlement website at www.xxxxxxxxxxxx.com.

## 8.   HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

To be excluded from this Settlement, you must send an "Exclusion Request" by mail.  You may download a form to use from the Settlement website or you may send your own letter which must include:

- Your name, address, and telephone number,
- Last four digits of your social security number, or the name of and your account number with the relevant LDF Lending Company,
- A statement that you want to be excluded: "I request to be excluded from the class settlement in this case," and
- Your Signature.

Your Exclusion Request must be **postmarked** no later than Month ##, 2024, to:

Fitzgerald Settlement
c/o Settlement Administrator
P.O. Box ####
City, State #####-####

You may not make an Exclusion Request for any other Settlement Class Member from the Settlement Class.

## 9.   HOW DO I TELL THE COURT THAT I OBJECT TO AND DO NOT LIKE THE SETTLEMENT?

Objecting to the Settlement is different than excluding yourself from the Settlement.

If you are a Settlement Class Member and you do not exclude yourself from the Settlement, you can object to the Settlement if you think the Settlement is not fair, reasonable, or adequate, and that the Court should not approve the Settlement.  You also have the right to appear personally and be heard by the Court.  The Court and Class Counsel will consider your views carefully.

To object, you must send a letter stating your views to each of the parties listed below:

| **COURT** | **SETTLEMENT ADMINISTRATOR** |
|---|---|
| Clerk of the Court | Fitzgerald Settlement |
| United States District Court | c/o Settlement Administrator |
| Western District of Virginia | P.O. Box #### |
| 255 W. Main Street | City, State  #####-#### |
| Charlottesville, VA 22902 | |

You should include the docket number on the front of the envelope and letter you file to the Court: "WDVA USDC Case No. 3:20-cv-00044".

All objections must be writing and include:
- Your name, address, telephone number and e-mail address,
- Your account number (if you know it) with the lender,
- A sentence confirming that you are a Settlement Class Member,
- Factual basis and legal grounds for the objection to the Settlement, and
- A list of any prior cases in which you or your counsel have objected to a class settlement. Counsel representing an objecting Settlement Class Member must enter an appearance in these cases.  If you want to appear personally at the hearings, you must state that in your Objection.

**Objections must be filed with the above Court no later than Month ##, 2024 and served on the above parties so that they are postmarked no later than Month ##, 2024.**

## 10.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold a hearing to decide whether to approve the Settlement.

The Western District of Virginia will hold a final hearing on the fairness of the Settlement on Month ##, 2024 at ##:00 a.m. in the courtroom of Judge Norman K. Moon of the United States District Court for the Western District of Virginia, 255 W. Main Street, Charlottesville, Virginia 22902. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.

If there are objections or comments, the Court will consider them at that time. The hearing may be moved to a different date or time without additional notice. Please check www.xxxxxxxxxxx.com to be kept up to date on the date, time, and location of the hearing.

## 11. DO I HAVE TO COME TO THE HEARING?

No. But you are welcome to come at your own expense. As long as you mailed your written objection on time, the Court will consider it. You may also retain a lawyer to appear on your behalf at your own expense.

## 12. DO I HAVE A LAWYER IN THE CASE?

Yes. The Court has appointed the following law firms as Class Counsel to represent you and all other members of the Settlement Class:

Kristi C. Kelly, Andrew J. Guzzo, Casey Nash, and Matthew G. Rosendahl

Kelly Guzzo, PLC

3925 Chain Bridge Road, Suite 202

Fairfax, VA 22030

These lawyers will not separately charge you for their work on the case. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 13. HOW WILL THE LAWYERS BE PAID?

Class Counsel are permitted to ask the Court for an award of attorneys' fees not to exceed one third of the monetary consideration under the Settlement. The amounts awarded by the Court will reduce the distributions to Class Members.

Class Counsel will ask the Court to approve a $15,000 payment to each of the eight individual Plaintiffs. The Plaintiffs made substantial contributions in the prosecution of these lawsuits for the benefit of the Class. The Court will ultimately decide how much the individual Plaintiffs will be paid.

## 14. HOW DO I GET MORE INFORMATION?

This Notice summarizes the proposed Settlement. You can get a copy of the Settlement Agreement and other relevant case-related documents by visiting www.xxxxxxxxxxx.com, by contacting the Settlement Administrator at ###-###-#### or administrator@xxxxxx.com, or by contacting Class Counsel at ###-###-#### or classcounsel@xxxxxxxx.com.

**PLEASE DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT, THE JUDGES, THE DEFENDANTS OR THE DEFENDANTS' COUNSEL. THEY ARE NOT PERMITTED TO ANSWER YOUR QUESTIONS.**

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| LORI FITZGERALD, *et al.*, *individually and on behalf of others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH WILDCAT SR., *et al.* <br><br> Defendants. | Case No. 3:20-cv-00044 (NKM) |

**[PROPOSED] ORDER**
**GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Lori Fitzgerald, Aaron Fitzgerald, Kevin Williams, Jade Singleton, Angela Maville, Daniel Goodman, Gustinna De Silva, and John Tucker (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, have moved the Court for preliminary approval of a proposed class action settlement with Defendants Joseph Wildcat, Sr., Nicole Chapman-Reynolds, Jessi Phillips Lorenzo, John Johnson, George Thompson, Jaime Ann Allen, Jeffrey Bauman, Sr., Louis St. Germaine, Jared Poupart, Paula Poupart, Patricia Zimmerman, Lyle Chapman, Ray Allen, William Stone, Sr., William Cheney Pruett, and Skytrail Servicing Group, LLC (collectively, "Defendants"; and Defendants and Plaintiffs, together, the "Parties"). The terms and conditions of the settlement are set forth in the Stipulation and Agreement of Settlement filed with the Court on _____, 2024 ("Settlement Agreement") as an exhibit to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion").[1]

---

[1] All capitalized terms used in this Order have the meanings set forth in the Settlement Agreement.

Upon review and consideration of Plaintiffs' Preliminary Approval Motion, the Settlement Agreement, and the exhibits attached to the foregoing, **IT IS HEREBY ORDERED** as follows:

1.     This Preliminary Approval Order incorporates the Settlement Agreement, and the capitalized terms used herein, unless stated otherwise, shall have the meanings and/or definitions given to them in the Settlement Agreement, as if fully set forth in this Order.

2.     The Settlement, on the terms and conditions stated in the Settlement Agreement, is preliminarily approved by this Court as being fair, reasonable and adequate, free of collusion or indicia of unfairness, and within the range of possible final judicial approval. In making this determination, the Court has considered the current posture of this litigation, the risks and benefits to the Parties involved in both settlement of these claims and the continuation of the litigation, and the fact that Defendants deny liability and have indicated their intent to defend the litigation vigorously.  The Court further finds that the settlement between Plaintiffs and Defendants was arrived at through arm's-length negotiations and exchange of information by experienced counsel.

## CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

3.     For purposes of the Settlement, and conditioned upon the Settlement receiving Final Approval following the Final Fairness Hearing, this Court hereby conditionally certifies a Class for settlement purposes only (the "Settlement Class"), defined as follows and subject to the stated exclusions below:

> All consumers residing within the United States who executed loan agreements with any LDF Tribal Corporation between July 24, 2016 and October 1, 2023.

4. The Court preliminarily finds that, for settlement purposes and conditioned upon the entry of this Order, the Final Approval Order, and the occurrence of the Effective Date, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure

have been satisfied.  The Court finds, in the specific context of this Settlement, that the following requirements are met:

(a) the number of Settlement Class Members is so numerous that joinder is impracticable;

(b) there are questions of law and fact common to the Settlement Class Members;

(c) Plaintiffs' claims are typical of the claims of the Settlement Class Members;

(d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so, and Plaintiffs have retained experienced counsel to represent them;

(e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and

(f) a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23 and is superior to alternative means of resolving the claims and disputes at issue in this Action. The Court also concludes that, because this Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a class action involving the issues in this case.

5.     The Court finds that the Settlement falls within the range of reasonableness because it provides for meaningful remediation relative to the merits of Plaintiffs' claims and Defendants' defenses in that Settlement Class Members will obtain substantial injunctive relief cancelling over $1 billion in outstanding debt, in addition to automatic payments from a common fund based on Class Members' states of residence and payments made on their disputed loans.  The Settlement also has key indicia of fairness in that significant discovery and litigation had been undertaken by the Parties and settlement negotiations occurred at arm's length, including multiple rounds of settlement discussions with a neutral mediator over the course of many months.

3

6.      For purposes of Settlement only, the Court finds and determines that Plaintiffs will fairly and adequately represent the interests of the Settlement Class in enforcing the rights of the Settlement Class in this Action, and thus hereby appoints Lori Fitzgerald, Aaron Fitzgerald, Kevin Williams, Jade Singleton, Angela Maville, Daniel Goodman, Gustinna De Silva, and John Tucker as representatives of the conditionally certified Settlement Class ("Class Representatives").

7.      For purposes of the Settlement only, the Court appoints as Class Counsel the law firm of Kelly Guzzo, PLC.  The Court finds that the attorneys of Kelly Guzzo, PLC are competent and capable of exercising their responsibilities as Class Counsel and have fairly and adequately represented the interests of the Settlement Class.

## CLASS NOTICE AND SETTLEMENT ADMINISTRATION

8.      Since the Settlement Agreement is within the range of reasonableness and possible final approval, notice shall be provided to the Settlement Class under the Settlement Agreement. The Court approves, as to form and content, the Class Notice submitted with Plaintiffs' Preliminary Approval Motion, attached as Exhibit 1 to the Settlement Agreement.

9.      The Court appoints _____ as the Settlement Administrator.  The Settlement Administrator shall abide by the terms and conditions of the Settlement Agreement that pertain to the Settlement Administrator.  As further set forth in the Settlement Agreement, the Settlement Administrator shall be responsible for, without limitation: (a) disseminating Notice to the Settlement Class; (b) handling returned e-mail notice and mail delivered to members of the Settlement Class; (c) fielding inquiries about the Settlement Agreement;  (d) receiving and maintaining Settlement Class member correspondence regarding requests for exclusion; (e) establishing a Settlement website with relevant case documents to which members of the Settlement Class may refer for information about the Settlement; (f) establishing a toll-free telephone line to receive calls from members of the Settlement Class; (g) assisting Defendants

with providing the notices required by the Class Action Fairness Act; and (h) carrying out such other responsibilities as are provided for in the Settlement Agreement or agreed to by the Parties.

10. The Court directs the Settlement Administrator, in accordance with the Settlement Agreement, to cause a copy of the Class Notice to be sent in substantially the same form attached to Plaintiffs' Preliminary Approval Motion to the Settlement Class by a combination of e-mail notice to verified e-mail addresses and/or by U.S. mail, postage prepaid to each Settlement Class Member identified on the Class List. The Class Administrator shall use best practices to identify current Class Members, ensure that notice is received by Class Members, and will act in accordance with the process stated within the Settlement Agreement.

11. The Court further directs the Settlement Administrator to establish the Settlement Website and secure a toll-free telephone number as set forth in the Settlement Agreement, which shall be active within ten (10) days after the Court enters this Preliminary Approval Order and shall remain active until at least thirty (30) days after administration of the Settlement has concluded.

12. No later than thirty (30) days before the Final Fairness Hearing, the Settlement Administrator will file a declaration with the Court verifying that notice has been provided to the Settlement Class in accordance with the Settlement Agreement and this Order.

13. The Court finds that the Class Notice accompanying Plaintiffs' Motion for Preliminary Approval, specifically, and more generally, the notice program described above and set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and satisfies due process and Federal Rule of Civil Procedure 23. The Court finds that the language of the proposed Class Notice is plain and easy to understand and provides neutral and objective information about the nature of the Settlement. Furthermore, the Court finds that the notice program complies with Federal Rule of Civil Procedure 23(e) as it is a reasonable

manner of providing notice to those Settlement Class Members who would be bound by the settlement of the pendency of this Action and their right to participate in, object to, or exclude themselves from the Settlement.  The Court also finds that the Notice Program complies with Rule 23(c) as it provides for individual notice to all Settlement Class Members and is thus the best notice practicable under the circumstances.  In addition, Settlement Class Members will have access to the Settlement Website for purposes of obtaining additional information about the Settlement.

      14.     Class Notice and Settlement administration costs as set forth in the Settlement Agreement shall be paid from the Settlement Fund.

### REQUESTS FOR EXCLUSION

      15.     Settlement Class Members may elect to exclude themselves or "opt-out" from the Settlement Agreement by following the procedures set forth in the Settlement Agreement for doing so.  In the event a Settlement Class Member wishes to be excluded from the Settlement and not to be bound by the Settlement Agreement, that person must, prior to the Opt-Out Deadline, advise the Class Administrator in writing of that intent.   In the written request for exclusion, the Settlement Class Member must state his or her full name, address, telephone number, email address, and account number with any LDF Tribal Corporation, if known.  Further, the Settlement Class Member must include a statement in the written request that he or she wishes to be excluded from the Settlement Agreement in the Action.  The request must also be signed by the Settlement Class Member.

      16.     Any request for exclusion or opt out must be postmarked on or before the Opt-Out Deadline of _____ [*45 days prior to the Final Fairness Hearing*].   The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether

a request for exclusion has been timely submitted.  The Court retains jurisdiction to resolve any disputed exclusion requests.

17.     A Settlement Class Member who opts out of the Settlement may opt back in so long as the opt-in request is received prior to the Opt-Out Deadline.

18.     No one shall be permitted to exercise any exclusion rights on behalf of any other person, whether as an agent or representative of another or otherwise, except upon proof of a legal power of attorney, conservatorship, trusteeship, or other legal authorization, and no one may exclude other persons within the Settlement Class as a group, class, or in the aggregate.

19.     Any member of the Settlement Class who submits a valid and timely request for exclusion will not be a Settlement Class Member, shall not be bound by the terms of the Settlement Agreement, and shall relinquish their rights to benefits with respect to the Settlement Agreement, should it be finally approved, and may not file an objection to the Settlement Agreement or to any application for reimbursement of attorneys' fees and costs or Service Awards or otherwise intervene in the  Action.

20.     Any Settlement Class Member who does not submit a valid and timely request for exclusion shall be bound by all the terms and provisions of the Settlement Agreement, including any Release set forth therein, the Final Approval Order, and the Final Judgment, whether or not such Settlement Class Member objected to the settlement.

21.     The Settlement Administrator shall provide copies of any requests for exclusion to the Parties as provided in the Settlement Agreement.

## OBJECTIONS

22.     Any Settlement Class Member who does not opt out of the Settlement and intends to object to any aspect of the proposed Settlement, request for reimbursement of attorneys' fees and costs, or Service Awards, must file a written objection signed by the Settlement Class Member

with the Court by the Objection Deadline of ▮▮▮▮▮▮ [*45 days prior to Final Fairness Hearing*].  For an objection to be considered by the Court, the objection must also set forth and include the following:

    a.  the name of this Action;

    b.  the Settlement Class Member's name, address, email address, and telephone number;

    c.  the account number with any LDF Tribal Corporation;

    d.  a sentence confirming that he or she is a Settlement Class Member;

    e.  the reasons for his or her objection, accompanied by any legal or factual support for the objection;

    f.  the name of counsel for the Objector (if any);

    g.  information about other objections the Objector or his or her counsel have made in other class action cases; and

    h.  whether he or she intends to appear at the Final Fairness Hearing on his or her own behalf or through counsel.

23.    A Settlement Class Member may not both opt out of the Settlement and object.  If a Settlement Class Member submits both a request for exclusion and objection, the request for exclusion will control.

24.    No member of the Settlement Class or counsel retained by such a member of the Settlement Class shall be entitled to be heard at the Final Approval Hearing unless the Objector or his or her attorneys who intend to make an appearance at the Final Approval Hearing state their intention to appear in the objection filed with the Court in accordance with the preceding paragraphs.  Counsel for any such member of the Settlement Class must enter his or her appearance with the Court by the Objection Deadline.

25.    Any Settlement Class Member who fails to file and serve a valid and timely written objection in the manner specified above shall be deemed to have waived all objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement,

including but not limited to the benefits to Settlement Class Members, the Service Awards, or the Final Judgment.

## FINAL FAIRNESS HEARING

26.     A Final Fairness Hearing shall be held on [DATE] at [TIME] [*no earlier than 120 days from the date of Preliminary Approval Order*] before this Court at [LOCATION].  During the Final Fairness Hearing, the Court will consider and determine: (1) whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate; (2) whether any objections to the Settlement Agreement should be overruled; (3) whether Class Counsel's requested for Service Awards to the Class Representatives should be approved; and (4) whether a judgment finally approving the Settlement Agreement should be entered.  The date of the Final Fairness Hearing may be continued by the Court from time to time without the necessity of further notice to the Settlement Class.

27.     Any Settlement Class Member may enter an appearance in this Action at his or her own expense, individually or through counsel.  However, if a Settlement Class Member wishes to object to the Settlement at the Final Fairness Hearing (either personally or through counsel), the Settlement Class Member must submit a written objection as set forth in the Settlement Agreement and this Order.  All Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

28.     The motion for final approval of the Settlement Agreement and any papers the Parties wish to submit in support of final approval of the Settlement Agreement, shall be filed with the Court no later than thirty (30) calendar days prior to the Final Fairness Hearing.  Any response to any Objection to the Settlement Agreement shall be filed with the Court no later than fourteen (14) calendar days prior to the Final Fairness Hearing.

## STAY OF LITIGATION

29.     Pending the Final Fairness Hearing, all proceedings in this Action are stayed and suspended until further order of this Court, except such actions as may be necessary to carry out or enforce the terms and conditions of the Settlement Agreement and this Preliminary Approval Order.

## OTHER PROVISIONS

30.     For the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings relating to the interpretation, administration, implementation, effectuation, and enforcement of this Settlement.

31.     Any deadlines set in this Preliminary Approval Order may be extended by order of the Court, for good cause shown, without further notice to the Settlement Class, except that notice of any such extensions shall be posted to the Settlement Website. Members of the Settlement Class should check the Settlement Website regularly for updates, changes, and/or further details regarding extensions of these deadlines.

32.     Within three (3) business days of the entry of this Order, the Tribal Officials are ordered to carry out their obligations under Section 3.4(a)(ii) of the Settlement Agreement, including, that the Tribal Officials may and will not sell, transfer, or assign for collection any Outstanding Loans and that they must cease all direct or indirect collection activity on Outstanding Loans. To the extent any amounts are collected, inadvertently or otherwise, on the Outstanding Loans after the entry of this Order, the Tribal Officials will remit the funds back to the respective Settlement Class Member. The Tribal Officials must certify their compliance with Section 3.4(a)(ii) of the Settlement Agreement in declarations to be filed by the Tribal Officials with the Court within fourteen (14) days after the Effective Date.

10

33.     The Parties hereby authorized to use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement or to the form or content of the Class Notice that the Parties jointly agree are reasonable or necessary, and which do not limit the rights of Settlement Class Members under the Settlement Agreement.

34.     In the event that the proposed Settlement is not finally approved by the Court, is not upheld on appeal, becomes null and void or is otherwise terminated for any reason, this Preliminary Approval Order and all orders entered in connection with the Settlement Agreement shall become null and void, shall be of no further force and effect. The Settlement Class shall be decertified, and the Settlement Agreement and all negotiations, proceedings, documents prepared, and statements made in connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law.  The Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Settlement Agreement had never been executed.

**IT IS SO ORDERED.**

Dated: _____        _____
                              Hon. Norman K. Moon
                              United States District Judge

Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | |
|---|---|
| LORI FITZGERALD, *et al.*, *individually and on behalf of others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH WILDCAT SR., *et al.* <br><br> Defendants. | Case No. 3:20-cv-00044 (NKM) |

## [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT

This matter comes before the Court on the Motion for Final Approval of the Settlement and Final Certification of the Settlement Class ("Final Approval Motion") filed by Plaintiffs Lori Fitzgerald, Aaron Fitzgerald, Kevin Williams, Jade Singleton, Angela Maville, Daniel Goodman, Gustinna De Silva, and John Tucker (collectively, "Plaintiffs"), on behalf of themselves and the preliminarily certified Settlement Class.

The Court has reviewed the papers filed in support of the Final Approval Motion, the Settlement Agreement filed with Plaintiff's Preliminary Approval Motion, the memoranda and arguments submitted on behalf of the Settlement Class, and all supporting exhibits and declarations thereto, as well as the Court's Preliminary Approval Order.  The Court held a Final Fairness Hearing on _____, at which time the Parties and other interested persons were given an opportunity to be heard in support of and in opposition to the proposed settlement. Based on the papers filed with the Court and the presentations made at the Final Fairness Hearing, the Court finds that the Settlement Agreement is fair, reasonable, and adequate.

Accordingly, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.      This Final Approval Order incorporates and makes a part this Order the Settlement Agreement and the Preliminary Approval Order, as if fully set forth herein.  Unless otherwise provided, the capitalized terms used in this Order shall have the same meanings and/or definitions given to them in the Preliminary Approval Order and the Settlement Agreement.

2.      This Court has jurisdiction over matters relating to the Settlement, including, without limitation, the administration, interpretation, effectuation, and enforcement of the Settlement, the Settlement Agreement, and this Final Order and Judgment.

## CERTIFICATION OF THE SETTLEMENT CLASS AND APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

3.      In the Preliminary Approval Order, this Court previously certified preliminarily, for settlement purposes only, a Settlement Class defined as follows:

> All consumers residing within the United States who executed loan agreements with any LDF Tribal Corporation between July 24, 2016 and October 1, 2023.

4.      Certification of the Settlement Class is hereby reaffirmed as the final Settlement Class pursuant to Federal Rule of Civil Procedure 23.  For the reasons set forth in the Preliminary Approval Order, the Court finds, on the record before it, that the Action, for purposes of this Settlement, may be maintained as a class action.

5.      In the Preliminary Approval Order, this Court previously appointed the above-identified Plaintiffs Aaron Fitzgerald, Kevin Williams, Jade Singleton, Angela Maville, Daniel Goodman, Gustinna De Silva, and John Tucker as Class Representatives and hereby reaffirms that appointment, finding, on the record before it, that the Class Representatives have and continue to adequately represent the Settlement Class.

6.      In the Preliminary Approval Order, this Court previously appointed the law firm of Kelly Guzzo PLC as Class Counsel for settlement purposes only and hereby reaffirms that appointment, finding on the record before it that Class Counsel have and continue to adequately and fairly represent the Settlement Class.

**CLASS NOTICE**

7.      The record shows, and the Court finds, that Class Notice has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order.  The Court finds that such Notice constitutes:  (i) the best notice practicable to the Settlement Class under the circumstances; (ii) notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Action and the terms of the Settlement Agreement, their rights to exclude themselves from the Settlement or to object to any part of the Settlement, their rights to appear at the Final Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Order and Final Judgment, whether favorable or unfavorable, on all persons who do not exclude themselves from the Settlement Class; (iii) due, adequate, and sufficient notice to all persons or entities entitled to received notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1), and any other applicable law.

8.      Due and adequate notice of the proceedings having been given to the Settlement Class and a full opportunity having been offered to the Settlement Class Members to participate in the Final Fairness Hearing, it is hereby determined that all Settlement Class Members except those who timely and properly opted out, as identified in Exhibit A to this Order, are bound by this Order and the Final Judgment.  No Settlement Class Members, other than those listed in

Exhibit A to this Order, are excluded from the Settlement Class, from the terms of the Settlement Agreement, or from the effect of this Final Approval Order and Final Judgment.

## FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

9.      Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby finally approves in all respects the Settlement as set forth in the Settlement Agreement and finds that the Settlement, the Settlement Agreement, the benefits to the Settlement Class Members, and all other parts of the Settlement are, in all respects, fair, reasonable, and adequate, and in the best interest of the Settlement Class, within a range that responsible and experienced attorneys could accept considering all relevant risks and factors and the relative merits of Plaintiffs' claims and any defenses of the Defendants, and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Class Action Fairness Act. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement, with each Settlement Class Member bound by the Settlement Agreement, including any releases therein.

10.      Specifically, the Court finds that the Settlement is fair, reasonable, and adequate given the following factors, among others:

   a.      This Action was complex and time consuming and would have continued to be so through summary judgment and/or trial if it had not settled;

   b.      Defendants have denied liability and have indicated their intent to continue to defend the litigation vigorously had it not settled, including through their pending appeal before the Fourth Circuit Court of Appeals;

   c.      Class Counsel had a well-informed appreciation of the strengths and weaknesses of the Action while negotiating the Settlement;

d.      The monetary and injunctive relief provided for by the Settlement is well within the range of reasonableness in light of the best possible recovery and the risks the Parties would have faced if the case had continued to verdicts as to jurisdiction, liability, and damages, and includes approximately $1.4 billion in cancelled debt and automatic cash payments to Class Members who qualify based on the amounts they paid and the applicable state law;

e.      The Settlement was the result of arm's-length good faith negotiations and exchange of information by experienced counsel, while also involving a neutral mediator; and,

f.      The reaction of the Class to the Settlement has been positive, with only _____ potential class members timely requesting to opt out and _____ objections to the Settlement.

11.     Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

**MONETARY CONSIDERATION AND INJUNCTIVE RELIEF**

12.     The Court approves the Parties' plan to distribute the Cash Awards provided for by the Settlement Agreement to the Settlement Class Members as set forth in the Settlement Agreement.

13.     The Court also approves the agreements reached with respect to injunctive relief, as set forth in the Settlement Agreement, including that: (1) the Tribal Officials shall reduce the balance of each Outstanding Loan to zero on the basis that the debt is disputed and shall inform effected Class Members that no further payments are due on their loans; (2) the Tribal Officials will not sell, transfer, or assign for collection any Outstanding Loans and will cease all direct or indirect collection activity on Outstanding Loans; and (3) the L.D.F. Business Development Corporation shall send to all consumer reporting agencies to which the LDF Tribal Corporations

previously had reported information regarding loans originated during the class period and request permanent removal of any negative tradelines previously reported to the CRAs in the name of the LDF Tribal Corporations.

14.     The relief provided by the Settlement is significant.   All Settlement Class Members who have made qualifying payments on the loans in question (as described in Section 3.4(b)(ii) of the Settlement Agreement) will receive cash payments.   Those with Outstanding Loans in the class period will also have those loans completely reduced and will no longer owe any payments on the loans, resulting in the cancellation of approximately $1.4 billion of loans. The Tribal Officials have also agreed not to sell or attempt to collect any Outstanding Loans issued to the Settlement Class during the class period and to request deletion of negative tradelines in the Class Members' credit reports.   These additional benefits to Class Members have significant value.   Further, Class members will receive these benefits without having to prove any harm or take any affirmative actions.   In other words, Class Members will not be required to submit any forms or claims for payment or other benefits.

**DISMISSAL OF CLAIMS AND RELEASES**

15.     This Action and all Released Claims of Settlement Class Members are hereby DISMISSED WITH PREJUDICE and, except as otherwise provided herein or in the Settlement Agreement, without costs to any Party.

16.     Pursuant to the Settlement Agreement, as of the Effective Date of this Settlement, the Releases set forth in the Settlement Agreement shall have full force and effect against all Settlement Class Members.

**AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**

17.     At the conclusion of a successful class action, class counsel may apply to a court for an award of attorneys' fees.  *See* Fed. R. Civ. P. 23(h).  Pursuant to the Settlement Agreement, Class Counsel may request reasonable attorneys' fees and reimbursement of costs to be paid from the Fund, provided that the total amount requested does not exceed one-third of the Fund provided to Settlement Class Members.

18.     Because this is a common fund case, it is appropriate to employ a percentage of the fund method for calculating a proper fee award.  When a representative party confers a substantial benefit upon a class, counsel is entitled to attorneys' fees based on the benefit obtained.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *Blackburn v. A.C. Israel Enters.*, No. 3:22-cv-146-DJN, ECF No. 228 (E.D. Va. Mar. 7, 2024); *Milbourne v. JRK Residential America, LLC*, No. 3:12-cv-861-REP, ECF No. 324 (ED. Va. Jan. 4, 2017); *Mayfield v. Memberstrust Credit Union*, No. 3:07-cv-506-REP, ECF No. 22 (E.D. Va. Nov. 7, 2008); *Conley v. First Tennessee*, No. 1:10-cv-1247-JFA, ECF No. 37 (E.D. Va. Aug. 18, 2011); *Lengrand v. Wellpoint*, No. 3:11-cv-333-HEH, ECF No. 42 (E.D. Va. Nov. 13, 2012).

19.     No class member or Government entity has objected to Class Counsel's request.

20.     The Court, having reviewed the declarations, exhibits, and points and authorities submitted in support of and opposition to Class Counsel's request for attorneys' fees and reimbursement of costs, approves the award of attorneys' fees and costs to Class Counsel in the amount of _____ ("Fee and Expense Award").  The Court finds that the Fee and Expense Award is reasonable and appropriate under all the circumstances presented.

21.   The Settlement Agreement also provides that Plaintiffs may request a Service Award to be paid from the Fund, provided such awards do not exceed $15,000 for each Class Representative.

22.   Courts routinely grant service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *See, e.g.*, *Manuel v. Wells Fargo Bank*, No. 3:14-cv-238-DJN, 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (explaining that service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general").   Here, the Court finds that the requested Service Awards are reasonable and within the range of awards granted by courts in this and other circuits. *See, e.g.*, *id.* (approving $10,000 award); *Blackburn*, No. 3:22-cv-146, ECF No. 228 (E.D. Va. Mar. 7, 2024) (approving $15,000 awards); *Lemus v. H & R Block Enters. LLC*, No. 09-cv-3179, 2012 WL 3638550, at *5-6 (N.D. Cal. Aug. 22, 2012) (same).   Moreover, these Service Awards are justified by the time and effort expended by the Class Representatives on behalf of the Settlement Class Members and the risk each assumed in bringing this action.   Accordingly, the Court finds that each of the Class Representatives shall be awarded $15,000 for their efforts, to be paid from the Fund.

23.   The Court further notes that the percentage of requested attorneys' fees and reimbursement of costs and the dollar amount of the Service Awards was included in the notice materials disseminated to the Settlement Class.

24.   The award of attorneys' fees and costs and Service Awards shall be paid by the Defendants from the Fund, as set forth in the Settlement Agreement.

25.     The Parties' distribution plan of payments to the Tier 1 and Tier 2 Class Members (as described in Section 3.4(b)(iii) of the Settlement Agreement) in *pro rata* allocations of the Settlement Fund, following the above deductions, is approved for implementation.   Should funds remain after all distributions are made and the check negotiation period provided for in the Settlement Agreement has passed, then such residual funds shall be paid, after approval from the Court pursuant to the *cy pres* doctrine, to a mutually agreeable recipient as determined by the Parties. If the Parties do not agree on a *cy pres* recipient, the Parties must submit the issue to the Court.

### OTHER PROVISIONS

26.     The Court has jurisdiction to enter this Final Order and Final Judgment.  Without in any way affecting the finality of this Final Order or the Final Judgment, and by consent of the Parties, the Court expressly retains exclusive and continuing jurisdiction over the Settlement and the Settlement Agreement, including all matters relating to the administration, consummation, validity, enforcement, and interpretation of the Settlement Agreement or the Final Order and Judgment, including without limitation, for the purpose of:

a.     Enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, the Final Order, or the Final Judgment (including whether a person or entity is or is not a Settlement Class Member);

b.     Entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate the Final Order, the Final Judgment, or the Settlement Agreement, or to ensure the fair and orderly administration of the Settlement; and,

c.      Entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement Agreement, the Final Order, or the Final Judgment.

27.     Without affecting the finality of this Order or the Final Judgment, the Defendants, each Settlement Class Member, and the Administrator hereby irrevocably submit to the exclusive jurisdiction of the Court for the limited purpose of any suit, action, proceeding, or dispute arising out of the Settlement Agreement or the applicability of the Settlement Agreement, including any suit, action, proceeding, or dispute relating to the Release provisions herein.

28.     The Parties are hereby directed to carry out their obligations under the Settlement Agreement.

29.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.  Likewise, the Parties may, without further order of the Court or notice to the Settlement Class, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order and the Final Judgment that do not limit the rights of the Settlement Class Members under the Settlement Agreement.

30.     In the event that the Settlement becomes null and void, certification of the Settlement Class shall be automatically decertified and vacated and this Final Approval Order and Final Judgment, as well as all other orders entered and releases delivered in connection with the Settlement Agreement, shall be vacated and shall become null and void, shall be of no further force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Settlement Agreement had never been executed. The Settlement Agreement and all negotiations, proceedings, documents prepared, and statements in made in

connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law.

31.     This Final Approval Order and Final Judgment is final for purposes of appeal and may be appealed immediately, and the Clerk is hereby directed to enter judgment thereon.

This case is now CLOSED.

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

_____
Hon. Norman K. Moon
United States District Judge

Dated: _____

Exhibit 4

*UNITED STATES DISTRICT COURT*
*WESTERN DISTRICT OF VIRGINIA*
Case No. 3:20-cv-00044(NKM)

# EXCLUSION REQUEST FORM
**Must be postmarked by <mark>XXXX</mark>**

 **THIS IS NOT A CLAIM FORM. This form removes you from the settlement.  If you submit this form, you will not be eligible for any benefits pursuant to the settlement, including a cash payment.**

COMPLETE AND RETURN THIS FORM BY <mark>XXXX</mark> only if you do **not** want to be part of the settlement of this case, or if you intend to file a separate lawsuit on your own for the claims alleged in this class action case.  The attorneys who represent the class do not represent you with respect to any such claims if you exclude yourself.

BY COMPLETING THIS FORM, you are **excluding** yourself from participation in the settlement in this case, you will not receive any money if you are entitled.  If you submit this form and want to obtain any money you will then have to file your own lawsuit.  You may need to retain your own attorney.  You must file your own lawsuit before time runs out to do so and you should consult your own attorney to make certain you file a complaint in the appropriate court within the time provided by the applicable statutes of limitations.

| **Section I: Exclusion** |
|---|
| ☐    I request to be excluded from the Class Settlement in *Fitzgerald v. Wildcat, Sr., Case No. 3:20-cv-00044 (W.D. Va.)* |
| **Section II: Contact Information** |
| Full Name: _____ <br><br> Current Address: _____ <br><br> _____ <br><br> _____ <br><br> Phone Number: _____ <br><br> Last Four Digits of SSN :_____ <br> Loan Number(s): _____ |
| **Section III: Signature** |
| Signature: _____ <br><br> Date: _____ |

Exclusion Request Forms must be mailed to:

<mark>LDFSettlement
c/o Settlement Administrator
P.O. Box XXXX
City, State XXXXX</mark>